**ORIGINAL**

Fee Paid
S1
(1)

E-FILING

ADR

FILED
2007 OCT 15 P 3:31
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1  Thomas F. Fitzpatrick
   GOODWIN PROCTER LLP
2  181 Lytton Avenue
   Palo Alto, CA 94301
3  Tel.: 650-752-3144
   Fax: 650-853-1038
4  tfitzpatrick@goodwinprocter.com

5  John C. Englander
   Douglas C. Doskocil
6  Michael G. Strapp
   GOODWIN PROCTER LLP
7  53 State Street
   Boston, Massachusetts 02109
8  Tel.: 617.570.1000
   Fax: 617.523.1231
9  jenglander@goodwinprocter.com
   ddoskocil@goodwinprocter.com
10 mstrapp@goodwinprocter.com

11 Greg H. Gardella
   FISH & RICHARDSON P.C.
12 60 South Sixth Street
   3300 Dain Rauscher Plaza
13 Minneapolis, MN 55402
   Tel.: 612-335-5070
14 Fax: 612-288-9696
   ggardella@fr.com

15

16 Attorneys for Applied Materials, Inc.

C/PVT

PVT

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                          SAN JOSE DIVISION

20 APPLIED MATERIALS, INC.,              Case No.

21         Plaintiff,                    C 07 05248

22    v.                                 COMPLAINT

23 ADVANCED MICRO-FABRICATION
   EQUIPMENT (SHANGHAI) CO., LTD.,
24 ADVANCED MICRO-FABRICATION
   EQUIPMENT INC., ASIA, GERALD Z. YIN,
25 AIHUA CHEN, RYOJI TODAKA, AND LEE
   LUO,                                  JURY TRIAL DEMANDED
26
          Defendants.
27

28

---

1
COMPLAINT
LIBA/1828092.6

Plaintiff Applied Materials, Inc., ("Applied") as and for its Complaint against Defendants Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC"), Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC Asia"), Gerald Z. Yin ("Yin"), AiHua Chen ("Chen"), Ryoji Todaka ("Todaka"), and Lee Luo ("Luo"), alleges as follows:

## INTRODUCTION

1. This is an action for breach of contract, conversion, misappropriation of trade secrets, and unfair competition violations by Defendants. Plaintiff Applied is a Santa Clara based company that, among other things, develops, designs, and manufactures machines (tools) that are used to make semiconductor chips. Two types of these machines enable so-called "Etch" and "Chemical Vapor Deposition" ("CVD") processes. Each Etch or CVD tool is a very sophisticated, multi-million dollar machine that uses complex physics and chemistry to perform precise processes on silicon wafers. Applied is one of the leading technology companies in the world.

2. Defendants Yin, Chen, Luo, and Todaka (the "Individual Defendants") are former employees of Applied, all of whom, while at Applied, had access to highly sensitive Applied trade secrets and confidential information including valuable Applied trade secrets with respect to designing, manufacturing, and using Etch and CVD tools.

3. Defendant Yin, in particular, was a Corporate Vice President, General Manager, and Chief Technology Officer at Applied. In his roles, he managed the Etch product group and had broad access to Applied confidential information and trade secrets concerning its Etch tools.

4. Defendant Chen also held a number of roles at Applied including General Manager of its CVD product group. Chen had broad access to Applied confidential information and trade secrets concerning its CVD tools.

5. Defendant Yin left Applied in 2004, moved to the People's Republic of China, and, along with Defendant Chen, founded Defendant AMEC, a semiconductor tool manufacturing company formed to manufacture Etch and CVD tools that will compete directly with Applied. Each of the other individual defendants also left Applied between 2003 and 2006 and joined AMEC.

6. Led by Defendants Yin and Chen, AMEC seeded their company with a multitude of

former Applied employees ranging from Applied corporate vice presidents to technologists and engineers.

7. While semiconductor manufacturing tools are very sophisticated and complex machines that typically take years to design and build, AMEC, armed with Applied confidential information and trade secrets, designed, built and announced the availability of its CVD and Etch tools within one year of starting business in China.

