Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel: 650-752-3144
Fax: 650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander
Douglas C. Doskocil
Michael G. Strapp
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
ddoskocil@goodwinprocter.com
mstrapp@goodwinprocter.com

Greg H. Gardella
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696
ggardella@fr.com

Attorneys for Applied Materials, Inc.

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, GERALD Z. YIN, AIHUA CHEN, RYOJI TODAKA, AND LEE LUO,<br><br>    Defendants. | Case No. C07-05248 PVT<br><br>**NOTICE OF EMERGENCY MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR EXPEDITED DISCOVERY, INSPECTION AND PRESERVATION OF EVIDENCE**<br><br>Date: November 6, 2007<br>Time: 10:00 a.m.<br>Ctrm: 5 (Mag. Judge Patricia V. Trumbull) |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on November 6, 2007, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA, Plaintiff Applied Materials, Inc. ("Applied"), will and hereby does, move for an order permitting it to (1) take expedited discovery from Defendants Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC"), Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC Asia"), Gerald Z. Yin ("Yin"), Aihua Chen ("Chen"), Ryoji Todaka ("Todaka") and Lee Luo ("Luo") (collectively, "Defendants"); and (2) conduct an inspection of Defendants' computers, hard drives, digital storage drives, and email accounts, to occur within two weeks.

Applied's Motion is based on this Notice and Memorandum of Points and Authorities, and supporting declarations attached hereto, the pleadings and papers on file in this action, and such argument and evidence as may be presented at the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Applied Materials, Inc. ("Applied") files this emergency motion to seek (1) expedited document discovery from Defendants, to be produced within 30 days of this filing, with notices of deposition to follow thereafter, and (2) an inspection of defendants' computers, hard drives, digital storage devices, and email accounts, to occur within one month.

This expedited discovery is necessary and appropriate because Defendants have misappropriated Applied's trade secrets and breached their employee agreements with Applied, and in doing so have caused, and are causing, Applied irreparable harm. Notably, Defendants have already publicly disclosed Applied trade secrets in patent applications and will likely disclose additional Applied trade secrets in new patent applications and in other publications. Because many critical facts regarding Defendants' misappropriation are in Defendants' possession, Applied seeks this expedited discovery to learn the full extent of Defendants' wrongful conduct and to prevent Applied's confidential information and trade secrets from further misuse or destruction. The inspection of Defendants' computers, hard drives, digital storage devices, and email accounts will allow copying by an independent computer consultant qualified in computer forensics, to minimize the risk of spoliation of electronic evidence directly related to Defendants' misappropriation of Applied's trade secrets.

Applied is a Santa Clara based company that, among other things, develops, designs, and manufactures machines (tools) that are used to make semiconductor chips. Two of these machines are so-called "Etch" and "Chemical Vapor Deposition" ("CVD") tools. Each of these tools are very sophisticated, multi-million dollar machines that use complex physics and chemistry to perform precise processes on silicon wafers.

As explained in more detail below, Defendant AMEC is a company based in Shanghai, China. It was formed by the individual defendants, all former Applied employees that had access to Applied's trade secrets, to manufacture and sell Etch and CVD tools. In offering its products, Defendants have used Applied's trade secrets to manufacture their own Etch and CVD tools in an unrealistically short time, have unfairly competed directly with Applied and have publicly disclosed

1  certain Applied trade secrets in patent applications filed in China, Japan, and the United States. Applied accordingly brought this action to protect its trade secrets and to enforce its contractual rights.

Individual defendants Yin, Chen, Todaka, and Luo (collectively, the "Individual Defendants") are former employees of Applied, all of whom, while at Applied, had access to highly sensitive Applied trade secrets and confidential information. Defendant Yin, in particular, was a Corporate Vice President, General Manager, and Chief Technology Officer at Applied. In his roles, he managed the Etch product group and had unfettered access to Applied confidential information and trade secrets concerning its Etch tools. Defendant Yin left Applied in 2004, moved to the People's Republic of China, and founded Defendant AMEC. Each of the other individual defendants also left Applied between 2003 and 2006 and joined AMEC.

Defendants breached multiple duties to Applied by transferring and converting Applied inventions and trade secrets to AMEC. For example, the Individual Defendants while at Applied had access to a novel and confidential "rotating pedestal design" for use in CVD tools. Upon arriving at AMEC, the Individual Defendants disclosed the confidential design to AMEC. On August 5, 2005, AMEC filed a Chinese patent application claiming this novel design as its own, and in 2006, AMEC filed U.S. and Japanese patent applications directed to the same subject matter.

