1  HAROLD J. MCELHINNY (CA SBN 66781)
   HMcElhinny@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone: 415.268.7000
4  Facsimile: 415.268.7522

5  MARC DAVID PETERS (CA SBN 211725)
   MDPeters@mofo.com
6  DAVID M. ALBAN (CA SBN 238955)
   DAlban@mofo.com
7  MORRISON & FOERSTER LLP
   755 Page Mill Road
8  Palo Alto, CA 94304-1018
   Telephone:  650-813-5600
9  Facsimile:  650-494-0792

10 Attorneys for Defendant
   ADVANCED MICRO-FABRICATION EQUIPMENT
11 (SHANGHAI) CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT, INC., ASIA, GERALD Z. YIN, AIHUA CHEN, RYOJI TODAKA, and LEE LUO,,<br><br>Defendants. | Case No.   C07 05248 PVT<br><br>**AMEC-SHANGHAI'S OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY** |

BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY AND PRESERVE EVIDENCE
CASE NO. C07 05248 PVT
sf-2410085

Based solely on the inadmissible, conclusory, and misleading declaration of its litigation counsel, Applied seeks to expedite discovery and to deny the defendants in this case the same orderly process of litigation that the Federal Rules provide for all but the most exceptional civil cases.

This motion should be denied for any number of independent reasons:

- None of the defendants has been lawfully served — plaintiff's "Notice of Compliance" notwithstanding,
- This Court lacks subject matter jurisdiction over the action,
- Applied has submitted no admissible evidence in support of its motion,
- There is no evidence of urgency or threatened irreparable injury,
- Applied seeks to copy every electronic document at AMEC Shanghai within 14 days, which is hardly "narrowly tailored" discovery, and
- This case raises many important policy concerns.

In short, there is no reason to abandon the Federal Rules in this case, and many reasons to take a more orderly approach. AMEC Shanghai respectfully requests that the Court deny Applied's motion.

## I.  NONE OF THE DEFENDANTS HAS BEEN LAWFULLY SERVED.

Applied has failed to comply with the Court's October 15, 2007 order granting in part plaintiff's ex parte motion to shorten time. The Court ordered that the complaint and moving papers should be served on the "defendants in China" no later than Friday, October 19, 2007. Despite its claim to the contrary, the plaintiff has not done so.[1]

---

[1] On October 15, 2007, plaintiff filed a "Return of Service" alleging that personal service on Matt Ruby was service on Advanced Micro-Fabrication Equipment (Shanghai) Co. As of today, no return has been filed alleging service on Advanced Micro-Fabrication Equipment, Inc. Asia or any of the four individual defendants. Because Applied filed the return of service against AMEC Shanghai even though service was defective, AMEC Shanghai will be moving to quash that service of process, as well as to dismiss the action for lack of jurisdiction.

In its Notice of Compliance, filed on October 18, 2007, Applied claims to have served "Defendant Advanced Micro-Fabrication Equipment ('AMEC')" by personally serving AMEC's General Counsel, Matt Ruby.  (Notice of Compliance With This Court's Order Dated October 17, 2007, at 2, lines 11-13 (Doc. 11) (hereinafter "Notice of Compliance").)  By defining "Advanced Micro-Fabrication Equipment" as "AMEC", plaintiff has crafted a serious misrepresentation.

Matt Ruby is the Vice President and General Counsel of Advanced Micro-Fabrication Equipment Inc., a Cayman Islands holding company that is ***not*** a party to this litigation.  (Declaration Of Matt Ruby In Support Of Opposition To Plaintiff's Motion To Expedite Discovery And Preserve Evidence ("Ruby Decl."), ¶ 1.)  Mr. Ruby is not an officer, not a managing agent, and not a person authorized to accept service of process on behalf of either of the corporate defendants in this case:  Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. or Advanced Micro-Fabrication Equipment, Inc., Asia.[2]  (Ruby Decl., ¶ 2.)  Applied even pleads that Gerald Yin, not Matt Ruby, is "designated by AMEC as AMEC's legal representative."  (Complaint ¶ 14.)  Thus, to date, there has been no service of process on either of the corporate defendants, much less service in China.[3]

