ORIGINAL
FILED

07 NOV -1  AM 9: 09

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander
Douglas C. Doskocil
Michael G. Strapp
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
ddoskocil@goodwinprocter.com
mstrapp@goodwinprocter.com

Greg H. Gardella
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696
ggardella@fr.com

Attorneys for Applied Materials, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., | Case No.  CV 07-05248 JW |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT INC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

1

Plaintiff Applied Materials, Inc., ("Applied") as and for its Complaint against Defendants Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC Shanghai"), Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC Asia"), and Advanced Micro-Fabrication Equipment Inc. ("AMEC Inc.") (collectively the "Defendants") alleges as follows:

## INTRODUCTION

1.  This is an action for conversion, misappropriation of trade secrets, intentional interference with contractual relations and unfair competition violations by Defendants. Plaintiff Applied is a Santa Clara based company that, among other things, develops, designs, and manufactures machines (tools) that are used to make semiconductor chips. Two types of these machines enable so-called "Etch" and "Chemical Vapor Deposition" ("CVD") processes. Each Etch or CVD tool is a very sophisticated, multi-million dollar machine that uses complex physics and chemistry to perform precise processes on silicon wafers. Applied is one of the leading technology companies in the world.

2.  Gerald Z. Yin, AiHua Chen, Ryoji Todaka, and Lee Luo (the "AMEC Employees") are former employees of Applied, all of whom, while at Applied, had access to highly sensitive Applied trade secrets and confidential information including valuable Applied trade secrets with respect to designing, manufacturing, and using Etch and CVD tools.

3.  Yin, in particular, was a Corporate Vice President, General Manager, and Chief Technology Officer at Applied. In his roles, he managed the Etch product group and had broad access to Applied confidential information and trade secrets concerning its Etch tools.

4.  Chen also held a number of roles at Applied including General Manager of its CVD product group. Chen had broad access to Applied confidential information and trade secrets concerning its CVD tools.

5.  Yin left Applied in 2004, moved to the People's Republic of China, and, along with Chen, founded Defendants, including AMEC Shanghai, a semiconductor tool manufacturing company formed to manufacture Etch and CVD tools that will compete directly with Applied. Each of the other AMEC Employees also left Applied between 2003 and 2006 and joined Defendants.

6.    Led by Yin and Chen, Defendants seeded their companies with a multitude of former Applied employees, ranging from Applied corporate vice presidents to technologists and engineers. While at Applied, the AMEC Employees had access to highly sensitive Applied trade secrets and confidential information including valuable Applied trade secrets with respect to designing, manufacturing, and using Etch and CVD tools.

7.    While semiconductor manufacturing tools are very sophisticated and complex machines that typically take years to design and build, the Defendants, armed with Applied confidential information and trade secrets, designed, built and announced the availability of CVD and Etch tools within one year of starting business in China.

8.    The AMEC Employees transferred and converted Applied inventions and trade secrets to the Defendants. For example, while employed by Applied, the AMEC Employees worked on a novel and confidential design for use in CVD tools. Upon leaving Applied, the AMEC Employees disclosed the confidential design to the Defendants. On August 5, 2005, Defendants filed a Chinese patent application claiming this novel design as their own. The Defendants have also incorporated the design into their CVD tools.

9.    Each of the AMEC Employees signed Employee Agreements with Applied. The Agreements state that all inventions that the AMEC Employees conceived, made or reduced to practice while at Applied would be the exclusive property of Applied. Defendants have induced the AMEC Employees to breach these Agreements. Moreover, Defendants have converted Applied proprietary information and misappropriated Applied trade secrets. Defendants have been unjustly enriched as a result of their illegal practices.

10.    Applied seeks an injunction against Defendants to prevent further trade secret misappropriation and unfair competition, as well as compensatory and punitive damages and a declaration that it is the owner of Defendants' patent applications.

**PARTIES**

11. Plaintiff Applied Materials, Inc. is a corporation organized and existing under the laws of Delaware, which maintains its principal place of business in Santa Clara, California.

