1   Thomas F. Fitzpatrick
    tfitzpatrick@goodwinprocter.com
2   GOODWIN PROCTER LLP
    181 Lytton Avenue
3   Palo Alto, CA 94301
    Tel.: 650-752-3144
4   Fax: 650-853-1038

5   John C. Englander (*pro hac vice*)
    jenglander@goodwinprocter.com
6   Douglas C. Doskocil (*pro hac vice*)
    ddoskocil@goodwinprocter.com
7   Michael G. Strapp (*pro hac vice*)
    mstrapp@goodwinprocter.com
8   GOODWIN PROCTER LLP
    53 State Street
9   Boston, Massachusetts 02109
    Tel.: 617.570.1000
10  Fax: 617.523.1231

11  Greg H. Gardella
    gardella@fr.com
12  FISH & RICHARDSON P.C.
    60 South Sixth Street
13  3300 Dain Rauscher Plaza
    Minneapolis, MN 55402
14  Tel.: 612-335-5070
    Fax: 612-288-9696
15
    Attorneys for Applied Materials, Inc.
16

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                    SAN JOSE DIVISION

20  APPLIED MATERIALS, INC.,                Case No.  CV 07-05248 JW

21              Plaintiff,

22         v.                               **PLAINTIFF'S REPLY IN SUPPORT OF
                                            ITS MOTION FOR EXPEDITED
                                            DISCOVERY, INSPECTION AND
23  ADVANCED MICRO-FABRICATION             PRESERVATION OF EVIDENCE**
    EQUIPMENT (SHANGHAI) CO., LTD.,
24  ADVANCED MICRO-FABRICATION             Date:      November 20, 2007
    EQUIPMENT INC., ASIA, ADVANCED         Time:      10:00 a.m.
25  MICRO-FABRICATION EQUIPMENT INC.       Ctrm:      5

26              Defendants.

27

28

1

**TABLE OF CONTENTS**

2

Page

3

4    INTRODUCTION                                                                   1

5    ARGUMENT                                                                       3

6    I.      PROCEDURAL ISSUES RAISED BY DEFENDANTS HAVE BEEN
             RESOLVED                                                               3
7

8    II.     DEFENDANTS' ARGUMENTS ON THE MERITS ARE
             COUNTERFACTUAL AND UNSUPPORTED                                         5

9            A.    Applied's Motion Is Supported By Publicly Available Evidence      5

10           B.    Applied Has An Urgent Need For Discovery                          6

11           C.    A Preservation Order Is Justified And Necessary                   7

12           D.    The Requested Discovery Is Appropriately Targeted                 8

13           E.    Defendants Invocation Of Public Policy Is A Red Herring          10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**FEDERAL CASES**

4

*Adobe Systems, Inc. v. South Sun Products, Inc.*,
5      187 F.R.D. 636 (S.D. Cal. 1999) .......................................................................7

6

*Computer Econ., Inc. v. Gartner Group, Inc.*,
     50 F. Supp. 2d 980 (S.D. Cal. 1999) ..............................................................9
7

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*,
8      Civ. No. S-06-0533 GEB GGH, 2007 WL 273949 (E.D. Cal. Jan. 29, 2007).........9

9

*Hanna v. Plumer*,
     380 U.S. 460 (1965) .........................................................................................9
10

11

*Milliken v. Meyer*,
     311 U.S. 457 (1940) ......................................................................................4-5
12

*Posdata Co. Ltd. v. Kim*,
13      No. C-07-02504 RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007) ...................7

14

15

**FEDERAL STATUTES**

16

28 U.S.C. § 1332 ........................................................................................................4

17

18

**STATE STATUTES**

19

California Code of Civil Procedure § 416.10 ...........................................................4
20

California Code of Civil Procedure § 2019.210 .......................................................9
21

22

**RULES**

23

24 Fed. R. Civ. P. 4(e)(1) and 4(h)(1) ..........................................................................4

25 Fed. R. Civ. P. 26 ......................................................................................................9

