1  HAROLD J. MCELHINNY (CA SBN 66781)
   HMcElhinny@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California 94105-2482
   Telephone: 415.268.7000
4  Facsimile: 415.268.7522

5  MARC DAVID PETERS (CA SBN 211725)
   MDPeters@mofo.com
6  DAVID M. ALBAN (CA SBN 238955)
   DAlban@mofo.com
7  MORRISON & FOERSTER LLP
   755 Page Mill Road
8  Palo Alto, CA 94304-1018
   Telephone: 650-813-5600
9  Facsimile: 650-494-0792

10 Attorneys for Defendant
   ADVANCED MICRO-FABRICATION EQUIPMENT
11 (SHANGHAI) CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT, INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT INC.,<br><br>Defendants. | Case No.   C 07-05248 JW (PVT)<br><br>**AMEC-SHANGHAI'S SUR-REPLY TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY**<br><br>Date: November 20, 2007<br>Time: 10:00 a.m.<br>Courtroom: 5<br>The Honorable Patricia Trumbull |

Applied Materials ("Applied") has confused two distinct issues: a party's ability to take discovery generally, and a party's ability to take discovery on an expedited basis. Applied has failed to show that a departure from the discovery schedule established by the Federal Rules of Civil Procedure is appropriate. Moreover, Applied has failed to serve Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC-Shanghai") to bring it before the Court. This is a critical issue because Applied has asked to send its agents to AMEC-Shanghai's facility in China to copy and carry away electronic information they find there. Personal jurisdiction and service of process go to the heart of due process, and cannot simply be glossed over. The Court should deny Applied's motion for at least four reasons: 1) Applied has not served the party from whom it seeks expedited discovery; 2) Applied has not identified its trade secrets in advance; 3) Applied has not established that it faces imminent harm; and 4) an attempt to rush into American-style discovery in China may run afoul of Chinese law and lead to serious repercussions for all those involved.

## I. AMEC-SHANGHAI HAS NOT BEEN PROPERLY SERVED

AMEC-Shanghai and Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC-Asia") have not been properly served. Neither Matthew Ruby nor Frank Masciochhi is an officer, managing agent, or person authorized to accept service on behalf of AMEC-Shanghai or AMEC-Asia. (Declaration Of Matt Ruby In Support Of Opposition To Plaintiff's Motion To Expedite Discovery And Preserve Evidence (Dkt # 14), ¶¶ 1-2; Declaration Of Frank Masciochhi In Support Of Sur-Reply To Plaintiff's Motion To Expedite Discovery And Preserve Evidence, ¶¶ 1-3.) Applied's "belief" that service on these gentlemen constitutes service of process (Plf.'s Reply at 4) is not based on any fact proven by declaration or otherwise. Federal Rule of Civil Procedure 4 is not some mere technicality—notice alone does not satisfy the treaty obligations of the United States, which have Constitutional force. *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 699 (1988). AMEC-Shanghai is a Chinese company with its facilities in China. Service of process must satisfy the Hague Convention, which requires service to be effected through the Chinese Central Authority. *See* http://travel.state.gov/law/info/judicial/judicial_694.html. Because AMEC-Shanghai and AMEC-Asia have not been properly served. *See Jacobs v. Scribner*, No.

1:06-cv-01280, 2007 WL 1994235, *1 (E.D. Cal. July 5, 2007) (denying motion to preserve evidence because the court did not have jurisdiction to issue orders directed at defendant).

## II.   APPLIED CANNOT TAKE DISCOVERY BEFORE IDENTIFYING ITS TRADE SECRETS

Applied has also refused to comply with California Code of Civil Procedure § 2019.210, which provides that a party alleging misappropriation of a trade secret must "identify the trade secret with reasonable particularity" before commencing discovery on the trade secret. Cal. Civ. Proc. § 2019.210. The consensus in the Northern District of California is that the provision is applicable in federal court, or at a minimum, an appropriate guide. *See Neothermia Corp. v. Rubicor Med., Inc.,* 345 F. Supp. 2d 1042, 1043-44 (N.D. Cal. 2004); *Pixion, Inc. v. PlaceWare, Inc.,* 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005); *Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022, 2006 WL 3371576, *3 n.4 (N.D. Cal. Nov. 21, 2006); *Excelligence Learning Corp. v. Oriental Trading Co., Inc.,* No. 5:03-CV-4947, 2004 WL 2452834, *3 n.3 (N.D. Cal. June 14, 2004).

