1    HAROLD J. MCELHINNY (CA SBN 66781)
       HMcElhinny@mofo.com
2    MORRISON & FOERSTER LLP
       425 Market Street
3    San Francisco, California  94105-2482
       Telephone: 415.268.7000
4    Facsimile: 415.268.7522

5    MARC DAVID PETERS (CA SBN 211725)
       MDPeters@mofo.com
6    DAVID M. ALBAN (CA SBN 238955)
       DAlban@mofo.com
7    MORRISON & FOERSTER LLP
       755 Page Mill Road
8    Palo Alto, CA 94304-1018
       Telephone:  650-813-5600
9    Facsimile:  650-494-0792

10   Attorneys for Defendant
      ADVANCED MICRO-FABRICATION EQUIPMENT INC.
11

12               UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                 SAN JOSE DIVISION

15

| | |
|---|---|
| 16  APPLIED MATERIALS, INC., | Case No.    C07 05248 JW (PVT) |
| 17            Plaintiff, | **NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF AMEC INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 18      v. | |
| 19  ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., | |
| 20  ADVANCED MICRO-FABRICATION EQUIPMENT, INC., ASIA, ADVANCED | Date:          January 7, 2008<br>Time:          9:00 a.m. |
| 21  MICRO-FABRICATION EQUIPMENT, INC. | Courtroom:  8, 4th Floor |
| 22           Defendants. | |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

MEMORANDUM ...................................................................................................................... 1

I.      INTRODUCTION ............................................................................................................ 1

II.     STATEMENT OF ISSUES TO BE DECIDED ............................................................... 2

III.    APPLIED'S ALLEGATIONS .......................................................................................... 2

IV.     THE CASE MUST BE DISMISSED FOR LACK OF PERSONAL
        JURISDICTION OVER AMEC INC. .............................................................................. 3

        A.      The Court Lacks Specific Jurisdiction Over AMEC Inc. ...................................... 4

        B.      The Court Lacks General Jurisdiction Over AMEC Inc. ...................................... 6

V.      APPLIED HAS FAILED TO STATE A CLAIM AGAINST AMEC INC. ...................... 8

        A.      Conduct In China Does Not Establish A Cause Of Action Under The
                California Uniform Trade Secrets Act ................................................................. 8

        B.      Applied's Second, Third, and Fourth Causes Of Action Are Preempted .............. 9

VI.     THE PROPER FORUM FOR THIS CASE IS THE CHINESE COURTS ...................... 12

        A.      The Chinese Courts Will Provide An Adequate Alternative Forum For This
                Action. ............................................................................................................... 12

        B.      The Convenience of the Parties and Ends of Justice Are Best Served by
                Dismissing the Action ........................................................................................ 14

                1.      The Relevant Private Factors Favor Dismissal ........................................ 14

                2.      The Public Factors Weigh In Favor of Dismissal of This Suit ................. 16

VII.    CONCLUSION .............................................................................................................. 18

1

# TABLE OF AUTHORITIES

2

Page

3
*Accuimage Diagnostics Corp. v. Terarecon, Inc.,*
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ................................................................ 5

4

*Allstate Life Ins. Co. v. Linter Group, Ltd.,*
5  994 F.2d 996 (2d Cir. 1993)................................................................ 14, 15, 16

6
*American Credit Indemnity Co. v. Sacks,*
  213 Cal. App. 3d 622 (Cal. Ct. App. 1989) ........................................... 9, 10

7

*Application Group, Inc. v. Hunter Group, Inc.,*
8  61 Cal. App. 4th 881 (Cal. Ct. App. 1998) .............................................. 17

9
*Auto Channel, Inc. v. Speedvision Network, LLC,*
  144 F. Supp. 2d 784 (W.D. Ky. 2001) .................................................... 10
10

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
11  222 F.3d 1082 (9th Cir. 2000)................................................................ 4

12
*Blanco v. Banco Indus. de Venezuela, S.A.,*
  997 F.2d 974 (2d Cir. 1993) ...................................................................... 15
13

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,*
14  270 F. Supp. 2d 943 (W.D. Mich. 2003) .............................................. 11

15
*Brand v. Menlove Dodge,*
  796 F.2d 1070 (9th Cir. 1986)................................................................ 7
16

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,*
17  318 F. Supp. 2d 216 (D. Del. 2004) ...................................................... 10

18
*Capital Currency Exch. v. Nat'l Westminster Bank PLC ,*
  155 F.3d 603 (2d Cir. 1998)................................................................ 13
19

*Congoleum Corp. v. DLW AG,*
20  729 F.2d 1240 (9th Cir. 1984)................................................................ 7

21
*Contact Lumber Co. v. P.T. Moges Shipping Co, Ltd.,*
  918 F.2d 1446 (9th Cir. 1990)................................................................ 12, 14
22

*Convolve, Inc. v. Compaq Computer Corp.,*
23  No. 00 CV 5141 (GBD),
  2006 U.S. Dist. LEXIS 13848 (S.D.N.Y. March 29, 2006)......................... 10

24
*Creative Tech., Ltd. v. Aztech Sys. Pte.,*
25  61 F.3d 696 (9th Cir. 1995)................................................................ 13

26
*DSMC, Inc. v. Convera Corp.,*
  479 F. Supp. 2d 68 (D. D.C. 2007) ...................................................... 11
27

*D'Sa v. Playhut, Inc.,*
28  85 Cal. App. 4th 927 (Cal. Ct. App. 2000) .............................................. 17

**TABLE OF AUTHORITIES**
(continued)

Page

*Dahn World Co. Ltd. v. Chung,*
  No. CV05-3477-PCT-JAT, 2006 U.S. Dist. LEXIS 44694 (D. Ariz. June 27, 2006) ............... 6

*Digital Envoy, Inc. v. Google, Inc.,*
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ................................................................. 9

*Diodes, Inc. v. Franzen,*
  260 Cal. App. 2d 244 (Cal. Ct. App. 1968) ........................................................ 17

*Ernest Paper Prods., Inc. v. Mobil Chem. Co.,*
  No. CV-95-7918 LGB (AJWx), 1997 U.S. Dist. LEXIS 21781 (C.D. Cal. Dec. 2, 1997) ........ 9

