Thomas F. Fitzpatrick, State Bar No. 193565
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617-570-1000
Fax: 617-523-1231

Attorneys for Applied Materials, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., | Case No. C07 05248 JW (PVT) |
| Plaintiff, | |
| v. | **NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR EXPEDITED DISCOVERY** |
| ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT, INC. | |
| Defendants. | |

*Goodwin Procter LLP*
*101 California Street*
*San Francisco, CA 94111*

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................5

ARGUMENT ...............................................................................................................7

I.  APPLIED'S DISCOVERY REQUESTS ARE PROPER AND ITS NEED FOR
    EXPEDITION IS REAL...........................................................................................7

    A.  Applied's Discovery Requests Are Appropriate and Necessary .............................7

        1.  Category One:  Misappropriation .................................................................7

        2.  Category Two:  California Contacts .............................................................8

        3.  Category Three:  Corporate Structure..........................................................8

    B.  Applied Needs This Discovery On An Expedited Basis ........................................10

II. THE CALIFORNIA STATE COURT TRADE SECRET DISCLOSURE  RULE
    SHOULD NOT DELAY OR LIMIT DISCOVERY .................................................11

III. CONCLUSION....................................................................................................14

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                 **PAGE**

*Advante International Corp. v. Mintel Learning Technology,*
   2006 WL 3371576 (N.D. Cal. Nov. 21, 2006) ........................................................13

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
   73 F. Supp. 2d 1228 (W.D. Wash. 1999), *vacated on other grounds by Amazon.com, Inc.
   v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed.Cir. 2001).................................10

*Computer Econ., Inc. v. Gartner Group, Inc.,*
   50 F. Supp. 2d 980 (S.D. Cal. 1999).........................................................................13

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.,*
   890 F.2d 685 (9th Cir. 1988) ...............................................................................6-7

*Doe v. Unocal Corp.,*
   248 F.3d 915 (9th Cir. 2001) .............................................................................4, 9

*Everitt v. Brezzel,*
   750 F. Supp. 1063 (D. Colo. 1990)...........................................................................13

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.,*
   Civ. No. S-06-0533 GEB GGH, 2007 WL 273949 (E.D. Cal. Jan. 29, 2007) ................ 12-13

*Hanna v. Plumer,*
   380 U.S. 460 (1965).........................................................................................4, 12

*Laub v. United States DOI,*
   342 F.3d 1080 (9th Cir. 2003) .................................................................................8

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978)..................................................................................................13

*Physicians Interactive v. Lathian Sys., Inc.,*
   No. CA 03-1193-A, 2003 WL 23018270 (E.D. Va. Dec. 5, 2003) ...........................11

*Picker Int'l Corp. v. Imaging Equip. Servs.,*
   931 F.Supp. 18 (D. Mass. 1995) ...............................................................................10

*Santana v. Holiday Inns, Inc.,*
   686 F.2d 736 (9th Cir. 1982) .....................................................................................13

*Teleflora, LLC v. Florists' Transworld Delivery, Inc.,*
   No. C 03-05858 JW, 2004 WL 1844847 (N.D. Cal. Aug. 18, 2004) ..................3, 10

*Thermo Web Systems, Inc. v. Beebe,*
   No. Civ. A. 00-40170-NMG, 2001 WL 311295 (D. Mass. Mar. 15, 2001) .........................11

*Yahoo! Inc. v. LaLigue Contre Le Racisme,*
   433 F.3d 1199 (9th Cir. 1006) ...........................................................................4, 8

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

ii

**STATE STATUTES**

California Code of Civil Procedure §2019.210 ................................................................ Passim

**RULES**

Federal Rules of Civil Procedure Rule 4(d).................................................................................2
Federal Rules of Civil Procedure Rule 8 ...............................................................4, 12, 14
Federal Rules of Civil Procedure Rule 8(e)(1) ....................................................................13
Federal Rules of Civil Procedure Rule 9(b)................................................................. 13-14
Federal Rules of Civil Procedure Rule 16(B) ......................................................................11
Federal Rules of Civil Procedure Rule 26 .....................................................4, 11-12, 13-14
Federal Rules of Civil Procedure Rule 26(a)(1) ..................................................................13
Federal Rules of Civil Procedure Rule 26(b)(1)...................................................................13
Federal Rules of Civil Procedure Rule 26(d).......................................................................11
Federal Rules of Civil Procedure Rule 30(b)(6) ....................................................................8

**NON-PERIODICAL PUBLICATIONS**

8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2005 (Supp. 2000) ......................12

**OTHER AUTHORITIES**

2 J. Moore, et al, *Moore's Federal Practice* ¶ 4.22[2] (2d ed. 1987)..............................................6

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on January 22, 2008, at 10:00 a.m., in the Courtroom of the Honorable Victoria Trumbull, located at 280 South 1st Street, San Jose, California, or as soon thereafter as counsel may be heard, plaintiff Applied Materials, Inc. ("Applied") will and hereby does move for expedited discovery from defendants Advanced Micro-Fabrication Equipment Inc. ("AMEC"), Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC-Shanghai") and Advanced Micro-Fabrication Equipment, Inc. Asia ("AMEC-Asia").

Applied's motion is based on this Notice of Motion and Motion, the simultaneously served and filed Memorandum that follows herein, Applied's previously served discovery requests (attached, as Exhibits A and B), the pleadings and documents referenced therein, and other evidence that may be presented at the hearing.

**INTRODUCTION**

This renewed motion for expedited discovery has two principal goals:

1.    To explain what discovery Applied needs on an expedited basis, and why expedition is necessary and appropriate; and

2.    To respond to arguments that defendants have made in order to delay or obstruct Applied's discovery efforts, so that the court can be prepared to address those issues at its earliest convenience. In particular, Applied will explain why California state statute, §2019.210 of the California Code of Civil Procedure, cannot be used in this court to prevent Applied from discovery to which it is otherwise entitled under the Federal Rules.

Many of the relevant facts for this Renewed Motion were set forth in Applied's original motion for expedited discovery, which the court denied without prejudice on November 19. *See* Order Denying Motion for Expedited Discovery and Preservation of Evidence Without Prejudice to Renewed Motion ("Order"), Docket No. 51. In brief, Applied is a Santa Clara-based company that develops, designs, and manufactures machines (tools) used to make semiconductor chips, including "Etch" and "Chemical Vapor Deposition" ("CVD") tools at issue in this suit. First Amended Complaint (Complaint) ¶¶ 11, 18-22, Docket No. 31. These multi-million dollar tools use complex physics and chemistry to perform precise processes on silicon wafers. *Id.* Applied has spent billions of dollars on research and development (R&D) since its founding in 1967, and each year spends millions of dollars to ensure that is Etch and CVD tools continue to excel. *Id.* ¶ 22.

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

Defendants compete directly with Applied.  The AMEC entities were founded in the 2003-2004 time period by, among others, Gerald Yin, Applied's former Chief Technology Officer, around the time Yin purported to announce his "retirement" from a thirteen-year career at Applied.  *Id.* ¶¶ 30-31.  The officer ranks of the AMEC entities are dominated by former senior Applied personnel, all of whom had access to Applied trade secrets while at Applied, and dozens of other former Applied employees have been hired, and targeted for hiring, by AMEC.  *Id.* ¶¶ 2, 35.  Defendants have already publicly disclosed, and thereby destroyed, certain Applied trade secrets in their U.S. and foreign patent applications.  *Id.* ¶¶ 42-44.

This renewed motion for expedited discovery is filed in response to this Court's November 19 Order.  In the Order, the Court denied Applied's motion for expedited discovery on the grounds that it had not demonstrated proper service of process on two of the three AMEC defendants -- AMEC-Shanghai and AMEC-Asia.  Order at 1.  The Court explicitly noted in the Order that its decision "was limited to the facts and the particular circumstances underlying the present motion," Order at 1 n.1, and that its ruling was without prejudice to the motion being renewed (a) after proper service is made on, or waived by, AMEC-Shanghai and AMEC-Asia or (b) to obtain discovery from defendant AMEC after a meet and confer regarding that discovery.

