1  Thomas F. Fitzpatrick (CA Bar #193565)
   GOODWIN PROCTER LLP
2  181 Lytton Avenue
   Palo Alto, CA 94301
3  Tel.: 650-752-3144
   Fax: 650-853-1038
4  tfitzpatrick@goodwinprocter.com

5  John C. Englander (*pro hac vice*)
   James C. Rehnquist (*pro hac vice*)
6  Michael G. Strapp (*pro hac vice*)
   GOODWIN PROCTER LLP
7  53 State Street
   Boston, Massachusetts 02109
8  Tel.: 617.570.1000
   Fax: 617.523.1231
9  jenglander@goodwinprocter.com
   jrehnquist@goodwinprocter.com
10 mstrapp@goodwinprocter.com

11
   Attorneys for Applied Materials, Inc.
12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16 APPLIED MATERIALS, INC.,              Case No.  C07 05248 JW (PVT)

17            Plaintiff,

18       v.                              **PLAINTIFF'S OPPOSITION TO
                                         DEFENDANTS' MOTIONS TO
                                         DISMISS**
19 ADVANCED MICRO-FABRICATION
   EQUIPMENT (SHANGHAI) CO., LTD.,
20 ADVANCED MICRO-FABRICATION           Date: February 25, 2008
   EQUIPMENT INC., ASIA, ADVANCED       Time: 9:00 a.m.
21 MICRO-FABRICATION EQUIPMENT, INC.    Courtroom: 8, 4th Floor
            AMEC.
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** | 1 |
| **II.** | **BACKGROUND** | 2 |
| | A. Applied's Allegations | 2 |
| | B. The AMEC Entities And The Factual Dispute About AMEC Inc. | 5 |
| **III.** | **ARGUMENT** | 7 |
| | A. SPECIFIC JURISDICTION EXISTS OVER DEFENDANTS. | 7 |
| | 1. Legal Standard | 7 |
| | 2. This Court Has Personal Jurisdiction Over AMEC China And AMEC Asia Under The Effects Test. | 9 |
| | 3. Applied Has Established At Least A Prima Facie Case Of Jurisdiction Over AMEC Inc. | 15 |
| | 4. If The Court Finds That Applied Has Not Established a Prima Facie Case of Jurisdiction, It Should Continue the Hearing. | 16 |
| | B. CUTSA CAN BE APPLIED HERE, AND APPLIED'S OTHER CLAIMS ARE NOT PREEMPTED. | 17 |
| | 1. AMEC's Extraterritoriality Argument Lacks Merit. | 17 |
| | 2. Applied's Other Claims Are Not Preempted Because They Are Based on Facts Independent of Misappropriation. | 18 |
| | C. THE PROPER FORUM FOR THIS CASE IS CALIFORNIA | 20 |
| | 1. China Is Not An Adequate Alternative Forum. | 20 |
| | 2. The Private and Public Interest Factors Favor A California Forum. | 21 |
| **IV.** | **CONCLUSION** | 24 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*AirDefense, Inc.* v. *AirTight Networks, Inc.,*
No. C 05-04615JF, 2006 WL 2092053 (N.D. Cal. July 26, 2006)....................................... 19

5

*American Dredging Co. v. Miller,*
510 U.S. 443 (1994) ................................................................................................................ 20

6

*Bancroft & Masters v. Augusta Nat'l,*
223 F.3d 1082 (9th Cir. 2000) ............................................................................................ 8, 11

7

*Brainerd v. Governors of University of Alberta,*
873 F.2d 1257 (9th Cir. 1989) ................................................................................................ 12

8

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) .................................................................................................................. 8

9

*Calder v. Jones,*
465 U.S. 783 (1984) .................................................................................................................. 8

10

*CE Distrib., LLC v. New Sensor Corp.,*
380 F.3d 1107 (9th Cir. 2004) ................................................................................................ 12

11

12

*Chan v. Society Expeditions,*
39 F.3d 1398 (9th Cir. 1994) .................................................................................................. 17

13

*Combs v. Bakker,*
886 F.2d 673 (4th Cir. 1989) .................................................................................................... 9

14

*Consulting Engineers, Inc. v. Geometric Software Solutions and Structure Works LLC,*
No. 1:06-cv-956 (JCC), 2007 U.S. Dist. LEXIS 49398 (E.D. Va. July 6, 2007)............................ 14

15

16

*Contact Lumber Co. v. Moges Shipping Co. Ltd.,*
918 F. 2d 1446 (9th Cir. 1990) ......................................................................................... 22, 24

17

*Core-Vent Corp. v. Nobel Indus. AB,*
11 F.3d 1482 (9th Cir. 1993) .................................................................................................. 23

18

*Cybersell, Inc. v. Cybersell, Inc.,*
130 F.3d 414 (9th Cir.1997) ................................................................................................... 11

19

*Diermenjian v. Deutsche Bank, A.G.,*
No. CV 06-00774 MMM (CWX), 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006)........................ 24

20

21

*Digital Envoy, Inc. v. Google, Inc.,*
370 F. Supp. 2d 1025 (N.D. Cal. 2005) .................................................................................. 19

22

*Doe v. Sun International Hotels Ltd.,*
20 F. Supp. 2d 1328 (S.D. Fla. 1998) ..................................................................................... 21

23

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) .................................................................................................. 15

24

*Dole Food Co., Inc. v. Watts,*
303 F.3d 1104 (9th Cir. 2002) .......................................................................................... passim

25

*Drayton Enterprises, LLC v. Dunker,*
142 F. Supp. 2d 1177 (D.N.D. 2001) ..................................................................................... 14

26

27

*Eldorado Stone, LLC v. Renaissance Stone, Inc.,*
No. 04-cv-2562 JM (BEN), 2007 WL 3333095 (S.D. Cal. Aug. 20, 2007).................................... 19

28

**TABLE OF AUTHORITIES (con't)**

Page

*El-Fadl v. Central Bank of Jordan*,
75 F.3d 668 (D.C. Cir. 1996).....................................................................................17

*Ernest Paper Prods., Inc. v. Mobil Chemical Co., Inc.*,
No. CV95-7918 LGB (AJWX), 1997 WL 33483520 (C.D. Cal. Dec 2, 1997) ...............18

*ESAB Group, Inc. v. Centricut, Inc.*,
126 F.3d 617 (4th Cir. 1997).....................................................................................13

*Facebook, Inc. v. ConnectU LLC*,
No. C 07-01389 RS, 2007 U.S. Dist. LEXIS 61962 (N.D. Cal. Aug. 13, 2007) ...............9

*Gates Learjet Corp. v. Jensen*,
743 F. 2d 1325 (9th Cir. 1984)..................................................................................20

*Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*,
No. 03-4165-JAR, 2007 U.S. Dist. LEXIS 33497 (D. Kan. 2007) ..............................14

*Gulf Oil Co. v. Gilbert*,
330 U.S. 501 (1947) .................................................................................................22

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .............................................................................12, 17

*Laub v. United States DOI*,
342 F.3d 1080 (9th Cir. 2003) ...............................................................................16, 17

*Lockman Foundation v. Evangelical Alliance Mission*,
930 F.2d 764 (9th Cir. 1991).....................................................................................21

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137, 1143 (9th Cir. 2001) ......................................................................20, 24

*Magnecomp Corp. v. Athene Co., Ltd.*,
209 Cal. App. 3d 526 (1989) ....................................................................................24

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., Ltd.*,
No. AP-75731, 2007 WL 2403359 (N.D. Cal. Aug. 20, 2007)..............................22, 23

*Nat'l Notary Ass'n v. U.S. Notary*,
No. D038278, 2002 WL 1265555 (Cal. Ct. App. June 7, 2002) ....................................18

