# EXHIBIT 1

Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax:  617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax:  612-288-9696

Attorneys for Applied Materials, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., | Case No.: C 07 05248 JW |
| Plaintiff, | |
| v. | **PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION AND INSPECTION OF DOCUMENTS AND TANGIBLE THINGS TO DEFENDANTS** |
| ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT INC. | |
| Defendants. | |

Plaintiff Applied Materials, Inc. ("Applied ") hereby requests, pursuant to Fed. R. Civ. P. 34, that Defendants produce the documents and things described below for inspection and copying in accord with the following definitions and instructions. All documents and things to be produced should be produced within 30 days to the offices of Goodwin Procter LLP, Exchange Place, Boston, Massachusetts, 02109, and directed to the attention of Michael Strapp.

## DEFINITIONS

1) "You" and "Your" as used herein refers to each Defendant answering these document requests, and all persons, agents, attorneys, representatives, consultants or other persons or entities purporting to act on their behalf.

2) "Applied" shall refer to plaintiff Applied Materials, Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, parents, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf.

3) "AMEC Shanghai" shall refer to defendant Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd., and its present and former officers, directors, employees, attorneys, agents, representatives, parent, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf. "AMEC Shanghai" shall also refer to Advanced Micro-Fabrication Equipment Inc. China, the entity that Defendants have represented to Applied is the same entity as named defendant Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd.

4) "AMEC Asia" shall refer to defendant Advanced Micro-Fabrication Equipment Inc., Asia, and its present and former officers, directors, employees, attorneys, agents, representatives, parent, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf.

5) "AMEC Inc." shall refer to defendant Advanced Micro-Fabrication Equipment Inc., and its present and former officers, directors, employees, attorneys, agents, representatives, parent,

1

subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or purporting to act on its behalf.

6) "Yin" shall refer to Gerald Z. Yin.

7) "Chen" shall refer to AiHua Chen.

8) "Todaka" shall refer to Ryoji Todaka.

9) "Luo" shall refer to Lee Luo.

10) "Former employees" shall refer to all former Applied employees who are now, or have been in the past, employed by AMEC Shanghai, AMEC Asia, or AMEC Inc., and anyone acting or purporting to act on their behalf.

11) The term "document" includes, without limitation, the full range of material discoverable under Rule 34 of the Federal Rules of Civil Procedure, including email, whether from a personal or professional account. This includes physical documents and things as well as electronically stored and machine-readable files in any magnetic or electronic medium, and data or data fragments that may be found in such media even though not associated with any particular electronic file. Such media include, without limitation, hard drives, floppy diskettes, Zip disks, tapes, CD-ROMs, DVD-ROMs, flash memory, and the like. The term "document" also includes, without limitation, any file system data and "metadata" that is embedded in or associated with electronic files, including file history data (creation dates, modification dates, print dates, save dates, deletion dates, deleted or recoverable data, directory structure data, save locations, etc.), edit/undo history, document profile data, and embedded comments. It also includes, without limitation, originals and all nonidentical copies.

12) "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), and shall include any correspondence, contact, discussion, or any other kind of written, oral (either face-to-face or telephonic) or electronic exchange or

2

transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more persons or entities.

13) The term "concerning" is used herein in its broadest sense and includes, though is not limited to, referring to, addressed to, addressed from, addressing, describing, evidencing, relating to, involving, about, mentioning, containing, embodying or constituting, directly or indirectly.

14) "Digital storage devices" should be construed to include CD and DVD data disks, portable USB storage devices, external hard drives, and/or magnetic media.

15) "Email accounts" should be construed to include web-based email accounts as well as network-based email accounts and repositories of stored emails.

16) "Etch tool" or "Etch machine" means any apparatus for removing material from a substrate such as a semiconductor wafer.

17) "CVD tool" or "CVD machine" means any apparatus for depositing material onto the surface of a substrate such as a semiconductor wafer.

18) In construing these definitions, instructions, and document requests:  (i) the singular shall include the plural and the plural shall include the singular; (ii) "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of an interrogatory all information that might otherwise be construed to be outside its scope; (iii) verb tenses shall be interpreted to include past, present and future tenses; and (iv) the words "any" and "all" shall be read to mean each and every.

19) When referring to a person, "to identify" means to give the person's full name, present or last known address and telephone number, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be stated in response to subsequent discovery requesting the identification of that person.