8. Defendants willfully breached multiple duties to Applied by transferring and converting Applied inventions and trade secrets to AMEC. For example, while employed by Applied, the Individual Defendants worked on a novel and confidential design for use in CVD tools. Upon arriving at AMEC, the Individual Defendants disclosed the confidential design to AMEC. On August 5, 2005, AMEC filed a Chinese patent application claiming this novel design as its own. AMEC has also incorporated the design into its CVD tools.

9. Each of the Individual Defendants signed Employee Agreements with Applied. The Agreements state that all inventions that the Individual Defendants conceived, made or reduced to practice while at Applied would be the exclusive property of Applied. The Individual Defendants have breached these Agreements. Moreover, all of the Defendants have converted Applied proprietary information and misappropriated Applied trade secrets. Defendants have been unjustly enriched as a result of their illegal practices.

10. Applied seeks an injunction against Defendants to prevent further trade secret misappropriation and unfair competition, as well as compensatory and punitive damages and a declaration that it is the owner of Defendants' patent applications.

**PARTIES**

11. Plaintiff Applied Materials, Inc. is a corporation organized and existing under the laws of Delaware, which maintains its principal place of business in Santa Clara, California.

12. Upon information and belief, Defendant Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China, which maintains its principal place of business in Shanghai, China, and which also maintains an office in San Diego, California. Defendant AMEC was registered as a Chinese

foreign cooperative venture on May 31, 2004 at the Shanghai Pudong New Area Administration for Industry and Commerce.

13. Upon information and belief, Defendant Advanced Micro-Fabrication Equipment Inc., Asia is the parent company of Defendant AMEC. Defendant AMEC Asia is organized and existing under the laws of the Cayman Islands and maintains its principal place of business in the Cayman Islands. Defendant AMEC Asia is the assignee of certain U.S. patent applications.

14. Upon information and belief, Defendant Gerald Z. Yin is an individual residing in Shanghai, China. Yin is designated by Defendant AMEC as AMEC's legal representative. Yin is a citizen or subject of the People's Republic of China.

15. Upon information and belief, Defendant AiHua Chen is an individual residing in Shanghai, China. Chen is a citizen or subject of the People's Republic of China.

16. Upon information and belief, Defendant Ryoji Todaka is an individual residing in Shanghai, China. Todaka is a citizen or subject of Japan.

17. Upon information and belief, Defendant Lee Luo is an individual residing in China. Luo is a citizen or subject of the People's Republic of China.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2).

19. Venue is proper in this district and division under 28 U.S.C. § 1391(a) because this is the district in which a substantial part of the events or omissions giving rise to the claim occurred and the district in which a substantial part of the property that is the subject of the action is situated.

## BACKGROUND

20. This is an action to recover damages incurred by Applied for the breach of Employee Agreements that the Individual Defendants entered into with Applied and for a declaratory judgment to enforce Applied's contractual rights set forth in the Employee Agreements. It is also an action to recover compensatory and punitive damages from Defendants for conversion of Applied's intellectual property and for the misappropriation of Applied trade secrets. It is also an

4
COMPLAINT
LIBA/1828092.6

action for an injunction to prevent further misappropriation and unfair competition.

The Technology

21. Chips consist of electronic circuits and devices that carry out electronic functions. They are composed of layers of conductors, insulators, and semiconductors. Chips are built on so-called semiconductor "wafers" – thin, circular pieces of pure silicon. The silicon can be chemically altered and used to guide where and how much energy flows through the circuitry of a chip.

22. Etch is a process for removing selected material in a specified area from the surface of a silicon wafer through a chemical reaction – for example, to form the channels for the microscopic "wires" of chip circuitry.

23. CVD involves the use of gases to form a very thin film of solid material on a silicon wafer. The CVD films usually range in thickness from a small fraction of a micron to a few microns and must be deposited with extreme uniformity across the wafer.

24. The Etch and CVD processes are highly sophisticated and extremely challenging. Applied spends millions of dollars on research and development each year to ensure that its Etch and CVD tools can perform the demanding, technical tasks of fabricating semiconductor chips. Because of the technical challenges, costs, and time involved in building Etch and CVD tools, very few companies in the world have been successful in building these machines.