Similarly, the Individual Defendants while at Applied had access to a method to use multi-frequency radio frequency (RF) power sources and corresponding "RF matching networks" to control plasma effects in a processing chamber. The Individual Defendants also misappropriated this confidential technology by providing it to AMEC who then filed Chinese, U.S. and Japanese patent applications claiming this novel trade secret as its own. These patent applications were published in February 2007, destroying the secrecy of Applied's trade secrets. On information and belief, AMEC has incorporated the methods disclosed in these patent applications into its Etch and CVD tools.

Applied has only recently begun to determine the nature and severity of AMEC's misappropriations. Because AMEC is a start-up company that thus far has conducted almost all of its business in the People's Republic of China, Applied has limited information from which to

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR EXPEDITED DISCOVERY, INSPECTION AND PRESERVATION OF EVIDENCE CASE – CASE NO. – C07-05248 PVT
LIBA/1837032.1

2

1 determine what AMEC has done.  Indeed, the bulk of the evidence of Defendants' misappropriation and misuse of Applied's trade secrets is in the Defendants' possession.  Such evidence would include documents and testimony regarding how AMEC's Etch and CVD tools were developed, what technology was used, the design and/or specifications of AMEC's products, and AMEC's manufacturing processes.  This evidence must be preserved and produced immediately because AMEC's actions are causing irreparable harm to Applied, and Applied must be given the opportunity to stop AMEC's violations before further irreparable harm is done. *See Teleflora, LLC v. Florists' Transworld Delivery, Inc.*, No. C 03-05858 JW, 2004 WL 1844847, at *6 (N.D. Cal. Aug. 18, 2004) ("use or disclosure of trade secrets is an irreparable harm").

Equally important, AMEC's actions to date indicate that it is likely imminent that additional Applied trade secrets and confidential information will be used by AMEC, and published in AMEC patent applications, thereby destroying the secrecy of highly valuable proprietary technology.  Applied must take discovery without delay so that it can learn exactly what Applied information is being used by AMEC, in order to stop the further destruction and misuse of Applied trade secrets by AMEC.

Applied has taken care to tailor its discovery requests, and to provide safeguards to assure that non-discoverable and privileged material is available only to Applied's lawyers.  Applied also proposes to keep all information on an attorneys' eyes only basis until a suitable protective order can be negotiated, thereby protecting any discoverable information that is confidential to the Defendants.

Defendants' misuse of Applied's trade secrets must be stopped.  In view of the irreparable harm to Applied and the accommodations Applied has undertaken to limit any burden to the Defendants, Applied asks that the Court grant the requested expedited discovery and computer inspection.

## II.  BACKGROUND

Applied was founded in 1967 and has been the world's leading semiconductor equipment manufacturer since 1992.  Among other things, Applied develops, designs, and manufactures machines (tools) that are used to make semiconductor chips.  Chips are built on so-called semiconductor "wafers" – thin, circular pieces of pure silicon.  Chips are composed of layers of

1 conductors, insulators, and the silicon semiconductor. The silicon can be chemically altered and
2 used to guide where and how much energy flows through the circuitry of a chip. The circuitry and
3 devices in a chip will carry out a variety of electronic functions. Applied spends millions of dollars
4 on research and development and has brought to market revolutionary products that have changed
5 the semiconductor industry.

6 Applied's products include so-called "Etch" and "CVD" tools. Etch is a process for
7 removing selected material from the surface of a wafer through a chemical reaction – for example, to
8 form the channels for the microscopic "wires" of chip circuitry. CVD involves the use of gases to
9 form a very thin film of solid material on a wafer surface. The CVD films range in thickness from a
10 small fraction of a micron to a few microns and must be deposited with extreme uniformity across
11 the wafer. The Etch and CVD processes are highly sophisticated and extremely challenging.
12 Applied commits substantial resources to research and development each year to ensure that its Etch
13 and CVD tools can perform these demanding tasks. Because of the substantial challenges, costs, and
14 time involved in building Etch and CVD tools, very few companies in the world have been
15 successful in building these machines. Applied's Etch and CVD technology includes myriad trade
16 secrets and is protected by many patents.