None of the other efforts detailed in Plaintiff's Notice of Compliance can satisfy the statutory requirements of service of process.  Plaintiff asserts that it "served AMEC Asia, Yin, Chen, Todaka and Luo by Federal Express, by facsimile and by email."  (Notice of Compliance ¶ 6.)  None of these methods is a recognized form of service of process under the Federal Rules.[4]  The more significant issue, however, is that service by mail on parties in China is illegal under the

---

[2] This brief will refer to the three companies as "AMEC Inc.", "AMEC-Shanghai", and "AMEC-Asia" to distinguish among them.

[3] Counsel for AMEC-Shanghai attempted to notify Applied's counsel by e-mail of their mistake in trying to serve Mr. Ruby.  (Declaration Of Harold McElhinny In Support Of Opposition To Plaintiff's Motion To Expedite Discovery And Preserve Evidence ("McElhinny Decl."), ¶ 2 & Ex. A.)  However, in its brief, Applied defined "AMEC" in a manner that obscures the distinction between the different corporate entities.

[4] Applied Materials has neither applied for nor received an order permitting special service under Fed. R. Civ. P. 4(f).

Hague Convention,[5] and thus expressly prohibited by the Federal Rules. *See* Fed. R. Civ. P. 4(f); Hague Convention, Ancillary Laws and Directives, reprinted in U.S.C.S. on International Agreements at 284; *Doe v. Xudong*, No. 04 C 4097, 2005 U.S. Dist LEXIS 33377, at *8 (N.D. Ill. December 15, 2005).

Thus, the plaintiff is seeking affirmative relief from defendants who have not been subjected to the power of the Court by proper service of a summons, and who are protected by international treaty from exactly these kinds of abusive tactics.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

The Court should also deny Applied's motion because it lacks jurisdiction over this case. Because Applied asserts only state-law claims, the Court only has jurisdiction if there is complete diversity between the plaintiff and the defendants. But there is not.

There is no diversity jurisdiction in this case, despite Applied's allegation that 28 U.S.C. § 1332(a)(2) applies here. (Complaint, ¶ 18.) Defendants Gerald Z. Yin, Aihua Chen, and Lee Luo are ***not*** "citizens or subjects of the People's Republic of China," as alleged in the complaint. (*Id.*, ¶ 14, 15 and 17.)[6] Instead, Messrs. Yin, Chen, and Luo are all citizens of the United States who reside in China, as copies of their passports demonstrate. (Ruby Decl., ¶¶ 3-4.)

But there is no diversity of citizenship between a citizen of one state and a U.S. citizen resident abroad. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (holding that U.S. citizen domiciled abroad was "stateless" for purposes of § 1332(a)(3) and not an alien under § 1332(a)(2)). Accordingly, this case is not a civil action between "citizens of a State and citizens or subjects of a foreign state" (§ 1332(a)(2)) nor between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." (§ 1332(a)(3).)

---

[5] The U.S. State Department advises litigants that service by mail in China is "PROHIBITED." *See* http://travel.state.gov/law/info/judicial/judicial_694.html. China notified the Hague Conference on Private International Law and the Government of the Netherlands (the depository) that it objects to service via postal channels in accordance with Article 10, sub-paragraph (a) of the Convention. *See* Memorandum of the Administrative Office of the U.S. Courts (November 6, 1980) at Cumulative Digest of United States Practice in International Law, 1981-1988, Department of State, Office of the Legal Adviser, 1447 (1994) or Ristau, Sec. 3-1-9, p. 70.2 (1995 supp.).

[6] Through artful pleading, it is ambiguous as to whether Applied's citizenship allegations are made "upon information and belief." In any event, Applied is at best mistaken.

The lack of diversity jurisdiction means the Court must dismiss the action. Lack of jurisdiction obviously means the Court lacks the power to compel discovery or grant any other relief that Applied may request.