12. Upon information and belief, Defendant Advanced Micro-Fabrication Equipment

(Shanghai) Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China, which maintains its principal place of business in Shanghai, China, and which also maintains an office in San Diego, California. Defendant AMEC Shanghai was registered as a Chinese foreign cooperative venture on May 31, 2004 at the Shanghai Pudong New Area Administration for Industry and Commerce.

13. Upon information and belief, Defendant Advanced Micro-Fabrication Equipment Inc., Asia is a holding company. Defendant AMEC Asia is organized and existing under the laws of the Cayman Islands and maintains its principal place of business in the Cayman Islands. Defendant AMEC Asia is the assignee of certain U.S. patent applications.

14. Upon information and belief, Defendant Advanced Micro-Fabrication Equipment Inc. is a holding company and the parent company to AMEC Shanghai and AMEC Asia. AMEC Inc. is organized and existing under the laws of the Cayman Islands and maintains its principal place of business in the Cayman Islands.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2).

16. Venue is proper in this district and division under 28 U.S.C. § 1391(a) because this is the district in which a substantial part of the events or omissions giving rise to the claim occurred and the district in which a substantial part of the property that is the subject of the action is situated.

## BACKGROUND

17. This is an action to recover compensatory and punitive damages for Defendants' misappropriation and conversion of Applied's intellectual property, and for Defendants' interference with Applied's contractual relations with its employees. It is also an action for an injunction to prevent further misappropriation and unfair competition.

The Technology

18. Chips consist of electronic circuits and devices that carry out electronic functions. They are composed of layers of conductors, insulators, and semiconductors. Chips are built on so-

4

called semiconductor "wafers" – thin, circular pieces of pure silicon. The silicon can be chemically altered and used to guide where and how much energy flows through the circuitry of a chip.

19. Etch is a process for removing selected material in a specified area from the surface of a silicon wafer through a chemical reaction – for example, to form the channels for the microscopic "wires" of chip circuitry.

20. CVD involves the use of gases to form a very thin film of solid material on a silicon wafer. The CVD films usually range in thickness from a small fraction of a micron to a few microns and must be deposited with extreme uniformity across the wafer.

21. The Etch and CVD processes are highly sophisticated and extremely challenging. Applied spends millions of dollars on research and development each year to ensure that its Etch and CVD tools can perform the demanding, technical tasks of fabricating semiconductor chips. Because of the technical challenges, costs, and time involved in building Etch and CVD tools, very few companies in the world have been successful in building these machines.

Applied's History

22. Applied was founded in 1967 and has been the world's leading semiconductor equipment manufacturer since 1992. Applied has invested billions of dollars on research and development and has brought to market revolutionary products that have changed the semiconductor industry. For example, Applied developed the Precision 5000, a product that commercialized the innovative single-wafer, multi-chamber platform, and that was later inducted into the Smithsonian Institution's permanent collection of Information Age technology. Applied has intellectual property rights in the products and ideas developed through its research and development, including patent and trade secret rights.

The AMEC Employees

23. Yin was hired by Applied on March 18, 1991 and was employed at Applied until August 1, 2004. While at Applied, Yin held a variety of positions in its Etch division including Corporate Vice President, General Manager, and Chief Technology Officer.

24. Chen was hired by Applied on June 8, 1992 and worked at Applied until November 24,

5

LIBA/1842262.1

1   2003. While at Applied, Chen held a variety of positions including General Manager of the CVD

2   division.

3       25. Luo was hired by Applied on September 28, 1994 and worked at Applied until January

4   13, 2006. While at Applied, Luo held a number of positions including Deputy General Manager

5   of the CVD division.

6       26. Todaka was hired by Applied on April 7, 2000 and worked at Applied until January 4,

7   2003. While at Applied, Todaka worked as a CVD hardware engineer.