26 Fed. R. Civ. P.  8 .......................................................................................................9

27

28

1

# TABLE OF AUTHORITIES (con't)

2

<u>Page</u>

3

**TREATISES**

4

Wright & Miller, *Federal Practice & Procedure*, § 1083 (3d ed. 2007) .......................................4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

In its motion seeking expedited discovery, Applied made the following points:  (1) Applied makes highly sophisticated, multi-million dollar machines, and Applied possesses numerous trade secrets regarding the design, manufacture and use of these complex machines; (2) Defendants have been formed and are presently populated by numerous former Applied employees who have detailed knowledge of Applied's trade secrets for Etch and CVD tools, and Defendants have brought to market Etch and CVD tools in an unrealistically short time; (3) **in their own publicly disclosed patent applications, Defendants have used and disclosed important Applied trade secrets, claiming them as their own**; (4) these applications demonstrate that Defendants have misused Applied trade secrets, but the vast bulk of the evidence of Defendants' misappropriation and misuse of Applied's trade secrets is in the Defendants' possession in China; and (5) the above facts strongly indicate that Defendants have misused and will continue to misuse other Applied trade secrets, as yet unknown due to the secrecy of Defendants' operations.  Applied accordingly seeks expedited discovery because of the irreparable harm it is suffering, and has an urgent need to determine the extent of Defendants' misconduct and to seek immediate judicial relief to prevent any additional disclosure.

To be clear, the relief Applied currently seeks is not exceptional:  (1) Applied seeks to advance the production of key documents.[1]  Applied proposes that Defendants produce documents 30 days from the November 20 hearing, rather than the 4-6 months it might otherwise take.  Because Defendants have had Applied's requests in hand since October 15, 2007, this timetable is reasonable, and Applied is prepared to narrow its requests to facilitate expedition, as explained below.  (2) Applied also seeks a mechanism for the preservation of documents, and particularly electronic documents.  As the case law shows, such orders are common in litigation today.  Whether inadvertently or otherwise, electronic documents can easily be deleted, written over, or destroyed.  A separate copy of Defendants' documents should be made and maintained – Applied would be comfortable with Morrison and Foerster arranging for and maintaining such a document

---

[1] Applied also seeks answers to a limited set of interrogatories.

set, at Applied's expense.[2]

The various arguments Defendants raise in their Opposition do not refute Applied's position.  Defendants' two procedural arguments -- the alleged absence of subject matter jurisdiction and improper service -- have been addressed and resolved through Applied's Amended Complaint.  In its Amended Complaint, Applied dropped the allegedly non-diverse individual defendants, thereby creating a complaint that unassailably establishes this Court's diversity jurisdiction.  Applied also added a new corporate defendant, Advanced Micro-Fabrication Equipment Inc. ("AMEC Inc."), and then served that new defendant in the manner directed by opposing counsel.  Applied believes that it has properly served the other two corporate Defendants as well.

Defendants' other arguments for resisting expedited discovery fare no better than its procedural arguments.  First, Defendants argue that Applied's motion is not supported by admissible evidence.  Def. Opp. at 1.  Leaving aside for the moment whether a party seeking expedited discovery must submit evidence to support its motion, Applied's motion is, in fact, supported by publicly available patent applications, *filed by Defendants themselves*, that improperly disclose Applied trade secrets.  Defendants cannot dispute their awareness of their public patent applications and of the Applied trade secrets disclosed therein.  But, to put to rest any doubt that this motion is based on sufficient "evidence," Applied submits affidavits from two of its engineers that (1) describe the important Applied trade secrets disclosed in Defendants' published patent applications, and (2) identify former Applied employees who knew these secrets and now work for Defendants.

Second, Defendants next claim that there is no urgency to Applied's motion because Applied "sat in silence for years before filing suit."  Def. Opp. at 6.  But this argument ignores the fact that Defendants have carefully guarded the information regarding their products and have yet to ship any products outside of China, making it very difficult for Applied to learn details about Defendants' misappropriation of Applied trade secrets.  The real question is whether Applied

---

[2] Any such preservation order would, of course, apply to Applied's documents as well.