Applied's behavior with respect to its supposed trade secrets is troubling. On October 16, in its opening brief, Applied wrote that, "in an effort to avoid a dispute over [the applicability of § 2019.210], Applied discloses a list of its trade secrets in the document attached hereto as Exhibit C." (Plf.'s Motion at 7 n.1.) Of course, Exhibit C was not a trade secret list, but a single page that said "TO BE ADDED UPON ENTRY OF PROTECTIVE ORDER." Strangely, when Applied filed reply papers under seal, it did not file its trade secret list. Instead, Applied stated that it will "likely" make an "appropriate trade secret disclosure" in the future.[1] (Plf.'s Reply at 9.) The ineluctable conclusion is that there never was a trade secret list.

Applied's behavior shows that it may be less concerned with protecting its trade secrets than with "using the discovery process as a means to obtain [AMEC-Shanghai]'s trade secrets." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 833-34 (Cal. Ct.

---

[1] Applied also asserts that § 2019.210 is inapplicable to its other three claims, but this is incorrect. *See Neothermia,* 345 F. Supp. 2d at 1043-44 (holding that § 2019.210 is not claim specific and applies to any *action* in which misappropriation of a trade secret is alleged); *Advanced Modular Sputtering*, 132 Cal. App. 4th at 834-35 (same).

App. 2005) (discussing the purpose of § 2019.210). The declarations of Applied employees Merry and Shannon consist of nothing more than pointing to disclosures in AMEC-Asia's published patent applications and asserting "that's Applied's."[2] The California Legislature enacted § 2019.210 precisely to prevent this form of catalogue shopping. *Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 984-85 & n.6 (S.D. Cal. 1999).

### III.  APPLIED HAS NOT SHOWN ANY RISK OF IMMINENT HARM

There is no call for urgency in this case. There are no facts supported by declaration to support Applied's contention that "Defendants will likely disclose additional Applied trade secrets." (Plf.'s Reply at 3.) Applied is not entitled to any presumptions on this point—there is no presumption of irreparable harm in trade secret cases. *See, e.g.*, *Gable-Leigh, Inc. v. North American Miss,* No. CV 01-01019, 2001 WL 521695, *19 (C.D. Cal. April 13, 2001); *Symantec Corp. v. McAfee Assoc., Inc.,* No. C-97-20367, 1998 WL 740798, *2 n.6 (N.D. Cal. June 9, 1998); *see also Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92-93 (3rd Cir. 1992).

Despite the Merry and Shannon declarations submitted in reply, there is still no evidence to support Applied's critical allegations. Applied's declarations do not establish that anything is *about* to happen—they point only to two families of patent applications that were first filed in 2005. Moreover, the supposedly secret technical information has been public for years. Using three RF sources in a plasma chamber has been public since at least June 2002. Declaration Of Marc Peters In Support Of Sur-Reply To Plaintiff's Motion To Expedite Discovery And Preserve Evidence ("Peters Reply Decl."), ¶ 2 & Ex. A. Applied published in June 2005 the idea that L-, π-, and T-networks can be used in a matching network for a multi-frequency plasma chamber. *Id.*, ¶ 3 & Ex. B. Applied also published the concept of using rotating heaters in CVD tools in 2002. *Id.*, ¶ 4 & Ex. C. The argument that Applied has had protectible product improvement trade secrets since 2003 that it has neither sought to patent nor used in a product is inherently not credible.

---

[2] The declarations are curiously devoid of corroborating information. There are no documents, dated or otherwise, showing that Applied had developed any technology AMEC-Shanghai is accused of misappropriating.

SUR-REPLY TO PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY AND PRESERVE EVIDENCE       3
CASE NO. C07 05248 PVT
sf-2421443

The allegation that former Applied employees now work at AMEC-Shanghai is of no consequence. Applied laid off thousands of people in the relevant timeframe (*Id.*, Exs. D-F) and underwent a "major shakeup" of its management in 2003, the "biggest surprise" of which was the ouster of the company's "technology guru." (*Id.*, Ex. G.) That people went to other opportunities after leaving Applied, sometimes involuntarily, is hardly unusual.

Applied's discovery requests remain overbroad. Applied demands production of "[a]ll of Defendants' patent applications which have not yet been made public" without regard to whether there is any nexus between them and this lawsuit. This alone is grounds to deny this motion. *See, e.g., Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005).