*Foam Supplies, Inc. v. Dow Chem. Co.,*
  2006 U.S. Dist. LEXIS 53497 (E.D. Mo. Aug. 2, 2006) ....................................... 11

*Gates Lear Jet Corp. v. Jensen,*
  743 F.2d 1325 (9th Cir. 1984) ............................................................................. 7

*Glasstech, Inc. v. TGL Tempering Sys., Inc.,*
  50 F. Supp. 2d 722 (N.D. Ohio 1999) ............................................................... 11

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947) ......................................................................................... 14

*Hirsch v. Blue Cross, Blue Shield of Kansas City,*
  800 F.2d 1474 (9th Cir. 1986) ............................................................................. 7

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
  485 F.3d 450 (9th Cir. 2007) ............................................................................... 6

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ....................................................................................... 3, 7

*Kelton v. Stravinski,*
  138 Cal. App. 4th 941 (Cal. Ct. App. 2006) ...................................................... 17

*Learning Curve Toys L.P. v. Playwood Toys, Inc.,*
  No. 94 C6884, 1999 U.S. Dist. LEXIS 11262 (N.D. Ill. July 20, 1999) .................. 10

*Lueck v. Sundstrand Corp.,*
  236 F.3d 1137 (9th Cir. 2001) ........................................................................... 13

*MicroStrategy, Inc. v. Business Objects, S.A.,*
  429 F.3d 1344 (Fed. Cir. 2005) ......................................................................... 11

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,*
  No. C 04-2000 CW, 2007 U.S. Dist LEXIS 22556 (N.D. Cal. March 14, 2007) ...... 9

*Murray v. British Broad. Corp.,*
  81 F.3d 287 (2d Cir. 1996) ............................................................................... 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Norwest Mortgage, Inc. v. Super. Ct.*,
4      72 Cal. App. 4th 214 (Cal. Ct. App. 1999) ................................................................. 8

5      *Opteum Fin. Serv., LLC V. Spain*,
        406 F. Supp. 2d 1378 (N.D. Ga. 2005) .................................................................. 11
6

*Piper Aircraft Co. v. Reyno*,
7      454 U.S. 235 (1981) ........................................................................................ 12, 13

8      *Powell Prods., Inc. v. Marks*,
        948 F. Supp. 1469 (D. Colo. 1996) ...................................................................... 11
9

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
10      338 F.3d 773 (7th Cir. 2003) .................................................................................. 7

11     *Republic of Philippines v. Marcos*,
        818 F.2d 1473 (9th Cir. 1987) ................................................................................. 8
12

*Savor, Inc. v. FMR Corp.*,
13      812 A.2d 894 (Del. Sup. Ct. 2002) ...................................................................... 11

14     *Schwarzenegger v. Fred Martin Motor Co.*,
        374 F.3d 797 (9th Cir. 2004) ............................................................................ 3, 4
15

*Scott v. Breeland*,
16      792 F.2d 925 (9th Cir. 1986) .................................................................................. 4

17     *Silent Drive, Inc. v. Strong Indus.*,
        326 F.3d 1194 (Fed. Cir. 2003) ............................................................................. 6
18

*Thomas & Betts Corp. v. Panduit Corp.*,
19      108 F. Supp. 2d 968 (N.D. Ill. 2000) .................................................................. 10

20     *Ting v. Orbit Commc'n Co.*,
        No. 95-55838, 1997 U.S. App. LEXIS 389 (9th Cir. Jan. 7, 1997) ........................... 7
21

*Transunion Corp. v. Pepsico, Inc.*,
22      811 F.2d 127 (2d Cir. 1987) ................................................................................. 13

23     *Trintec Indus. v. Pedre Promotional Prods.*,
        395 F.3d 1275 (Fed. Cir. 2005) ............................................................................. 3
24

*Vespa of Am. Corp. v. Bajaj Auto Ltd.*,
25      550 F. Supp. 224 (N.D. Cal. 1982) ....................................................................... 8

26     *Weins v. Sporleder*,
        605 N.W.2d 488 (S.D. 2000) ................................................................................ 11
27

*Wims v. Beach Terrace Motor Inn, Inc.*,
28      759 F. Supp. 264 (E.D. Pa. 1991) .......................................................................... 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on January 7, 2008, at 9:00 a.m., in the Courtroom of the Honorable James Ware, located at 280 South 1st Street, San Jose, California, or as soon thereafter as counsel may be heard, Advanced Micro-Fabrication Equipment, Inc. ("AMEC Inc.") will and hereby does move to dismiss Plaintiff's First Amended Complaint ("FAC") for lack of personal jurisdiction over AMEC Inc. and for failure to state a claim. AMEC Inc. also moves to dismiss the action on the ground of *forum non conveniens*.

AMEC Inc.'s motion is based on this Notice of Motion, the simultaneously served and filed Memorandum, the simultaneously served and filed Declarations of Matt Ruby, Marc Peters, and Huaiyu Xu, the pleadings and documents referenced therein, and other evidence that may be presented at the hearing.

**MEMORANDUM**

**I.    INTRODUCTION**

This case has evolved significantly since the day it was originally filed. In its original complaint, Applied Materials sued four of its former employees and two Chinese companies, AMEC China (which it erroneously sued as AMEC (Shanghai)) and AMEC Asia.

Because it has now realized it cannot sue the individuals in this Court, Applied Materials has voluntarily dismissed all of its claims against them. What remains is an attempt to apply California law to conduct by Chinese companies that allegedly occurred entirely in China. Applied Materials would have this Court apply California law to the interplay between Chinese employers and their employees, if any of those employees formerly worked in California.

In addition, because Applied Materials has been unable to serve the two defendants it originally named, Applied has added a third AMEC entity, AMEC Inc.—not because AMEC Inc. does business in California—but simply because it was an entity upon which Applied was able to quickly effect process.