Since the Court's Order, there have been several developments in this case.  First, both AMEC-Shanghai and AMEC-Asia have waived service under Rule 4(d), so service is now effective on all defendants.  Second, AMEC has filed a motion to dismiss for, *inter alia*, lack of personal jurisdiction, alleging that AMEC has insufficient contacts with California, and has indicated that similar motions will be forthcoming for the other defendants.  Motion to Dismiss at 2-5 n.l., Docket No. 54.  Third, the Court has resolved a threshold dispute over the confidentiality order governing Applied's trade secrets list,  so that Applied finally has been able to provide that list to defendants.

Accordingly, Applied seeks in this renewed motion the same expedited discovery it sought in its original motion, as well as expedited discovery on factual issues raised in the interim by defendant AMEC's motion to dismiss.  Applied seeks three categories of expedited discovery from defendants:  (1) specified categories of documents reflecting or relating to the misappropriation of Applied's trade secrets; (2) information relating to this Court's personal jurisdiction over the AMEC

2

entities, and in particular, the AMEC entities' contacts with California; and (3) information about the corporate structure and inter-relationships of the AMEC entities. Each category of discovery is essential to the progress of this case, which has thus far been retarded by defendants' pressing of issues that have since been waived (dispute over service) or resolved by the Court (dispute over confidentiality order).

The first category of expedited discovery is necessary because defendants have caused, and are causing, irreparable harm to Applied. *See Teleflora, LLC v. Florists' Transworld Delivery, Inc.*, No. C 03-05858 JW, 2004 WL 1844847, at *6 (N.D. Cal. Aug. 18, 2004) ("use or disclosure of trade secrets is an irreparable harm"). Applied has already identified at least three separate occurrences where defendants have misappropriated Applied's trade secrets; in at least two instances, AMEC has actually disclosed Applied's trade secrets in AMEC's own patent applications, thereby destroying Applied's secrets when the applications were ultimately disclosed to the public. And the larger picture here – where AMEC has brought extraordinarily sophisticated machines to market in an improbably short period of time – indicates that additional Applied trade secrets and confidential information have been used by AMEC, and have been or imminently will be published in AMEC patent applications. AMEC, http://www.amec-inc.com/about/officers.php (follow "Dr. Gerald (Zheyao) Yin" hyperlink) (last visited Dec. 6, 2007). Critical evidence showing defendants' misappropriation is in defendants' exclusive possession. Accordingly, Applied needs this expedited discovery to learn the full extent of defendants' misconduct and to prevent further destruction of its property rights.

Second, Applied seeks expedited discovery regarding defendants' contacts with California. Based on detailed factual assertions by its Vice-President and General Counsel, Matthew Ruby — some of which contradict Mr. Ruby's earlier declarations and the AMEC website — AMEC contends that its contacts with California are insufficient for either general or specific jurisdiction. AMEC is wrong. Under the relevant legal standard, which AMEC's brief fails to acknowledge, personal jurisdiction under the so-called "effects test" is proper on allegations, such as those made here, that defendants intentionally misappropriated the trade secrets of a California company; that the secrets were developed and maintained in California; that defendants' employees learned of the

3

secrets in California; and that the harm from disclosure of the secrets occurred in California. *See Yahoo! Inc. v. LaLigue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 1006) (describing the elements of the "effects test").  But in any event, it is uncontestable that Applied is entitled to discovery on defendants' contacts with California.  *See id.* at 1207 ("In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state . . . .").

Applied also seeks expedited discovery regarding the corporate structure and inter-relationships of the three AMEC entities.  The AMEC entities' public statements have generated considerable confusion — whether by design or otherwise — about the relationships between and among the different AMEC entities.  As just one example, whereas defendant AMEC now presents itself as merely a passive "parent" and a "holding company," its website tells a different story.  On its website, AMEC gushes at length about <u>its</u> cutting edge "Etch and CVD" products; <u>its</u> far-flung regional offices; <u>its</u> CEO's pending patents; and <u>its</u> hiring of Frank Masciocchi to "lead AMEC's worldwide sales and customer support initiatives."  *See* AMEC, http://www.amec-inc.com (last visited Dec. 6, 2007).  In short, AMEC's website suggests it is (at least) the alter ego of its subsidiaries, closely involved in those subsidiaries' day-to-day operations, or that an agency relationship exists between it and its subsidiaries.  Applied must be allowed an opportunity to discover the truth about these relationships, as the issue has important consequences for the personal jurisdiction analysis.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (contacts of alter ego or agent with forum may suffice for personal jurisdiction).

Finally, AMEC has indicated that it will object to Applied's merits discovery, principally on the ground Applied has failed to comply with §2019.210.  As discussed in more detail below, such an objection cannot be sustained.  Under the Federal Rules, Applied is entitled to the discovery at issue.  Applied's claims, including its claim for misappropriation of trade secrets, meet and exceed Applied's obligations, under Rule 8, to provide a "short and plain statement of the facts" in its Complaint.  And the discovery sought plainly satisfies Rule 26's requirement that it be "reasonably calculated to lead to the discovery of admissible evidence," on Applied's well-pleaded claims.  No state statute, §2019.210 included, can be invoked to deny Applied its discovery rights in Federal Court. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).  And while the court has indicated that

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

4

§2019.210 may provide useful "case management" principles, Applied <u>has</u> provided a detailed trade secret list as an aid to both defendants and the Court. What § 2019.210 cannot be used to do is to delay Applied's necessary discovery, or to deny such discovery where it would be allowed in other federal jurisdictions.

<b><u>BACKGROUND</u></b>

As noted, certain of Applied's discovery requests focus on the relationships between and among the three AMEC defendants. Such facts are plainly important to personal jurisdiction arguments of these entities. It is probably worth explaining, moreover, why such facts are as yet quite unclear.

A company ostensibly named "AMEC" holds itself out to the world, on its website, as operating a business that directly competes with Applied. On this website, which makes no mention whatever of defendants AMEC-Shanghai or AMEC-Asia, AMEC describes itself as "an Asia-based global semiconductor company with a portfolio of advanced, high performing wafer fabrication solutions." AMEC, http://www.amec-inc.com/about (last visited Dec. 6, 2007). The website touts, among other things, AMEC's Etch and CVD Products, AMEC, http://www.amec-inc.com/technology (last visited Dec. 6, 2007); its worldwide regional offices, including an office in the U.S. region, AMEC, http://www.amec-inc.com/business/office.php (last visited Dec. 6, 2007); and its sales operations, AMEC, http://www.amec-inc.com/service (last visited Dec. 6, 2007).

The website identifies seven AMEC officers, three of whom are former senior Applied employees. These include AMEC's founder, Chairman, and CEO Gerald Yin. AMEC, http://www.amec-inc.com/about/officers.php (last visited Dec. 6, 2007). The titles of these officers reinforce the impression that AMEC is an operating company. The titles include Vice-President, Global Business (Frank Masciocchi); Vice-President and General Manager, Etch Division (Dr. Xueyu Qian); and General Manager, CVD Division (Dr. Lee Luo). Another officer identified is Matthew Ruby, Vice-President and General Counsel.

Despite the fact that AMEC's website holds AMEC out as an operating company, AMEC in this litigation has taken the contrary position, and claimed that AMEC is a "holding company," and is "the parent" of AMEC-Shanghai, and AMEC-Asia (Motion to Dismiss ¶4, Docket No. 54; Ruby's

5

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

Decl. in Support of Motion to Dismiss ¶2, Docket No. 55).  In connection with Applied's Initial Request for Expedited Discovery, moreover, AMEC appeared to claim that <u>AMEC-Shanghai</u> is the AMEC operating company; AMEC accordingly claimed that inasmuch as Applied had only served AMEC, Inc., "Applied has not served the party from whom it seeks discovery."  AMEC Sur-Reply at 1, Docket No. 47.

In short, AMEC's litigation positions in this case regarding which AMEC entities perform which functions appear to be at odds with AMEC's own public statements on its website.  These contradictions are, to say the least, confusing -- and this confusion is heightened by declarations filed by AMEC in this case demonstrating that AMEC, through its General Counsel Mr. Ruby, has significant measure of authority and control over AMEC-Shanghai and AMEC-Asia <u>in this litigation</u>.  Mr. Ruby was served with process in person on October 15, and appears to have immediately contacted outside counsel for all of the AMEC entities, Morrison & Foerster.  *See* Notice of Compliance with Court's Order dated October 17, 2007, granting in part plaintiff's motion to shorten time, Docket No. 11.  Shortly thereafter, in response to Applied's Motion to Preserve Evidence, it was Mr. Ruby himself – despite his asserted lack of official capacity – who stated that he personally arranged for the preservation of evidence by AMEC-Shanghai and AMEC-Asia. [1] Declaration of Matthew Ruby In Support of AMEC's Sur-Reply ¶¶ 3-7, Docket No. 50.