*Norwest Mortgage, Inc. v. Super. Ct.*,
72 Cal. App. 4th 214 (Cal. Ct. App. 1999)..................................................................18

*Nucor Corp. v. Bell*,
482 F. Supp. 2d 714 (D. S.C. 2007) ...........................................................................14

*Panavision Int'l LP v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ...................................................................................11

*Peterson v. Highland Music. Inc.*,
140 F.3d 1313 (9th Cir. 1998) .....................................................................................9

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 241 (1981) ..........................................................................................20

*Portrait Displays, Inc. v. Speece*, No.
C 04-1501 RMW, 2004 U.S. Dist. LEXIS 18595 (N.D. Cal. 2004) ..............................11

*PostX Corp. v. Secure Data in Motion, Inc.*,
No. C 02-04483 SI, 2004 WL 2663518 (N.D. Cal. Nov. 20, 2004)...............................19

1

**TABLE OF AUTHORITIES (con't)**

2

Page

3

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) .................................................................................................... 20

4

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
   No. 02:06-cv-1053-GEB-KJM, 2006 WL 2131308 (E.D. Cal. July 27, 2006) ................................ 18

5

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ........................................................................................ 9

6

*Seltzer Sister Bottling Co., Inc. v. Source Perrier S.A.*,
   No. C 90-1468 MHP, 1991 U.S. Dist. LEXIS 18206 (N.D. Cal. 1991) ......................................... 16

7

*Thermal Components Co. v. Griffith*,
   98 F. Supp. 2d 1224 (D. Kan. 2000) ............................................................................... 14

8

*Yahoo! v. La Ligue Contre le Racisme et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) .................................................................................. passim

9

10

*Ziegler v. Indian River County*,
   64 F.3d 470 (9th Cir. 1995) .......................................................................................... 8

11

**Other Authorities**

12

California Uniform Trade Secrets Act ............................................................................. passim

13

Z. Jianhua & Y. Guanghua, "Establishing the Truth on Facts:  Has the Chinese Civil Process Achieved
   This Goal?"  13 J. TRANSNATIONAL LAW & POLICY 393, 400 (2003) ............................................. 21

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Applied Materials, Inc. ("Applied") submits this Opposition to the Motions to Dismiss the First Amended Complaint of Advanced Micro-Fabrication Equipment Inc., China ("AMEC China"); Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC Asia"), and Advanced Micro-Fabrication Equipment Inc. ("AMEC Inc.").[1]

## I.    INTRODUCTION

This case centers on AMEC actions that were targeted at California, involving California intellectual property and California contracts, which resulted in harm to a California company. The dispute will be resolved under California law. Not only does the lawsuit belong in California, but personal jurisdiction over the defendants is clear.

Applied's uncontroverted allegations demonstrate that in 2004 AMEC developed a platform for a new business formed to compete with Applied by recruiting and hiring current and former Applied employees in California who had knowledge of Applied's trade secrets. Once off the ground, AMEC misused and disclosed those trade secrets, and interfered with Applied's contractual rights under employment agreements with its former employees. AMEC's contrary interpretation of Applied's allegations — that they "relate exclusively to actions that took place in China," Advanced Micro-Fabrication Equipment Inc.'s Motion to Dismiss ("AMEC Inc. Motion") at 4 — belies even a cursory reading of the First Amended Complaint ("FAC"). AMEC would have this Court believe that Gerald Yin and Steve Chen, who founded AMEC at the same time they ended long careers at Applied, simply bumped into each other on the street in Shanghai and decided to form a company, and that AMEC's recruitment and hiring of dozens of former Applied employees was equally fortuitous. That is not the case, and defendants' arguments fail.

First, the contacts of AMEC China and AMEC Asia with California are more than sufficient to demonstrate that specific personal jurisdiction exists over them under the Ninth Circuit's "effects test," which focuses on a defendant's intentional actions purposefully directed at

---

[1]    According to defendants, AMEC Shanghai and AMEC China are one and the same for all relevant purposes, and to avoid confusion Applied will use the term AMEC China herein to refer to the entity sued as AMEC Shanghai. Applied uses the term "AMEC" to refer to the defendants collectively where appropriate — as in discussing the allegations in Applied's complaint or referring to defendants' common arguments — except where otherwise noted.

California.  Applied's allegations show substantial "targeting" of California by these defendants, and Ninth Circuit precedent makes clear that jurisdiction exists.  With respect to the third defendant, AMEC Inc., Applied also has established at least a prima facie case of personal jurisdiction over AMEC Inc. under an alter ego or agency theory.  *See Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2000) (where motion to dismiss for lack of personal jurisdiction is made on written submissions, plaintiff need make only a "prima facie showing" of jurisdiction, and factual disputes must be resolved in plaintiff's favor).  At a minimum, Applied is entitled to discovery, for reasons explained below, to verify that jurisdiction exists.

Second, the California Uniform Trade Secrets Act ("CUTSA") applies here not only because, *inter alia*, the alleged conduct caused harm in California.  AMEC's contention that applying CUTSA here would be an impermissible "extraterritorial" application of California law is simply wrong.  The cases that AMEC cites in its own brief make clear that California law is applicable where, as here, out-of-state conduct injures California residents.  Further, Applied's other claims are not preempted by CUTSA because they are not premised on the same facts as the misappropriation claim.

Third, this case should not be dismissed on *forum non conveniens* grounds.  Among other things, the forum is convenient for plaintiff Applied, a California company; California law applies here; California's interest in this matter is superior to China's; and procedural adequacy of the Chinese judicial system is far from clear.  AMEC has not come close to meeting its "heavy burden" to show that China is a preferable forum for this dispute.  It is telling — and indicative of how rarely this heavy burden is met — that AMEC cites no case where a suit in a California court by a California plaintiff has been dismissed on *forum non conveniens* grounds.

## II.     BACKGROUND

### A.     Applied's Allegations

Applied is a California-based company that, among other things, develops, designs, and manufactures machines (tools) that are used to make semiconductor chips.  FAC ¶ 1.  Two of these are "Etch" and "Chemical Vapor Deposition" ("CVD") tools.  *Id*.  These are sophisticated,

multi-million dollar machines that use complex physics and chemistry to perform precise processes on silicon wafers. *Id.* Each year Applied spends millions of dollars in California on research and development to bring to market these revolutionary products that have changed the semiconductor industry. *Id.* ¶ 22. Applied's Etch and CVD technology includes myriad trade secrets protected under California law. *Id.* at ¶ 6, 22.

The defendant AMEC entities were founded in the spring of 2004 by Gerald Yin and Steve Chen, two former senior Applied executives, *id.* ¶¶ 5, 31-32, shortly after Chen left Applied and several months <u>before</u> the termination of Yin's employment at Applied. ¶¶ 12, 23-24. When Yin, Applied's former Chief Technology Officer, announced his "retirement" at the age of 60, after 36 years of employment capped by a thirteen-year career at Applied, he had already – unbeknownst to Applied – formed AMEC China, a Chinese company that was intended to directly compete with Applied. *Id.* ¶¶ 12, 23, 29, 31. A Dun & Bradstreet report confirms that AMEC China was formed on May 31, 2004, as a joint venture between AMEC Asia and "Shanghai Chuangye Investment Co., Ltd.," with Gerald Yin as Chairman and President. Dun & Bradstreet, <u>International Business Information Report: Advanced Micro-Fabrication Equipment</u> 5-6 (2007), Declaration of Michael G. Strapp In Support of Plaintiff's Opposition To Defendants' Motion to Dismiss ("Strapp Decl."), Ex. 2. Documents recently produced by defendants confirm that AMEC Asia and AMEC Inc. were also formed before Yin's termination date at Applied. *See* Certificate of Incorporation of AMEC Asia (showing formation of AMEC Asia as Cayman Islands company on April 19, 2004), Strapp Decl. Ex. 3; Certificate of Incorporation of AMEC Inc. (showing formation as Cayman Islands company on March 2, 2004), Strapp Decl. Ex. 4. The website for AMEC Inc. identifies Yin as its "founder." *See* http://www.amec-inc.com/about/directors.php (follow "Dr. Gerald (Zheyao) Yin" hyperlink ) (last visited Feb. 1, 2008), Strapp Decl. Ex. 5.