3

20)    When referring to documents, "to identify" means to give the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

21)    When referring to communications, "to identify" means to give the (a) type of communication; (b) general subject matter; (c) date of the communication; and (d) participants in the communication.

## INSTRUCTIONS

1)    This Second Set of Document Requests to Defendants supersedes and is in lieu of Plaintiff's First Request to Defendants For the Production and Inspection of Documents and Tangible Things and Plaintiff's First Request For the Production and Inspection of Documents and Tangible Things to AMEC Inc.

2)    Documents and things either: (i) should be produced separately for each document request or, alternatively, be identified as produced with respect to the particular document request to which they are responsive; or (ii) should be produced as kept in the usual course of business, along with copies of the folders or other containers in which the documents are kept.

3)    These document requests seek the production of all non-identical copies of responsive documents, including drafts and copies upon which notes have been made. In producing the documents requested, please furnish all documents within your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your attorneys, spouse, agents, employees, or representatives.

4)    If any document cannot be produced in full, please produce such document to the extent possible, state the reason for the inability to produce the remainder of the document, and state whatever information, knowledge, or belief you have concerning the unproduced portion of the document, including without limitation the general subject matter of the unproduced portion.

4

5)     In the event any document responsive to these Requests is withheld from production based upon a claim of attorney-client, work-product, or any other privilege or immunity, explain the basis of the privilege or other protection you are claiming and provide a general description of the nature of the document you are withholding.

6)     These requests are continuing.  In the event that you become aware, after responding to these requests, of any information which will augment or modify your initial responses, please immediately furnish supplemental responses to Plaintiff's attorneys, as is required by Federal Rule of Civil Procedure 26(e).

7)     The defendants are instructed not to spoliate or allow the spoliation of electronic evidence pending discovery in this matter. In particular, defendants must not delete or alter the contents of:  (1) any email accounts to which they have access or over which they have possession, custody, or control; (2) any data stored on electronic devices in their possession, custody, or control, including but not limited to data stored on the hard drives of computers and data stored on any storage media in their possession, custody, or control; and (3) data stored in any personal digital assistant, BlackBerry, or flash memory device in their possession, custody, or control.

## DOCUMENTS AND THINGS TO BE PRODUCED

Request No. 1

    All U.S. and foreign patent applications (whether currently pending or not) filed by AMEC Shanghai, AMEC Inc., and/or AMEC Asia concerning any technology related to either CVD and/or Etch tools, that have not yet been made public.

Request No. 2

    All documents regarding the research and development of any matters disclosed in the following patent applications:  Chinese Patent Application No. 200510028563.2 filed on August 5, 2005; U.S. Patent Application No. 11/441,291, filed May 24, 2006; Japanese Patent Application No. 2006-214829, filed August 7, 2006; Chinese Patent Application No. 200510028564.7, filed on

5

August 5, 2005; U.S. Patent Application No. 11/350,022, filed February 8, 2006; and Japanese Patent Application No. 2006213916, filed August 4, 2006.

<u>Request No. 3</u>

All documents showing the design and/or specifications for any CVD or Etch machines currently or previously offered for sale, or placed for evaluation, by AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

<u>Request No. 4</u>

All operating manuals for CVD and/or Etch machines designed and/or manufactured by AMEC Shanghai, AMEC Inc., and/or AMEC Asia, and all documents regarding processes to be run on these machines, including any best known methods for such processes.

<u>Request No. 5</u>

All documents regarding any methods used by AMEC Shanghai, AMEC Inc., and/or AMEC Asia for improving vaporization of tetraethylorthosilicate (TEOS), tetraethylborate (TEB) and triethylphosphate (TEPO) during borophosphosilicate glass (BPSG) and undoped silica glass (USG) deposition processes.

<u>Request No. 6</u>

All documents regarding the research, development and use by AMEC Shanghai, AMEC Inc., and/or AMEC Asia of bulk materials, platings, coatings, anodizations (including "A-coating"), and adhesives, used in CVD and etch tools; including, in particular, aluminum oxide ($Al_2O_3$) bulk, silicon carbide (SiC) bulk, yttrium oxide ($Y_2O_3$) coating and bulk, high performance composites, quartz, silicon (Si), graphite, ceramic components, glass components, showerhead bonding adhesive, and other intrinsically impure materials.