Applied's History

25. Applied was founded in 1967 and has been the world's leading semiconductor equipment manufacturer since 1992. Applied has invested billions of dollars on research and development and has brought to market revolutionary products that have changed the semiconductor industry. For example, Applied developed the Precision 5000, a product that commercialized the innovative single-wafer, multi-chamber platform, and that was later inducted into the Smithsonian Institution's permanent collection of Information Age technology. Applied has intellectual property rights in the products and ideas developed through its research and development, including patent and trade secret rights.

The Individual Defendants

26. Yin was hired by Applied on March 18, 1991 and was employed at Applied until August 1, 2004. While at Applied, Yin held a variety of positions in its Etch division including Corporate Vice President, General Manager, and Chief Technology Officer.

27. Chen was hired by Applied on June 8, 1992 and worked at Applied until November 24, 2003. While at Applied, Chen held a variety of positions including General Manager of the CVD division.

28. Luo was hired by Applied on September 28, 1994 and worked at Applied until January 13, 2006. While at Applied, Luo held a number of positions including Deputy General Manager of the CVD division.

29. Todaka was hired by Applied on April 7, 2000 and worked at Applied until January 4, 2003. While at Applied, Todaka worked as a CVD hardware engineer.

30. Defendants Yin, Chen, Luo, and Todaka entered into the Employee Agreements that are the subject of this action in consideration of their employment by Applied and the compensation paid to them for their services. The terms of the Employee Agreements are unambiguous and straightforward. The Individual Defendants agreed: (1) not to disclose any Applied confidential information to anyone outside of Applied or to use such information for the benefit of anyone other than Applied, either during or after their employment with Applied; (2) that all inventions conceived, made or reduced to practice during the period of their employment with Applied belonged to Applied; (3) that they would promptly disclose such inventions to Applied; (4) that they would assign any such inventions to Applied; and (5) that any inventions the Individual Defendants described in a patent application or disclosed to a third party within one year after leaving Applied would be presumed to have been conceived or made during their employment with Applied and would belong to Applied.

31. When Yin, Chen, Luo, and Todaka terminated their employment with Applied, they signed Termination Certifications in which they acknowledged their obligations, in compliance with the Employee Agreements, to preserve as confidential and not to use or to disclose to a third party any confidential information of Applied. The Individual Defendants further certified that they had complied with and would continue to comply with all the terms of the Employee

Agreements.

32. At the time Yin left Applied, he filled out a Notice of Termination form explaining the reason that he had decided to leave Applied. Yin wrote that he had chosen to retire because he would soon be 60 years old and because he had been working for 36 years after obtaining his college degree.

33. On information and belief, AMEC had knowledge of the Individual Defendants' Employee Agreements with Applied.

### AMEC Founded and Seeded With Ex-Applied Employees

34. Instead of retiring, however, Yin, along with Defendant Chen, founded AMEC, a semiconductor tool manufacturing company based in China. AMEC has announced that the first types of tools it has designed, built and will sell are so-called "CVD" and "Etch" tools. Yin is the Chairman of the Board and the Chief Executive Officer at AMEC.

35. Chen founded AMEC soon after leaving Applied. Chen is a member of the AMEC Board of Directors and an Executive Vice President at AMEC. In this capacity, Chen has overall responsibility for the development and commercialization of the company's products and is also responsible for its intellectual property strategy.

36. Luo also joined AMEC very shortly after leaving Applied. Luo is the General Manager of AMEC's CVD division and has overall responsibility for the development and commercialization of the company's CVD product line.

37. Todaka also joined AMEC soon after leaving Applied. Todaka has worked as an engineer at AMEC and is a named inventor on two U.S. patent applications that have been assigned to AMEC Asia.

38. Yin, Chen, Luo, and Todaka are only a few of the many former employees of Applied who currently work for AMEC. Indeed, Applied estimates that at least 30 of its former employees are now employed by AMEC.

39. After AMEC was formed, AMEC purposefully recruited additional Applied employees with knowledge of Applied's trade secrets to leave Applied and join AMEC.