17 Defendant AMEC is a new company formed to manufacture and sell Etch and CVD tools.
18 AMEC is headed by former Applied employees, all of whom worked on Applied's Etch and CVD
19 tools. These former employees collectively had access to numerous Applied trade secrets. *See*
20 Complaint, ¶¶ 27-39 for a description of the Individual Defendants' roles. AMEC's web site
21 actually emphasizes the Individual Defendants' prior employment at Applied, and the capabilities
22 these employees gained from Applied.

23 In setting up AMEC's business of making and selling Etch and CVD tools, Defendants have
24 misappropriated Applied's trade secrets including, but not limited to, a method to use multi-
25 frequency radio frequency (RF) sources and corresponding RF matching networks in a plasma
26 chamber for use in Etch and CVD tools, and a novel and confidential rotating pedestal design for use
27 in CVD tools. These misappropriations were also a breach of the Individual Defendants' employee
28 contracts with Applied.

### III. ARGUMENT

Expedited discovery is appropriate and necessary here, because (1) key evidence of Defendants' misappropriations and other breaches is only in Defendants' possession; (2) Applied is being irreparably harmed by Defendants' actions; and (3) Defendants actions to date indicate that the further misuse and destruction of Applied trade secrets and confidential information is likely and imminent. The expedited discovery Applied seeks will aid Applied and the Court in understanding the nature and scope of Defendants' violations and the remedies needed and will provide Applied with the information it needs to put a halt to the further destruction of the secrecy of key Applied technology.

### A. Applied Seeks Critical Evidence Of Misappropriation That Is Only In AMEC's Possession

AMEC's publicly filed patent applications have revealed that AMEC has misappropriated Applied trade secrets and disclosed those trade secrets in patent applications. However, the key evidence of AMEC's misappropriations will include documents describing how AMEC's Etch and CVD tools were developed, the technology and processes AMEC used in manufacturing its Etch and CVD tools in an unrealistically short amount of time, and the designs and specifications of AMEC's products. In addition, likely other, similar evidence will include documents describing communications between ex-Applied employees and AMEC employees regarding Applied trade secrets and confidential information. All of this evidence is in AMEC's possession.

The expedited discovery that Applied seeks will enable Applied to apply to this Court to stop AMEC from disclosing and misusing additional Applied trade secrets. To demonstrate a likelihood of success on its misappropriation claim and to obtain a preliminary injunction to put an end to the destruction of confidential Applied information, Applied needs access to certain discovery. And to avoid the irreparable harm that will ensue if an ordinary discovery schedule is implemented, Applied needs this discovery on an expedited basis.

### B. Expedited Discovery Is Warranted And Necessary To Prevent Irreparable Harm

The expedited discovery Applied seeks is warranted because Defendants' unfair competition

1  against Applied using Applied's trade secret technology is causing Applied irreparable harm, and
2  because all indications point to the additional destruction of Applied trade secrets unless Applied is
3  permitted to take discovery now, learn the scope of AMEC's violations and seek the necessary
4  remedies from the Court. The discovery Applied seeks on an expedited basis is tailored and
5  structured to protect the confidentiality of Defendants' information.

6  Applied is being irreparably harmed **now** because its trade secrets have been publicly
7  disclosed and because Defendants are actively seeking to further disseminate Applied's trade secrets
8  and use those trade secrets to implement its business, and thereby take market share and goodwill
9  from Applied. *Teleflora, LLC*, 2004 WL 1844847, at *6 ("use or disclosure of trade secrets is an
10 irreparable harm"); *see also Picker Int'l Corp. v. Imaging Equip. Svces.,* 931 F.Supp. 18, 44 (D.
11 Mass. 1995) ("misuse of trade secrets is generally deemed to involve irreparable harm"). There is
12 also a very great risk that Defendants will disclose additional Applied confidential information and
13 trade secrets in additional patent applications, and will share Applied's confidential information and
14 trade secrets with its suppliers and potential customers in the ordinary course of business. Moreover,
15 once Defendants successfully take Applied's customers, Applied will have suffered the loss of
16 market share and goodwill that it might never recover. *See, e.g.*, *Amazon.com, Inc. v.*
17 *Barnesandnoble.com, Inc.,* 73 F. Supp.2d 1228, 1238, 1247 (W.D. Wash. 1999) (recognizing loss of
18 "positive relationships" with customers and "invaluable customer loyalty" as irreparable harm),
19 *vacated on other grounds by Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343
20 (Fed.Cir. 2001).