### III. THE PENDING MOTION IS UNSUPPORTED BY ANY ADMISSIBLE EVIDENCE

Given the nature of jurisdictional defenses, and the limited jurisdiction of federal courts, AMEC Shanghai is required to bring these procedural defects to the attention of the Court. And, in truth, AMEC-Shanghai believes that any dispute it may have concerning the facts alleged in Applied's complaint should be addressed by courts in the Peoples Republic of China, not in Northern California.

By bringing these defenses to this Court's attention, however, AMEC Shanghai does not concede that there would be any factual merit to the allegations of the complaint or to the allegations in support of this motion.

On the contrary, and to be clear, the facts will show that AMEC-Shanghai is a well funded, cutting-edge startup, located in Shanghai, China. It has approximately 260 employees, and an experienced and sophisticated management team. AMEC-Shanghai has carefully followed the applicable confidentiality and intellectual property laws and retained well-respected legal advisors to counsel it concerning its intellectual property regime. Upon learning of Applied's claim, it took appropriate steps to preserve relevant evidence, electronic and otherwise. (McElhinny Decl., ¶ 2.) AMEC has lawfully applied for patent protection, in China, in the U.S., and in other countries, to protect its innovations.

While Applied makes numerous, harsh accusations, it is immediately apparent that not one is supported by any witness who has personal knowledge.[7] Instead, Thomas F. Fitzpatrick,

---

[7] The allegations of trade secrets are nonexistent. The moving papers state that the trade secrets have been identified as required by California Law, in Exhibit C. However, Exhibit C simply says that these alleged secrets will be identified at some future date after a Protective Order has been signed. Of course, defendants who contest personal and subject matter jurisdiction are not going to submit themselves to jurisdiction by signing a protective order. Plaintiff's failure to comply with CCP § 2019.210, is an independent reason to deny discovery. *See Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) (holding that CCP § 2019(d) (now § 2019.210) harmoniously coexists with the Federal Rules of Civil Procedure,
(Footnote continues on next page.)

who identifies himself on the pleading as the lead litigation lawyer, submits a sworn declaration containing only conclusory allegations — a declaration that entirely lacks any explanation of how Mr. Fitzpatrick has or could have personal knowledge of anything he says.[8]

The failure to submit admissible evidence should be a red flag for this Court. Applied is anxious to label its former employees thieves — but not a single Applied witness has signed his or her name to a sworn document asserting that the named defendants had any access to any particular trade secret, asserting that there is any reason to believe that they misused Applied's confidential information or breached their employment contracts, asserting that the technologies shown in the AMEC patent applications were actually developed at Applied (and were developed ***before*** the applicants left Applied's employ), or asserting that there is any particular customer of Applied's that is in imminent danger of being lost to AMEC. There is a difference between evidence and argument, and Applied having presented only the latter, its motion should be denied.[9]

### IV.   THERE IS NO EVIDENCE OF ANY URGENCY OR THAT APPLIED'S CONFIDENTIAL INFORMATION IS AT RISK

Nor has Applied shown good cause to expedite discovery, or that there is any urgency in the case whatsoever, other than Applied's urgent "need" to erect roadblocks to fair and lawful competition. Although Applied argues several times that the case is urgent, and that there is a risk of imminent disclosure of confidential information, it fails to offer a single ***fact*** that would support its inflammatory accusations.

---

(Footnote continued from previous page.)

avoids needless discovery disputes, and was thus required under the *Erie* doctrine to apply in Federal cases); *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1043-44 (N.D. Cal. 2004) (holding that CCP § 2019(d) applies in federal cases); *see also Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App. 4th 826, 833-835 (Cal. Ct. App. 2005) (holding that the plaintiff must identify its trade secret with particularity before commencing any discovery relating to the trade secret).

[8] AMEC Shanghai objects to and moves to strike Mr. Fitzpatrick's declaration in its entity on lack of personal knowledge and relevance grounds.