8       27. The AMEC Employees entered into Employee Agreements in consideration of their

9   employment by Applied and the compensation paid to them for their services. The terms of the

10  Employee Agreements are unambiguous and straightforward. The AMEC Employees agreed: (1)

11  not to disclose any Applied confidential information to anyone outside of Applied or to use such

12  information for the benefit of anyone other than Applied, either during or after their employment

13  with Applied; (2) that all inventions conceived, made or reduced to practice during the period of

14  their employment with Applied belonged to Applied; (3) that they would promptly disclose such

15  inventions to Applied; (4) that they would assign any such inventions to Applied; and (5) that any

16  inventions the AMEC Employees described in a patent application or disclosed to a third party

17  within one year after leaving Applied would be presumed to have been conceived or made during

18  their employment with Applied and would belong to Applied.

19      28. When the AMEC Employees terminated their employment with Applied, they signed

20  Termination Certifications in which they acknowledged their obligations, in compliance with the

21  Employee Agreements, to preserve as confidential and not to use or to disclose to a third party any

22  confidential information of Applied. They further certified that they had complied with and would

23  continue to comply with all the terms of the Employee Agreements.

24      29. At the time Yin left Applied, he filled out a Notice of Termination form explaining the

25  reason that he had decided to leave Applied. Yin wrote that he had chosen to retire because he

26  would soon be 60 years old and because he had been working for 36 years after obtaining his

27  college degree.

28      30. On information and belief, the Defendants had knowledge of the AMEC Employees'

6

Employee Agreements with Applied.

The Defendants Seeded Their Companies With Former Applied Employees

31. Instead of retiring, however, Yin, along with Chen, founded the Defendants, including AMEC Shanghai, a semiconductor tool manufacturing company based in China. Defendants have announced that the first types of tools they have designed, built and will sell are so-called "CVD" and "Etch" tools.

32. Chen founded the Defendants soon after leaving Applied. Chen has overall responsibility for the development and commercialization of the company's products and is also responsible for its intellectual property strategy.

33. Luo also joined the Defendants very shortly after leaving Applied. Luo has overall responsibility for the development and commercialization of the Defendants' CVD product line.

34. Todaka also joined the Defendants soon after leaving Applied. Todaka has worked as an engineer for Defendants and is a named inventor on two U.S. patent applications that have been assigned to AMEC Asia.

35. Yin, Chen, Luo, and Todaka are only a few of the many former employees of Applied who currently work for the Defendants. Indeed, Applied estimates that at least 30 of its former employees are now employed by the Defendants.

36. Defendants purposefully recruited additional Applied employees with knowledge of Applied's trade secrets to leave Applied and join the Defendants.

Defendants' Misappropriation of Applied Confidential Information and Trade Secrets

37. On August 5, 2005, one year and three days after Yin terminated his employment with Applied, Defendants filed Chinese Patent Application No. 200510028563.2 (the "Chinese '563 application"). AMEC Shanghai is the named applicant of the Chinese '563 application. The named inventors of the Chinese '563 application are Todaka and Chen.

38. Yin, Todaka, and Chen are named as inventors on U.S. Patent Application No. 11/441,291, filed May 24, 2006 (the "U.S. '291 application") and on Japanese Patent Application No. 2006-214829, filed July 8, 2006 (the "Japanese '829 application"), both of which claim priority to the Chinese '563 application. The U.S. '291 application is assigned to AMEC Asia and

AMEC Asia is the named applicant of the Japanese '829 application. The Chinese '563 application, the Japanese '829 application, and the U.S. '291 application are all entitled "Method and Apparatus for Processing Semiconductor Work Pieces" and are directed to the same subject matter.

39. The information disclosed in these patent applications includes Applied confidential information, including Applied trade secrets. The subject matter described in the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application was known to the very same engineers who later left Applied and joined Defendants. Those former Applied engineers include at least Messrs. Chen, Yin, Luo, and Todaka. Indeed, Applied has filed its own U.S. patent applications covering the technology described in the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application.

40. Defendants misappropriated Applied trade secrets by unlawfully obtaining Applied trade secrets and by using and disclosing to the public those trade secrets in the Chinese '563 application, the Japanese '829 application and the U.S. '291 application.