2

acted promptly upon discovery of the misuse of its trade secrets by former employees that it trusted with highly confidential information.  It is indisputable that the first of Defendants' patent applications that disclose Applied trade secrets were not published until earlier this year.  While these patent applications are now publicly available, Defendants discount the time needed by Applied to identify, review and analyze these patent applications and their legal implications.  Suffice it to say that Defendants did not provide Applied with notice of these patent applications, once published, nor did they suggest that Applied screen the patent applications to learn whether they contain Applied trade secrets.  Defendants' suggestion that Applied has not moved fast enough, under the circumstances, is hypocrisy.

Finally, Defendants contend that Applied's discovery requests are overbroad and seek "every document in the company."  Def. Opp. at 7.  That assertion is overblown and contrary to fact.  Nevertheless, Applied is willing to be even more specific in order to narrow the scope of the production it seeks on an expedited basis.  Applied defines below, and in a revised proposed order, the narrow categories of documents which it seeks produced on an expedited basis.  These include, for example Defendants' other patent applications that are on file but not yet laid open to the public, and Defendants' design documents and specifications for their Etch and CVD machines.

In sum, none of the arguments raised by Defendants in their Opposition can change the essential facts that drive Applied's motion:  Defendants have misappropriated, misused, and disclosed Applied trade secrets; Defendants will likely disclose additional Applied trade secrets; and, Applied urgently needs discovery to identify and to obtain appropriate judicial relief to protect itself from disclosure of any additional Applied trade secrets and confidential information that Defendants have wrongfully taken from Applied.  The relief Applied seeks by this Motion is reasonable, and ought to be allowed.

## ARGUMENT

### I.    PROCEDURAL ISSUES RAISED BY DEFENDANTS HAVE BEEN RESOLVED

Much of Defendants' Opposition is focused on two procedural arguments that have been addressed and resolved.  First, Defendants contend that the Court lacks subject matter jurisdiction

3

over this case.  Second, Defendants allege that they have not been properly served.  Applied's Amended Complaint, filed on November 1, 2007, resolved both of these procedural issues.  In the Amended Complaint, Applied dropped each of the allegedly non-diverse defendants, including Messrs. Yin, Chen and Luo.  Even according to Defendants, all remaining Defendants, including the newly added corporate defendant, AMEC Inc., are citizens of a foreign state.  Accordingly, this case, by Defendants' own admission, is a civil action between "citizens of a State and citizens or subjects of a foreign state," and this Court has diversity jurisdiction under 28 U.S.C. § 1332 (a)(2).

Applied has also addressed the service issues raised by Defendants in their Opposition by personally serving the Amended Complaint on Defendants' officers Matt Ruby, Vice President and General Counsel, and Frank Masciocchi, Vice President, Global Sales.[3]  Because Defendants have acknowledged that Ruby is an officer of Defendant AMEC Inc., personal service of the Amended Complaint and summons on Ruby constitutes effective service, by Defendants' own admission, on AMEC Inc.  *See* Def. Opp. at p. 3; Fed. R. Civ. P. 4(e)(1) and 4(h)(1); Cal. C. Civ. P. § 416.10.  Applied believes that Masciocchi and/or Ruby are also officers, managers, and/or people authorized to accept service of process on behalf of the other two Defendants, Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC Shanghai") and Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC Asia"), and thus, personal service of the Amended Complaint and summons on Ruby and Masciocchi also constitutes effective service on Defendants AMEC Shanghai and AMEC Asia.  *See id.*[4]

---

[3] Applied served the Amended Complaint and summons on Marc D. Peters, counsel for Defendants, after receiving a letter from Mr. Peters' partner, Harold J. McElhinny, who stated that Mr. Peters would accept papers on behalf of Mr. Ruby and Mr. Masciocchi, and that delivering the papers to Mr. Peters would "have the same legal effect as having delivered them personally to either Mr. Ruby or Mr. Masciocchi."  *See* October 18, 2007 Letter from Mr. McElhinny to Mr. Fitzpatrick (attached as Exhibit A to the Declaration of Thomas F. Fitzpatrick).