Similarly, Applied has shown no need for a preservation order. The defendants are well-aware of their "duty to preserve evidence which [they] know[] or reasonably should know is relevant to the action." *Jacobs v. SC Ribard,* No: 1:06-CV-01280, 2007 WL 1994235, *1 (C.D. Cal. July 5, 2007), 2007 WL 1994235, *1. Mr. Ruby, general counsel of AMEC, Inc., is a member of the State Bar of California, and understands his obligations as an officer of the court. (Declaration Of Matt Ruby In Support Of Sur-Reply To Plaintiff's Motion To Expedite Discovery And Preserve Evidence, ¶ 2.) AMEC-Shanghai has taken appropriate steps to preserve relevant information, as described in the McElhinny and Ruby Declarations. (*See id.* at ¶¶ 3-7.)

The *Posdata* case shows how Applied's evidentiary showing is insufficient. The plaintiff in *Posdata* obtained expedited discovery and a preservation order only in conjunction with a substantial evidentiary showing that supported a TRO. *Posdata Co. v. Kim*, No. C-07-2504 RMW, 2007 WL 1848661, *8-9 (N.D. Cal. June 27, 2007). The *Posdata* plaintiff submitted (1) confidentiality agreements showing steps taken to protect secrets, including ones signed by customers, vendors, and the individual defendant (*id.* at *5); (2) documentary evidence that the defendant had received the technical information (*id.*); (3) forensic evidence that showed the defendant possessed 64 pages of the plaintiff's schematic design plans (*id.* at *6); and (4) emails that transmitted files containing data and test results from the plaintiff's system to the defendant's

1   private email account (*id.* at *3).³  Applied has not shown ***any one*** of these things.

2   *Posdata* and *Adobe* demonstrate that Applied's evidentiary showing is not sufficient to

3   justify the relief it seeks.  Because Applied has not shown that the "discovery sought will be

4   unavailable in the future or is subject to pending destruction if it is not taken now," there will be

5   no irreparable harm caused by engaging in standard discovery procedures as set out in the Federal

6   Rules of Civil Procedure.  *Dimension Data*, 226 F.R.D. at 532.

**IV.  RUSHING INTO DISCOVERY MAY RUN AFOUL OF CHINESE LAW AND LEAD TO SEVERE REPERCUSSIONS IN CHINA**

Obtaining American-style discovery in China presents a unique set of challenges.⁴  In certain circumstances, complying with document production orders may subject Chinese companies to prosecution within China.  *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992).  AMEC-Shanghai's documents may be subject to government-mandated export controls on scientific and technological information.  A variety of Chinese laws regulate technology export: e.g., Dual-use Products and Technology Import and Export Licenses Procedures (两用物项和技术进出口许可证管理办法), Law of the People's Republic of China on Guarding State Secrets (中华人民共和国保守国家秘密法), Measures for the Administration of Technologies Prohibited or Restricted from Export (禁止出口限制出口技术管理办法), the Foreign Trade Law (中华人民共和国对外贸易法), and the Regulations on the Administration of Import and Export of Technologies (中华人民共和国技术进出口管理条例).  Navigating China's export-control laws to ensure that neither AMEC-Shanghai's nor Applied's personnel are subject to prosecution or other sanction in China is a non-trivial matter.  AMEC-Shanghai respectfully suggests that allowing Applied's agents to enter AMEC-Shanghai's facility on 14-days' notice and carry away any electronic information they find there is unjustifiably risky for all concerned.

---

³ Some of the submitted evidence had originally been obtained by Korean authorities, who had arrested and indicted the defendant's employees for criminal trade secret misappropriation.  *Posdata*, 2007 WL 1848661 at *3.

⁴ For example, taking depositions in China may be considered a violation of China's judicial sovereignty, leading to the arrest, detention, expulsion, or deportation of the participants.  *See* http://travel.state.gov/law/info/judicial/judicial_694.html.

1

2   Dated: November 16, 2007                    HAROLD J. MCELHINNY
                                                MARC DAVID PETERS
3                                               DAVID M. ALBAN
                                                MORRISON & FOERSTER LLP
4

5                                               By:   /s/ Marc David Peters
                                                      Marc David Peters
6

7                                                     Attorneys for Defendant
                                                      ADVANCED MICRO-
                                                      FABRICATION EQUIPMENT
8                                                     (SHANGHAI) CO., LTD.