1    In this motion, AMEC Inc. seeks dismissal of the complaint on three independent

2    grounds.[1]  First, the Court lacks personal jurisdiction over AMEC Inc.  Second, the First

3    Amended Complaint fails to state a claim for relief: because the California Uniform Trade Secret

4    Act cannot be applied extra-territorially, and because the UTSA preempts the rest of Applied's

5    claims.  Third, under the doctrine of *forum non conveniens*, AMEC Inc. asks the Court to direct

6    Applied Materials to pursue its claims in the People's Republic of China.

7    **II.    STATEMENT OF ISSUES TO BE DECIDED**

8        1.   Whether the Court has personal jurisdiction over AMEC Inc.

9        2.   Whether Applied has stated a claim for violation of the California Uniform Trade

10            Secret Act.

11        3.   Whether Applied's second, third, and fourth causes of action are preempted by the

12            California Uniform Trade Secret Act.

13        4.   Whether the claims against AMEC Inc. should be dismissed on *forum non conveniens*

14            grounds and Applied instructed to pursue its claims in Chinese courts.

15   **III.   APPLIED'S ALLEGATIONS**

16    The allegations in Applied's FAC are carefully crafted to maximize ambiguity and avoid

17   specificity.  It is not clear **who** did anything wrong.  Applied lumps four named individuals

18   together under the defined term "AMEC Employees."  The three corporate entities are accused of

19   every wrongdoing equally through the defined term "Defendants," without any explanation of

20   which company did what.  It is not clear **what** was supposedly misappropriated.  Applied pleads

21   that it has filed its own patent applications (thereby losing trade secret protection through

22   publication of the applications), but has not distinguished between its now-public information and

23   whatever it was that AMEC Inc. supposedly made public through patent applications.  (FAC ¶

24   39.)

---

[1] The Court should anticipate similar motions from the other named AMEC entities, if and when
they are served.

1    There are some matters that Applied is clear about.  Applied alleges that some AMEC

2    entity improperly acquired information from its employees *in China* (FAC ¶¶ 40, 41, 43, 44) and

3    that it subsequently disclosed this information *in China* by filing patent applications *in China*.

4    (FAC ¶ 50.)  Applied alleges that the defendants interfered with contractual agreements between

5    it and certain former employees by inducing them to disclose information *in China*.  (FAC ¶ 57.)

6    Applied alleges that this supposed wrongful disclosure supports its intentional interference,

7    conversion, and unfair competition claims.  (FAC ¶¶ 49, 57, 60, 63, 68.)  Nowhere does Applied

8    allege that any AMEC entity improperly obtained or used Applied's information in California.

9    (*See, e.g.*, FAC ¶¶ 40, 41 (lines 21-22), 42-44.)

10    These allegations, while not true, show that the Court should dismiss the case for failure to

11    state a claim, on the grounds of *forum non conveniens*, and for lack of personal jurisdiction.

## IV.    THE CASE MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER AMEC INC.

14    AMEC Inc. is a foreign corporation that conducts its business overseas.  It does not

15    purposefully direct its activities to California, nor do Applied's claims arise out of or relate to any

16    contact AMEC Inc. has had with California.  An exercise of jurisdiction here would not comport

17    with fair play and substantial justice.

18    There are two types of personal jurisdiction, general and specific.  *Trintec Indus. v. Pedre*

19    *Promotional Prods.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).  A court may exercise *specific*

20    jurisdiction only if, among other things, the plaintiff's claim arises from or relates to the

21    defendant's contacts with the forum.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

22    797, 802 (9th Cir. 2004).  For a court to exercise *general* jurisdiction, a defendant's contacts with

23    the forum must be continuous and systematic, and "so substantial and of such a nature as to

24    justify suit against [the defendant] on causes of action arising from dealings *entirely distinct* from

25    those activities."  *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945) (emphasis

26    added).

27

28

1    Because this case does not arise from or relate to any contact AMEC Inc. has had with

2    California, there is no specific jurisdiction.  Because AMEC Inc.'s contacts with California are

3    not so substantial or continuous and systematic, there is no general jurisdiction.

4    **A.  The Court Lacks Specific Jurisdiction Over AMEC Inc.**

5    In a case based on diversity jurisdiction, "a federal court applies the personal jurisdiction

6    rules of the forum state provided the exercise of jurisdiction comports with due process."  *Scott v.*

7    *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  California permits the exercise of personal

8    jurisdiction on any basis not inconsistent with the United States Constitution.  Cal. Code Civ. P.

9    § 410.10.  Accordingly, whether the Court has personal jurisdiction over AMEC Inc. thus

10   depends on whether Applied can show sufficient "minimum contacts" with the state of California.

11   *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 222 F.3d 1082, 1086 (9th Cir. 2000).  The Ninth

12   Circuit has established a three-prong test for analyzing a claim of specific jurisdiction:

13   (1) the defendant must purposefully direct its activities or consummate some transaction with

14        the forum or perform some act by which it purposefully avails itself of the privilege of

15        conducting activities in the forum;

16   (2) the claim must be one which arises out of or relates to defendant's contacts with the

17        forum; and

18   (3) the exercise of jurisdiction must comport with fair play and substantial justice.

19   *Schwarzenegger*, 374 F.3d at 802.

20   In this case, there is no jurisdiction over AMEC Inc., because the allegations of the FAC

21   relate exclusively to actions that took place in China.  None of Applied's claims arises out of

22   allegations concerning contact with California.  Every cause of action in the FAC stems from

23   Applied's allegations that some AMEC entity hired employees in China and that those employees

24   subsequently disclosed Applied's secrets.[2]  The California UTSA defines "misappropriation" of a

25

26   [2] Applied's second, third, and fourth causes of action are based on the same nucleus of facts as
     the claim for misappropriation.  Indeed, the first paragraph of each count in the complaint
27   incorporates by reference the "factual" allegations made in support of the trade secret claim.
     (FAC ¶¶ 54, 60, 66.)

28

1  trade secret to include two types of conduct: (1) improper acquisition or (2) improper disclosure

2  or use. *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 (N.D. Cal.

3  2003). But nowhere has Applied alleged that AMEC Inc. acquired, disclosed or used an Applied

4  trade secret *in California*.