---

[1]  For these reasons, Applied's service of process on Mr. Ruby amounted to effective service on all defendants.  In *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 890 F.2d 685 (9th Cir. 1988), a case defendants did not cite in their briefs, the Ninth Circuit emphasized that service-of-process rules "are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice," and that "service can be made upon a representative so integrated with the organization that he will know what to do with the papers. Applying these principles, the Court held that service-of-process was proper even though it was made upon a receptionist who was not even an employee of the defendant, as the receptionist had "more than minimal responsibility assigned to her" and senior personnel at the defendant, including a lawyer, received immediate actual notice of the matter.  *Id.* at 688-89.

The *Direct Mail* principles, applied to this case, demonstrate that service was effected back in October.  Here, as in *Direct Mail*, it is "fair, reasonable, and just" to imply Matthew Ruby's authority to receive service on behalf of all three AMEC defendants.  Here, as in *Direct Mail*, Mr. Ruby, as Vice-President and General Counsel, occupied a position of "more than minimal responsibility."  And here, as in *Direct Mail*, Mr. Ruby, himself a lawyer, immediately brought the matter to the attention of outside counsel, who appears to have been already queued up to handle defendants' litigation matters.  Furthermore, Mr. Ruby not only had apparent authority to receive service of process for both AMEC-Shanghai and AMEC-Asia, he has acted as a de facto in-house lawyer for them in this litigation, directing their alleged evidence preservation efforts *See id.* n.1 ("Professor Moore notes that a recipient of process need not even be an employee of a company to be its managing agent, as long as the person demonstrates apparent authority.") (citing 2 J. Moore, et al, *Moore's Federal Practice* ¶ 4.22[2] at 4-201-04-202 n.11 (2d ed. 1987).).

The way to illuminate these inconsistencies is to provide Applied with the discovery its seeks regarding the relationships between the three AMEC defendants. Once the facts are provided, it is highly likely that the "confusion" between AMEC's litigation positions and its public statements will be resolved.

## ARGUMENT

### I. APPLIED'S DISCOVERY REQUESTS ARE PROPER AND ITS NEED FOR EXPEDITION IS REAL

#### A. Applied's Discovery Requests Are Appropriate and Necessary

##### 1. Category One: Misappropriation

Even without the benefit of any discovery, Applied has determined that defendants have misappropriated its trade secrets. For example, while at Applied current AMEC executives had access to a novel and confidential "rotating pedestal design" for use in CVD tools. Complaint ¶ 39, Docket No. 31. On August 5, 2005, AMEC filed a Chinese patent application claiming this novel design as its own, and in 2006, AMEC filed U.S. and Japanese patent applications directed to the same subject matter. *Id.* ¶¶ 37-38. As another example, while at Applied [the same individuals had access] to a method to use three multi-frequency radio frequency (RF) power sources and corresponding "RF matching networks" to control plasma effects in a processing chamber. *Id.* ¶ 42. Again, AMEC has filed Chinese, U.S. and Japanese patent applications claiming this novel trade secret as its own. *Id.* ¶ 42. These patent applications were published in February 2007, destroying the secrecy of Applied's trade secrets. Applied reasonably believes AMEC has incorporated the methods disclosed in these patent applications into its Etch and CVD tools.

While AMEC's publicly filed patent applications reveal that AMEC has misappropriated Applied trade secrets and disclosed those trade secrets in patent applications, the key evidence of AMEC's misappropriations will be in AMEC's own documents. This key evidence will include, among other things: (1) defendants' patent applications which have not yet been made public; (2) documents regarding the research and development of matters disclosed in defendants' patent applications that contain Applied trade secrets; (3) documents showing the design and/or specifications for any of defendants' CVD or Etch machines previously or currently being evaluated

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

7

or offered for sale; (4) operating manuals for defendants' CVD or Etch machines, and documents regarding processes to be run on these AMEC machines, including any best known methods for such processes; and (5) documents that Gerald Yin, Aihua Chen, Lee Luo and/or Ryoji Todaka provided to defendants regarding Applied, Applied machines, Applied processes, and/or Applied trade secrets, as well as all Applied documents in defendants' possession.

Applied seeks only these narrow categories of documents on an expedited basis. Its discovery requests — eight document requests and nine interrogatories — are focused on these topics. In light of the efforts that defendants have apparently already undertaken to identify and gather potentially relevant information (Ruby's Decl. In Support of Sur-Reply ¶¶ 4-7, Docket No. 50), defendants will not be unduly burdened by producing the requisite documents within 30 days of a hearing on Applied's renewed motion for expedited discovery. All defendants have had notice of this lawsuit and Applied's discovery requests since the middle of October, and should not be heard to complain about an order requiring them to produce limited categories of documents and information on an expedited basis.

### 2.    Category Two:  California Contacts

As explained above, Applied submits that personal jurisdiction over defendants unambiguously exists, based on the allegations in the Complaint, in light of the "effects test" endorsed by the Ninth Circuit. *See Yahoo! Inc.*, 433 F.3d at 1206 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). But unless and until this issue is resolved, Applied is entitled to discovery regarding all of defendants' contacts with California. *See, e.g., Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.") All of defendants' contacts with California are relevant to the personal jurisdiction analysis, *Yahoo*, 433 F.3d at 1207, and the discovery sought by Applied is tailored to discover that relevant information. It seeks all documents concerning defendants' contacts with California, and intends to promptly follow up with Rule 30(b)(6) depositions once it has received the documents.

### 3.    Category Three:  Corporate Structure

Finally, Applied is entitled to expedited discovery regarding the AMEC entities' corporate

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

structure, and the relationships between and among the three corporate defendants in this case. If a parent and subsidiary corporation are "alter egos" — i.e., not truly separate companies — their respective contacts with the forum state will be imputed to each other for personal jurisdiction purposes. *Unocal,* 248 F.3d at 926. A key factor in determining whether companies are alter egos is whether the parent is involved in the subsidiary's day-to-day operations. *Id.* at 926-27. Although defendants contend that AMEC is merely a "parent" or "holding company," AMEC's website describes it as operating the business that competes with Applied. The apparent functions of its officers — sales, Etch Division, CVD Division — belie AMEC's litigation position, and strongly suggest that AMEC, at the very least, is involved in the subsidiaries' day-to-day operations.[2]

Applied is also entitled to discovery on whether the AMEC entities act as agents of each other. An agency relationship between a parent and subsidiary can also support personal jurisdiction over the parent based on the subsidiary's forum contacts. *Id.* at 926. This issue overlaps with the alter ego issue, but is not identical. "The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *Id.* at 928 (citation omitted). The agency inquiry requires an examination of the purposes for which the subsidiary was formed. *Id.* at 928 (agency relationship if subsidiary "either established for, or engaged in," activities the parent would otherwise have to do itself). The information on AMEC's website certainly suggests that AMEC would itself perform the services provided by AMEC-Shanghi if AMEC Shanghai did not exist.

In sum, the known facts, and the questions surrounding them, provide ample basis for Applied's discovery requests. Applied should be given the opportunity and the means to test and challenge each of defendants' representations about their corporate structure and inter-relationships,

---

[2] Another factor in the alter ego analysis is whether the subsidiary is undercapitalized. 248 F.3d at 927. It appears from Mr. Ruby's most recent declaration that AMEC has paid for certain expenses one would normally associate with AMEC-Shanghai or AMEC-Asia, such as consultants' fees and legal fees for intellectual property issues. Declaration of Matthew Ruby in Support of Advanced Micro-Fabrication Equipment Inc.'s Motion to Dismiss ¶ 8, Docket No. 55. The logical inference is that the subsidiaries are not sufficiently capitalized to shoulder these expenses.