In connection with the formation and development of those entities, AMEC recruited and/or hired dozens of other current and former Applied employees in California with knowledge of Applied's trade secrets. FAC ¶¶ 2, 35-36. Capitalizing on these former employees' knowledge of Applied's trade secrets, AMEC used Applied's intellectual property to develop and manufacture its own Etch and CVD tools in an unrealistically short time. Just a year after Yin's

departure, and fourteen months after it was formed, AMEC was already applying for patents on technology Applied used in processing semiconductor chips. *Id.* ¶¶ 37-39. In these patent applications, which were filed in China, Japan, and the United States, AMEC publicly disclosed Applied trade secrets. *Id.* ¶¶ 39-40. AMEC Asia is the assignee of U.S. Patent Application No. 11/441,291, which names Yin, Chen, and Ryoji Todaka, another former Applied employee, as the three inventors. *Id.* ¶ 38. By wrongfully using California intellectual property, which it acquired from Applied's former employees in California, and by inducing Applied's former employees to disclose Applied's trade secrets and to assign patents to the AMEC entities, AMEC violated CUTSA and also tortiously interfered with Applied's employee contracts entered into in California with its former California employees. *Id.* ¶¶ 6, 8-9, 36, 40-44, 49-50, 57-58. Under these employee agreements, Applied is the owner of all intellectual property developed while at Applied, and is the presumptive owner of any such invention the employees disclose to a third party within one year after leaving Applied. *Id.* ¶ 41.[2]

In support of their motions to dismiss, defendants have submitted declarations providing information about the three AMEC entities and describing their contacts with California. These declarations, however, are guarded and cryptic, and make no attempt to dispute the substance of Applied's allegations. Notably, while the declarations purport to describe the AMEC entities' contacts (allegedly minimal) with California, they are silent on the subject of any contacts with California that defendants made in connection with recruiting and hiring employees. Nor do defendants make any attempt to refute the allegations in the First Amended Complaint that the defendant entities were formed shortly after Steve Chen left Applied, while Gerald Yin was still an employee of Applied, and that defendants "seeded their companies with a multitude of former Applied employees, ranging from Applied corporate vice presidents to technologists and

---

[2]    Applied has substantiated the allegations in the Complaint with the affidavits of Applied employees Steve Shannon and Nir Merry, which demonstrate that the patent applications referenced in the First Amended Complaint contain Applied trade secrets. *See* Declaration of Steve Shannon In Support of Plaintiff's Motion for Expedited Discovery, Inspection and Preservation of Evidence (Document Submitted Under Seal), Docket No. 42; Declaration of Nir Merry In Support of Plaintiff's Motion for Expedited Discovery, Inspection and Preservation of Evidence (Document Submitted Under Seal), Docket No. 41.

engineers." *Id.* ¶ 6.  Accordingly, these allegations, which indicate that defendants directed substantial recruitment and hiring efforts at California, must be presumed true for purposes of determining personal jurisdiction.

### B.    The AMEC Entities And The Factual Dispute About AMEC Inc.

As explained below, Applied contends that personal jurisdiction over at least AMEC China and AMEC Asia is clear, even assuming the truth of the declarations submitted by defendants.[3] AMEC China, as the AMEC operating entity and a patent applicant, and AMEC Asia, as the assignee of patents, are the entities who, based on defendants' representations, appear to have committed the torts alleged by Applied in the First Amended Complaint.  Also, despite AMEC Inc.'s contention that it is just a "holding company," Applied has established a prima facie case of jurisdiction over AMEC Inc. under an alter ego or agency theory, as it appears that AMEC Inc. is an alter ego of AMEC China and maybe AMEC Asia as well.

AMEC Inc. challenges personal jurisdiction on its lack of contacts with California, and on its lack of any role as an operating entity.  In a declaration of its General Counsel, Matthew Ruby, AMEC Inc., a Cayman Islands company, is described primarily as a "holding company" that is the parent of AMEC Asia and indirectly AMEC China, eighty percent of which is owned by AMEC Asia.  Ruby Decl. In Support of Motion to Dismiss ¶ 2.  Mr. Ruby states unequivocally that AMEC Inc. "does not itself design, sell or market any products." *Id.* ¶ 4.

The AMEC Inc. website, however, paints an entirely different picture, strongly indicating that AMEC Inc. is itself the operating company.  For example, on its website — which makes no mention whatsoever of AMEC China or AMEC Asia — AMEC Inc. gushes at length about *its*

---

[3]    Defendants' declarations describe AMEC China, consistent with the Dun & Bradstreet report noted above, as a "joint venture" between AMEC Asia and Shanghai Ventures Capital Co. Ltd. that "designs and develops semiconductor fabrication equipment in Shanghai."  *See* Declaration of Zhiyou Du In Support of Advanced Micro-Fabrication Equipment China's Motion to Dismiss ¶¶ 2-3, Strapp Decl. Ex. 6.  AMEC Asia is acknowledged to be an owner of 80% of the "joint venture" that is AMEC China.  *See* Declaration of Matt Ruby In Support of AMEC Inc.'s Motion to Dismiss ("Ruby Decl. In Support of Motion to Dismiss") at ¶ 3, Strapp Decl. Ex. 7.  It is further described by Aihua (Steve) Chen, its Director and Executive Vice-President, as "primarily" a holding company, incorporated in the Cayman Islands, which does not itself design, manufacture, sell or market any products.  *See* Declaration of Aihua ("Steve") Chen In Support of Advanced Micro-Fabrication Equipment Asia's Motion to Dismiss ("Chen's Decl. In Support of Motion to Dismiss") ¶ 3, Strapp Decl. Ex. 8.

cutting edge "Etch and CVD" products; its far-flung regional offices; its CEO's pending patents; and its hiring of Frank Masciocchi to "lead AMEC's worldwide sales and customer support initiatives." *See* AMEC, http://www.amec-inc.com (last visited Feb. 1, 2008). The titles of the AMEC Inc. officers on the website — Vice-President, Global Business (Frank Masciocchi); Vice-President and General Manager, Etch Division (Dr. Xueyu Qian); and General Manager, CVD Division (Dr. Lee Luo) — reinforce the impression that AMEC Inc. is an operating company and not just a holding company.[4] *Id.*

An organizational chart for AMEC Inc. recently produced by defendants in discovery indicates that the website information is consistent with operational reality. That chart identifies, in addition to the officers described above, the following departments or groups within AMEC Inc.: a "Product Group," headed by Steve Chen; an "Operations Group," headed by Zhiyou Du; an "HR" area, headed by Frances Wang; a department of "Corporate Marketing," headed by Gerald Yin; and a Controller, Merlie Sung. *See* Organizational Charts (AMEC 0000199-202), Strapp Decl. Ex. 9. Such corporate departments, of course, are inconsistent with a corporation operating as a "holding company." Notably, the AMEC Inc. organizational structure parallels and overlaps almost entirely with that of AMEC China. Yin (CEO and Head of Corporate Marketing), Chen (Product Group), Du (Operation Group), Masciocchi (Business Management), and Wang (HR) have exactly the same positions in the same departments at both companies, and Merlie Sung has a different title but similar responsibilities (head of Finance, as opposed to Controller) at AMEC China. *Id.*

That AMEC Inc. is the operating company is also demonstrated by a recent AMEC Inc.