<u>Request No. 7</u>

All documents regarding the research and development and use by AMEC Shanghai, AMEC Inc., and/or AMEC Asia of software for process control modules for rapid prototype development and recipe-conversion software.

6

Request No. 8

    All documents and things, including but not limited to, computer files, disks, thumb drives, DVDs, and other electronic storage media, that any current or former Applied employee provided to AMEC Shanghai, AMEC Inc., and/or AMEC Asia regarding Applied machines, Applied processes, and/or Applied trade secrets, and all Applied documents in the possession of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 9

    All documents regarding contacts between AMEC Inc., AMEC Shanghai, and/or AMEC Asia with California, including but not limited to, documents regarding California bank accounts, Board meetings held in California, the use of California legal counsel, the use of California consultants, investor meetings held in California, the California residences of employees or board members of AMEC Shanghai, AMEC Inc., and/or AMEC Asia, and service and support operations located in California, including all such service and support operations identified on AMEC's website.

Request No. 10

    All communications between AMEC Inc., AMEC Shanghai, and/or AMEC Asia, on the one hand, and Matt Ruby, Frank Masciocchi, and/or Robert Wu that occurred while Messrs. Ruby, Masciocchi and/or Wu were residing in or working in California.

Request No. 11

    All communications between AMEC Inc., AMEC Shanghai, and/or AMEC Asia, or any of their representatives or agents, on the one hand, and any employee of Applied during the period in which that employee was employed at Applied.

Request No. 12

    Documents reflecting the establishment, creation, or formation of AMEC Shanghai, AMEC Inc., and/or AMEC Asia, including but not limited to, articles of organization, annual filings, by-laws, certificates of incorporation (including any amendments thereto), and all

7

documents submitted by AMEC Shanghai, AMEC Inc., and/or AMEC Asia to any state, local, municipal, or national authority.

Request No. 13

All documents reflecting the existence or former existence and describing the identity of any corporate entity related to AMEC Shanghai, AMEC Inc., and/or AMEC Asia, excluding the named defendants.

Request No. 14

All resolutions and minutes of any Board meetings of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 15

All communications between AMEC Shanghai, AMEC Inc., and/or AMEC Asia, on the one hand, and any non-attorney consultant and/or actual or potential investors regarding the corporate formation, structure, and organization of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 16

All organization charts; all lists of officers, directors, and/or employees of AMEC Shanghai, AMEC Inc., and/or AMEC Asia; and all documents identifying the job descriptions of all employees, officers and directors of AMEC Shanghai, AMEC Inc., and/or AMEC Asia.

Request No. 17

All employment agreements of all officers and/or directors of AMEC Shanghai, AMEC Inc., and AMEC Asia.

Request No. 18

All documents reflecting the finances and capitalization of AMEC Shanghai, AMEC Inc. and/or AMEC Asia, including but not limited to, budgets, revenue forecasts, business plans, financial projections, 2007 bank statements, loan agreements, letters of credit, and guaranty agreements.

8

Request No. 19

All documents regarding AMEC Inc.'s involvement in the operations, management, corporate governance and/or finances of AMEC Shanghai and/or AMEC Asia.

Dated:  December 18, 2007

Respectfully submitted,

APPLIED MATERIALS, INC.,

By its attorneys,

Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax: 617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696

Attorneys for Applied Materials, Inc.

LIBA/1853409.1

9

1    I, Rachael Nelson, declare:

2        I am employed in the County of Santa Clara, California in the office of a member of the bar of this court at whose direction this service was made. I am over the age of eighteen and not a

3    party to this action. My business address is Goodwin|Procter LLP, 181 Lytton Avenue, Palo Alto, California 94301.

4
       On December 18, 2007, I served the following documents exactly entitled:

5
**PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION AND INSPECTION OF**

6    **DOCUMENTS AND TANGIBLE THINGS TO DEFENDANTS**

7    on the interested parties in this action by placing a true and correct copy thereof, on the above date, enclosed in a sealed envelope, following the ordinary business practice of is Goodwin|Procter LLP,

8    as follows:

9    **VIA EMAIL AND OVERNIGHT COURIER:**

10   Harold J. McElhinny
     Morrison & Foerster

11   425 Market Street
     San Francisco, CA 94105-2484

12
     [  ]   U.S. Mail:  I am personally and readily familiar with the business practice of is

13          Goodwin|Procter LLP for collection and processing of correspondence for mailing with the
            United States Postal Service, pursuant to which mail placed for collection at designated

14          stations in the ordinary course of business is deposited the same day, proper postage
            prepaid, with the United States Postal Service.  I caused such document[s] to be sent via

15          U.S. Mail according to the practices above.

16   [  ]   HAND-DELIVERY:  I caused such document[s] to be delivered by a courier service on the
            same day.