### AMEC's Misappropriation of Applied Confidential Information and Trade Secrets

40. On August 5, 2005, one year and three days after Yin terminated his employment with Applied, AMEC filed Chinese Patent Application No. 200510028563.2 (the "Chinese '563 application"). AMEC is the named applicant of the Chinese '563 application. The named inventors of the Chinese '563 application are Todaka and Chen.

41. Yin, Todaka, and Chen are named as inventors on U.S. Patent Application No. 11/441,291, filed May 24, 2006 (the "U.S. '291 application") and on Japanese Patent Application No. 2006-214829, filed July 8, 2006 (the "Japanese '829 application"), both of which claim priority to the Chinese '563 application. The U.S. '291 application and the Japanese '829 application are assigned to AMEC Asia. The Chinese '563 application, the Japanese '829 application, and the U.S. '291 application are all entitled "Method and Apparatus for Processing Semiconductor Work Pieces" and are directed to the same subject matter.

42. The information disclosed in these patent applications includes Applied confidential information, including Applied trade secrets. The subject matter described in the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application was known to the very same engineers who later left Applied and joined AMEC. Those former Applied engineers include at least Defendants Chen, Yin, Luo, and Todaka. Indeed, Applied has filed its own U.S. patent applications covering the technology described in the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application.

43. AMEC, as the named applicant of the Chinese '563 application, misappropriated Applied's trade secrets by using and disclosing to the public those trade secrets in that application. The Individual Defendants and AMEC Asia acted on behalf of and under the control of AMEC in their use and disclosure of the Applied trade secrets in the Chinese '563, the Japanese '829, and the U.S. '291 applications. AMEC also aided and abetted the Individual Defendants and AMEC Asia in misappropriating Applied's trade secrets through its joint efforts with AMEC Asia and the Individual Defendants to use and disclose the Applied trade secrets in the Japanese '829 application and the U.S. '291 application.

44. Under the express terms of the Employee Agreements, if any invention is disclosed by a former Applied employee to a third party "within one year after leaving the employ of Applied,

it is to be presumed that the invention was conceived or made during the period of his employment by Applied, and the invention will belong to Applied." This presumption applies to the information disclosed in the Chinese '563, the Japanese '829, and the U.S. '291 applications because the information was included in a patent application filed one year and three days after Yin left Applied, and must have been disclosed by the Individual Defendants to third parties, including AMEC, during the one year period. On information and belief, Defendants AMEC and AMEC Asia intentionally acted to induce the Individual Defendants, including Yin, to breach the Employee Agreements.

45. AMEC has also misappropriated other Applied confidential information and trade secrets. Some of these trade secrets are disclosed in Chinese Patent Application No. 200510028564.7 (the "Chinese '564 application"), which was filed on August 5, 2005 and is assigned to AMEC. AMEC later filed U.S. Patent Application No. 11/350,022 (the "U.S. '022 application"), filed February 8, 2006, and Japanese Patent Application No. 2006213916 (the "Japanese '916 application"), filed August 4, 2006, both of which claim priority to the Chinese '564 application and disclose the same Applied confidential information as the Chinese '564 application. The U.S. '022 application and the Japanese '916 application are assigned to AMEC Asia. The Chinese '564, U.S. '022, and Japanese '916 applications describe the use of multi-frequency radio frequency (RF) sources and corresponding RF matching networks in a plasma chamber. This technology is applicable to both Etch tools and CVD tools. The information described in the Chinese '564, U.S. '022, and Japanese '916 applications, consists of Applied confidential information and trade secrets that former Applied employees who are now employed by AMEC had access to and helped develop while at Applied.

46. AMEC, as the assignee of the Chinese '564 application, misappropriated Applied's trade secrets by using and disclosing to the public those trade secrets in the Chinese '564 application. The Individual Defendants and AMEC Asia acted on behalf of and under the control of AMEC in their use and disclosure of the Applied trade secrets in the Chinese '564 application. AMEC also aided and abetted the Individual Defendants and AMEC Asia in misappropriating Applied's trade secrets through its joint efforts with AMEC Asia to use and disclose the Applied

trade secrets in the U.S. '022 application and the Japanese '916 application.