21 In the ordinary course of discovery, Applied could have to wait up to four months for a
22 discovery scheduling order. *See* Fed. R. Civ. P. 16. Defendants would then have an additional 30
23 days to respond to Applied's discovery requests. This time represents five months that Defendants
24 would be unfairly competing with Applied, using Applied's trade secrets to sell products to
25 Applied's customers, eroding Applied's market share, profiting from these actions at Applied's
26 expense, and further disseminating Applied's confidential information and trade secrets.

27 The Federal Rules of Civil Procedure authorize expedited discovery in such situations. *See*
28 Fed. R. Civ. P. 16(b) and 26(d). The Rules specifically contemplate orders accelerating the dates by

which a party must respond to discovery requests. *See*, *e.g.*, Fed. R. Civ. P. 33(b)(3) ("shorter … time may be directed by the court" for responding to interrogatories); Fed. R. Civ. P. 34(b) (same for period for responding to requests for production of documents). The Court also may set aside ordinary Rules concerning the timing and sequencing of discovery. *See, e.g.*, Fed. R. Civ. P. 30(a)(2)(C) (court may allow deposition before time specified in Rule 26(d)).

This Court has held that the ordinary Rules concerning the timing of discovery can be set aside in circumstances like these where expedition is necessary to pursue claims of trade secret misappropriation and unfair competition. *See Physicians Interactive v. Lathian Sys., Inc.*, No. CA 03-1193-A, 2003 WL 23018270, at *10 (E.D. Va. Dec. 5, 2003) (granting motion for expedited discovery in which plaintiff sought, *inter alia*, document requests and interrogatories relating to circumstances surrounding its allegations of trade secret misappropriation); *Thermo Web Systems, Inc. v. Beebe*, No. Civ. A. 00-40170-NMG, 2001 WL 311295 (D.Mass. March 15, 2001) (in case involving claims of misappropriation of trade secrets, breach of contract, and unfair competition, expedited discovery was ordered and an early trial date set).

The initial discovery Applied seeks is focused on Defendants' misappropriation of Applied trade secrets. At this time Applied seeks to serve one request for production, attached hereto as Exhibit A, seeking fifteen categories of documents as well as six interrogatories, attached hereto as Exhibit B. These discovery requests are tailored to focus on the development, design, manufacture and sale of defendants' Etch and CVD tools, as well as its related patent applications.[1] Applied also seeks authorization to serve deposition notices beginning ten days after the responses to its document requests are due. Applied also requests a Scheduling Conference be held in early November, at which time the parties can discuss a second phase of discovery. All of the discovery requests focus on the activity alleged in the Complaint that Applied seeks to enjoin – AMEC's misuse of Applied technology and trade secrets in direct competition with Applied. That conduct is ongoing.

---

[1] Applied is aware of Section 2019.210 of the California Code of Civil Procedure and the requirement that the party alleging misappropriation of a trade secret must disclose the trade secret with reasonable particularity before commencing discovery relating to the trade secret. Applied does not believe that Section 2019.210's procedure applies in this present dispute in Federal Court. *See Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, Civ. No. S-06-0533 GEB GGH, 2007 WL 273949, at *3 (E.D. Cal. Jan. 29, 2007); *but cf. Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161 (9th Cir. 1998). Nevertheless, in an effort to avoid a dispute over this issue, Applied discloses a list of its trade secrets in the document attached hereto as Exhibit C.

Defendants should be able to respond to the discovery requests within 30 days from today's filing. Applied's attorneys will be available and willing to negotiate the scope of any discovery request. Applied also agrees that all information produced pursuant to its request for expedited discovery should be available only to its outside attorneys until a suitable protective order can be negotiated, thereby protecting any discoverable information that is confidential to Defendants. Applied has provided Defendants with a proposed protective order.

### C. A Computer Inspection Is Warranted And Necessary To Avoid Spoliation Of Computer Files Likely To Contain Applied's Trade Secrets

An immediate inspection of Defendants' computers, hard drives, digital storage devices[2], and email accounts[3] is necessary to minimize the risk of spoliation of electronic evidence directly related to the theft of Applied's trade secrets, currently residing on Defendants' computers and digital storage devices. Such risk exists not only because of Defendants' potential actions once they learn of the Complaint, but also because such evidence will potentially be overwritten and permanently lost even with normal computer operation. To protect the Defendants' privacy, Applied proposes a procedure to assure that non-discoverable and privileged material is not exposed to Applied personnel.