[9] Having elected not to present any evidence of this kind (if any even exists), Applied should not be permitted to try to present it for the first time on reply.

BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY AND PRESERVE EVIDENCE    5
CASE NO. C07 05248 PVT
sf-2410085

1    Applied's own complaint demonstrates that there is no urgency. According to the
2 complaint, the individuals named on the various patent applications left Applied years ago in
3 2003 and 2004. (Complaint ¶¶ 27, 29, 40.) AMEC Shanghai was founded in 2004. (Complaint
4 ¶ 12.) The Chinese '563 patent application — which Applied claims discloses its secrets but did
5 *not* attach to its complaint or motion — was published in February, over eight months ago.[10]

6    And yet, during all this time, Applied did nothing. It sent no letters, no notices, no
7 complaints, no warnings—Applied sat in silence for years before filing suit. Another red flag for
8 the Court is that Applied fails to state *when* it learned AMEC was developing CVD and Etch
9 tools, *when* it learned of the various patent applications, or *when* it first suspected trade secret
10 misappropriation. There are not many players in this industry, and they all keep tabs on each
11 other. As shown in AMEC Inc.'s press releases, AMEC has been forthcoming with the public
12 that it was developing CVD and Etch tools, and about Messrs. Yin and Chen's role in guiding the
13 company. (McElhinny Decl., ¶¶ 4-7 & Exs. B-E.) The ineluctable conclusion is that Applied has
14 been watching AMEC carefully and filed this suit at a time of its choosing, to suit its own
15 purposes.

16    There is no justification for a preservation order in this case. *Adobe Systems, Inc. v. South*
17 *Sun Products, Inc.* is informative on this issue. 187 F.R.D. 636, 638 (S.D. Cal. 1999). In that
18 case, the plaintiffs filed an application for an emergency TRO with their complaint, which
19 requested permission to search Defendant's premises for evidence of copyright infringement,
20 arguing that there was a substantial risk that without such an order evidence would be destroyed.

21    The *Adobe* court denied *ex parte* relief, stating that

22    > Plaintiffs' sole justification for proceeding *ex parte* is their
    > contention that if South Sun received notice of this action, it could
23    > easily remove evidence of copyright infringement by deleting

---

[10] Artful pleading abounds in the complaint. Applied alleges that there is a presumption that the Chinese patent application belongs to Applied because it was filed one year and three days after Gerald Yin left Applied's employ. (Complaint ¶ 44.) But one has to read the complaint *very* carefully to notice that Mr. Yin is *not* an inventor on the Chinese application. (Complaint ¶ 40.) Messrs. Chen and Todaka (who are) left Applied Materials in 2003, more than 20 months before they filed their Chinese patent application. (Complaint ¶¶ 27, 29.) The Applied employment agreements therefore do *not* operate to presume Applied patent ownership.

> Plaintiffs' software from its PCs. According to Plaintiffs, South Sun could "make the evidence of its illegal activities vanish in seconds simply by striking a few keys on a computer keyboard or with a few clicks of a mouse." The court finds this argument inadequate to justify ex parte injunctive relief.

*Id.* at 640 (citations omitted). The court continued to say that ex parte relief *may* be justified upon a showing that a defendant would have disregarded a direct court order and disposed of evidence within the time it would have taken for a hearing. *Id.* at 641. That showing could be made with proof that the defendant had a history of disposing of evidence or violating court orders. *Id.*

Here, just as in the *Adobe* case, there has been no such showing. Applied offers only histrionics. There is no evidence that there is any danger that evidence will be lost in the absence of the requested preservation order. Applied offers no support whatsoever for its argument that AMEC-Shanghai should be deprived of the time set out in the Federal Rules to analyze the pleadings, consult with counsel, and prepare its defenses and counterclaims.