41. Under the express terms of the Employee Agreements, if any invention is disclosed by a former Applied employee to a third party "within one year after leaving the employ of Applied, it is to be presumed that the invention was conceived or made during the period of his employment by Applied, and the invention will belong to Applied." This presumption applies to the information disclosed in the Chinese '563, the Japanese '829, and the U.S. '291 applications because the information was included in a patent application filed one year and three days after Yin left Applied, and must have been disclosed by the AMEC Employees to Defendants, during the one year period. On information and belief, Defendants intentionally acted to induce the AMEC Employees, including Yin, to breach the Employee Agreements with Applied.

42. Defendants have also misappropriated other Applied confidential information and trade secrets. Some of these trade secrets are disclosed in Chinese Patent Application No. 200510028564.7 (the "Chinese '564 application"), which was filed on August 5, 2005. AMEC Shanghai is the named applicant of the Chinese '564 application. These trade secrets are also disclosed in U.S. Patent Application No. 11/350,022 (the "U.S. '022 application"), filed February

8, 2006, and Japanese Patent Application No. 2006213916 (the "Japanese '916 application"), filed August 4, 2006, both of which claim priority to the Chinese '564 application and disclose the same Applied confidential information as the Chinese '564 application. The U.S. '022 application is assigned to AMEC Asia and the Japanese '916 application names AMEC Asia as applicant. The Chinese '564, U.S. '022, and Japanese '916 applications describe the use of multi-frequency radio frequency (RF) sources and corresponding RF matching networks in a plasma chamber. This technology is applicable to both Etch tools and CVD tools. The information described in the Chinese '564, U.S. '022, and Japanese '916 applications consists of Applied confidential information and trade secrets that former Applied employees who are now employed by Defendants had access to and helped develop while at Applied.

43. Defendants misappropriated Applied trade secrets by unlawfully obtaining Applied trade secrets and by using and disclosing to the public those trade secrets in the Chinese '564 application, the Japanese '916 application and the U.S. '022 application.

44. On information and belief, Defendants have also misappropriated other Applied trade secrets by using and disclosing technical and operational trade secrets relating to Applied's Etch and CVD technology.

**COUNT I**

**(Misappropriation of Trade Secrets against all Defendants)**

45. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-44.

46. Defendants were at all relevant times, and are now in possession of substantial amounts of Applied's technical and operational trade secrets relating to Applied's Etch and CVD technology. This information includes but is not limited to the technology described in the Chinese '563 and '564 applications, the U.S. '291 and '022 applications, and the Japanese '829 and '916 applications.

47. Applied's proprietary technology and business trade secrets derive independent economic value from not being generally known to the public or to other persons such as Defendants who can obtain value from their disclosure. This secret information provides Applied with competitive advantages.

48. Applied has made extensive efforts to protect the confidentiality of its trade secrets. Applied derived independent economic value from the technical and operational trade secrets relating to Applied's Etch and CVD technology that are now in the Defendants' possession because these trade secrets were not generally known to the public or other persons who could obtain economic value from their disclosure or use.

49. Defendants misappropriated Applied trade secrets. Defendants used the misappropriated information to benefit themselves and to undermine Applied with knowledge that the information had been acquired illegally, such as by the induced breach of the Employee Agreements.

50. Defendants have wrongfully acquired, used and been unjustly enriched by the Applied trade secrets by, among other things, incorporating them in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application.

51. As a result of Defendants' misappropriation of Applied's trade secrets, Applied is entitled to damages for the actual loss suffered by Applied and for any unjust enrichment the Defendants have enjoyed by such misappropriation.

52. As a result of Defendants' misappropriation of Applied's trade secrets, Applied has no adequate remedy at law, particularly because Defendants' misuse of Applied trade secrets has allowed Defendants to enter the semiconductor equipment manufacturing industry in an unrealistically short amount of time. Applied is entitled to an injunction to prevent Defendants from disclosing or using Applied trade secrets and compelling the Defendants to return any and all materials disclosing or derived from the misappropriated information.