[4] Thus, defendants agree that at least AMEC Inc. has been served, which should be sufficient for purposes of this motion for expedited discovery.  As noted, Applied believes it has already served the remaining defendants as well, but in any event, "the modern conception of service of process [is] primarily a notice-giving device," and it is incontrovertible that all three defendants have received actual notice of this case via personal service on Ruby and Masciocchi and through service by mail, email and fax on each defendant.  *See* 4A Wright & Miller, *Federal Practice & Procedure*, § 1083 (3d ed. 2007); *Milliken v. Meyer*, 311 U.S. 457 (1940); Applied's October 18, 2007 Notice of Compliance With Court Order (Docket No. 11).

## II.    DEFENDANTS' ARGUMENTS ON THE MERITS ARE COUNTERFACTUAL AND UNSUPPORTED

### A.    Applied's Motion Is Supported By Publicly Available Evidence

Defendants' "evidentiary" objection to Applied's motion seems to be that Applied must put forward affidavits to support its claims before this Court can expedite discovery.  Defendants cite no cases to support their position, but in any event the objection is easily remedied.  First, Applied's claim is hardly "unsupported" -- it is based upon Defendants' very own published patent applications.  These patent applications, including U.S. Patent Application Nos. 11/441,291, 11/361,950, and No. 11/350,022, disclose and describe confidential Applied information including closely guarded Applied trade secrets.  Defendants (who filed the applications) are certainly aware of their specific subject matter and of the confidential Applied technology disclosed therein, particularly since many of the named inventors on these patent applications are ex-Applied employees who now work for Defendants.

Second, to the extent that Defendants want Applied to verify the allegations of its Complaint and Motion, Applied has done so with this Reply.  Applied hereby submits affidavits from two of its engineers who were intimately involved in researching and developing the technology improperly disclosed in Defendants' published patent applications.  These engineers explain how Defendants' patent applications reveal Applied trade secrets, and also describe how certain ex-Applied employees, who are now employed by Defendants, personally knew about the trade secrets and understood the confidential nature of the information, when they worked at Applied.  *See* Shannon and Merry Declarations.  For example, Steve Shannon, a Member of Technical Staff in the Etch Engineering Technology Division at Applied, states in his declaration that he has reviewed Defendants' '022 patent application and that the '022 patent application discloses trade secrets belonging to Applied.  *See* Shannon Declaration.  Mr. Shannon also states that Jin Yuan Chen, an ex-Applied employee now employed by Defendants, was familiar with these trade secrets while at Applied.  *See Id.*

Defendants apparently anticipated the ease with which this objection could be addressed, and so they urge the Court not to allow Applied to submit such "evidence."  Def. Opp. at 5 n.9.

But that is just procedural gamesmanship.  Applied's affidavits merely verify its Complaint and Motion -- they add no new arguments.  Moreover, the facts adduced in the affidavits are all known to Defendants, each of whom is led by former Applied employees, and in any event the schedule contemplates that Defendants may file a sur-reply.  There is no reason the Affidavits should not be allowed at this stage to aid the court in properly resolving the Motion.

### B.    Applied Has An Urgent Need For Discovery

Applied needs expedited discovery to determine the nature and scope of Defendants' wrongs, the additional trade secrets Defendants have misappropriated, and to put a stop to any further public disclosure of Applied's trade secrets.  Applied has invested many years, and millions of dollars, to develop its Etch and CVD tools, to test them, to make them work, and to innovate to meet new process demands.  Many important trade secrets result from this research and development.  These secrets are carefully protected by Applied, and any competitor that gains access to them realizes an unfair, and irreparable advantage.  Here, Applied's investment has been taken by people who formerly worked at Applied and who now seek to take improper advantage of confidential information that they learned at Applied.  Put simply, the evidence already shows that AMEC has taken Applied secrets, and Applied urgently needs to determine the scope of the harm that has already occurred and to seek judicial relief from any additional irreparable harm it faces in the future.