5        AMEC Inc. has no significant contacts with California. AMEC Inc. is a Cayman Islands

6  corporation with principal places of business in Shanghai. (Declaration of Matt Ruby In Support

7  Of Advanced Micro-Fabrication Equipment Inc.'s Motion To Dismiss ("Ruby Decl."), ¶ 2.)

8  AMEC Inc. has no offices or facilities within California and does not own or lease any property

9  in California. (*Id.* ¶ 6.) AMEC Inc. does not pay taxes in California and is not licensed to do

10  business in California. (*Id.* ¶ 10.) It is not incorporated here or headquartered here. (*Id.* ¶¶ 2, 4.)

11  AMEC Inc. has not sold or shipped products to customers located in California. (*Id.* ¶ 6.) In fact,

12  no AMEC Inc. subsidiary has sold or shipped any CVD or Etch tools to any customer located in

13  California. (*Id.*)

14        The few contacts AMEC Inc. has had with California do not relate to this case. AMEC

15  Inc. maintains a bank account with Silicon Valley Bank, which is used for certain administrative

16  costs where payment in dollars is required. (*Id.* ¶ 8.) AMEC Inc. has held Board meetings in

17  California for the convenience of its investors. (*Id.*) AMEC Inc. has used California legal

18  counsel for financing and intellectual property issues. (*Id.*) Due to Silicon Valley's high

19  concentration of high-tech businesses, AMEC Inc. has worked with California consultants in the

20  areas of marketing/public relations, senior executive training, corporate finance, and executive

21  recruiting. (*Id.*) AMEC Inc. has met with investors within the Northern District of California.

22  (*Id.*) A small number of AMEC Inc. (and its subsidiaries') employees and board members have

23  residences and/or family in California. This includes AMEC's General Counsel, Matt Ruby,

24  whose employment agreement requires him to spend up to half of his time in Shanghai. (*Id.* ¶ 8.)

25  Robert Wu, the Senior Director of Global Customer Support and Spares, maintains a San Diego

26  cell phone number by which he can be contacted (his family maintains a residence in San Diego),

27

28

1    although he works and is based in Shanghai.[3] (*Id.* ¶ 9.)  No allegedly wrongful act that AMEC

2    Inc. is alleged to have done arises out of or relates to defendant's contacts with California.

3            The fact that a different AMEC entity, AMEC Asia, is the assignee of U.S. patent

4    applications is insufficient to establish jurisdiction in California over any of the AMEC entities.

5    There is no connection between the U.S. applications and California.  The applications were filed

6    with and published by the United States Patent and Trademark Office, which is in Virginia, not

7    California.  *See Dahn World Co. Ltd. v. Chung*, No. CV05-3477-PCT-JAT, 2006 U.S. Dist.

8    LEXIS 44694, at *10 (D. Ariz. June 27, 2006) (allegation that Defendant took confidential

9    information and posted it on a nationwide website was insufficient to establish personal

10   jurisdiction); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir.

11   2007) (mere web presence is insufficient to establish personal jurisdiction).  The applications

12   were filed by a patent attorney located in Spokane, Washington.  (Declaration of Marc Peters In

13   Support Of Advanced Micro-Fabrication Equipment Inc.'s Motion To Dismiss ("Peters Decl."), ¶

14   7 & Ex. F.)  Applied's trade secret claim cannot be said to arise out of conduct in California.  *See*

15   *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (issuance of a U.S.

16   Patent does not provide personal jurisdiction over assignee in any state).

17           Because Applied's claims arise out of conduct that occurred outside of California and

18   because AMEC Inc. has not purposefully availed itself of the privilege of conducting business in

19   California or purposefully directed its actions to California, the Court has no specific jurisdiction

20   over AMEC Inc.

21           **B.  The Court Lacks General Jurisdiction Over AMEC Inc.**

22           Applied has not asserted that the Court has general jurisdiction over AMEC Inc., nor

23   could it.  For a court to exercise ***general*** jurisdiction, a defendant's contacts with the forum must

24   be continuous and systematic, and "so substantial and of such a nature as to justify suit against

25   _____

26   [3] Although AMEC's website suggests that AMEC "maintains service and support operations
     in . . . the U.S." and provides Mr. Wu's San Diego cell phone number for the contact information,
     no AMEC company presently has offices or facilities within California.  (*Id.* ¶ 6.)  Mr. Wu works
27   in Shanghai.  (*Id.* ¶ 9.)

28

1   [the defendant] on causes of action arising from dealings *entirely distinct* from those activities."

2   *International Shoe*, 326 U.S. at 318 (emphasis added).  As one court of appeals has explained, to

3   exercise general jurisdiction, a defendant's contacts must be of such a nature and number that "it

4   would be fundamentally fair to require it to answer in [the subject court] in *any* litigation arising

5   out of *any* transaction or occurrence taking place *anywhere* in the world."  *Purdue Research*

6   *Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (emphasis in original).

7       Applied cannot meet this "fairly high" standard, *Brand v. Menlove Dodge*, 796 F.2d 1070,

8   1073 (9th Cir. 1986), which requires that a defendant's contacts be of the sort that approximate

9   physical presence.  *See Gates Lear Jet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

10  Factors to be taken into consideration are whether the defendant makes sales, solicits or engages

11  in business in the state, serves the state's markets, designates an agent for service of process,

12  holds a license, or is incorporated there.  *See Hirsch v. Blue Cross, Blue Shield of Kansas City*,

13  800 F.2d 1474, 1478 (9th Cir. 1986).  AMEC Inc. has done none of these things.