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

9

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

1   especially since defendants' stated position in this litigation is fundamentally at odds with the

2   representations on AMEC's website.  There is considerable reason to doubt defendants' credibility

3   on these matters even apart from these discrepancies.  For example, in his most recent declaration,

4   Mr. Ruby admits that the boast on AMEC's website about its U.S. "service and support operation,"

5   *see* AMEC, http://www.amec-inc.com/business/offices/php (last visited Dec. 6, 2007) ("AMEC

6   maintains service and support operations in China, Japan, Taiwan, Korea, Singapore and the U.S."),

7   is essentially false, and that the U.S. "operation" is only a reference to the address of a Shanghai-

8   based AMEC employee.  (Ruby's Decl. in Support of Mot. to Dismiss ¶ 9, Docket No. 55.)  He also

9   describes the AMEC operating business as Advanced Micro-Fabrication Equipment, Inc. China,

10  (Ruby's Decl. in Support of Mot. to Dismiss ¶ 3, Docket No. 55), whereas just weeks earlier he

11  described the same company as Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd.

12  (Ruby's Decl. in Support of Sur-Reply ¶ 2, Docket No. 50).

13          **B.          Applied Needs This Discovery On An Expedited Basis**

14          Applied is being irreparably harmed now.  Certain of its trade secrets have already been

15  publicly disclosed and thereby destroyed.  Defendants are actively seeking to further disseminate

16  Applied's trade secrets and use those trade secrets to implement their business, and thereby take

17  market share and goodwill from Applied.  *Teleflora, LLC*, 2004 WL 1844847, at *6 ("use or

18  disclosure of trade secrets is an irreparable harm"); *see also Picker Int'l Corp. v. Imaging Equip.

19  Servs.*, 931 F.Supp. 18, 44 (D. Mass. 1995) ("misuse of trade secrets is generally deemed to involve

20  irreparable harm").  If defendants are able to successfully take Applied's customers, Applied will

21  have suffered the loss of market share and goodwill that it might never recover.  *See, e.g.*,

22  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,  73 F. Supp. 2d 1228, 1238, 1247 (W.D. Wash.

23  1999) (recognizing loss of "positive relationships" with customers and "invaluable customer loyalty"

24  as irreparable harm), *vacated on other grounds by Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,

25  239 F.3d 1343 (Fed.Cir. 2001).  There is also a significant risk that defendants will disclose

26  additional Applied confidential information and trade secrets in additional patent applications, and

27  will share Applied's confidential information and trade secrets with its suppliers and potential

28  customers in the ordinary course of business.  Applied's need for discovery of defendants' corporate

structure and contacts with California is equally pressing, as these are plainly threshold issues and Applied's Opposition to the Motion to Dismiss is currently due on January 18, 2008.

Applied recognizes that the initial scheduling conference in this matter will be held on February 5. But Applied respectfully requests that its motion be decided before then. This case has already been delayed by defendants' assertion of specious arguments regarding service of process, *see supra* n.2, which they ultimately abandoned, and by their unreasonable position regarding the confidentiality of Applied's trade secrets list. Applied reasonably anticipates that defendants will resist the discovery requested here, perhaps based on the application of §2019.210, *see infra*, and believes that resolution of such threshold issues in advance of the conference will make the conference itself more productive. If there is to be a threshold dispute about Applied's right to discovery under Rule 26, it should be resolved now, lest the discovery plan the court enters at the conference be rendered a nullity for practical purposes.

Rule 16(B) and 26(d) of the Federal Rules of Civil Procedure authorize expedited discovery in such situations. And courts have often held that the discovery timing rules can be modified where expedition is necessary to pursue claims of trade secret misappropriation and unfair competition. *See Physicians Interactive v. Lathian Sys., Inc.*, No. CA 03-1193-A, 2003 WL 23018270, at *10 (E.D. Va. Dec. 5, 2003) (granting motion for expedited discovery in which plaintiff sought, *inter alia*, document requests and interrogatories relating to circumstances surrounding its allegations of trade secret misappropriation); *Thermo Web Systems, Inc. v. Beebe*, No. Civ. A. 00-40170-NMG, 2001 WL 311295 (D. Mass. Mar. 15, 2001) (in case involving claims of misappropriation of trade secrets, breach of contract, and unfair competition, expedited discovery was ordered and an early trial date set).

## II. THE CALIFORNIA STATE COURT TRADE SECRET DISCLOSURE RULE SHOULD NOT DELAY OR LIMIT DISCOVERY

As noted, this discovery motion will likely raise the issue of the application of § 2019.210. Applied's position, which is firmly grounded in case law including Supreme Court precedent, is that § 2109.210 does not apply in federal court. This Court's November 19 Order appears to recognize this point, but notes that § 2019.210 might nevertheless be used as a "case management tool." Order

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

at 2, Docket No. 51.  Applied submits, however, that § 2019.210 cannot be used even as a "case management tool" if it is applied in a manner that is inconsistent with the Federal Rules of Civil Procedure.  In short, although Applied has disclosed a "reasonably particular" trade secret list, it objects to any application of § 2019.210 that would limit the discovery to which Applied is entitled under Fed. R. Civ. P. 26 or would impose a stricter pleading requirement than required by Fed. R. Civ. P. 8.

The reason this legal issue is important is because AMEC has indicated that it will employ arguments, peculiar to § 2019.210, that are designed to delay or prohibit discovery to which Applied would otherwise be entitled.  Defendants have stated in a meet-and-confer session, and presumably will argue in court, that Applied's trade secret list is not sufficiently specific, and that Applied is seeking discovery beyond the secrets that it has identified.  The one constant of these arguments will be, most assuredly, that Applied should be denied discovery until it provides additional, more detailed explanations of its substantive case.

AMEC's efforts to introduce delay and complexity into the discovery process by engrafting § 2019.210 into federal practice must be rejected.  The law that a state rule governing discovery does not apply in federal court is well settled.  "It is wholly settled that discovery in a federal court is governed by [the Federal Rules of Civil Procedure] and that state discovery practices are irrelevant." 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2005 (Supp. 2000).  The Supreme Court made clear long ago that "when a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."  *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).  This principle was recently recognized and applied by Magistrate Judge Hollows of the Eastern District of California, who in January of this year held § 2019.210 inapplicable.  As he explained, "[w]here a federal rule of procedure covers a rule of practice, such rule governs in a federal diversity case, even in the face of a contrary state rule."  *Funcat Leisure*

///

///

1  *Craft, Inc. v. Johnson Outdoors, Inc.*, Civ. No. S-06-0533 GEB GGH, 2007 WL 273949, at *2 (E.D.

2  Cal. Jan. 29, 2007) (citing *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 740 (9th Cir. 1982)).[3]

3        On its face, § 2019.210 conflicts with Rules 8(e)(1), 26(a)(1), and 26(b)(1) of the Federal

4  Rules of Civil Procedure.  Rule 8(e)(1) states that "no technical forms of pleading or motions are

5  required," and Rule 9(b) mandates that only specified categories of allegations such as fraud and

6  duress must "be stated with particularity."  All other allegations in pleadings need only be "simple,

7  concise, and direct" under Rule 8(e)(1).  Section 2019.210's particularity requirement grafts the

8  special Rule 9(b) pleading standard onto a claim for trade secret misappropriation, even though the

9  Federal Rules require no such thing.[4]

10       Most importantly, § 2019.210 conflicts with Rule 26(b)(1), which authorizes discovery

11  relevant to the claim or defense of any party.  Under that rule, "relevant information need not be

12  admissible" at trial if it is "reasonably calculated to lead to the discovery of admissible evidence."

13  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("Consistently with the notice-

14  pleading system established by the Rules, discovery is not limited to issues raised by the pleadings,

15  for discovery itself is designed to help define and clarify the issues.").  This conflict was recognized

16  by Magistrate Judge Seeborg in *Advante International Corp. v. Mintel Learning Technology*, 2006

17  WL 3371576 (N.D. Cal. Nov. 21, 2006).  In that case, Judge Seeborg noted that, notwithstanding §

18  2019.210, the scope of permissible discovery is governed by the Federal Rules:  "the touchstone

19  remains relevance as defined in Rule 26 of the Federal Rules of Civil Procedure:  Relevant

20  information need not be admissible at the trial if the discovery appears reasonably calculated to lead

21  to the discovery of admissible evidence."  *Id.* at *3 (internal citation omitted).  *See also Everitt v.*

22  *Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990) (holding that notwithstanding state discovery rule,

---

[3]  Applied acknowledges the existence of older, contrary precedent on this issue, *see, e.g., Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980 (S.D. Cal. 1999), but believes the analysis in *Funcat* is correct.