---

[4] The website and Dun & Bradstreet report leave no doubt that AMEC Inc. is operated and controlled by former Applied executives. AMEC Inc.'s website identifies seven officers, four of whom are former senior Applied employees: Gerald Yin, AMEC's founder, Chairman and CEO; Steve (Aihua) Chen, Executive Vice-President and board member; Xueyu Qian, Vice-President and General Manager, Etch Division; and Lee Luo, General Manager, CVD Division. AMEC, http://www.amec-inc.com/about/officers.php (last visited Feb. 1, 2008), Strapp Decl. Ex. 10. The website touts these officers' former experience and responsibility at Applied; with the exception of Qian, each of them came directly to AMEC from Applied. The Dun & Bradstreet report contains no details about AMEC Asia, but identifies the officers of AMEC China as Yin (Chairman and President) and Qian (Vice-President). *See* Dun & Bradstreet, Strapp Decl., Ex. 2.

press release.  On December 4, 2007, just four days after its General Counsel submitted his declaration saying AMEC Inc. does not "design, manufacture, sell or market any products," AMEC Inc. announced "its official entry into the global semiconductor capital equipment market." *See* AMEC Inc. Press Release dated Dec. 4, 2007, *AMEC Enters Semiconductor Capital Equipment Market With Portfolio of Advanced Process Tools*, Strapp Decl. Ex. 11.  The press release makes clear that AMEC Inc. designs, manufactures, markets and sells semiconductor capital equipment, and that its products have already been shipped and installed.  *Id.*

Defendants have not made any attempt to explain these inconsistencies, even though Applied had noted them in a previous motion.  But even apart from the inconsistencies, Applied has reason to question the accuracy — if not the credibility — of defendants' representations regarding the AMEC entities and their contacts with California.  For example, although defendants now claim that AMEC China is the name of the AMEC operating business, they earlier described the operating company as AMEC Shanghai.  Declaration of Matt Ruby In Support of Opposition to Plaintiff's Motion to Expedite Discovery and Preserve Evidence ¶ 2, Strapp Decl. Ex. 12.  Further, through a declaration of its General Counsel, Matthew Ruby, AMEC Inc. now says that a boast on its website about its U.S. "service and support operation," *see* AMEC, http://www.amec-inc.com/business/offices/php (last visited Feb. 1, 2008) ("AMEC maintains service and support operations in China, Japan, Taiwan, Korea, Singapore and the U.S."), Strapp Decl. Ex. 13, is essentially false, and that the U.S. "operation" is only a reference to the address of a Shanghai-based AMEC employee.  Ruby's Decl. In Support of Motion to Dismiss ¶ 9.  Indeed, in this Motion to Dismiss, AMEC has for the first time revealed the existence of a fourth AMEC entity. *See* Chen's Decl. In Support of Motion to Dismiss ¶ 2.

In short, while there may be a factual dispute about what AMEC Inc. is and does, there is abundant evidence that it is essentially an alter ego of AMEC China.

## III.    ARGUMENT

### A.    SPECIFIC JURISDICTION EXISTS OVER DEFENDANTS.

#### 1.    Legal Standard

A three-part test governs whether a court has specific jurisdiction over a non-resident defendant: (1) the non-resident defendant must purposefully avail itself of the forum state; (2) the claim must be one that arises out of defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.[5]  *Yahoo! v. La Ligue Contre le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006).  Only the first prong of this test — "purposeful availment" — is truly in dispute here.[6]  To determine whether this first prong is met in tort cases, the Ninth Circuit applies the "effects test."  *Id.* at 1206.  The effects test has three elements:  (1) an intentional act by the defendant; (2) purposefully directed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Yahoo!*, 433 F.3d at 1206.

Although AMEC Inc.'s original personal jurisdiction argument failed to acknowledge the effects test, AMEC Inc.'s Motion at 3-8, AMEC now agrees that this is the law, and that under the effects test, jurisdiction can be exercised over a defendant charged with intentional tortious conduct even where the defendant's only "contact" with the forum state is the "purposeful direction" of a <u>foreign act</u> having <u>effect</u> in the forum state.  *Id.* at 1206; *see* AMEC China's Motion to Dismiss First Amended Complaint ("AMEC China's Motion") at 3-6.  Established by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783, 789 (1984), which involved an allegedly defamatory publication in Florida about a California actress, the effects test – as its name suggests – focuses not on the locus of defendant's actions but rather on the locus of the effects of

---

[5]  Because California's long-arm statute reaches to the full extent permitted by the Constitution, Cal. Code Civ. Pro. § 410.10, the state and federal jurisdictional analyses are identical. *Yahoo! v. La Ligue Contre le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  Due process requires that a defendant have "minimum contacts" with the forum such that it could reasonably foresee being haled into court here, and the exercise of personal jurisdiction comports with notions of "fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 476 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction may be based on either "general" or "specific" jurisdiction.  *Yahoo!*, 433 F.3d at 1205.  On the facts presently available to it, Applied does not rely on a "general jurisdiction" theory.

[6]  It cannot be disputed that this action would not have arisen "but for" the forum-related actions alleged in the FAC.  *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995) (if plaintiff would not have suffered loss "but for" the defendant's forum-related activities, courts hold that the claim arises out of the defendant's forum-related activities).  And AMEC does not contend that jurisdiction is unreasonable.  *See Bancroft & Masters v. Augusta Nat'l,* 223 F.3d 1082, 1088 (9th Cir. 2000) (defendant bears the burden of demonstrating unreasonableness, and must put on a "compelling case").

those actions.  *Yahoo!*, 433 F.3d at 1206 (citations omitted).  In *Calder*, the Supreme Court succinctly explained the logic and equity of the effects test:  "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."  465 U.S. at 790.

The Ninth Circuit has interpreted the effects test's requirements liberally.  For example, in the 2006 *Yahoo!* decision, the Ninth Circuit found personal jurisdiction where a defendant's only contacts with California were actions taken in connection with a lawsuit it had previously filed in France against the California plaintiff.  *See id.* at 1209 (defendant had sent plaintiff a cease and desist letter, served process on plaintiff, and obtained orders from the French Court requiring Yahoo! to take certain actions).  And in another recent case, *Facebook, Inc. v. ConnectU LLC*, No. C 07-01389 RS, 2007 U.S. Dist. LEXIS 61962 (N.D. Cal. Aug. 13, 2007), this Court found that alleged wrongful conduct involving an internet site was expressly aimed at plaintiff, even though the defendant had <u>no knowledge</u> as to geographical location of the plaintiff and thus was ignorant as to the forum in which the harm was likely to be suffered.  *Facebook, Inc.*, 2007 U.S. Dist. LEXIS 61962, at *16.

Where, as here, AMEC has not requested an evidentiary hearing, Applied must only demonstrate a *prima facie* case of jurisdiction.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (where the Court receives only written submissions, "the plaintiff need only make a *prima facie* showing of jurisdiction to avoid the defendant's motion to dismiss").  Once a court holds that the plaintiff has made a *prima facie* showing of personal jurisdiction, a plaintiff carries the ultimate burden of proving personal jurisdiction by a preponderance of the evidence if the defendant continues to contest personal jurisdiction at trial.  *See Peterson v. Highland Music. Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998).  For purposes of the *prima facie* analysis, Applied's uncontroverted allegations, and the reasonable inferences that can be drawn therefrom, must be accepted as true.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002); *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989).

> **2.**    **This Court Has Personal Jurisdiction Over AMEC China And AMEC Asia Under The Effects Test.**

As set forth below, the uncontroverted facts alleged**,** and the reasonable inferences drawn therefrom, demonstrate that this Court has specific jurisdiction over AMEC Asia and AMEC China (collectively "AMEC" for purposes of this section) under the Ninth Circuit's effects test.