17
     [  ]   FACSIMILE TRANSMISSION:  I caused such document[s] to be sent by facsimile

18          transmission to the above-listed fax number for the party(ies) indicated.

19   [ X ]  EMAIL TRANSMISSION:  I caused such document[s] to be sent by email transmission to
            the party(ies) indicated.

20
     [ X ]  OVERNIGHT COURIER:  I caused such documents[s] to be delivered by an overnight

21          courier service for delivery by 10:30 a.m. the following business day.

22        I declare under penalty of perjury under the laws of the state of California that the foregoing
     is true and correct, and that this declaration was executed on December 18, 2007, at Palo Alto,

23   California.

24                                                          _Rachael Nelson_
                                                     _____
25                                                          Rachael Nelson

26

27

28

Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax: 617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696

Attorneys for Applied Materials, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., | Case No.: C 07 05248 JW |
| Plaintiff, | **PLAINTIFF'S SECOND SET OF** |
| v. | **INTERROGATORIES TO DEFENDANTS** |
| ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT INC. | |
| Defendants. | |

1        Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Applied

2    Materials, Inc. ("Applied ") hereby requests that Defendants answer the interrogatories set forth

3    below, separately and fully, in writing and under oath, within thirty (30) days after service of these

4    interrogatories.

5    **<u>Definitions</u>**

6    1)    "You" and "Your" as used herein refers to each individual Defendant answering these

7          interrogatories, and all persons, agents, attorneys, representatives, consultants or other

8          persons or entities purporting to act on their behalf.

9    2)    "Applied" shall refer to plaintiff Applied Materials, Inc., and its present and former

10          officers, directors, employees, attorneys, agents, representatives, parents, subsidiaries,

11          affiliates, assignees, predecessors in interest, successors in interest, and anyone acting or

12          purporting to act on its behalf.

13    3)    "AMEC Shanghai" shall refer to defendant Advanced Micro-Fabrication Equipment

14          (Shanghai) Co., Ltd., and its present and former officers, directors, employees, attorneys,

15          agents, representatives, parent, subsidiaries, affiliates, assignees, predecessors in interest,

16          successors in interest, and anyone acting or purporting to act on its behalf.  "AMEC

17          Shanghai" shall also refer to Advanced Micro-Fabrication Equipment Inc. China, the entity

18          that Defendants have represented to Applied is the same entity as named defendant

19          Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd.

20    4)    "AMEC Asia" shall refer to defendant Advanced Micro-Fabrication Equipment Inc., Asia,

21          and its present and former officers, directors, employees, attorneys, agents, representatives,

22          parent, subsidiaries, affiliates, assignees, predecessors in interest, successors in interest,

23          and anyone acting or purporting to act on its behalf.

24    5)    "AMEC Inc." shall refer to defendant Advanced Micro-Fabrication Equipment Inc., and its

25          present and former officers, directors, employees, attorneys, agents, representatives, parent,

26          subsidiaries, affiliates, assignees, predecessors in interest, successors in interest, and

27          anyone acting or purporting to act on its behalf.

28    6)    "Yin" shall refer to Gerald Z. Yin.

1

1    7)      "Chen" shall refer to AiHua Chen.

2    8)      "Todaka" shall refer to Ryoji Todaka.

3    9)      "Luo" shall refer to Lee Luo.

4    10)     "Former employees" shall refer to all former Applied employees who are now, or have

5            been in the past, employed by AMEC Shanghai, AMEC Asia, or AMEC Inc., and anyone

6            acting or purporting to act on their behalf.