47. On information and belief, Defendants have also misappropriated other Applied trade secrets by using and disclosing technical and operational trade secrets relating to Applied's Etch and CVD technology.

## COUNT I

### (Breach of Contract against Yin, Chen, Todaka, and Luo)

48. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-47.

49. Under the terms of the Employee Agreements that Yin, Chen, Luo, and Todaka entered into with Applied, they were each required to hold all confidential information relating to Applied's research, development and business activities in trust and confidence for Applied. Specifically, the Individual Defendants agreed not to disclose such confidential information to anyone outside of Applied either during or after their employment with Applied.

50. The Individual Defendants disclosed confidential information relating to Applied's research, development, and business activities to third parties, including Defendants AMEC and AMEC Asia, after their employment with Applied.

51. Under the terms of the Employee Agreements that Yin, Chen, Luo, and Todaka entered into with Applied, they were each also required to promptly disclose and assign to Applied all inventions conceived, made, or first actually reduced to practice by them during the period of their employment by Applied.

52. The Individual Defendants failed to perform their obligations under the Employee Agreements by not promptly disclosing and assigning their inventions to Applied.

53. The Individual Defendants' failure to perform their obligations under the Employee Agreements constitutes a material breach of contract.

54. As a result of the Individual Defendants' breach of the Employee Agreements, Applied has suffered damages in an amount to be determined at trial.

## COUNT II

### (Misappropriation of Trade Secrets against all Defendants)

55. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-54.

10
COMPLAINT
LIBA/1828092.6

56. Defendants Yin, Chen, Luo, and Todaka were at all relevant times, and are now in possession of substantial amounts of Applied's technical and operational trade secrets relating to Applied's Etch and CVD technology. This information includes but is not limited to the technology described in the Chinese '563 and '564 applications, the U.S. '291 and '022 applications, and the Japanese '829 and '916 applications.

57. Applied's proprietary technology and business trade secrets derive independent economic value from not being generally known to the public or to other persons such as AMEC who can obtain value from their disclosure. This secret information provides Applied with competitive advantages.

58. Applied has made extensive efforts to protect the confidentiality of its trade secrets. Applied derived independent economic value from the technical and operational trade secrets relating to Applied's Etch and CVD technology that are now in the Defendants' possession because these trade secrets were not generally known to the public or other persons who could obtain economic value from their disclosure or use.

59. Defendants misappropriated Applied's trade secrets. Defendants wrongfully acquired, disclosed and/or induced others to disclose Applied's trade secrets to, *inter alia*, AMEC. Defendants used the misappropriated information to benefit AMEC and to undermine Applied with knowledge that the information had been acquired illegally, such as by breach of the Employee Agreements.

60. Defendants AMEC, AMEC Asia, Yin, Chen, Luo, and Todaka have wrongfully acquired, used and been unjustly enriched by the Applied trade secrets by, among other things, incorporating them in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application.

61. The Individual Defendants and AMEC Asia acted on behalf of and under the control of AMEC in misappropriating Applied trade secrets, including but not limited to its use and disclosure of those trade secrets in the U.S. '291 application, the Japanese '829 application, the U.S. '022 application, and the Japanese '916 application.

62. Defendant AMEC has aided and abetted the Individual Defendants and AMEC Asia in misappropriating Applied trade secrets, including but not limited to its joint efforts with the Individual Defendants and AMEC Asia to use and disclose those trade secrets in the U.S. '291 application, the Japanese '829 application, the U.S. '022 application, and the Japanese '916 application.

63. As a result of Defendants' misappropriation of Applied's trade secrets, Applied is entitled to damages for the actual loss suffered by Applied and for any unjust enrichment the Defendants have enjoyed by such misappropriation.

64. As a result of Defendant's misappropriation of Applied's trade secrets, Applied has no adequate remedy at law, particularly because AMEC's misuse of Applied's trade secrets has allowed AMEC to enter the semiconductor equipment manufacturing industry in an unrealistically short amount of time. Applied is entitled to an injunction to prevent Defendants from disclosing or using Applied's trade secrets and compelling all the defendants to return any and all materials disclosing or derived from the misappropriated information.