As set out in the enclosed Proposed Order, Applied seeks (1) the right to inspect and copy the computers, hard drives, digital storage devices, and email accounts in the control and possession of Defendants pursuant to Fed. R. Civ. P. 34 within two weeks of the Court's order, and (2) an order that defendants preserve such computers, hard drives, digital storage devices, and email accounts in their current condition until such an inspection can take place. The inspection will allow an independent computer consultant qualified in computer forensics to copy information from the computers, hard drives, digital storage devices, and email accounts; neither Applied nor its attorneys will have access to that information until the parties or the Court determine an acceptable scope and

---

[2] "Digital storage devices" should be construed to include CD and DVD data disks, portable USB storage devices, external hard drives, magnetic media, and the like.

[3] "Email accounts" should be construed to include web-based email accounts as well as network-based email accounts and repositories of stored emails.

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR EXPEDITED DISCOVERY, INSPECTION AND PRESERVATION OF EVIDENCE CASE – CASE NO. – C07-05248 PVT        8
LIBA/1837032.1

protocol for reviewing that information. Thus, Applied has allayed any privacy concerns and any concerns regarding the exposure of non-discoverable or privileged information. Until the copy can be made, however, the risk remains that the evidence will be despoiled, either through the normal use of the computers or intentionally. Accordingly, the Proposed Order provides that the Defendants immediately refrain from deleting files or otherwise disturbing the current state of these computers, hard drives, digital storage devices, and email accounts until the inspection and copying is complete.

It is now common for courts to order the preservation of evidence prior to the beginning of the discovery period even before a case management conference. *Posdata Co. Ltd. v. Kim*, No. C-07-02504 RMW, 2007 WL 1848661, at *9 (N.D. Cal. June 27, 2007) (granting plaintiff's request for expedited discovery and a preservation order; directing parties to "preserve all evidence potentially related to a claim or defense"); *see also Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 434 n.2 (W.D. Pa. 2004); *HJB, Inc. v. American Home Prods. Corp.*, Nos. 93 C 6728, 6789, 6790, and 6773, 1994 WL 31005, at *1 (N.D. Ill. Feb. 1, 1994) ("Pretrial orders [for entry of a document preservation order] are common in complex litigations."). Such an order is especially appropriate here because of the risk that the information on Defendants' computers, a <u>key</u> piece of evidence in this case, may become unavailable to Applied during discovery in the absence of immediate copying or a preservation order. Since Applied's trade secrets (including manufacturing processes, manuals, specifications, pricing information, and customer contact lists) are in a form amenable to electronic storage, and all of the Individual Defendants had access to Applied's trade secrets while still at Applied, Applied may lose discoverable information if these digital storage devices are destroyed or overwritten. The loss of information that Applied could use to prove its trade secrets case would harm Applied's ability to enforce its rights, with no recourse.

Finally, Applied's request is reasonable in scope as it is limited to only targeted necessary documents that are relevant to the critical issues in the case and because it is limited temporally – Applied only seeks to inspect and copy computers, hard drives, digital storage devices, and email accounts which were in the possession and/or control of defendants on or after May 24, 2003 (6 months prior to the date the first former employee defendant terminated his employment with Applied) and remain in their possession and/or control. Additionally, this action does not risk the

confidentiality of Defendants' information because Applied will retain an independent computer consultant qualified in computer forensics to perform the digital imaging, and to hold the copies until the parties (and/or the Court) are able to develop mutually agreed-upon searches of the data directed towards uncovering relevant, non-privileged material.

### IV.     CONCLUSION

For the reasons stated above, Applied requests that this Court enter the Proposed Expedited Discovery, Inspection, and Preservation Order.  A Proposed Order is filed herewith.

Dated: October 16, 2007

Respectfully Submitted,

/s/ Thomas F. Fitzpatrick
Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel:  650-752-3144
Fax:  650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander
Douglas C. Doskocil
Michael G. Strapp
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
jenglander@goodwinprocter.com
ddoskocil@goodwinprocter.com
mstrapp@goodwinprocter.com

Greg H. Gardella
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.:  612-335-5070
Fax:  612-288-9696
ggardella@fr.com

Attorneys for Plaintiff
APPLIED MATERIALS, INC.