### V.    THE REQUESTED DISCOVERY IS OVERBROAD

The motion should be denied because it actually requires the defendants to perform nearly *all* discovery on an expedited basis. The plaintiff's discovery requests are excessively broad and intrusive, and are not narrowly tailored at all. The plaintiff seeks to *copy* every iota of data stored on the defendants' "computers, hard drives, digital storage devices, and email accounts . . . ." (Applied Proposed Order, Doc. 5.) At a high tech company like AMEC Shanghai, that is basically *every document in the company*. Such a broad fishing expedition is unwarranted and impermissible. *See* CCP § 2017.020.

Motions for expedited discovery should not be granted when the plaintiff fails to tailor its document requests narrowly, as Applied has failed to do here. *See, e.g., Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) (denying motion for expedited discovery on the grounds that the requested discovery was not narrowly tailored to obtain information relevant to a preliminary injunction determination). Applied's requests are overly broad, seeking *every electronic document* (proposed order), every document concerning AMEC's manufacturers, suppliers, partners, or distributors (Request No. 7); every document concerning

1  contracts with any third party (Request No. 8); every document concerning the sale or evaluation
2  of AMEC etch or CVD products (which are AMEC's *only* products) (Request No. 9); and every
3  document concerning the development of these products (Request Nos. 1 and 10-13). In short,
4  Applied's requests likely encompass all of AMEC's documents.

Applied's interrogatories are no better. For instance, Applied requests that AMEC identify each etch and CVD tool it has designed, developed, or manufactured and to identify all documents concerning them too. (Interrogatory Nos. 1-4.) Applied also requests that AMEC identify *all* its suppliers and *all* documents related to those suppliers. Again, Applied's broad requests require AMEC to explain the design and development of *every* product and cannot be considered "narrowly tailored."

Because Applied's requests would require AMEC to conduct nearly *all* discovery on an expedited basis, the Court should deny the motion. *Better Packages, Inc. v. Zheng*, No. 05-4477, 2006 U.S. Dist. LEXIS 30119, at *15 (D.N.J. May 17, 2006) ("The scope of the requested discovery and Defendants likely discovery in response would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery."); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 621-623 (N.D. Ill. 2000).

### VI. THERE ARE IMPORTANT POLICY REASONS WHY THIS MOTION SHOULD BE DENIED

The abuse of trade secret litigation by entrenched monopolists has been well documented. That abuse has led to California's specific statutory limitation on the right to launch "fishing expeditions" in trade secret cases. *See* CCP § 2017.210. Here, Applied is attempting to blow past these protections by improperly filing in federal court and pretending to prepare a trade secret disclosure in order to obtain Court permission to engage in the broadest of all fishing expeditions by entering the Chinese facilities of its rising competitor and copying every electronic document that can be found. The scope of that invasion and the chilling effect on competition should be carefully weighed by this Court. Exercising that judgment requires a clear definition of the actual misappropriation allegations and a clear understanding of the burdens sought to be imposed upon

1  foreign companies.  Of course, any discovery burden or process must be applied in an even-
2  handed and symmetrical fashion.
3      Finally, the international ramifications of this case cannot be ignored.  Applied is
4  attempting to use the American courts to obstruct the development of Chinese industry and
5  international competition.  There is no reason to believe that the fairness of American legal
6  proceedings will be taken as a given in China.  Whatever the result, both governments and all the
7  Courts that will be involved have an interest in maintaining procedures that are open, transparent,
8  and fair.  Setting aside the normal, tried and true procedures established by the Federal and Local
9  Rules in exchange for a one-sided "expedited" procedure is simply not a considered way to begin
10 to address this dispute — and is inconsistent with the care federal courts have previously shown
11 in addressing similar motions.
12     For all these reasons, Applied's motion should be denied.

14 Dated: October 29, 2007

HAROLD J. MCELHINNY
MARC DAVID PETERS
DAVID M. ALBAN
MORRISON & FOERSTER LLP

By:   /s/ Harold J. McElhinny
      Harold J. McElhinny

Attorneys for Defendant
ADVANCED MICRO-
FABRICATION EQUIPMENT
(SHANGHAI) CO., LTD.

BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY AND PRESERVE EVIDENCE
CASE NO. C07 05248 PVT
sf-2410085

9