53. Defendants' misappropriation of Applied trade secrets was willful, entitling Applied to an award of exemplary damages equal to twice its actual damages caused by the theft as well as Applied's reasonable attorneys' fees.

## COUNT II

### (Intentional Interference with Contractual Relationships against all Defendants)

54. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-53.

10

LIBA/1842262.1

55. Valid and enforceable Employee Agreements exist between Applied and the AMEC Employees.

56. Defendants have knowledge of the AMEC Employees' Employee Agreements with Applied.

57. Defendants intentionally sought and did obtain confidential Applied information from the AMEC Employees, thereby improperly inducing the AMEC Employees to breach their Employee Agreements. The AMEC Employees did breach the Employee Agreements, as set forth above.

58. Defendants also induced the AMEC Employees to breach the Employee Agreements by directing the AMEC Employees to assign the Chinese '563 and '564 applications, the U.S. '291 and '022 applications, and the Japanese '829 and '916 applications to AMEC Shanghai and AMEC Asia. The AMEC Employees did breach the Employee Agreements as set forth above.

59. As a result of Defendants' intentional interference with the AMEC Employees' contractual relationships with Applied and inducement of the AMEC Employees to breach the Employee Agreements, Applied has suffered damages in an amount to be determined at trial.

### COUNT III

### (Conversion against all Defendants)

60. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-59.

61. Under the terms of the Employee Agreements, the inventions described in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application belong to Applied.

62. Applied has a contractual right to those inventions, including a property right in all such inventions disclosed in any patent applications or patents.

63. Defendants have wrongfully taken for themselves inventions, and resulting patent applications and/or patents, including, but not limited to, the inventions set forth in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application, the U.S. '022 application, and the Japanese '916 application.

64. Defendants have been unjustly enriched by the Applied inventions it has wrongfully

LIBA/1842262.1

converted.

65. As a result of Defendants' conversion of Applied's property, Applied has suffered damages in an amount to be determined at trial.

## COUNT IV

### (Unfair Competition Under Cal. Bus. & Prof. Code § 17200, et seq. against all Defendants)

66. Applied re-alleges and incorporates by reference the allegations in paragraphs 1-65.

67. As alleged above, Defendants have wrongfully misappropriated Applied's trade secrets, confidential information, and proprietary technology.

68. Defendants have misused Applied's trade secrets, confidential information, and proprietary technology to unfairly compete with Applied in the marketplace for Etch and CVD tools and have engaged in unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code Section 17200, et seq.

69. Defendants' conduct has damaged Applied's businesses, imposed substantial expenses on Applied to counteract that conduct, and injured Applied in other ways.

70. Defendants have been unjustly enriched through their acts of unfair competition and unlawful business practices.

71. As a result of Defendants unlawful, unfair, and fraudulent business practices, Applied has suffered damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Applied respectfully requests the following relief:

1. Damages resulting from Defendants' intentional interference with contractual relationships, conversion, misappropriation of trade secrets, and unfair competition;

2. Exemplary damages resulting from Defendants' willful and malicious conduct;

3. A preliminary and permanent injunction enjoining Defendants from using Applied's confidential information, inventions, and trade secrets, and from otherwise unfairly competing with Applied, and any and all equitable relief necessary to enforce Applied's rights;

4. Judgment ordering Defendants to assign ownership rights in the Chinese '563 application, the U.S. '291 application, the Japanese '829 application, the Chinese '564 application,

the U.S. '022 application, and the Japanese '916 application to Applied;

     5.  Interest, costs and attorneys' fees as allowed by law; and

     6.  Such other and further relief as the Court deems just and proper.

1
2    Dated: October 31, 2007

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Applied Materials, Inc.

By its attorneys,

Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander
Douglas C. Doskocil
Michael G. Strapp
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
ddoskocil@goodwinprocter.com
mstrapp@goodwinprocter.com

Greg H. Gardella
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696
ggardella@fr.com

14