Notwithstanding the plain need for urgency, Defendants oppose Applied's motion on the grounds that "Applied sat in silence for years before filing suit."  Def. Opp. at p. 6.  Defendants' argument ignores that they have yet to ship any products outside of China and have carefully guarded the information regarding the technical specifications of their products.  Indeed, information about Defendants' products was not publicly available until earlier this year when Defendants' patent applications published.  Under the circumstances, Defendants' claim is nothing more than pretense.  Applied did not file this suit "at a time of its choosing," rather, it filed suit as soon as it had concluded its pre-filing investigation and determined that Defendants had misappropriated Applied trade secrets.

## C.    A Preservation Order Is Justified And Necessary

Defendants do not dispute that it is commonplace for courts to order the preservation of evidence prior to the beginning of the discovery period and even before a case management conference. *See Posdata Co. Ltd. v. Kim*, No. C-07-02504 RMW, 2007 WL 1848661, at *9 (N.D. Cal. June 27, 2007) (granting plaintiff's request for expedited discovery and a preservation order; directing parties to "preserve all evidence potentially related to a claim or defense"). Instead, Defendants take issue with the need for a preservation order because of their claim that there is no danger that evidence will be lost in the absence of a preservation order. Def. Opp. at p. 7. The only case Defendants cite to support their argument – *Adobe Systems, Inc. v. South Sun Products, Inc.*, 187 F.R.D. 636 (S.D. Cal. 1999) – is inapposite, however. In *Adobe*, plaintiffs sought not a preservation order but rather, in an *ex parte* filing, permission to search defendant's premises for evidence. *Id.* at 638. The Court quite understandably denied this remarkable *ex parte* request for injunctive relief, reasoning that such extraordinary relief could not be granted without evidence that defendant had some history of destroying evidence or violating court orders. *Id.* at 640. Here, on the other hand, Applied seeks only a preservation order of all relevant documents (at Applied's expense), a much less burdensome and intrusive remedy. Defendants cite no case law holding that a particularized showing of likely destruction is required, and such a showing would ordinarily be difficult. In any event, Applied notes that the available evidence indicates that a preservation order is necessary here. Defendants have already **published** some Applied trade secrets, and claimed them as their own. The Defendants' secretive behavior, their extensive access to Applied trade secrets, and the speed with which Defendants have built this highly complex machinery, all suggest that Defendants have built their business on Applied's trade secrets and confidential information. Applied should not be required to bear the risk that key evidence in this case may become unavailable; a means for preservation is appropriate and necessary.

The steps that Defendants state they have taken to preserve evidence -- distributing a draft notice to preserve documents only to the **four individual defendants** named in the original complaint -- are insufficient to provide Applied with any reasonable assurance that the information that Applied could use to prove its trade secrets case will be available during discovery.

7

Defendants offer no reason to believe that any, let alone all, of the critical documents regarding Applied's claims remain in the possession of the four employees who have apparently received the draft notice to preserve documents.  Applied seeks an order from this Court, or an undertaking from Morrison and Foerster, ensuring that all potentially relevant documents of the **Corporate Defendants** will be copied and separately preserved.  There is no indication to date that Defendants have made any such effort on their own.  In light of the fact that over 30 ex-Applied employees are currently employed by Defendants, a preservation order must be directed to the AMEC entities to ensure that the necessary relevant evidence will be available to the parties and the court.

## D.    The Requested Discovery Is Appropriately Targeted

Defendants next claim that Applied's discovery requests are overbroad and seek "every document in the company."  Def. Opp. at 7.  In fact, Applied's requests are tailored to only seek information that is directly tied to Defendants' misuse of Applied's technology.  However, for purposes of this expedited discovery Applied believes it can narrow its requests even further, to the following:

        1.    All of Defendants' patent applications which have not yet been made public.  *See* Document Request No. 1 (Docket No. 4-2 at 5).