14      The facts already discussed above show that there is no general jurisdiction over AMEC

15  Inc. in the Northern District.  There are a handful of AMEC China employees who own

16  residences in California because their families have not moved to China, but that is not sufficient

17  to establish general jurisdiction over AMEC Inc.  *See Wims v. Beach Terrace Motor Inn, Inc.*, 759

18  F. Supp. 264, 270 (E.D. Pa. 1991) (holding that the fact that approximately ten percent of

19  defendant's employees were residents of the forum state was "irrelevant to the issue of personal

20  jurisdiction" when no evidence showed that the employee relationship reflected the defendant's

21  "activities in or directed toward" the forum state).  Nor does AMEC Inc.'s use of California

22  consultants change the conclusion, because their activities are directed overseas and not at

23  California.  (Ruby Decl. ¶¶ 6, 8.)  *See Ting v. Orbit Commc'n Co.*, No. 95-55838, 1997 U.S. App.

24  LEXIS 389, at *4-5 (9th Cir. Jan. 7, 1997) (holding that use of California-based consultants and a

25  California-based law firm as a registered agent was insufficient to establish jurisdiction because

26  the use related only to activities directed abroad).  Subjecting AMEC Inc. to the jurisdiction of

27  this Court based on such minimal contact with the forum state does not comport with traditional

28  notions of fair play and substantial justice.  *See Congoleum Corp. v. DLW AG*, 729 F.2d 1240,

1  1243 (9th Cir. 1984) (finding no general jurisdiction over a West German corporation on a claim

2  that arises out of activities in Europe, where the corporation had no contact with California other

3  than a developing sales market).

4  **V.    APPLIED HAS FAILED TO STATE A CLAIM AGAINST AMEC INC.**

5          Applied has failed to state a claim against AMEC Inc.  Applied's first cause of action fails

6  because the California Uniform Trade Secret Act (hereinafter "the CUTSA") does not have

7  extraterritorial effect or apply to acts outside of California.  Simply put: because any alleged

8  misappropriation occurred in China, there is no violation of California law.  Applied's second,

9  third, and fourth causes of action (intentional interference with contractual relationships,

10 conversion, and unfair competition) are preempted by the CUTSA because they depend on the

11 same nucleus of facts.  Accordingly, Applied's complaint should be dismissed pursuant to Rule

12 12(b)(6).

13     **A.  Conduct In China Does Not Establish A Cause Of Action Under The California
           Uniform Trade Secrets Act**

14

15         California law does not apply to conduct occurring outside the state unless the Legislature

16 clearly provides for such extraterritorial application.  *Norwest Mortgage, Inc. v. Super. Ct.,* 72

17 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999) ("We ordinarily presume the Legislature did not

18 intend the statutes of this state to have force or operation beyond the boundaries of the state.").

19 California's trade secret law is codified as the Uniform Trade Secrets Act at California Civil Code

20 Section 3426 *et seq.*  The CUTSA does not contain a provision for application to extraterritorial

21 conduct—the California Legislature has not clearly indicated that the CUTSA should regulate

22 conduct outside state boundaries.  The Court should decline to broaden the reach of the CUTSA

23 to extraterritorial conduct.[4]  *See Vespa of Am. Corp. v. Bajaj Auto Ltd.*, 550 F. Supp. 224, 227-28

24 (N.D. Cal. 1982).

25

26 [4] Similarly, federal courts may not apply federal law to conduct occurring outside the United
   Sates unless Congress intended to allow such application.  *Republic of Philippines v. Marcos*, 818
27 F.2d 1473, 1478 (9th Cir. 1987), *on reh'g*, 862 F.2d 1355 (9th Cir. 1988).

28

1    Here, the CUTSA does not reach any of the acts of which Applied complains.  Applied

2    alleges that AMEC entities acquired undisclosed confidential information in China from former

3    Applied employees and that Applied improperly disclosed this information in Chinese patent

4    applications.  (FAC ¶¶ 40, 43, 44.)  Applied further alleges that AMEC entities induced AMEC

5    employees to breach their contracts with Applied by disclosing some unspecified information to

6    AMEC Inc. in China.  (FAC ¶ 57.)  Applied's allegations regarding United States patent

7    applications do not change that result.  The two patent applications mentioned in Applied's FAC

8    were filed with and published by the U.S. Patent & Trademark Office, which is located in

9    Virginia, not California.  The applications were filed by a patent attorney located in Washington

10   state, not California.  (Peters Decl. ¶ 7 & Ex. F.)  Because Applied does not allege that any

11   wrongful acquisition, use, or disclosure of any trade secret occurred in California, the Court

12   should grant AMEC Inc.'s motion to dismiss.

13   **B.  Applied's Second, Third, and Fourth Causes Of Action Are Preempted**

14   The CUTSA includes a preemption provision displacing all common law and statutory

15   theories of recovery for allegations involving theft of confidential information.  *See* Cal. Civil

16   Code § 3426.7(b)(2); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1034 (N.D. Cal.

17   2005) ("all state law claims based on the same nucleus of facts . . . are preempted under

18   California's UTSA").  In *American Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 630

19   (Cal. Ct. App. 1989), the California Court of Appeal recognized the broad scope of UTSA

20   preemption, noting that the CUTSA displaces all "property, quasi-contractual, and violation of

21   fiduciary relationship theories of noncontractual liability" for theft of confidential business

22   information.

23   Courts routinely dismiss non-UTSA tort claims based on allegations that a party

24   misappropriated confidential information.  *Digital Envoy*, 370 F. Supp. 2d at 1035 (holding that

25   CUTSA preempted unfair competition and unjust enrichment claims); *Monolithic Power Sys.,*

26   *Inc. v. O2 Micro Int'l Ltd.,* No. C 04-2000 CW, 2007 U.S. Dist LEXIS 22556, at *25-26 (N.D.

27   Cal. March 14, 2007) (CUTSA preempted unfair competition claim); *Ernest Paper Prods., Inc. v.*

28   *Mobil Chem. Co.*, No. CV-95-7918 LGB (AJWx) 1997 U.S. Dist. LEXIS 21781, at *9 (C.D. Cal.

1    Dec. 2, 1997) (UTSA preempts tortious interference and unfair competition claims based on

2    misuse of alleged trade secrets); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968,

3    972-73 (N.D. Ill. 2000) (breach of fiduciary duty claim preempted by the Illinois UTSA.);

4    *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 216, 219-220 (D.

5    Del. 2004) (holding that the CUTSA "preempts common law claims that 'are based on

6    misappropriation of a trade secret,'" including conversion).