[4]  Section 2019.210 also conflicts with Rule 26(a)(1) because it requires a party who alleges trade secret misappropriation to make disclosures before commencing discovery.  Under Rule 26(a)(1), a party need only disclose the identity of individuals likely to have discoverable information, a description of documents that the party may use to support its claims and defenses, a computation of damages, and any insurance agreement under which an insurer may be liable to satisfy all or part of the judgment.  Section 2019.210 requires additional disclosures.

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

NOTICE OF MOTION, MOTION, & MEMORANDUM ISO PLAINTIFF'S                                    C07-05248-JW (PVT)
RENEWED MOTION FOR EXPEDITED DISCOVERY

Goodwin Procter LLP
101 California Street
San Francisco, CA 94111

1    Rule 26 "will govern discovery of police files" because "discovery in the federal courts is governed

2    by federal law as set forth in the Federal Rules of Civil Procedure, whether federal jurisdiction is

3    based on the existence of a federal question or on diversity of citizenship").

4         Here, Applied's discovery falls squarely within the Rule 26 standard in pursuing its trade

5    secret misappropriation claim.  Applied is not required first to meet some kind of "particularity"

6    standard that simply cannot be squared with the language and structure of Rule 8 or Rule 9(b).

7    Moreover, in pursuing its claims, Applied <u>cannot</u> be required to limit its discovery to particular

8    alleged trade secrets; Rule 26 provides for broader discovery, and in any event the materials it has

9    submitted – including its complaint, the declarations of Nir Merry and Steve Shannon (filed in

10   support of its original motion, Docket Nos. 41 and 42), and its trade secret list – demonstrate that the

11   discovery sought is well within reason.  In short, well-settled federal principles prohibit § 2019.210

12   from being applied to prohibit discovery that is authorized by the Federal Rules of Civil Procedure.

13   **III.    CONCLUSION**

14        For the reasons stated above, Applied requests that this Court enter the Proposed Expedited

15   Discovery Order.

16   Dated:  December 28, 2007                    Respectfully submitted,
                                                  Applied Materials, Inc.
17                                                By its attorneys,

18                                                /s/  Thomas F. Fitzpatrick
                                                  Thomas F. Fitzpatrick
19                                                tfitzpatrick@goodwinprocter.com
                                                  GOODWIN PROCTER LLP
20                                                181 Lytton Avenue
                                                  Palo Alto, CA 94301
21                                                Tel.:  650-752-3144
                                                  Fax:  650-853-1038
22
                                                  John C. Englander (*pro hac vice*)
23                                                jenglander@goodwinprocter.com
                                                  Douglas C. Doskocil (*pro hac vice*)
24                                                ddoskocil@goodwinprocter.com
                                                  Michael G. Strapp (*pro hac vice*)
25                                                mstrapp@goodwinprocter.com
                                                  GOODWIN PROCTER LLP
26                                                53 State Street
                                                  Boston, Massachusetts  02109
27                                                Tel.:  617.570.1000
                                                  Fax:  617.523.1231
28

# EXHIBIT A

Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax: 617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696

Attorneys for Applied Materials, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., | Case No.: C 07 05248 JW |
| Plaintiff, | |
| v. | **PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS** |
| ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT INC. | |
| Defendants. | |

1          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Applied

2   Materials, Inc. ("Applied ") hereby requests that Defendants answer the interrogatories set forth

3   below, separately and fully, in writing and under oath, within thirty (30) days after service of these

4   interrogatories.

5                                      **Definitions**

6   1)      "You" and "Your" as used herein refers to each individual Defendant answering these

7           interrogatories, and all persons, agents, attorneys, representatives, consultants or other

8           persons or entities purporting to act on their behalf.

9   2)      "Applied" shall refer to plaintiff Applied Materials, Inc., and its present and former

10          officers, directors, employees, attorneys, agents, representatives, parents, subsidiaries,

11          affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or

12          purporting to act on its behalf.

13  3)      "AMEC Shanghai" shall refer to defendant Advanced Micro-Fabrication Equipment

14          (Shanghai) Co., Ltd., and its present and former officers, directors, employees, attorneys,

15          agents, representatives, parent, subsidiaries, affiliates, assignees, predecessors in interest,

16          successors in interest, and anyone acting or purporting to act on its behalf.  "AMEC

17          Shanghai" shall also refer to Advanced Micro-Fabrication Equipment Inc. China, the entity

18          that Defendants have represented to Applied is the same entity as named defendant

19          Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd.

20  4)      "AMEC Asia" shall refer to defendant Advanced Micro-Fabrication Equipment Inc., Asia,

21          and its present and former officers, directors, employees, attorneys, agents, representatives,

22          parent, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest,

23          and anyone acting or purporting to act on its behalf.

24  5)      "AMEC Inc." shall refer to defendant Advanced Micro-Fabrication Equipment Inc., and its

25          present and former officers, directors, employees, attorneys, agents, representatives, parent,

26          subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and

27          anyone acting or purporting to act on its behalf.

28  6)      "Yin" shall refer to Gerald Z. Yin.

                                               1

1   7)     "Chen" shall refer to AiHua Chen.

2   8)     "Todaka" shall refer to Ryoji Todaka.

3   9)     "Luo" shall refer to Lee Luo.

4   10)    "Former employees" shall refer to all former Applied employees who are now, or have

5              been in the past, employed by AMEC Shanghai, AMEC Asia, or AMEC Inc., and anyone

6              acting or purporting to act on their behalf.

7   11)    The term "document" includes, without limitation, the full range of material discoverable

8              under Rule 34 of the Federal Rules of Civil Procedure. This includes physical documents

9              and things as well as electronically stored and machine-readable files in any magnetic or

10            electronic medium, and data or data fragments that may be found in such media even

11            though not associated with any particular electronic file. Such media include, without

12            limitation, hard drives, floppy diskettes, Zip disks, tapes, CD-ROMs, DVD-ROMs, flash

13            memory, and the like. The term "document" also includes, without limitation, any file

14            system data and "metadata" that is embedded in or associated with electronic files,

15            including file history data (creation dates, modification dates, print dates, save dates,

16            deletion dates, deleted or recoverable data, directory structure data, save locations, etc.),

17            edit/undo history, document profile data, and embedded comments.  It also includes,

18            without limitation, originals and all nonidentical copies.

19   12)    "Communication" means the transmittal of information (in the form of facts, ideas,

20            inquiries, or otherwise), and shall include any correspondence, contact, discussion, or any

21            other kind of written, oral (either face-to-face or telephonic) or electronic exchange or

22            transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any

23            response thereto between two or more persons or entities.

24   13)    The term "concerning" is used herein in its broadest sense and includes, though is not

25            limited to, referring to, addressed to, addressed from, addressing, describing, evidencing,

26            relating to, involving, about, mentioning, containing, embodying or constituting, directly

27            or indirectly.

28

2

14)   "Etch tool" or "Etch machine" means any apparatus for removing material from a substrate such as a semiconductor wafer.

15)   "CVD tool" or "CVD machine" means any apparatus for depositing material onto the surface of a substrate such as a semiconductor wafer.

16)   In construing these definitions, instructions, and interrogatories: (i) the singular shall include the plural and the plural shall include the singular; (ii) "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of an interrogatory all information that might otherwise be construed to be outside its scope; (iii) verb tenses shall be interpreted to include past, present and future tenses; and (iv) the words "any" and "all" shall be read to mean each and every.

17)   When referring to a person, "to identify" means to give the person's full name, present or last known address and telephone number, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be stated in response to subsequent discovery requesting the identification of that person.

18)   When referring to documents, "to identify" means to give the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

19)   When referring to communications, "to identify" means to give the (a) type of communication; (b) general subject matter; (c) date of the communication; and (d) participants in the communication.

## INSTRUCTIONS

1)   This Second Set of Interrogatories to Defendants supersedes and is in lieu of Plaintiff's First Set of Interrogatories to Defendants and Plaintiff's First Set of Interrogatories to AMEC Inc.

3

2)    These interrogatories call for all information in your possession, custody, or control, or in the possession, custody, or control of your attorneys, agents, employees, officers, directors, or representatives, or other persons acting under your authorization, employment, direction, or control.

3)    If you are unable to answer any of these interrogatories in full after exercising due diligence to secure the information requested, you should answer to the extent possible, explain why you are unable to answer in full, and provide whatever information that you have concerning the unanswered portion.