### (a)    It Is Undisputed That Applied Has Alleged Intentional Acts Causing Harm In California.

AMEC does not seriously dispute that the first and third elements of the effects test are met here.   As to the first element, Applied indisputably alleges intentional torts, including misappropriation of trade secrets and intentional interference with contractual relations.  *E.g.*, FAC ¶¶ 40-44, 49, 53, 57-58.

With regard to the third element of the effects test, AMEC can not realistically dispute that it knew that Applied, a California-based company, would be harmed by these intentional actions in California.  The founders and high-ranking executives of the AMEC entities are former Applied employees, *id.* ¶¶ 31-35, and AMEC thus knows that Applied is a California-based company. AMEC also knows that Applied has spent billions of dollars on research and development in California to create its California trade secrets, and each year spends millions of dollars to ensure that its trade secrets remain protected.  AMEC's executives participated in these activities while employed in California. *Id.* ¶ 22.  *See Dole Food Co.,* 303 F.3d at 1113-14 (a company's principal place of business is the location of corporate injury).

### (b)    AMEC's Intentional Acts Were Purposefully Directed Toward Applied In California.

In addition, AMEC purposefully directed its activities toward Applied in California. AMEC misused Applied's California trade secrets and interfered with Applied's California contracts, and enabled its malfeasance through the recruitment of Applied's current and former employees in California.  *E.g., FAC ¶¶ 6, 36, 40-44, 49-50.*  The intellectual property in Applied's trade secrets is located in California; that property was developed and created in California; and that property is protected under the law of California.  Similarly, Applied's contracts were entered into in California, and its rights under those contracts are protected by California law.  In connection with its founding in 2004 by Yin and Chen, AMEC reached into California to

purposefully recruit Applied employees with knowledge of Applied's trade secrets, enticing them to leave Applied in California and join AMEC. *Id.* ¶ 6, 36. In inducing Applied's former employees to disclose Applied's trade secrets and/or assign to it patents including such trade secrets, AMEC intentionally misappropriated Applied's California property and interfered with Applied's employment agreements, which were agreed to in California and are governed by California law. Very simply, the platform for AMEC's business was human capital and intellectual property located in California, and AMEC's misuse of Applied's property and interference with Applied's contracts was conduct that was targeted at Applied in California.

Ninth Circuit precedent makes it abundantly clear that the level of "purposeful direction" found here is more than sufficient for personal jurisdiction over AMEC Asia and AMEC China. Both companies were formed and developed on the basis of efforts that targeted California, and the resultant tortious conduct — misappropriation and tortious interference by AMEC China, and tortious interference (at least) by AMEC Asia — would not have occurred without those contacts. This amount of targeting easily exceeds that in cases where jurisdiction has been found. *See Yahoo!*, 433 F.3d at 1209 (jurisdiction over French defendant based solely on communications to California from France regarding lawsuit brought in France); *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1088-89 (9th Cir. 2000) (jurisdiction based solely on nonresident defendant's letter to nonresident domain registration company challenging resident plaintiff's use of an internet domain name); *Panavision Int'l LP v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (jurisdiction where nonresident registered plaintiff's trademark as his domain name; even though the act took place outside California, defendant's deliberate choice of the trademark "targeted" the California plaintiff). Pointing to a case that failed to meet the effects test, the Ninth Circuit in *Bancroft* observed that, "there was no showing that the defendants even knew of the existence of the plaintiffs, let alone targeted them individually." *Bancroft*, 223 F.3d at 1088 (discussing *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 420 (9th Cir.1997)).

Courts in the Ninth Circuit, when faced with allegations similar to those here, have found "purposeful direction." In *Portrait Displays, Inc. v. Speece*, No. C 04-1501 RMW, 2004 U.S. Dist. LEXIS 18595, *18 (N.D. Cal. 2004), the Court found personal jurisdiction over a foreign

defendant where the intellectual property of the California plaintiff was allegedly misappropriated. The Court noted "[t]he alleged misappropriation of [plaintiff's] property by [defendant's] agents and [defendant's] alleged use of it amount to 'purposeful direction' of activities at the forum under the 'effects' test." *Id.* Additionally, the Ninth Circuit has consistently found "purposeful direction" based on allegations of tortious interference with a forum plaintiff's contract, even where all of the defendant's conduct occurred outside the forum. *See CE Distrib., LLC v. New Sensor Corp.,* 380 F.3d 1107, 1111 (9th Cir. 2004) (jurisdiction where defendant's intentional conduct outside of the United States alleged to impair Arizona plaintiff's contractual rights); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1331 (9th Cir. 2003) (defendant's conduct in London interfered with California plaintiff's contractual relations); *Brainerd v. Governors of University of Alberta,* 873 F.2d 1257, 1259-60 (9th Cir. 1989) (Canadian defendant alleged to have intentionally interfered with Arizona contract).

Here, AMEC's targeting of Applied in California goes even further than its targeted "tortious" conduct. The entire platform from which AMEC committed these torts was built on contacts with California. As explained above, AMEC was formed by two Applied employees, one of whom was still employed by Applied in California at the time. It is uncontroverted that AMEC was seeded with other former Applied employees, who were necessarily recruited in and hired from California. These recruitment and hiring contacts with California — while perhaps not illegal on their own — are absolutely relevant to the jurisdictional analysis, as they were the predicate for the tortious conduct. *See Yahoo!,* 433 F.3d at 1207 ("In any personal jurisdiction case we must evaluate all of the defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant."). AMEC's tortious conduct plainly arises out of these targeted recruitment and hiring efforts, and without these forum-related activities the tortious activity would not have occurred.

In sum, AMEC's actions were purposefully directed at California. Its tortious conduct alone — including misappropriating Applied's California property and interfering with Applied's California contracts — demonstrates sufficient targeting for personal jurisdiction to exist, under the precedent discussed above, and its additional contacts are icing on the cake. Ample Ninth

Circuit law demonstrates that this Court has personal jurisdiction.

### (c)     AMEC's Arguments on Purposeful Direction Lack Merit.

AMEC's arguments on the "purposeful direction" prong of the effects test rest on a crabbed reading of Applied's allegations.  Even though, as explained above, Applied's Complaint is replete with allegations of conduct occurring in and directed at California, AMEC disingenuously argues that "the allegations of the FAC relate exclusively to actions that took place in China."  AMEC, Inc.'s Motion at 4.  *See also* AMEC China's Motion at 1 (claiming jurisdiction cannot be based on the "distant activities of foreign companies in China"); *Id.* ("Applied has attempted to premise jurisdiction over AMEC China on the basis that former Applied employees now work at AMEC China); *Id.* at 4 (arguing that it "hired employees *in China*"); *Id.* at 5-6 (arguing that "merely hiring a forum resident's former employee" is not enough to establish jurisdiction).  AMEC's myopic focus on actions in China not only distorts Applied's allegations, it also reflects a misunderstanding of the law.  For even if the relevant actions of AMEC had taken place entirely in China, personal jurisdiction would still be proper under the "effects test," which focuses on where the actions were aimed.  *Yahoo!*, 433 F.3d at 1206.

Ignoring applicable Ninth Circuit precedent, AMEC relies on inapt and distant federal cases.  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997), is readily distinguishable.  The South Carolina plaintiff in that case alleged that two nonresident defendants conspired with its former employee, also a nonresident, to steal plaintiff's business.  *Id.* at 621.  The Court, in dicta, found no specific jurisdiction, reasoning that all contacts among the three co-conspirators were carried out in and between New Hampshire and Florida, and that the sole connection to the forum was that defendants acts "might" cause damage to the plaintiff in the forum.  *Id.* at 625-26.  Here, in contrast, Applied alleges that AMEC was founded by former Applied employees while such employees were still located in California, and that AMEC purposefully "entered into" California to recruit additional California employees in possession of California trade secrets to leave the forum, join AMEC in China, and breach their employment agreements.