7    11)     The term "document" includes, without limitation, the full range of material discoverable

8            under Rule 34 of the Federal Rules of Civil Procedure. This includes physical documents

9            and things as well as electronically stored and machine-readable files in any magnetic or

10           electronic medium, and data or data fragments that may be found in such media even

11           though not associated with any particular electronic file. Such media include, without

12           limitation, hard drives, floppy diskettes, Zip disks, tapes, CD-ROMs, DVD-ROMs, flash

13           memory, and the like. The term "document" also includes, without limitation, any file

14           system data and "metadata" that is embedded in or associated with electronic files,

15           including file history data (creation dates, modification dates, print dates, save dates,

16           deletion dates, deleted or recoverable data, directory structure data, save locations, etc.),

17           edit/undo history, document profile data, and embedded comments.  It also includes,

18           without limitation, originals and all nonidentical copies.

19   12)     "Communication" means the transmittal of information (in the form of facts, ideas,

20           inquiries, or otherwise), and shall include any correspondence, contact, discussion, or any

21           other kind of written, oral (either face-to-face or telephonic) or electronic exchange or

22           transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any

23           response thereto between two or more persons or entities.

24   13)     The term "concerning" is used herein in its broadest sense and includes, though is not

25           limited to, referring to, addressed to, addressed from, addressing, describing, evidencing,

26           relating to, involving, about, mentioning, containing, embodying or constituting, directly

27           or indirectly.

28

2

14) "Etch tool" or "Etch machine" means any apparatus for removing material from a substrate such as a semiconductor wafer.

15) "CVD tool" or "CVD machine" means any apparatus for depositing material onto the surface of a substrate such as a semiconductor wafer.

16) In construing these definitions, instructions, and interrogatories: (i) the singular shall include the plural and the plural shall include the singular; (ii) "and" and "or" shall be read either disjunctively or conjunctively so as to bring within the scope of an interrogatory all information that might otherwise be construed to be outside its scope; (iii) verb tenses shall be interpreted to include past, present and future tenses; and (iv) the words "any" and "all" shall be read to mean each and every.

17) When referring to a person, "to identify" means to give the person's full name, present or last known address and telephone number, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person needs to be stated in response to subsequent discovery requesting the identification of that person.

18) When referring to documents, "to identify" means to give the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

19) When referring to communications, "to identify" means to give the (a) type of communication; (b) general subject matter; (c) date of the communication; and (d) participants in the communication.

## INSTRUCTIONS

1) This Second Set of Interrogatories to Defendants supersedes and is in lieu of Plaintiff's First Set of Interrogatories to Defendants and Plaintiff's First Set of Interrogatories to AMEC Inc.

3

1   2)    These interrogatories call for all information in your possession, custody, or control, or in

2   the possession, custody, or control of your attorneys, agents, employees, officers, directors,

3   or representatives, or other persons acting under your authorization, employment,

4   direction, or control.

5   3)    If you are unable to answer any of these interrogatories in full after exercising due

6   diligence to secure the information requested, you should answer to the extent possible,

7   explain why you are unable to answer in full, and provide whatever information that you

8   have concerning the unanswered portion.

9   4)    If you object to any interrogatory, state the ground(s) of the objection with sufficient

10   specificity to permit the determination of the basis(es) for such objection.  Objection to a

11   portion of any interrogatory does not relieve you of the duty to respond to the parts that

12   you do not object to.

13   5)    If you withhold any information because you claim that it is protected by the work product

14   doctrine or the attorney-client or any other privilege or protection, identify the information

15   by description, date, author or source and subject matter, and state the ground(s) on which

16   you base your claim of privilege or protection.

17   6)    In the event that an interrogatory answer requires, in whole or part, consultation of a

18   document which is known to have existed and cannot now be located or has been

19   destroyed or discarded, that document shall be identified by: (a) the last known custodian;

20   (b) date of destruction or discard; (c) the manner of destruction or discard; (d) the reason(s)

21   for destruction or discard; (e) the efforts made to locate any documents that have been lost

22   or misplaced; (f) a statement describing the document, including a summary of its

23   contents; (g) the identity of its author(s); and (f) persons to whom it was sent or shown.

24   7)    If you answer any interrogatory by reference to records from which the answer may be

25   derived or ascertained, as permitted in Fed. R. Civ. P. 33(d): (a) identify any such records

26   by their corresponding Bates Number(s) or otherwise to allow the documents to be easily

27   identified; (b) make available any computerized information or summaries thereof that you

28   either have or can adduce; (c) provide any relevant compilations, abstracts or summaries in

4

1    your possession, custody, or control; and (d) provide copies of those records concurrently

2    with service of the answers to these interrogatories.