65. Defendants' misappropriation of Applied's trade secrets was willful, entitling Applied to an award of exemplary damages equal to twice its actual damages caused by the theft as well as Applied's reasonable attorneys' fees.

## COUNT III

**(Intentional Interference with Contractual Relationships against AMEC and AMEC Asia)**

66. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-65.

67. Valid and enforceable Employee Agreements exist between Applied and the Individual Defendants.

68. AMEC and AMEC Asia have knowledge of the Individual Defendants' Employee Agreements with Applied.

69. AMEC and AMEC Asia intentionally sought and did obtain confidential Applied information from the Individual Defendants, thereby improperly inducing the Individual Defendants to breach the Employee Agreements. The Individual Defendants did breach the Employee Agreements, as set forth in paragraphs 53, 54 and 57 above.

70. AMEC and AMEC Asia also induced the Individual Defendants to breach the Employee Agreements by directing the Individual Defendants to assign the Chinese '563 and '564 applications, the U.S. '291 and '022 applications, and the Japanese '829 and '916 applications to AMEC and AMEC Asia. The Individual Defendants did breach the Employee Agreements as set forth in paragraphs 55 through 57 above.

71. As a result of AMEC and AMEC Asia intentionally interfering with the Individual Defendants' contractual relationships with Applied and inducing the Individual Defendants to breach the Employee Agreements, Applied has suffered damages in an amount to be determined at trial.

## COUNT IV

### (Conversion against all Defendants)

72. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-71.

73. Under the terms of the Employee Agreements, the inventions described in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application belong to Applied.

74. Applied has a contractual right to those inventions, including a property right in all such inventions disclosed in any patent applications or patents.

75. Defendants have wrongfully taken for themselves and for AMEC and AMEC Asia inventions, and resulting patent applications and/or patents, including, but not limited to, the inventions set forth in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application.

76. Defendant AMEC has aided and abetted the Individual Defendants and AMEC Asia in their wrongful taking of inventions, and resulting patent applications and/or patents, including, but not limited to, the inventions set forth in the U.S. '291 application, the Japanese '829 application, the U.S. '022 application, and the Japanese '916 application.

77. Defendants have been unjustly enriched by the Applied inventions it has wrongfully converted.

78. As a result of Defendants' conversion of Applied's property, Applied has suffered damages in an amount to be determined at trial.

### COUNT V

**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200, et seq.)**

79. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-78.

80. As alleged above, Defendants have wrongfully misappropriated Applied's trade secrets, confidential information, and proprietary technology.

81. Defendants have misused Applied's trade secrets, confidential information, and proprietary technology to unfairly compete with Applied in the marketplace for Etch and CVD tools and have engaged in unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code Section 17200, et seq.

82. Defendants' conduct has damaged Applied's businesses, imposed substantial expenses on Applied to counteract that conduct, and injured Applied in other ways.

83. Defendants have been unjustly enriched through their acts of unfair competition and unlawful business practices.

84. As a result of Defendants unlawful, unfair, and fraudulent business practices, Applied has suffered damages in an amount to be determined at trial.

### COUNT VI

**(Declaratory Judgment on Contractual Rights and Obligations)**

85. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-84.

86. An actual controversy exists between Applied and Defendants regarding whether Applied or Defendants are the rightful owners of the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application.

87. Under the terms of the Employee Agreements, the inventions described in the patent applications belong to Applied.

88. Further, under the terms of the Employee Agreement, Yin, Chen, Luo, and Todaka are obligated to assign these inventions to Applied at its request and without additional compensation.

Dated: October 15, 2007

Respectfully submitted,

Applied Materials, Inc.

By its attorneys,

/s/ Thomas F. Fitzpatrick

Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander
Douglas C. Doskocil
Michael G. Strapp
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
ddoskocil@goodwinprocter.com
mstrapp@goodwinprocter.com

Greg H. Gardella
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696
ggardella@fr.com