        2.    All documents regarding the research and development of any matters disclosed in Defendants' following patent applications (*i.e.,* the patent applications which contain Applied trade secrets):  Chinese Patent Application No. 200510028563.2 filed on August 5, 2005; U.S. Patent Application No. 11/441,291, filed May 24, 2006; Japanese Patent Application No. 2006-214829, filed August 7, 2006; Chinese Patent Application No. 200510028564.7, filed on August 5, 2005; U.S. Patent Application No. 11/350,022, filed February 8, 2006; and Japanese Patent Application No. 2006213916, filed August 4, 2006. *Id.*

        3.    All documents showing the design and/or specifications for any of Defendants' CVD or Etch machines previously or currently being evaluated or offered for sale.  *Id.* at Request Nos. 11-13.

4.     All operating manuals for Defendants' CVD or Etch machines, and all documents regarding processes to be run on these AMEC machines, including any best known methods for such processes.  *Id.* at Request No. 10.

5.     All documents that Gerald Yin, Aihua Chen, Lee Luo and/or Ryoji Todaka provided to Defendants regarding Applied, Applied machines, Applied processes, and/or Applied trade secrets, and all Applied documents in Defendants' possession.  *Id.* at Request Nos. 2, 3 and 6.

These are the documents Applied seeks on an expedited basis, and they can be identified and produced in the requested 30 day period.  They are documents to which Applied is entitled, and they are critical for Applied to ascertain the extent to which Defendants have misappropriated and misused Applied trade secrets and confidential information in their products.

Defendants also contend that Applied has not complied with a California state court procedural rule governing discovery in trade secrets cases, California Code of Civil Procedure § 2019.210, which imposes a special pleading requirement before discovery can be taken in such cases.  Section 2019.210 cannot have the force of law in this federal action, however, as it is inconsistent with the Federal Rules of Civil Procedure, which permit a party upon filing a complaint that is sufficient under Rule 8 to obtain discovery that is "reasonably calculated to lead to the discovery of admissible evidence."[5]  Defendants ignore, moreover, that Applied's claims are broader than trade secret misappropriation, including intentional interference with contractual relations and unfair competition.  First Am. Complaint at ¶¶ 54-59 and 66-71.  Section 2019.210 is inapplicable to those claims.  Finally, and in any event, this Court likely need not decide whether § 2019.210 applies here, as Applied will likely make an appropriate trade secret disclosure once a mutually agreeable protective order has been negotiated.  Such a protective order has already been

---

[5] Applied acknowledges that there is mixed authority on the applicability of § 2019.210 in federal diversity actions.  *Compare Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, Civ. No. S-06-0533 GEB GGH, 2007 WL 273949 at *3 (E.D. Cal. Jan. 29, 2007) *with Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).  Nevertheless, Applied submits that the decision in *Funcat* represents the better view.  The court in *Funcat* reasoned that the application of § 2019.210 would prevent the application of Fed. R. Civ. P. 26, an impermissible result under *Hanna v. Plumer*, 380 U.S. 460, 470 (1965), which held that the operation of a state law cannot prevent the operation of one of the Federal Rules of Civil Procedure.

9

drafted and provided to Defendants.

**E.**    **Defendants Invocation Of Public Policy Is A Red Herring**

Defendants' final argument in Opposition refers the Court to the supposed "international ramifications" of this suit.  That argument is a red herring.  This case is about a California company, its trade secrets, and its former employees who took those trade secrets from California and disclosed them to Defendants.  Defendants should not be permitted to avoid the consequences of their actions in the name of developing "Chinese industry and international competition," Def. Opp. at 9, and should not be allowed to use the United States Patent and Trademark Office to claim exclusive ownership of those trade secrets.  Rather, this Court should permit Applied to take expedited discovery so that it can prevent additional irreparable harm.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: November 9, 2007

Respectfully submitted,

Applied Materials, Inc.

By its attorneys,

/s/ Thomas F. Fitzpatrick
Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.:  650-752-3144
Fax:  650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.:  612-335-5070
Fax:  612-288-9696

11