7        The broad scope of preemption under California's USTA was recognized in *Convolve,*

8    *Inc. v. Compaq Computer Corp.*, No. 00 CV 5141 (GBD), 2006 U.S. Dist. LEXIS 13848

9    (S.D.N.Y. March 29, 2006). *Convolve* applied the preemption provision of California's USTA to

10   grant summary adjudication of common law claims for breach of confidence, fraud, tortious

11   interference with contract and violation of Business & Professions Code Section 17200. The

12   Court held that

13            [t]he UTSA does not  . . . simply preempt common law claims for
             which misappropriation of a trade secret is an element. Instead, the
14           UTSA preemption clause is meant to eliminate all common law
             claims that are based on the same conduct ***which could support a***
15           ***UTSA cause of action***.

16   *Convolve*, 2006 U.S. Dist. LEXIS 13848 at *25 (citations omitted, emphasis added).

17        Section 3426.8 of the Civil Code requires California courts to follow decisions construing

18   the UTSA in other states. California courts are in accord with the majority of UTSA jurisdictions

19   which preclude a plaintiff from asserting alternative torts based on allegations that could state a

20   claim under the UTSA. *See American Credit*, 213 Cal. App.3d at 630. One federal district court,

21   in applying the Illinois Trade Secret Act, summarized the majority view of UTSA preemption:

22           [Plaintiff] believes its ideas are protectible as trade secrets under the
             ITSA; however, if the ideas do not meet the requirements of trade
23           secrets, [plaintiff] believes it is still entitled to pursue common law
             causes of actions for [the] alleged theft of ideas. . . . [However,]
24           plaintiffs who believe their ideas were pilfered may resort only to
             the ITSA; the alleged theft of ideas cannot support multiple claims
25           under different theories of recovery.

26
27   *Learning Curve Toys L.P. v. Playwood Toys, Inc*., No. 94 C 6884, 1999 U.S. Dist LEXIS 11262,

28   at *8-9 (N.D. Ill. July 20, 1999); *see also Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.

1  Supp. 2d 784, 789 (W.D. Ky. 2001)  (The UTSA "replaces other law relying [sic] to the

2  misappropriation of trade secrets, regardless of whether [p]laintiffs demonstrate that the

3  information at issue qualifies as a trade secret."); *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 898

4  (Del. Sup. Ct. 2002) (holding that UTSA preempts other laws providing civil remedies for

5  misappropriation of a trade secret); *Foam Supplies, Inc. v. Dow Chem. Co.*, 4:05CV1772 CDP,

6  2006 U.S. Dist. LEXIS 53497, *45 (E.D. Mo. Aug. 2, 2006) ("In this case, it is clear that Count

7  VIII derives from [Defendant's] theft, or misappropriation, of FSI's proprietary processes and

8  trade secrets.  Under Missouri law, FSI's sole avenue for legal recourse lies in Missouri's

9  Uniform Trade Secrets Act"); *Glasstech, Inc. v. TGL Tempering Sys., Inc*. 50 F. Supp. 2d 722,

10  732 (N.D. Ohio 1999) ("Plaintiff's claim relates to the misappropriation of proprietary

11  information which is designed to be protected through the law of trade secrets and patents").[5]

12          The Court should dismiss Applied's second, third, and fourth causes of action because

13  they are based on allegations of improper acquisition or use of confidential information.  Indeed,

14  the first paragraph of each count in the complaint incorporates by reference the "factual"

15  allegations made in support of the trade secret claim.  Applied's intentional interference claim is

16  based on the alleged disclosure of confidential information by four AMEC employees to three

17  AMEC corporate entities (FAC ¶ 57), which is the same allegation made in support of Applied's

18  misappropriation claim.  (FAC ¶ 49.)  Applied's conversion is based on the allegation that AMEC

19  Inc. converted Applied's confidential information.  (FAC ¶¶ 60, 63.)   And Applied's unfair

20  competition claim is likewise based on allegations of misuse of trade secret and confidential

21

22  [5] *See also Bliss Clearing Niagara, Inc.  v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 946 (W.D.
     Mich. 2003) (claims based solely upon the misappropriation of a trade secret are displaced by the UTSA
23   and should be dismissed); *Weins v. Sporleder*, 605 N.W.2d 488, 491-92 (S.D. 2000) (same); *Powell
     Prods., Inc. v. Marks*, 948 F. Supp. 1469 (D. Colo. 1996) (same); *Opteum Fin. Serv., LLC V. Spain*, 406 F.
24   Supp. 2d 1378, 1380 (N.D. Ga. 2005) ("The Court can determine whether the GTSA supersedes plaintiffs
     common law claims on a motion for judgment on the pleadings even though the issue of whether the
25   information qualifies as a trade secret under the GTSA remains disputed and unresolved."); *DSMC, Inc. v.
     Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (District of Columbia's USTA preempts common
26   law and statutory conspiracy claims); *MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1363-
     64 (Fed. Cir. 2005) (Virginia's UTSA preempts all common law and statutory claims for relief based on
27   misappropriation of trade secrets).

28

1   information.  (FAC ¶ 68, "Defendants have misused Applied's trade secrets, confidential

2   information, and proprietary technology to unfairly compete with Applied . . . .")  There can be

3   no question that Applied's second, third, and fourth causes of action are based on the "same

4   nucleus of facts" as its cause of action for misappropriation.  The Court should therefore dismiss

5   them as preempted.

6   **VI.    THE PROPER FORUM FOR THIS CASE IS THE CHINESE COURTS**

7          This case belongs in China.  Applied claims that a Chinese company is liable for having

8   obtained information from employees in China and using that information to design products in

9   China and file Chinese patent applications.  Applied, for reasons of its own, chose to drop its suit

10  against its former employees, who are former residents of California.  Applied chose to pursue

11  only China-based corporations, and it must live with that choice.  Chinese law regulates who

12  Chinese companies may employ, not California law.  Chinese law, not California law, regulates

13  the behavior of Chinese companies that do not do business in California.

14         If Applied has any quarrel with AMEC Inc., that quarrel is in China.  California does not

15  have an interest in this dispute.  The Court should dismiss the action under the doctrine of *forum*

16  *non conveniens* and Applied should pursue its case in the Chinese courts.  The law is well-settled

17  that courts may dismiss an action upon a determination that the action "in the interest of justice"

18  should be heard in another forum.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 4 (1981).