4)    If you object to any interrogatory, state the ground(s) of the objection with sufficient specificity to permit the determination of the basis(es) for such objection.  Objection to a portion of any interrogatory does not relieve you of the duty to respond to the parts that you do not object to.

5)    If you withhold any information because you claim that it is protected by the work product doctrine or the attorney-client or any other privilege or protection, identify the information by description, date, author or source and subject matter, and state the ground(s) on which you base your claim of privilege or protection.

6)    In the event that an interrogatory answer requires, in whole or part, consultation of a document which is known to have existed and cannot now be located or has been destroyed or discarded, that document shall be identified by: (a) the last known custodian; (b) date of destruction or discard; (c) the manner of destruction or discard; (d) the reason(s) for destruction or discard; (e) the efforts made to locate any documents that have been lost or misplaced; (f) a statement describing the document, including a summary of its contents; (g) the identity of its author(s); and (f) persons to whom it was sent or shown.

7)    If you answer any interrogatory by reference to records from which the answer may be derived or ascertained, as permitted in Fed. R. Civ. P. 33(d): (a) identify any such records by their corresponding Bates Number(s) or otherwise to allow the documents to be easily identified; (b) make available any computerized information or summaries thereof that you either have or can adduce; (c) provide any relevant compilations, abstracts or summaries in

4

1    your possession, custody, or control; and (d) provide copies of those records concurrently

2    with service of the answers to these interrogatories.

3    8)    These interrogatories are deemed to be continuing, and pursuant to the obligations imposed

4    by Rule 26(e) of the Federal Rules of Civil Procedure, you are required to promptly

5    supplement your responses with information as requested herein that may become known

6    or available to you after the date of your initial answers to these interrogatories.

7    9)    The defendants are instructed not to spoliate or allow the spoliation of electronic evidence

8    pending discovery in this matter.  In particular, defendants must not delete or alter the

9    contents of:  (1) any email accounts to which they have access or over which they have

10    possession, custody, or control; (2) any data stored on electronic devices in their

11    possession, custody, or control, including but not limited to data stored on the hard drives

12    of computers and data stored on any storage media in their possession, custody, or control;

13    and (3) data stored in any personal digital assistant, BlackBerry, or flash memory device in

14    their possession, custody, or control.

### INTERROGATORIES

15

16

17    Interrogatory No. 1

18    Describe in detail the corporate structure, date and place of incorporation, activities, and the nature

19    of the business of each of the following entities:  AMEC Inc., AMEC Shanghai, and AMEC Asia.

20    Interrogatory No. 2

21    Describe in detail the relationships between and among the entities AMEC Inc., AMEC Shanghai,

22    and AMEC Asia, including the identities of all managers, officers and corporate directors for each.

23    Interrogatory No. 3

24    Describe in detail all communications AMEC Inc., AMEC Shanghai, and AMEC Asia have had

25    with any entity about the corporate relationships between and among AMEC Shanghai, AMEC

26    Inc., and AMEC Asia, the nature of the business of each entity, and/or the identities of the officers

27    and directors of each entity, including, including, but not limited to, communications between and

28    among AMEC Shanghai, AMEC Inc., and/or AMEC Asia, on the one hand, and Dun and

5

Bradstreet, Deloitte and Touche, entities that have invested money with Defendants, and entities that have prepared or assisted Defendants in preparing press releases and content for Defendants' website.

Interrogatory No. 4

Identify (by product or service name, model number, trademark, trade name, internal designation, code name, project name, marketing name, version number and any other unique designation) each CVD tool that AMEC Inc., AMEC Asia, or AMEC Shanghai has designed, developed, or manufactured.

Interrogatory No. 5

Separately for each CVD tool identified in response to Interrogatory No. 4:

A. State whether the tool has been manufactured, sold, placed for evaluation, exported, offered for sale, used and/or distributed by AMEC Inc., AMEC Asia, or AMEC Shanghai, and identify the person most knowledgeable regarding the same.

B. For those tools that AMEC Inc., AMEC Asia, or AMEC Shanghai have sold or placed for evaluation, identify the model number of each tool sold or placed for evaluation and to whom the tool was sold or placed for evaluation, the date of sale or placement, and identify the person most knowledgeable regarding the same.

C. Identify by Bates ranges all documents concerning the tool, including but not limited to functional or design specifications, blueprints, schematics, or technical diagrams of the tool.

D. Provide a narrative description of how AMEC Inc., AMEC Asia, or AMEC Shanghai designed, developed and conceived of the tool, including the dates on which these events occurred and the people involved in the events, and identify the person most knowledgeable regarding the same.

Interrogatory No. 6

Identify (by product or service name, model number, trademark, trade name, internal designation, code name, project name, marketing name, version number and any other unique

6

1  designation) each etch tool AMEC Inc., AMEC Asia, or AMEC Shanghai has designed,

2  developed, or manufactured, including, but not limited to, etch tools incorporating Multi-

3  Frequency RF Sources and Matching Network[s].

4  Interrogatory No. 7

5      Separately for each etch tool identified in response to Interrogatory No. 6:

6   A. State whether the tool has been manufactured, sold, placed for evaluation, exported,

7      offered for sale, used and/or distributed by AMEC Inc., AMEC Asia, or AMEC Shanghai,

8      and identify the person most knowledgeable regarding the same.

9   B. For those tools that AMEC Inc., AMEC Asia, or AMEC Shanghai have sold or placed for

10     evaluation, identify the model number of each tool sold or placed for evaluation and to

11     whom the tool was sold or placed for evaluation, the date of sale or placement, and identify

12     the person most knowledgeable regarding the same.

13  C. Identify by Bates ranges all documents concerning the tool, including but not limited to

14     functional or design specifications, blueprints, schematics, or technical diagrams of the

15     tool.

16  D. Provide a narrative description of how AMEC Inc., AMEC Asia, or AMEC Shanghai

17     designed, developed and conceived of the tool, including the dates on which these events

18     occurred and the people involved in the events, and identify the person most

19     knowledgeable regarding the same.

20  Interrogatory No. 8

21     Identify all actual or potential suppliers related to any technology concerning etch and CVD

22  tools of AMEC Inc., AMEC Asia, or AMEC Shanghai.  For each supplier:

23  A. Identify the product supplied or to be supplied (by product or service name, model number,

24     trademark, trade name, internal designation, code name, project name, marketing name,

25     version number and any other unique designation);

26  B. Identify the date on which AMEC Inc., AMEC Asia, or AMEC Shanghai first

27     communicated with the supplier;

28

7

1     C.  Identify by Bates Ranges all documents concerning the supplier and any communications

2         with the supplier.

3   <u>Interrogatory No. 9</u>

4       Describe in detail the computer, network and filing systems, of AMEC Inc., AMEC Asia,

5 and AMEC Shanghai, including, but not limited to, the network location of all files concerning

6 any ex-Applied employees who currently works at AMEC Inc., AMEC Asia, or AMEC Shanghai.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1  December 18, 2007

2                                    Respectfully submitted,

3                                    APPLIED MATERIALS, INC.,

4                                    By its attorneys,

5

6

7                                    Thomas F. Fitzpatrick
                                     tfitzpatrick@goodwinprocter.com
8                                    GOODWIN PROCTER LLP
                                     181 Lytton Avenue
9                                    Palo Alto, CA 94301
                                     Tel.: 650-752-3144
10                                   Fax: 650-853-1038

11                                   John C. Englander (*pro hac vice*)
                                     jenglander@goodwinprocter.com
12                                   Douglas C. Doskocil (*pro hac vice*)
                                     ddoskocil@goodwinprocter.com
13                                   Michael G. Strapp (*pro hac vice*)
                                     mstrapp@goodwinprocter.com
14                                   GOODWIN PROCTER LLP
                                     53 State Street
15                                   Boston, Massachusetts  02109
                                     Tel.: 617.570.1000
16                                   Fax: 617.523.1231

17                                   Greg H. Gardella
                                     gardella@fr.com
18                                   FISH & RICHARDSON P.C.
                                     60 South Sixth Street
19                                   3300 Dain Rauscher Plaza
                                     Minneapolis, MN 55402
20                                   Tel.: 612-335-5070
                                     Fax: 612-288-9696
21
                                     Attorneys for Applied Materials, Inc.
22

23

24  LIBA/1852159.1

25

26

27

28

                                     9

I, Rachael Nelson, declare:

I am employed in the County of Santa Clara, California in the office of a member of the bar of this court at whose direction this service was made. I am over the age of eighteen and not a party to this action. My business address is Goodwin|Procter LLP, 181 Lytton Avenue, Palo Alto, California 94301.