As in *ESAB*, the court in *Drayton Enterprises, LLC v. Dunker*, 142 F. Supp. 2d 1177 (D.N.D. 2001), another case cited by AMEC, found no specific jurisdiction, focusing on the fact that – unlike here – defendants did not metaphorically "reach into" the forum to target plaintiff's employees; rather, the employee that disclosed trade secrets to the nonresident defendant was living in a foreign state at the time. *Id*. at 1184. The Court specifically stated that the case for personal jurisdiction would have been stronger had the defendant "enticed" the employee away from the forum state. *Id*. Such "reaching into" and "enticement" are exactly what is alleged here. FAC ¶ 6, 36. *Consulting Engineers, Inc. v. Geometric Software Solutions and Structure Works LLC*, No. 1:06-cv-956 (JCC), 2007 U.S. Dist. LEXIS 49398, *15 (E.D. Va. July 6, 2007), another case relied on by AMEC, is similarly distinguishable, as the plaintiff's former employee was hired by defendant when that employee was living in India, not the forum state.

The balance of non-Ninth Circuit authority actually favors Applied, as federal courts faced with factual allegations similar to those here have found jurisdiction. In *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 722 (D. S.C. 2007), for example, plaintiff alleged that defendant interfered with plaintiff's business relations by contacting and hiring several of its key employees in South Carolina. The court found that defendant's solicitation of plaintiff's employees in South Carolina a sufficient contact with the forum. *Id*. *See also Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2007 U.S. Dist. LEXIS 33497, at *13-26 (D. Kan. 2007) (exercising personal jurisdiction based on corporation's acquisition of plaintiff's customer lists, method of soliciting business, customer contacts and trade secrets outside of Kansas from its founder, who became aware of these trade secrets through his previous employment with plaintiff); *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1230 (D. Kan. 2000) (defendant, "capitalizing on the knowledge held by plaintiff's former employees, . . . should have been aware that its role in benefiting from the individual defendant's tortious activities would harm plaintiff, a Kansas resident, and that the derivation of such benefits at plaintiff's expense would require it to defend itself in the plaintiff's forum state").

In short, AMEC fails to accurately acknowledge Applied's allegations, fails to consider applicable Ninth Circuit precedent, and fails in its hunt for persuasive out-of-circuit authority.

**3.    Applied Has Established At Least A Prima Facie Case Of Jurisdiction Over AMEC Inc.**

Applied contends that it has demonstrated the existence of specific jurisdiction over both AMEC Asia and AMEC China based on their intentional actions directed at California. Applied also contends that AMEC Inc. has an alter ego or agency relationship with its subsidiaries, and that those subsidiaries' contacts with California should therefore be imputed to AMEC Inc. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (contacts of alter ego or agent with forum will suffice for personal jurisdiction).

As explained above, AMEC Inc.'s website and press release strongly indicate that it is, in fact, the operating company that was formed to compete with Applied. Contrary to the representations of its General Counsel, AMEC Inc. does, in fact, appear to design, develop, market and sell semiconductor capital equipment. In other words, AMEC Inc. *is*, or is at least indistinguishable from, the operational entity that defendants describe as AMEC China. This impression — that AMEC Inc. and AMEC China are more or less one and the same — is confirmed by the virtual total overlap in management indicated in their organizational charts. These facts strongly suggest an alter ego relationship, as based on these facts "there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist." *Unocal*, 248 F.3d at 926.

A key factor in determining whether companies are alter egos is whether the parent is involved in the subsidiary's day-to-day operations. *Id.* at 926-27. Although AMEC Inc. contends that it is merely a "parent" or "holding company," the materials discussed above indicate that it is, at a minimum, "involved in" operating the business that defendants describe as AMEC China's. The apparent functions of AMEC Inc.'s officers — sales, Etch Division, CVD Division — further suggest that AMEC Inc., at the very least, is "involved" in its subsidiaries' day-to-day operations. The departments indicated on its organizational chart — Product Group, Business Management, Corporate Marketing, etc. — suggest the same thing. This information also indicates that an agency relationship exists, that is, that AMEC Inc. would itself perform the services provided by AMEC China and AMEC Asia if they did not exist. *Unocal,* 248 F.3d at 928 (agency relationship

if subsidiary "either established for, or engaged in" activities the parent would otherwise have to do itself). The virtually total interlocking managements between AMEC Inc. and AMEC China is another factor demonstrating an alter-ego relationship. *Seltzer Sister Bottling Co., Inc. v. Source Perrier S.A.*, No. C 90-1468 MHP, 1991 U.S. Dist. LEXIS 18206, at *9 (N.D. Cal. 1991).

Another factor in the alter ego analysis is whether the subsidiary is undercapitalized. *Unocal*, 248 F.3d at 927. The December 4, 2007 press release, praising the help of AMEC Inc.'s investors in providing "the financial resources to develop and commercialize our technology," suggests that AMEC China is receiving financial support from AMEC Inc. It also appears from a declaration of Mr. Ruby that AMEC Inc. has paid for certain expenses one would normally associate with AMEC China or AMEC Asia, such as consultants' fees and legal fees for intellectual property issues. Ruby's Decl. In Support of Motion to Dismiss ¶ 8. The logical inference is that the subsidiaries are not sufficiently capitalized to shoulder these expenses.

This Court need not definitively resolve factual disputes about AMEC Inc. at this procedural juncture. The law is clear that factual conflicts bearing on personal jurisdiction are to be resolved in plaintiff's favor for purposes of deciding a motion to dismiss. *See e.g.*, *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 1002); *Bancroft*, 223 F.3d at 1087. All that needs to be shown at present is a prima facie case of jurisdiction. *Id.* That showing has been made.

### 4. If The Court Finds That Applied Has Not Established a Prima Facie Case of Jurisdiction, It Should Continue the Hearing.

If this Court were to find that Applied has not established a prima facie case, it should continue the hearing until Applied has obtained the jurisdictional discovery to which it is entitled.[7] *See Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery should ordinarily

---

[7] Because of sharp inconsistencies between the publicly available information about AMEC Inc. and defendants' representations about AMEC Inc., Applied sought discovery from defendants so it could untangle the relationships of the three entities, as well as obtain information about their respective contacts with California. It received a small fraction of the discovery it sought, and to which it is entitled, during the late evening of February 1, 2008, the last business day before this opposition brief was due. *See* Declaration of Michael Strapp in Support of Applied's Opposition to Defendants' Motion to Dismiss ¶ 9. Most of the 208 pages it received were written in Chinese, and could not be translated in time to be incorporated into this brief. *Id.* at ¶ 10. None of the discovery appears to relate to the AMEC entities' contacts with California in connection with recruiting and hiring. *Id.* at ¶ 11.

be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."). The Ninth Circuit has specifically held that jurisdictional discovery may be required where a plaintiff seeks to establish jurisdiction under agency or alter ego theories. *See, e.g., Harris Rutsky*, 328 F.3d at 1135 (finding that the district court abused its discretion in denying motion for jurisdictional discovery regarding agency and alter ego theories where "further discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction"); *Chan v. Society Expeditions,* 39 F.3d 1398, 1405-6 (9th Cir. 1994) (remanding to district court because insufficient record facts to decide whether alter ego or agency tests met).

Applied is entitled to jurisdictional discovery not only regarding the relationships among the AMEC entities, to fortify its alter ego theory, but also regarding all of the AMEC entities' contacts with California. *See Laub*, 342 F.3d at 1093; *Yahoo*, 433 F.3d at 1207. The discovery Applied seeks is likely to buttress Applied's factual allegations and reveal additional relevant "contacts" with California. For example, discovery will surely reveal specific communications between AMEC entities and former or current Applied employees located in California that were targeted for recruitment. *E.g., El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) (remanding because "even though El-Fadl's present jurisdictional allegations are insufficient, he has sufficiently demonstrated that it is possible that he could supplement them through discovery"). Applied has sought discovery on these issues, but has not yet received anywhere close to the information to which it is entitled. Accordingly, the hearing on AMEC's motions should be continued if AMEC's motions are not denied.