3    8)    These interrogatories are deemed to be continuing, and pursuant to the obligations imposed

4    by Rule 26(e) of the Federal Rules of Civil Procedure, you are required to promptly

5    supplement your responses with information as requested herein that may become known

6    or available to you after the date of your initial answers to these interrogatories.

7    9)    The defendants are instructed not to spoliate or allow the spoliation of electronic evidence

8    pending discovery in this matter.  In particular, defendants must not delete or alter the

9    contents of:  (1) any email accounts to which they have access or over which they have

10    possession, custody, or control; (2) any data stored on electronic devices in their

11    possession, custody, or control, including but not limited to data stored on the hard drives

12    of computers and data stored on any storage media in their possession, custody, or control;

13    and (3) data stored in any personal digital assistant, BlackBerry, or flash memory device in

14    their possession, custody, or control.

## **INTERROGATORIES**

15

16

17    Interrogatory No. 1

18    Describe in detail the corporate structure, date and place of incorporation, activities, and the nature

19    of the business of each of the following entities:  AMEC Inc., AMEC Shanghai, and AMEC Asia.

20    Interrogatory No. 2

21    Describe in detail the relationships between and among the entities AMEC Inc., AMEC Shanghai,

22    and AMEC Asia, including the identities of all managers, officers and corporate directors for each.

23    Interrogatory No. 3

24    Describe in detail all communications AMEC Inc., AMEC Shanghai, and AMEC Asia have had

25    with any entity about the corporate relationships between and among AMEC Shanghai, AMEC

26    Inc., and AMEC Asia, the nature of the business of each entity, and/or the identities of the officers

27    and directors of each entity, including, including, but not limited to, communications between and

28    among AMEC Shanghai, AMEC Inc., and/or AMEC Asia, on the one hand, and Dun and

5

1  Bradstreet, Deloitte and Touche, entities that have invested money with Defendants, and entities

2  that have prepared or assisted Defendants in preparing press releases and content for Defendants'

3  website.

4  Interrogatory No. 4

5      Identify (by product or service name, model number, trademark, trade name, internal

6  designation, code name, project name, marketing name, version number and any other unique

7  designation) each CVD tool that AMEC Inc., AMEC Asia, or AMEC Shanghai has designed,

8  developed, or manufactured.

9  Interrogatory No. 5

10  Separately for each CVD tool identified in response to Interrogatory No. 4:

11      A. State whether the tool has been manufactured, sold, placed for evaluation, exported,

12          offered for sale, used and/or distributed by AMEC Inc., AMEC Asia, or AMEC Shanghai,

13          and identify the person most knowledgeable regarding the same.

14      B. For those tools that AMEC Inc., AMEC Asia, or AMEC Shanghai have sold or placed for

15          evaluation, identify the model number of each tool sold or placed for evaluation and to

16          whom the tool was sold or placed for evaluation, the date of sale or placement, and identify

17          the person most knowledgeable regarding the same.

18      C. Identify by Bates ranges all documents concerning the tool, including but not limited to

19          functional or design specifications, blueprints, schematics, or technical diagrams of the

20          tool.

21      D. Provide a narrative description of how AMEC Inc., AMEC Asia, or AMEC Shanghai

22          designed, developed and conceived of the tool, including the dates on which these events

23          occurred and the people involved in the events, and identify the person most

24          knowledgeable regarding the same.

25  Interrogatory No. 6

26      Identify (by product or service name, model number, trademark, trade name, internal

27  designation, code name, project name, marketing name, version number and any other unique

28

6

1  designation) each etch tool AMEC Inc., AMEC Asia, or AMEC Shanghai has designed,

2  developed, or manufactured, including, but not limited to, etch tools incorporating Multi-

3  Frequency RF Sources and Matching Network[s].

4  Interrogatory No. 7

5      Separately for each etch tool identified in response to Interrogatory No. 6:

6      A. State whether the tool has been manufactured, sold, placed for evaluation, exported,

7          offered for sale, used and/or distributed by AMEC Inc., AMEC Asia, or AMEC Shanghai,

8          and identify the person most knowledgeable regarding the same.

9      B. For those tools that AMEC Inc., AMEC Asia, or AMEC Shanghai have sold or placed for

10         evaluation, identify the model number of each tool sold or placed for evaluation and to

11         whom the tool was sold or placed for evaluation, the date of sale or placement, and identify

12         the person most knowledgeable regarding the same.