19  To determine whether to decline jurisdiction of an action on the ground of *forum non conveniens*,

20  the Court should weigh factors including the existence of an adequate alternative forum and the

21  balance of relevant private and public interest factors.  *Contact Lumber Co. v. P.T. Moges*

22  *Shipping Co, Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990).  Here, these factors weigh in favor of

23  dismissal.

24         **A.   The Chinese Courts Will Provide An Adequate Alternative Forum For This**
            **Action.**
25

26         Chinese law provides a remedy for trade secret misappropriation—Applied should pursue

27  its claims in China.  Only in rare circumstances is an alternative forum held inadequate.

28  Ordinarily, an alternative forum will be deemed "adequate" if the defendant is amenable to

1    process in the other jurisdiction.  *See Piper Aircraft*, 454 U.S. at 254 n.22 .  This requirement is

2    satisfied if, for example, the defendant resides in the alternative forum, which is true in this case.

3    *See, e.g., Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir. 1996) (holding that the U.K.

4    was an adequate alternative forum because a British corporation "can obviously be sued in the

5    United Kingdom.").

6        A forum is an adequate alternative unless it offers **no practical remedy** for the plaintiff's

7    alleged wrong.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001).  The application

8    of different laws and standards is irrelevant as long as comparable remedies are available.  *See*

9    *Creative Tech., Ltd. v. Aztech Sys. Pte.*, 61 F.3d 696, 702 (9th Cir. 1995) (plaintiff's claim that

10   territorial limits of Singapore Copyright Act prevented redress for infringement in United States

11   did not prevent dismissal because Singapore court nonetheless was "capable of offering [plaintiff]

12   an adequate monetary or injunctive remedy"); *Capital Currency Exch. v. Nat'l Westminster Bank*

13   *PLC* , 155 F.3d 603, 609 (2d Cir. 1998) (holding that alternative forum is adequate if  forum

14   permits litigation of subject matter of dispute, and differences in law should ordinarily not be

15   given conclusive or even substantial weight in assessing adequacy of  forum); *Transunion Corp.*

16   *v. Pepsico, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (holding that dismissal of RICO action

17   appropriate when plaintiff could assert claims based on underlying frauds in alternative forum.).

18       In this case, the Chinese courts provide Applied **very similar rights and remedies** to those

19   available through this Court.  Chinese trade secret law is statutorily defined in China's Unfair

20   Competition Law (UCL).  (Declaration of Huaiyu Xu in Support of Motion To Dismiss ("Xu

21   Decl.") ¶ 6.)  Similar to California trade secret law, Article 10 of China's UCL recognizes a

22   property interest in trade and commercial secrets and provides a private right of action for their

23   misappropriation.  (*Id.* ¶ 6.)  Article 10 states "[t]he business operator shall not infringe other's

24   trade and commercial secrets by adoption of the following methods: (1) acquisition of other's

25   trade and commercial secrets by misappropriation, seduction, threats or other improper

26   means . . . ."  (*Id.*)  Article 10 also recognizes third party liability, stating that "[i]f a third party

27   knows or should have known about the above illegal conducts, the acquisition, use or disclosure

28

1   of other's trade and commercial secrets by such third party shall be deemed to have infringed

2   other's trade and commercial secrets."  (*Id.* ¶ 7.)

3          China's UCL also provides a right of action for unfair-competition similar to that provided

4   by California law.  (*Id.* ¶ 6.)  Article 20 of China's UCL states that "[t]he business operator,

5   whose rights and lawful interest is harmed by unfair-competition activities, shall have the right to

6   file in civil litigation . . . ."  (*Id.*)  And China recognizes a private right of action for conversion.

7   Article 117 of China's General Principles of Civil Law states that "[i]f a person takes possession

8   of the . . . other person's properties, such person shall return the property to its owner, or if such

9   return is practically impossible, compensate the owner . . . ."  (*Id.* ¶ 8.)

10          In addition to similar rights and remedies, the Chinese Courts also provide procedures

11   comparable to those used in this Court.  (*Id.* ¶¶ 10-18.)  Because the Chinese courts provide

12   procedural rights and remedies comparable to those in California, they are an adequate alternative

13   forum.

14   **B.  The Convenience of the Parties and Ends of Justice Are Best Served by**
15   **Dismissing the Action**

16          The private interest factors to be considered include the following: the relative ease of

17   access to sources of proof; the relative availability of compulsory process to secure the attendance

18   of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the enforceability of

19   judgments; and all other factors that render trial of the case expeditious and inexpensive.  *Gulf Oil*

20   *Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Contact Lumber*, 918 F.2d at 1451-52.  The public

21   interest factors include court congestion, the local interest in resolving the controversy, and the

22   preference for having a forum apply a law with which it is familiar.  *Id.* at 1452.  The balance of

23   the private and public factors favor dismissal of this case.

24   **1.  The Relevant Private Factors Favor Dismissal**

25          The private interest factors favor the forum in which the events took place, because often

26   the bulk of the witnesses, the physical evidence, and necessary third parties are located in the

27   same place.  *See Allstate Life Ins. Co. v. Linter Group, Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993)

28   ("since all of the Banks' allegedly fraudulent activity occurred in Australia, most relevant

1    documents. . . and [m]ost witnesses and other sources of proof are also located in Australia").

2    Citations omitted.

3        AMEC Inc., its subsidiaries, their documents, and almost all of their employees are in

4    China.  (Ruby Decl. ¶¶ 3-6.)  Indeed, all the individuals named in Applied's FAC—Messrs. Yin,

5    Chen, Luo, and Todaka—reside in China.  Applied also alleges other, unnamed former Applied

6    employees have joined AMEC Inc. and its subsidiaries and been induced to divulge confidential

7    information to them in China.  (FAC ¶ ¶ 36, 42).  Although Applied has not named these alleged

8    former employees, it has alleged that they are in China (which they are).

9        Likewise, the documents relevant to AMEC Inc.'s defenses are in China.  AMEC China

10    maintains all documents related to the research, development, and manufacture of its products in

11    China.  (Ruby Decl. ¶ 5.)  AMEC Inc. and its subsidiaries' employment records and agreements

12    are located there as well.  (*Id.* ¶ 4.)