On December 18, 2007, I served the following documents exactly entitled:

**PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS**

on the interested parties in this action by placing a true and correct copy thereof, on the above date, enclosed in a sealed envelope, following the ordinary business practice of is Goodwin|Procter LLP, as follows:

# VIA EMAIL AND OVERNIGHT COURIER:

Harold J. McElhinny
Morrison & Foerster
425 Market Street
San Francisco, CA 94105-2484

[  ]    U.S. Mail:  I am personally and readily familiar with the business practice of is Goodwin|Procter LLP for collection and processing of correspondence for mailing with the United States Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, proper postage prepaid, with the United States Postal Service.  I caused such document[s] to be sent via U.S. Mail according to the practices above.

[  ]    HAND-DELIVERY:  I caused such document[s] to be delivered by a courier service on the same day.

[  ]    FACSIMILE TRANSMISSION:  I caused such document[s] to be sent by facsimile transmission to the above-listed fax number for the party(ies) indicated.

[ X ]    EMAIL TRANSMISSION:  I caused such document[s] to be sent by email transmission to the party(ies) indicated.

[ X ]    OVERNIGHT COURIER:  I caused such documents[s] to be delivered by an overnight courier service for delivery by 10:30 a.m. the following business day.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct, and that this declaration was executed on December 18, 2007, at Palo Alto, California.

_____
Rachael Nelson

EXHIBIT B

Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax:  617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax:  612-288-9696

Attorneys for Applied Materials, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| APPLIED MATERIALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT INC. <br><br> Defendants. | Case No.: C 07 05248 JW <br><br><br> **PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION AND INSPECTION OF DOCUMENTS AND TANGIBLE THINGS TO DEFENDANTS** |

Plaintiff Applied Materials, Inc. ("Applied") hereby requests, pursuant to Fed. R. Civ. P. 34, that Defendants produce the documents and things described below for inspection and copying in accord with the following definitions and instructions. All documents and things to be produced should be produced within 30 days to the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, 02109, and directed to the attention of Michael Strapp.

## DEFINITIONS

1)   "You" and "Your" as used herein refers to each Defendant answering these document requests, and all persons, agents, attorneys, representatives, consultants or other persons or entities purporting to act on their behalf.

2)   "Applied" shall refer to plaintiff Applied Materials, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, parents, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf.

3)   "AMEC Shanghai" shall refer to defendant Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd., and its present and former officers, directors, employees, attorneys, agents, representatives, parent, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf. "AMEC Shanghai" shall also refer to Advanced Micro-Fabrication Equipment Inc. China, the entity that Defendants have represented to Applied is the same entity as named defendant Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd.

4)   "AMEC Asia" shall refer to defendant Advanced Micro-Fabrication Equipment Inc., Asia, and its present and former officers, directors, employees, attorneys, agents, representatives, parent, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf.

5)   "AMEC Inc." shall refer to defendant Advanced Micro-Fabrication Equipment Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, parent,

1

subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf.

6) "Yin" shall refer to Gerald Z. Yin.

7) "Chen" shall refer to AiHua Chen.

8) "Todaka" shall refer to Ryoji Todaka.

9) "Luo" shall refer to Lee Luo.

10) "Former employees" shall refer to all former Applied employees who are now, or have been in the past, employed by AMEC Shanghai, AMEC Asia, or AMEC Inc., and anyone acting or purporting to act on their behalf.

11) The term "document" includes, without limitation, the full range of material discoverable under Rule 34 of the Federal Rules of Civil Procedure, including email, whether from a personal or professional account. This includes physical documents and things as well as electronically stored and machine-readable files in any magnetic or electronic medium, and data or data fragments that may be found in such media even though not associated with any particular electronic file. Such media include, without limitation, hard drives, floppy diskettes, Zip disks, tapes, CD-ROMs, DVD-ROMs, flash memory, and the like. The term "document" also includes, without limitation, any file system data and "metadata" that is embedded in or associated with electronic files, including file history data (creation dates, modification dates, print dates, save dates, deletion dates, deleted or recoverable data, directory structure data, save locations, etc.), edit/undo history, document profile data, and embedded comments. It also includes, without limitation, originals and all nonidentical copies.

12) "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), and shall include any correspondence, contact, discussion, or any other kind of written, oral (either face-to-face or telephonic) or electronic exchange or

2

transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more persons or entities.

13) The term "concerning" is used herein in its broadest sense and includes, though is not limited to, referring to, addressed to, addressed from, addressing, describing, evidencing, relating to, involving, about, mentioning, containing, embodying or constituting, directly or indirectly.

14) "Digital storage devices" should be construed to include CD and DVD data disks, portable USB storage devices, external hard drives, and/or magnetic media.

15) "Email accounts" should be construed to include web-based email accounts as well as network-based email accounts and repositories of stored emails.

16) "Etch tool" or "Etch machine" means any apparatus for removing material from a substrate such as a semiconductor wafer.

17) "CVD tool" or "CVD machine" means any apparatus for depositing material onto the surface of a substrate such as a semiconductor wafer.

18) In construing these definitions, instructions, and document requests:  (i) the singular shall include the plural and the plural shall include the singular; (ii) "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of an interrogatory all information that might otherwise be construed to be outside its scope; (iii) verb tenses shall be interpreted to include past, present and future tenses; and (iv) the words "any" and "all" shall be read to mean each and every.

19) When referring to a person, "to identify" means to give the person's full name, present or last known address and telephone number, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be stated in response to subsequent discovery requesting the identification of that person.

3

20)     When referring to documents, "to identify" means to give the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

21)     When referring to communications, "to identify" means to give the (a) type of communication; (b) general subject matter; (c) date of the communication; and (d) participants in the communication.

## INSTRUCTIONS

1)      This Second Set of Document Requests to Defendants supersedes and is in lieu of Plaintiff's First Request to Defendants For the Production and Inspection of Documents and Tangible Things and Plaintiff's First Request For the Production and Inspection of Documents and Tangible Things to AMEC Inc.

2)      Documents and things either:  (i) should be produced separately for each document request or, alternatively, be identified as produced with respect to the particular document request to which they are responsive; or (ii) should be produced as kept in the usual course of business, along with copies of the folders or other containers in which the documents are kept.

3)      These document requests seek the production of all non-identical copies of responsive documents, including drafts and copies upon which notes have been made.  In producing the documents requested, please furnish all documents within your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your attorneys, spouse, agents, employees, or representatives.

4)      If any document cannot be produced in full, please produce such document to the extent possible, state the reason for the inability to produce the remainder of the document, and state whatever information, knowledge, or belief you have concerning the unproduced portion of the document, including without limitation the general subject matter of the unproduced portion.

4

5)    In the event any document responsive to these Requests is withheld from production based upon a claim of attorney-client, work-product, or any other privilege or immunity, explain the basis of the privilege or other protection you are claiming and provide a general description of the nature of the document you are withholding.

6)    These requests are continuing. In the event that you become aware, after responding to these requests, of any information which will augment or modify your initial responses, please immediately furnish supplemental responses to Plaintiff's attorneys, as is required by Federal Rule of Civil Procedure 26(e).

7)    The defendants are instructed not to spoliate or allow the spoliation of electronic evidence pending discovery in this matter. In particular, defendants must not delete or alter the contents of: (1) any email accounts to which they have access or over which they have possession, custody, or control; (2) any data stored on electronic devices in their possession, custody, or control, including but not limited to data stored on the hard drives of computers and data stored on any storage media in their possession, custody, or control; and (3) data stored in any personal digital assistant, BlackBerry, or flash memory device in their possession, custody, or control.

## DOCUMENTS AND THINGS TO BE PRODUCED

Request No. 1

All U.S. and foreign patent applications (whether currently pending or not) filed by AMEC Shanghai, AMEC Inc., and/or AMEC Asia concerning any technology related to either CVD and/or Etch tools, that have not yet been made public.