### B.    CUTSA CAN BE APPLIED HERE, AND APPLIED'S OTHER CLAIMS ARE NOT PREEMPTED.

#### 1.    AMEC's Extraterritoriality Argument Lacks Merit.

Defendants' "extraterritoriality" argument is specious. Like its personal jurisdiction argument, it is based on the incorrect premise that Applied's allegations pertain only to events occurring in China. As explained above, this action seeks to apply California law to AMEC's conduct that substantially occurred in, was directed at, and caused injurious effects in California.

But even if AMEC were right, and all of the conduct alleged by Applied occurred in China, AMEC's argument would still fail because California law applies where a defendant's out-of-state conduct causes injury in California. *See Ready Transp., Inc. v. AAR Mfg., Inc*., No. 02:06-cv-1053-GEB-KJM, 2006 WL 2131308, at *3 (E.D. Cal. July 27, 2006) (California law applies to out-of-state conduct if it caused injury to plaintiffs in California).

AMEC misreads the cases it relies on for its extraterritoriality argument. It contends that "California law does not apply to conduct occurring outside the state," AMEC's Inc.'s Motion at 8, and as authority cites *Norwest Mortgage, Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999). But *Norwest* plainly indicates that injury to California residents is sufficient for application of California law. *Id*. at 222-27 (denying application of California's Unfair Competition Law ("UCL") only to claims where both the injury and the injury-producing conduct occurred outside California, while applying UCL to claims where class members were either injured in California and/or the injury-producing conduct occurred in California). *See also Nat'l Notary Ass'n v. U.S. Notary*, No. D038278, 2002 WL 1265555, at *4 (Cal. Ct. App. June 7, 2002) (California court could issue an injunction outside of state even if defendant's activities were conducted solely outside the state in part because conduct detrimentally affected a California corporation).

Because Applied has alleged conduct by defendants that both substantially occurred, and caused injurious effects, in California, CUTSA can be applied here and this Court should deny AMEC's motion to dismiss.

### 2. Applied's Other Claims Are Not Preempted Because They Are Based on Facts Independent of Misappropriation.

AMEC exaggerates the extent to which CUTSA preempts other claims. The California legislature rejected the express preemption provision in the Model Uniform Trade Secrets Act, *Ernest Paper Prods., Inc. v. Mobil Chemical Co., Inc.*, No. CV95-7918 LGB (AJWX), 1997 WL 33483520, at *7 (C.D. Cal. Dec 2, 1997)*, and Section §3426.7 of CUTSA explicitly provides that CUTSA does not displace "other civil remedies that are not based upon misappropriation of a trade secret." Accordingly, the "preemptive" force of CUTSA is limited to claims based on the

same facts as a misappropriation claim. Where, as here, other claims are based on additional or independent factual allegations, they are not preempted. *AirDefense, Inc.* v. *AirTight Networks, Inc.*, No. C 05-04615JF, 2006 WL 2092053, at *5 (N.D. Cal. July 26, 2006) (intentional interference claim not preempted where plaintiffs alleged facts additional to those alleged in misappropriation claim); *PostX Corp. v. Secure Data in Motion, Inc.*, No. C 02-04483 SI, 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20, 2004) (common law unfair competition claim not preempted because not based on precisely the same nucleus of facts as misappropriation claim); *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04-cv-2562 JM (BEN), 2007 WL 3333095, at *5 (S.D. Cal. Aug. 20, 2007) (intentional interference with prospective economic advantage claim not preempted where plaintiff presented evidence of independent wrongs). The cases relied upon by AMEC — all of which are summary judgment decisions or other decisions based on a developed factual record — confirm the limited extent of CUTSA preemption. *See*, *e.g.*, *Digital Envoy, Inc.* v. *Google, Inc.*, 370 F. Supp. 2d 1025, 1034 (N.D. Cal. 2005) (claims preempted where based on "identical nucleus of facts as those alleged in the misappropriation claim.").

Under this standard, Applied's other claims are not preempted. As part of its intentional interference claim, for example, Applied alleges that AMEC caused its employees to breach their employment agreements with Applied by assigning certain patent applications to AMEC Shanghai (AMEC China) and AMEC Asia. FAC ¶ 58. These facts are independent of those underlying the misappropriation claim, and thus CUTSA does not preempt Applied's tortious interference claim (Count II). Similarly, Applied's conversion and unfair competition claims — both of which re-allege and incorporate by reference the intentional interference allegations, *id.* ¶ 60, 66 — are not preempted. Applied's conversion claim alleges that AMEC has wrongfully converted Applied's contractual rights of assignment under the Employee Agreements, and its unfair competition claim alleges that AMEC engaged in unlawful business practices by directing the AMEC Employees to assign patents to AMEC. Because these allegations are also independent of the misappropriation allegations, CUTSA does not preempt Applied's conversion and unfair competition claims.

In short, the allegations in Applied's complaint – which, at this juncture, must be taken as true and construed in light of the liberal notice-pleading requirements of Rule 8 of the Federal

Rules of Civil Procedure – demonstrate that Applied's other claims are based on different facts than its misappropriation claim, and they are not preempted by CUTSA.

### C.    THE PROPER FORUM FOR THIS CASE IS CALIFORNIA

Finally, AMEC has not come close to carrying its "heavy burden" to prove that this case should be dismissed on *forum non conveniens* grounds. Where, as here, the plaintiff has brought suit in its home forum, "it is reasonable to assume that this choice is convenient," *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1143 (9th Cir. 2001), and that choice should rarely be disturbed. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 255-56 (1981). Given this standard, it is not surprising that AMEC does not cite a single case in which a suit in California filed by a California plaintiff has been dismissed on *forum non conveniens* grounds.

To overcome this presumption, AMEC must show both that (1) an adequate alternative forum exists; and (2) the balance of public and private interest factors favor dismissal. *Lueck,* 236 F. 3d at 1142-43. Even then, dismissal is warranted only if the balance of interests <u>strongly</u> favors trial in China, *see Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1334 (9th Cir. 1984), and trial in California is shown to cause "oppression and vexation" out of proportion to Applied's convenience. *See American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994). This high standard makes *forum non conveniens* an "exceptional tool to be employed sparingly...." *Dole Food Co.,* 303 F. 3d at 1111; *Quackenbush v. Allstate Ins. Co*., 517 U.S. 706, 722 (1996) (forum non conveniens is rarely applied).

### 1.    China Is Not An Adequate Alternative Forum.

As to the "adequate alternative forum" question, AMEC cites no reported case holding that Chinese courts provide an adequate alternative forum for a civil lawsuit filed in federal court in the United States, much less a suit similar to this one. It makes no argument, moreover, that the injunctive relief sought by Applied, including the reassignment of AMEC's patents to Applied, is even available in the Chinese judicial system, and it does not argue that applicable California law, *see infra*, would be applied by a Chinese court. In short, it is likely that a Chinese forum is inadequate for this matter.

AMEC's argument on the adequacy of the Chinese forum is based entirely on the Declaration of Huaiyu Xu. Assuming everything Mr. Xu says is correct, it is difficult to see how AMEC can conclude from Mr. Xu's declaration that "the Chinese Courts . . . provide procedures comparable to those used in this Court." AMEC Inc.'s Motion at 14. Among other things, a civil litigant in China has no right to discovery from its adversary; no right to examine or call witnesses at trial, or even to present evidence, without the permission of the court; and no right to a jury trial. The process in Chinese civil courts does not appear appropriate for this matter, in which both parties have acknowledged the need for significant discovery.