13     C. Identify by Bates ranges all documents concerning the tool, including but not limited to

14         functional or design specifications, blueprints, schematics, or technical diagrams of the

15         tool.

16     D. Provide a narrative description of how AMEC Inc., AMEC Asia, or AMEC Shanghai

17         designed, developed and conceived of the tool, including the dates on which these events

18         occurred and the people involved in the events, and identify the person most

19         knowledgeable regarding the same.

20 Interrogatory No. 8

21     Identify all actual or potential suppliers related to any technology concerning etch and CVD

22 tools of AMEC Inc., AMEC Asia, or AMEC Shanghai.  For each supplier:

23     A. Identify the product supplied or to be supplied (by product or service name, model number,

24         trademark, trade name, internal designation, code name, project name, marketing name,

25         version number and any other unique designation);

26     B. Identify the date on which AMEC Inc., AMEC Asia, or AMEC Shanghai first

27         communicated with the supplier;

28

7

1    C.  Identify by Bates Ranges all documents concerning the supplier and any communications

2        with the supplier.

3    Interrogatory No. 9

4        Describe in detail the computer, network and filing systems, of AMEC Inc., AMEC Asia,

5    and AMEC Shanghai, including, but not limited to, the network location of all files concerning

6    any ex-Applied employees who currently works at AMEC Inc., AMEC Asia, or AMEC Shanghai.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1  December 18, 2007

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

APPLIED MATERIALS, INC.,

By its attorneys,

Thomas F. Fitzpatrick
tfitzpatrick@goodwinprocter.com
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038

John C. Englander (*pro hac vice*)
jenglander@goodwinprocter.com
Douglas C. Doskocil (*pro hac vice*)
ddoskocil@goodwinprocter.com
Michael G. Strapp (*pro hac vice*)
mstrapp@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.: 617.570.1000
Fax: 617.523.1231

Greg H. Gardella
gardella@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street
3300 Dain Rauscher Plaza
Minneapolis, MN 55402
Tel.: 612-335-5070
Fax: 612-288-9696

Attorneys for Applied Materials, Inc.

LIBA/1852159.1

9

1    I, Rachael Nelson, declare:

2         I am employed in the County of Santa Clara, California in the office of a member of the bar
     of this court at whose direction this service was made. I am over the age of eighteen and not a
3    party to this action. My business address is Goodwin|Procter LLP, 181 Lytton Avenue, Palo Alto,
     California 94301.

4
          On December 18, 2007, I served the following documents exactly entitled:
5

6    **PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANTS**

7    on the interested parties in this action by placing a true and correct copy thereof, on the above date,
     enclosed in a sealed envelope, following the ordinary business practice of is Goodwin|Procter LLP,
8    as follows:

9    # VIA EMAIL AND OVERNIGHT COURIER:

10   Harold J. McElhinny
     Morrison & Foerster
11   425 Market Street
     San Francisco, CA 94105-2484

12   [  ]   U.S. Mail:  I am personally and readily familiar with the business practice of is
             Goodwin|Procter LLP for collection and processing of correspondence for mailing with the
13           United States Postal Service, pursuant to which mail placed for collection at designated
             stations in the ordinary course of business is deposited the same day, proper postage
14           prepaid, with the United States Postal Service. I caused such document[s] to be sent via
             U.S. Mail according to the practices above.
15

16   [  ]   HAND-DELIVERY:  I caused such document[s] to be delivered by a courier service on the
             same day.

17   [  ]   FACSIMILE TRANSMISSION:  I caused such document[s] to be sent by facsimile
             transmission to the above-listed fax number for the party(ies) indicated.
18

19   [ X ]  EMAIL TRANSMISSION:  I caused such document[s] to be sent by email transmission to
             the party(ies) indicated.

20   [ X ]  OVERNIGHT COURIER:  I caused such documents[s] to be delivered by an overnight
             courier service for delivery by 10:30 a.m. the following business day.
21

22        I declare under penalty of perjury under the laws of the state of California that the foregoing
     is true and correct, and that this declaration was executed on December 18, 2007, at Palo Alto,
23   California.

24                                                     _Rachael Nelson_____
                                                              Rachael Nelson
25

26

27

28

CERTIFICATE OF SERVICE                              1
CASE NO. C07-05248 JW