13        AMEC Inc. has not manufactured, used, sold, offered for sale, or imported any products

14    into the United States.  (*Id.* ¶¶ 4, 6.)   And Applied's complaint is built on allegations that AMEC

15    Inc. improperly acquired Applied confidential information in China and improperly disclosed

16    such information in Chinese patent applications.  (FAC ¶ 50.)

17        AMEC Inc. would incur considerable hardship and expense if obligated to defend this suit

18    in California.  As explained above, most, if not all, of AMEC Inc. and its subsidiaries' employees

19    are located in China.  The travel costs associated with having witness attend trial and other court

20    proceedings favors dismissal.  *See, e.g., Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974,

21    982 (2d Cir. 1993) (obtaining presence of Venezuelan witnesses at trial in New York "would

22    entail considerable expense" weighed in favor of dismissal); *Allstate*, 994 F.2d at 1001 (when

23    most of the documents and other physical evidence is in a foreign forum, the cost of transporting

24    them to the United States weighs in favor of dismissal).  This factor is particularly strong because

25    depositions under American law cannot be performed in China, which greatly increases the cost

26    of pre-trial discovery.

27        Moreover, the availability of compulsory process also favors dismissal.  The inventions

28    and information at issue in this case relate to machines used to manufacture semiconductor

1   devices.  These machines are purchased by semiconductor manufacturers, most of whom are

2   Asian companies with semiconductor fabrication plants (fabs) located in Asia.  (Peters Decl. ¶¶ 2-

3   5 & Exs. A-D.)  The world's largest semiconductor manufacturers have fabs in China: TSMC has

4   a fab in Shanghai (and more in Taiwan and Singapore) and SMIC has fabs in Shanghai, Beijing,

5   and Tianjin.  (*Id.* ¶¶ 2-3 & Exs. A-B.)  The potential future purchasers of Applied's products that

6   are at issue in this case are in Asia, particularly China: 70% of Applied's 2006 net sales were to

7   facilities in Asia.  (*Id.* ¶ 6 & Ex. E.)  The location of these potential third-party witnesses favors

8   dismissal.

9        To the extent AMEC Inc. has assets, they are located in China.  (Ruby Decl. ¶ 7.)  Were

10  Applied to obtain a judgment in this case, Applied would have to try to enforce it against the

11  assets of AMEC Inc. in China.  As a result, it will be easier for Applied to enforce a judgment

12  obtained from a Chinese court.  This factor weighs in favor of dismissal.  *See, e.g., Allstate Life*

13  *Ins.*, 994 F.2d at 1001 (2d Cir. 1993) (as part of *forum non conveniens* analysis, district court

14  "properly recognized that any judgment (whether by a United States court or Australian court)

15  will have to be enforced in Australia where all of [the defendant's] assets are located").

16              **2.   The Public Factors Weigh In Favor of Dismissal of This Suit**

17       China has a strong interest in this case.  China has a strong interest in protecting its

18  emerging companies from the anti-competitive conduct of more established institutions.  Most (if

19  not all) of the customers from whom Applied alleges it will lose sales are located in Asia, and

20  many are in China.  (Peters Decl. ¶ 6 & Ex. E.)  China has an interest in enforcing its laws, in

21  promoting fair competition, and in deterring trade secret misappropriation.  This weighs in favor

22  of dismissal.

23       Moreover, the Chinese courts can offer prompt resolution of this matter.  Indeed, the

24  Chinese Court will notify Applied within seven days of filing a complaint whether the Court will

25  accept its case.  (Xu Decl. ¶ 11.)  Shortly after accepting the case, the Chinese Court will set the

26  discovery schedule for the case and set the case for trial.  (*Id.* ¶¶ 12-13.)  The Chinese Court's

27  ability to resolve this case in a similar time frame to this Court weighs in favor of dismissal.

28

1    California's interest in this case is not as strong, as California public policy favors worker

2    mobility.  California law encourages open competition.  For example, California Business &

3    Professions Code § 16600 provides that, subject to limited exceptions, "every contract by which

4    anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that

5    extent void."  California courts have consistently declared Section 16600 to be an expression of

6    public policy that ensures that every citizen retains the right to pursue any lawful employment and

7    enterprise of his or her choice.  *Kelton v. Stravinski*, 138 Cal. App. 4th 941, 946 (Cal. Ct. App.

8    2006); *D'Sa v. Playhut, Inc.* 85 Cal. App. 4th 927, 933 (Cal. Ct. App. 2000); *Application Group,*

9    *Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 900 (Cal. Ct. App. 1998).  And California courts

10    have declared that the corollary to this proposition is that a competitor may solicit another's

11    employees if they do not use unlawful means to do so.  *Application Group*, 61 Cal. App. 4th at

12    900; *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (Cal. Ct. App. 1968).

13    Applied's claims in this action are contrary to this policy, as Applied seeks to prevent its

14    employees from working for the business of their choice.  It also seeks to intimidate competitors

15    from lawfully soliciting its employees.  California public policy thus favors dismissal of this

16    action.

17    In sum, the public interest factors and California public policy weigh in favor of dismissal

18    of this action.

19

20    /////

21    /////

22    /////

23    /////

24    /////

25    /////

26    /////

27

28

1

## VII.    CONCLUSION

2

Rather than pursue the people who allegedly have done it wrong, Applied Materials has

3  sued the only entity on which it has been able to serve process. But that entity, AMEC Inc., does

4  no business in California.  In any case, the conduct of Chinese employers and Chinese employees

5  in China—including defining and enforcing standards to protect information learned from former

6  employees—is governed by Chinese, not California law.  California employees who move to

7  other states or other countries do not export California law to their subsequent employers.  If

8  Applied Materials has been wronged by the companies it has sued, its remedy is in China.

9

10

Dated: November 30, 2007                    HAROLD J. MCELHINNY

11                                           MARC DAVID PETERS
                                             DAVID M. ALBAN
12                                           MORRISON & FOERSTER LLP

13

14                                   By:    /s/ Marc David Peters
                                            Marc David Peters
15
                                            Attorneys for Defendant
16                                          ADVANCED MICRO-
                                            FABRICATION EQUIPMENT INC.
17

18

19

20

21

22

23

24

25

26

27

28