Request No. 2

All documents regarding the research and development of any matters disclosed in the following patent applications: Chinese Patent Application No. 200510028563.2 filed on August 5, 2005; U.S. Patent Application No. 11/441,291, filed May 24, 2006; Japanese Patent Application No. 2006-214829, filed August 7, 2006; Chinese Patent Application No. 200510028564.7, filed on

5

1
2  August 5, 2005; U.S. Patent Application No. 11/350,022, filed February 8, 2006; and Japanese
   Patent Application No. 2006213916, filed August 4, 2006.
3
   Request No. 3
4
5      All documents showing the design and/or specifications for any CVD or Etch machines
   currently or previously offered for sale, or placed for evaluation, by AMEC Shanghai, AMEC Inc.,
6
   and/or AMEC Asia.
7
   Request No. 4
8
9      All operating manuals for CVD and/or Etch machines designed and/or manufactured by
   AMEC Shanghai, AMEC Inc., and/or AMEC Asia, and all documents regarding processes to be
10
   run on these machines, including any best known methods for such processes.
11
   Request No. 5
12
13     All documents regarding any methods used by AMEC Shanghai, AMEC Inc., and/or
   AMEC Asia for improving vaporization of tetraethylorthosilicate (TEOS), tetraethylborate (TEB)
14
   and triethylphosphate (TEPO) during borophosphosilicate glass (BPSG) and undoped silica glass
15
   (USG) deposition processes.
16
   Request No. 6
17
18     All documents regarding the research, development and use by AMEC Shanghai, AMEC
   Inc., and/or AMEC Asia of bulk materials, platings, coatings, anodizations (including "A-
19
   coating"), and adhesives, used in CVD and etch tools; including, in particular, aluminum oxide
20
   ($Al_2O_3$) bulk, silicon carbide (SiC) bulk, yttrium oxide ($Y_2O_3$) coating and bulk, high performance
21
   composites, quartz, silicon (Si), graphite, ceramic components, glass components, showerhead
22
   bonding adhesive, and other intrinsically impure materials.
23
   Request No. 7
24
25     All documents regarding the research and development and use by AMEC Shanghai,
   AMEC Inc., and/or AMEC Asia of software for process control modules for rapid prototype
26
   development and recipe-conversion software.
27
28

6

Request No. 8

All documents and things, including but not limited to, computer files, disks, thumb drives, DVDs, and other electronic storage media, that any current or former Applied employee provided to AMEC Shanghai, AMEC Inc., and/or AMEC Asia regarding Applied machines, Applied processes, and/or Applied trade secrets, and all Applied documents in the possession of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 9

All documents regarding contacts between AMEC Inc., AMEC Shanghai, and/or AMEC Asia with California, including but not limited to, documents regarding California bank accounts, Board meetings held in California, the use of California legal counsel, the use of California consultants, investor meetings held in California, the California residences of employees or board members of AMEC Shanghai, AMEC Inc., and/or AMEC Asia, and service and support operations located in California, including all such service and support operations identified on AMEC's website.

Request No. 10

All communications between AMEC Inc., AMEC Shanghai, and/or AMEC Asia, on the one hand, and Matt Ruby, Frank Masciocchi, and/or Robert Wu that occurred while Messrs. Ruby, Masciocchi and/or Wu were residing in or working in California.

Request No. 11

All communications between AMEC Inc., AMEC Shanghai, and/or AMEC Asia, or any of their representatives or agents, on the one hand, and any employee of Applied during the period in which that employee was employed at Applied.

Request No. 12

Documents reflecting the establishment, creation, or formation of AMEC Shanghai, AMEC Inc., and/or AMEC Asia, including but not limited to, articles of organization, annual filings, by-laws, certificates of incorporation (including any amendments thereto), and all

7

documents submitted by AMEC Shanghai, AMEC Inc., and/or AMEC Asia to any state, local, municipal, or national authority.

Request No. 13

All documents reflecting the existence or former existence and describing the identity of any corporate entity related to AMEC Shanghai, AMEC Inc., and/or AMEC Asia, excluding the named defendants.

Request No. 14

All resolutions and minutes of any Board meetings of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 15

All communications between AMEC Shanghai, AMEC Inc., and/or AMEC Asia, on the one hand, and any non-attorney consultant and/or actual or potential investors regarding the corporate formation, structure, and organization of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 16

All organization charts; all lists of officers, directors, and/or employees of AMEC Shanghai, AMEC Inc., and/or AMEC Asia; and all documents identifying the job descriptions of all employees, officers and directors of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 17

All employment agreements of all officers and/or directors of AMEC Shanghai, AMEC Inc., and AMEC Asia.

Request No. 18

All documents reflecting the finances and capitalization of AMEC Shanghai, AMEC Inc. and/or AMEC Asia, including but not limited to, budgets, revenue forecasts, business plans, financial projections, 2007 bank statements, loan agreements, letters of credit, and guaranty agreements.

8

1  Request No. 19

2      All documents regarding AMEC Inc.'s involvement in the operations, management,

3  corporate governance and/or finances of AMEC Shanghai and/or AMEC Asia.

4

5  Dated:  December 18, 2007

6

7                                      Respectfully submitted,

8                                      APPLIED MATERIALS, INC.,

9                                      By its attorneys,

10

11                                     Thomas F. Fitzpatrick
                                       tfitzpatrick@goodwinprocter.com
12                                     GOODWIN PROCTER LLP
                                       181 Lytton Avenue
13                                     Palo Alto, CA 94301
                                       Tel.: 650-752-3144
14                                     Fax: 650-853-1038

15                                     John C. Englander (*pro hac vice*)
                                       jenglander@goodwinprocter.com
16                                     Douglas C. Doskocil (*pro hac vice*)
                                       ddoskocil@goodwinprocter.com
17                                     Michael G. Strapp (*pro hac vice*)
                                       mstrapp@goodwinprocter.com
18                                     GOODWIN PROCTER LLP
                                       53 State Street
19                                     Boston, Massachusetts  02109
                                       Tel.: 617.570.1000
20                                     Fax: 617.523.1231

21                                     Greg H. Gardella
                                       gardella@fr.com
22                                     FISH & RICHARDSON P.C.
                                       60 South Sixth Street
23                                     3300 Dain Rauscher Plaza
                                       Minneapolis, MN 55402
24                                     Tel.: 612-335-5070
                                       Fax: 612-288-9696

25                                     Attorneys for Applied Materials, Inc.

26

27  LIBA/1853409.1

28                                       9

PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION AND INSPECTION OF DOCUMENTS TO DEFENDANTS
Case No.: C 07 05248 JW

LIBA/1853409.1

1  I, Rachael Nelson, declare:

2        I am employed in the County of Santa Clara, California in the office of a member of the bar of this court at whose direction this service was made. I am over the age of eighteen and not a

3  party to this action. My business address is Goodwin|Procter LLP, 181 Lytton Avenue, Palo Alto, California 94301.

4        On December 18, 2007, I served the following documents exactly entitled:

5  **PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION AND INSPECTION OF**

6  **DOCUMENTS AND TANGIBLE THINGS TO DEFENDANTS**

7  on the interested parties in this action by placing a true and correct copy thereof, on the above date, enclosed in a sealed envelope, following the ordinary business practice of is Goodwin|Procter LLP,

8  as follows:

9  ## VIA EMAIL AND OVERNIGHT COURIER:

10  Harold J. McElhinny
    Morrison & Foerster

11  425 Market Street
    San Francisco, CA 94105-2484

12

13  [  ]  U.S. Mail:  I am personally and readily familiar with the business practice of is Goodwin|Procter LLP for collection and processing of correspondence for mailing with the

14        United States Postal Service, pursuant to which mail placed for collection at designated stations in the ordinary course of business is deposited the same day, proper postage

15        prepaid, with the United States Postal Service. I caused such document[s] to be sent via U.S. Mail according to the practices above.

16  [  ]  HAND-DELIVERY:  I caused such document[s] to be delivered by a courier service on the same day.

17

18  [  ]  FACSIMILE TRANSMISSION:  I caused such document[s] to be sent by facsimile transmission to the above-listed fax number for the party(ies) indicated.

19  [ X ]  EMAIL TRANSMISSION:  I caused such document[s] to be sent by email transmission to the party(ies) indicated.

20

21  [ X ]  OVERNIGHT COURIER:  I caused such documents[s] to be delivered by an overnight courier service for delivery by 10:30 a.m. the following business day.

22        I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct, and that this declaration was executed on December 18, 2007, at Palo Alto,

23  California.

24                                                    _Rachael Nelson_
                                                    Rachael Nelson

25

26

27

28