Applied takes little comfort from its apparent ability to present evidence with "the permission of the court," especially in view of AMEC's cryptic yet ominous representation, in its brief, that "China has a strong interest in protecting _its_ emerging companies from the anti-competitive conduct of more established institutions." _Id._ at 16 (emphasis added). And while the lack of a jury trial may not itself render a forum inadequate, _Lockman Foundation v. Evangelical Alliance Mission_, 930 F.2d 764, 768 (9th Cir. 1991); _but cf. Doe v. Sun International Hotels Ltd._, 20 F. Supp. 2d 1328, 1330 (S.D. Fla. 1998) (lack of jury trial was a "practical problem" with alternative forum), this difference raises concerns here, given that Chinese judges not only find facts, but also can investigate facts independently of the parties, and that the structure of the Chinese judicial system reportedly has features that can challenge the independence of those judges. _See_ Z. Jianhua & Y. Guanghua, "Establishing the Truth on Facts: Has the Chinese Civil Process Achieved This Goal?" 13 J. TRANSNATIONAL LAW & POLICY 393, 400 (2003) (describing the Chinese judicial system as an inquisitorial system where judges conduct "an active and independent inquiry into the merits of the case") and 414-15 (noting influence over judges' decisions, even in civil cases, by the Communist Party's "Political and Legal Committee"). In view of all of these significant issues, AMEC has not demonstrated that the Chinese judicial system provides a suitable alternate forum for this dispute.

## 2.     The Private and Public Interest Factors Favor A California Forum.

The private interest factors to be considered include: (1) relative ease of access to sources

of proof; (2) availability of compulsory attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) all other practical problems that make a trial expeditious and inexpensive. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947). The public interest factors include: (1) court congestion; (2) local interest in resolving the controversy; and (3) preference for having a forum apply a law with which it is familiar. *Contact Lumber Co. v. Moges Shipping Co. Ltd.*, 918 F. 2d 1446, 1452 (9th Cir. 1990). The balance of all these factors tips decidedly in favor of California as the proper forum for this case.

> **(a)    The Private Interest Factors Slightly Favor California or Are Neutral.**

Contrary to AMEC's suggestion that the bulk of the documents and witnesses are in China, AMEC Inc.'s Motion at 14, this factor is at most a wash. While it is undoubtedly true that important evidence and witnesses are located in China, there is a great deal of important evidence, and important witnesses, located in California as well. For example, Applied has the burden of proving its trade secrets. Those secrets were developed and protected in California, and Applied's proof will be based largely on California documents and witnesses. AMEC has made clear that it disputes whether Applied's alleged trade secrets are in fact secret, *see* Joint Case Management Statement at 2, Strapp Decl. Ex. 14, and its discovery requests demonstrate that AMEC itself believes there is substantial relevant information in Applied's possession on this and other issues. *See* AMEC Inc.'s First Set of Document Requests to Plaintiff Applied Materials, Inc., Strapp Decl. Ex. 15, (including 33 document requests aimed at information in Applied's possession). At bottom, this factor is neutral. *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., Ltd.*, No. AP-75731, 2007 WL 2403359, at *9 (N.D. Cal. Aug. 20, 2007) (holding that the defendant failed to carry its burden of proof that Chinese courts would have easier access to evidence because witnesses and documents are likely in both California and China).

AMEC's cryptic reference to Chinese witnesses beyond the reach of compulsory process, AMEC Inc.'s Motion at 15-16, must be disregarded, as it does not explain why these witnesses have relevant information. Nonparty witnesses who are more likely to be significant are AMEC's numerous California investors, with whom AMEC surely had conversations about its intellectual

property program.  AMEC further argues that the travel costs associated with trial in California would be burdensome and thus favor trial in China.  *Id.* at 15.  But AMEC fails to show how the cost of trial in California would establish such "vexation or oppression" as it must under the *forum non conveniens* standard, nor do they address the fact that such costs would be the same for Applied if the trial occurred in China.  *See Mintel*, 2007 WL 2403359, at *10.  In sum, the private interest factors favor California, or are in the very least neutral.

### (b)    The Public Interest Factors Weigh Heavily in Favor of A California Forum.

California has a strong interest in resolving this controversy, a public interest factor that weighs against dismissal.  Numerous cases have recognized that "California has a strong interest in providing a forum and effective means of redress to its residents who are tortiously injured." *Portrait Displays*, 2004 U.S. DIST LEXIS 18595, at *25 (citing *Dole*, F.3d at 1115-1116, and *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993)).  *See also Gates Learjet*, 743 F.2d at 1336 (state "has an interest in protecting its companies from trademark infringement abroad to preserve the state's economic vitality").  This is as true in the trade secrets context as it is elsewhere.  *Mintel*, 2007 WL 2403359, at *11 (CUTSA demonstrates a strong legislative intent to protect California trade secrets).

AMEC's argument on the "local interest" factor is misdirected.  It argues that "China has a strong interest in protecting <u>its</u> emerging companies from the anti-competitive conduct of more established institutions." AMEC Inc.'s Motion at 16 (emphasis added).  But there is no issue of "anti-competitive conduct" in this litigation, and the "local interest" factor should be judged based on the actual claims in the case.  AMEC's argument about California's interest in the controversy — that it is not strong because California public policy favors "worker mobility" and "open competition," *id.* at 17 — is similarly wrongheaded.  Again, AMEC ignores the claims that are at issue here, which are based on, *inter alia*, the theft of Applied's trade secrets.  Plainly, California has a strong interest in this matter, outweighing any legitimate interest of China.

The second public interest factor weighing in favor of a California forum is that California law is likely to apply here.  *See, e.g., Contact Lumber*, 918 F.2d at 1452 (noting, under the public

23
LIBA/1851652.9

interest factors, "the preference for having a forum apply law with which it is familiar"). While this Court need not conduct a dispositive choice-of-law analysis at this point, *Lueck*, 236 F.3d at 1148, California law almost surely applies here based on California's superior interest in the controversy, as explained above. *See Magnecomp Corp. v. Athene Co., Ltd.*, 209 Cal. App. 3d 526, 539-40 (1989) (finding under California's "governmental interest" approach to conflicts that California law would apply to a claim under CUTSA against Japanese defendant, "[s]ince Japan has little, if any, interest in protecting the trade secrets of California, contrasted to California's strong interest in protecting its resident businesses from trade secret thefts"). In any event, AMEC has not made any argument under California's choice-of-law rules that Chinese law applies, and this failure counsels against dismissal. *See Diermenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWX), 2006 WL 4749756, at *18 (C.D. Cal. Sept. 25, 2006) ("choice of law factor weighs against a forum non conveniens dismissal" where "defendants have failed to establish that German law applies under California's choice of law rules").

Finally, AMEC has made no compelling showing about the "comparative congestion" of California and Chinese courts. Indeed AMEC concedes that this case — if it in fact were accepted by the Chinese judicial system — would at best be resolved "in a similar time frame to this Court." AMEC Inc.'s Motion at 16.

In conclusion, defendants have not met their heavy burden under the *forum non conveniens* doctrine. The Chinese forum is inadequate for this matter, and the balance of private and public interest factors favors the California forum.

**IV.    CONCLUSION**

For the foregoing reasons, AMEC's motions should be denied and Applied should be entitled to discovery as outlined above.

Dated: February 4, 2008

Respectfully submitted,

Applied Materials, Inc.

By its attorneys,

/s/ Michael G. Strapp
Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.:  650-752-3144
Fax:  650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander (*pro hac vice*)
James C. Rehnquist (*pro hac vice*)
Michael G. Strapp (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
jenglander@goodwinprocter.com
jrehnquist@goodwinprocter.com
mstrapp@goodwinprocter.com

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS; CASE NO. CV 07-05248 JW