# EXHIBIT A

1

2    Thomas F. Fitzpatrick (CA Bar #193565)
     GOODWIN PROCTER LLP
     181 Lytton Avenue
3    Palo Alto, CA 94301
     Tel.: 650-752-3144
4    Fax: 650-853-1038
     tfitzpatrick@goodwinprocter.com
5
     John C. Englander (*pro hac vice*)
6    James C. Rehnquist (*pro hac vice*)
     Michael G. Strapp (*pro hac vice*)
7    GOODWIN PROCTER LLP
     53 State Street
8    Boston, Massachusetts  02109
     Tel.: 617.570.1000
9    Fax: 617.523.1231
     jenglander@goodwinprocter.com
10   jrehnquist@goodwinprocter.com
     mstrapp@goodwinprocter.com
11

12   Attorneys for Applied Materials, Inc.

13                        UNITED STATES DISTRICT COURT

14                      NORTHERN DISTRICT OF CALIFORNIA

15                              SAN JOSE DIVISION

16   APPLIED MATERIALS, INC.,                    Case No.  C07 05248 JW (PVT)

17            Plaintiff,

18        v.                                     **PLAINTIFF'S SUR-REPLY TO
                                                 DEFENDANTS' MOTIONS TO
19                                               DISMISS**
     ADVANCED MICRO-FABRICATION
20   EQUIPMENT (SHANGHAI) CO., LTD.,
     ADVANCED MICRO-FABRICATION           Date: February 25, 2008
21   EQUIPMENT INC., ASIA, ADVANCED       Time: 9:00 a.m.
     MICRO-FABRICATION EQUIPMENT, INC.    Courtroom: 8, 4th Floor
22        AMEC.

23

24

25

26

27

28

PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTIONS TO DISMISS; CASE NO. CV 07-05248 JW

1

Plaintiff Applied Materials, Inc. ("Applied") submits this sur-reply to respond to new

2

arguments and case law raised by defendants.

3

Lost in defendants' 35 pages of reply briefs are the basic facts of this case, as follows:

4

Applied employees, in particular Gerald Yin and Steve Chen, based in California, left Applied to

5

launch a new competitor, AMEC, and in doing so they improperly used Applied's trade secrets

6

and intellectual property. These employees helped to develop these trade secrets, and learned

7

them, while employed by Applied and while working in California. Defendants also targeted

8

other Applied employees in California and hired them away so that they could access additional

9

trade secrets. Defendants argue that a California court, on these facts, is powerless to grant relief

10

to the California company they have victimized, or alternatively, that a California court should

11

decline jurisdiction in favor of the courts of China. But the notion that Applied cannot seek relief

12

from a California court on these facts is stunning. Contrary to defendants' protests, this case is all

13

about California – about its people, its laws, and its property. The constitutional rules of personal

14

jurisdiction allow defendants to be sued in California under these circumstances, where they

15

initiated their behavior in California, directed it at California, injured a California company, and

16

destroyed California property.

17

18    **I.    DEFENDANTS' REPLY BRIEFS, IN ARGUING THAT DEFENDANTS'**
      **MISCONDUCT "OCCURRED IN CHINA," IGNORE THE UNDISPUTED**
19    **RECORD AND THE PROCEDURAL POSTURE OF THE CASE.**

20

Defendants concede for the first time in their reply brief that, in responding to a motion to

21

dismiss, Applied need only establish a *prima facie* case of personal jurisdiction. And they even

22

feign acknowledgement of the important corollary to this principle, namely, that plaintiff's

23

uncontroverted allegations must be accepted as true. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

24

1108 (9th Cir. 2002). Nevertheless, defendants' reply brief arguments ignore the undisputed facts

25

and distort the parties' respective obligations at this procedural juncture.

26

The following allegations of Applied are uncontroverted:

27

28

defendants were formed by Gerald Yin and Steve Chen, former leaders of
Applied's Etch and CVD product groups who were based in, and worked from,
Applied's offices in California, *see* First Amended Complaint ("FAC"), ¶¶ 2-5;

1

defendants were formed in the Spring of 2004 while Yin was still an Applied employee and a few months after Chen left Applied, *id*. ¶¶ 5, 12, 31;

defendants purposefully recruited Applied employees in California with knowledge of Applied's trade secrets to leave Applied, *id*. ¶ 36; and

defendants disclosed trade secrets used in Applied's Etch and CVD technology in patent applications beginning in August 2005, *id*. ¶¶ 37-44.

The meager discovery defendants have provided so far confirms that all three defendants were formed between March 2 and May 31, 2004, while Yin was still an Applied employee.[1] Declaration of Michael G. Strapp in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss, Exs. 2-5. And AMEC Inc.'s website confirms the central role of its Applied recruits, as four of its seven officers – including the head of its Etch and CVD divisions – are all former Applied employees. *Id*., Ex. 10. If there were any doubt that Yin and Chen worked for Applied in California, as did the bulk of the other "targeted" employees, the attached declaration of Roger Lindley removes it. *See* Declaration of Roger Lindley in Support of Plaintiff's Sur-Reply to Defendants' Motion to Dismiss ("Lindley Decl."), at ¶ 7.

All of these facts are presumed to be true. *Dole*, 303 F.3d at 1108. Based on them, Applied has alleged, and defendants have not denied, that defendants "wrongly acquired" and improperly used Applied's trade secrets, and wrongfully induced breaches of Applied's contracts. FAC ¶¶ 49-50, 57-58. Accordingly, even if defendants were correct that their improper use of Applied's trade secrets occurred in China, AMEC China Reply at 6, Applied's uncontroverted allegations demonstrate that those secrets were wrongfully acquired by defendants through their purposeful recruiting and targeting of Applied employees in California with knowledge of Applied's trade secrets. *See* Cal. Civ. Code § 3426.1 (defining "misappropriation" broadly to include "improper means" of acquiring trade secrets). At this point, of course, without any discovery, Applied does not know the precise details of defendants' wrongful acquisition of its

---

[1]    Defendants' contention that "the parties' [discovery] dispute pertains exclusively to alter ego discovery, not California contacts," is wrong. AMEC Inc. Reply at 7 n.3. Despite defendants' promise to provide Applied with jurisdictional discovery, Applied has yet to receive most of the jurisdictional discovery it requested, including jurisdictional discovery concerning all of defendants' California contacts. Declaration of Michael G. Strapp in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss at ¶ 11.

1  trade secrets from Applied's current and former California employees.  Discovery will likely

2  reveal the details of defendants' modus operandi — the manner and means of their targeting of

3  particular individuals, with particular information, for particular purposes.  But Applied's

4  allegations that the secrets were wrongfully acquired from California are uncontroverted, and

5  suffice to establish a *prima facie* case that defendants targeted California.[2]

6       Defendants recognize the significance of Applied's allegations of targeting, although they

7  have made a strategic decision not to dispute them by affidavit or otherwise.  Instead, they

8  improperly try to foist upon Applied the burden of proving these allegations with evidence.

9  AMEC China Reply at 8 (Applied "has not submitted a single piece of evidence to support this

10  claim); *id.* at 9 (Applied "fail[s] to cite any factual evidence supporting its solicitation claim"); *id.*

11  at 10 (Applied "has failed to establish that any wrongful action took place in or targeted

12  California").  This argument reflects a profound misunderstanding of the parties' obligations.

13  Ninth Circuit law makes clear that at this procedural juncture plaintiff's uncontroverted allegations

14  must be taken as true.  *Dole*, 303 F.3d at 1108.  In sum, Applied's allegations of defendants'

15  purposeful targeting and acquisition of Applied's California trade secrets stand unrebutted, must

16  be presumed true, and demonstrate at the very least a *prima facie* case of purposeful direction at

17  California.

18

19  **II.  AMEC INC.'S REPLY BRIEF ARGUMENT ON ALTER EGO/AGENCY ALSO**
    **IGNORES THIS CASE'S PROCEDURAL POSTURE.**

20

21       Defendant AMEC Inc. argues at length that Applied has not proven that AMEC China or

22

---

23  [2]  Defendants also ignore that their California targeting of Applied employees need not be
    tortious to provide a basis for personal jurisdiction.  *See Yahoo! Inc. v. La Ligue Contre Le*

24  *Racisme et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) ("In any personal
    jurisdiction case we must evaluate all of the defendant's contacts with the forum state,

25  whether or not these contacts involve wrongful activity by the defendant."); *Dudnikov v.*
    *Chalk & Vermilion Fine Arts,* No. 06-1458, 2008 U.S. App. LEXIS 1870, at *15-16 (10th Cir.

26  2008) (explaining that *Yahoo!* holds that that *Calder* does not "necessarily require in
    purposeful direction cases that all (or even any) jurisdictionally relevant effects have been

27  caused by wrongful acts.'").

28

3
PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTIONS TO DISMISS; CASE NO. CV 07-05248 JW

1    AMEC Asia are its agents or alter egos.  AMEC Inc. Reply at 1-6.  But this argument also fails to

2    come to grips with the current procedural posture.  The current record reflects, at the very most for

3    AMEC Inc., a factual dispute on these issues.  In this posture, where Applied only has to establish

4    a *prima facie* case, the Ninth Circuit has made clear that factual disputes must be resolved in favor

5    of plaintiff.  *Dole*, 303 F.3d at 1108.

6        For its evidence on AMEC Inc., defendants rely solely on the Declaration of Matthew

7    Ruby, their General Counsel.  AMEC Inc. Reply at 2.  This declaration, however, does not address

8    any of the alter ego or agency factors, such as the involvement of AMEC Inc. in the subsidiaries'

9    day-to-day operations.  At most, it suggests that AMEC Inc. is "primarily a holding company."  *Id.*

10   But this fuzzy and conclusory contention that AMEC Inc. is "primarily" a holding company is

11   contradicted by the evidence from AMEC Inc.'s own website, press releases, and organizational

12   charts — admissions under Fed. R. Evid. 801(d)(2) in each case — showing that AMEC Inc. is, or

13   is indistinguishable from, the AMEC operating company.  In short, there is a factual dispute that

14   must be resolved in plaintiff's favor.

15       AMEC Inc. attempts to trivialize its website statements by making unsworn factual

16   assertions under the guise of legal argument.  *See* AMEC Inc. Reply at 4 ("The use of the AMEC

17   name in advertising [on the website] is merely a choice regarding branding using a trade name,

18   and says nothing about the relationship between the parties."); *id.* at 5 ("Mere titles of officers,

19   however, do not provide any information about the officers' specific responsibilities . . . .").

20   Tellingly, AMEC Inc. is unwilling to have an employee deny under oath that its website and

21   officers' titles reflect operational reality.  It is well-established, moreover, that parties' website

22   statements are taken seriously for purposes of personal jurisdiction.  *E.g., Anderson v. Dassault*

23   *Aviation*, 361 F.3d 449, 453 (8th Cir. 2004).[3]  Contrary to defendants' nuanced arguments about

24

25   [3]    At the very least, Applied has demonstrated a sufficient basis for discovery.  In each of the
         cases cited by defendants, unlike here, the plaintiff was denied discovery because it had made
26       virtually no showing of a basis for jurisdiction.  *See In re Dynamic Random Access Memory,*
         No. C 02-1486 PJH, 2005 WL 2988715, at *9 (N.D. Cal. Nov. 7, 2005) ("plaintiffs have
27       made no showing that any sworn testimony presented by defendants is disputed, and have not
         pointed out the existence of any facts that, if shown, would warrant the exercise of personal
28       jurisdiction"); *Terracom* v. *Valley National Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (personal
         jurisdiction claim was "both attenuated and based on bare allegations in the face of specific

4

the niceties of alter ego jurisprudence, AMEC Inc. Reply at n.1 & 6, an issue on which California

courts themselves are in conflict, Applied has established a *prima facie* case here under at least an

agency theory, which is satisfied based on the unrebutted showing of control shown here.  *See*

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 & n.9 (Cal. App. 5th Dist.

2000).

## III.    DEFENDANTS' NEW ARGUMENT REGARDING THE APPLICATION OF THE EFFECTS TEST IS MERITLESS.

For the first time in their replies, defendants invoke *Cybersell, Inc. v. Cybersell, Inc.*, 130

F.3d 414, 420 (9th Cir. 1997), to argue that Applied cannot show that it suffered the requisite harm

in California because it is a corporation.  AMEC China Reply at 4 (claiming that the effects test

does not "apply with the same force to [a corporation] as it would to an individual because a

corporation 'does not suffer harm in a particular geographic location in the same sense that an

individual does.").  But *Cybersell* was decided prior to the Ninth Circuit's 2006 *Yahoo!* decision,

which clarified Ninth Circuit law "to state that the 'brunt' of the harm need not be suffered in the

forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does

not matter that even more harm might have been suffered in another state."  433 F.3d at 1207.[4]

*Directory Dividends, Inc. v. SBC Commc'ns, Inc.*, No. 01-CV-1974, 2003 U.S. Dist. LEXIS 19560

(E.D. Pa. Oct. 23, 2003), also cited by defendants, is likewise contrary to Ninth Circuit law, as the

Third Circuit still requires that the brunt of the harm be suffered in the forum state.  *Id*. at *11.

Applied's trade secrets are intellectual property, owned by Applied in California, and

defendants' disclosure has destroyed a critical "stick in the bundle" of the interests comprising that

property right.  *See Ruckelshaus v. Monsanto*, 467 U.S. 986, 1002-03, 1011-12 (1984) (describing

---

denials made by defendants"); *Fielding* v. *Hubert Buda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005) ("appellants have not made even a preliminary showing of jurisdiction").

[4]    Indeed, since *Cybersell*, courts in the Ninth Circuit have routinely applied the effects test in cases brought by a plaintiff corporation, even where plaintiff does business in multiple forums. *E.g., Facebook, Inc. v. Connectu LLC*, No. C 07-01389 RS, 2007 U.S. Dist. LEXIS  91415 (N. D. Cal. Nov. 30, 2007) (California corporation's social-networking website available throughout United States).

trade secrets as a property interest under the Takings Clause).  At a minimum, defendants cannot

dispute that Applied has suffered a "jurisdictionally sufficient" amount of harm in California as a

result of defendants' tortious conduct.

Relegating their discussion of Ninth Circuit law to footnotes, *see* AMEC China Reply at

fns. 1-2, defendants' replies rely heavily on new cases that do not even apply the effects test.  For

example, AMEC China devotes several pages of its reply to *Arch Aluminum & Glass Co. v.*

*Haney*, 964 So. 2d 228, 231 (Fla. Dist. Ct. App. 2007), where the court found jurisdiction lacking

under § 48.193(2) of Florida's long-arm statute, which – unlike the effects test – explicitly

requires that a tortious act be committed in Florida.  *Id*. at 233.  Similarly, *Am. Eutectic Welding*

*Alloys Sales Co. v. Dytron Alloys Corp*., 439 F.2d 428 (2d Cir. 1971), applied section 302(a)(3) of

the New York long-arm statute, which had been interpreted to require that the plaintiff have "lost

business" in New York.  *Id*. at 432-35.  These cases have no precedential value in this Court's

application of the effects test.  *See id*. at 435 ("the legislature did not intend to extend the

jurisdiction of the New York courts to the outer reaches of constitutional power.").

## IV.    DEFENDANTS' NEW ARGUMENT THAT JURISDICTION WOULD BE "UNREASONABLE" FAILS.

For the first time in their replies, defendants argue that jurisdiction would be unreasonable.

Where, as here, a nonresident defendant purposefully avails itself of the forum state, the court

begins with a presumption of reasonableness.  *Caruth v. International Psychoanalytical Ass'n*, 59

F.3d 126, 128 (9th Cir. 1995).  Defendant must rebut that presumption by making a "compelling

case" that jurisdiction would be unreasonable.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

477 (1985).  Defendants' conclusory cross-reference to their *forum non conveniens* argument,

AMEC China Reply at 10, is insufficient to meet this burden.  Although there is some overlap, the

convenience focus of the *forum non conveniens* inquiry cannot be conflated with the due process

concerns of the reasonableness analysis.  *See id.* at 477 & n.20.

The relevant factors of the reasonableness standard are as follows:  (1) the extent of a

defendant's purposeful interjection into the forum; (2) the burden on the defendant in defending in

the forum; (3) the extent of conflict with the sovereignty of the defendant's residence; (4) the

6

LIBA/1867775.3

1   forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

2   controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective

3   relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d

4   1482, 1487-88 (9th Cir. 1993). Defendants' *forum non conveniens* arguments address, at most,

5   factors (4), (5), and (7). Without repeating its own arguments on these factors, Applied will touch

6   briefly on the others, all of which show that jurisdiction is reasonable.

7        Under factor (1), AMEC has purposefully interjected itself into California by purposefully

8   directing its activities there. *E.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.

9   1998) (finding "substantial" interjection where defendant registered plaintiff's trademarks as his

10  domain names, knowing that this would likely injure plaintiff in California). Under factor (2),

11  unless the "inconvenience is so great as to constitute a deprivation of due process, it will not

12  overcome clear justifications for the exercise of jurisdiction." *Id*. (citations omitted). Defendants

13  make no such due process argument. As to factor (3), defendants do not address any conflict with

14  Chinese sovereignty. *See Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1074-75 (C.D.

15  Cal. 2004) (in finding jurisdiction reasonable, noting that defendant failed to identify any

16  sovereignty conflict). Finally, factor (6) axiomatically weighs in favor of Applied. *Roth v. Garcia

17  Marquez*, 942 F.2d 617, 624 (9th Cir. 1991) ("no doctorate in astrophysics is required to deduce

18  that trying a case where one lives is almost always a plaintiff's preference").

19  **V.    DEFENDANTS' ATTEMPT TO FORTIFY THEIR "EXTRATERRITORIALITY"**
20  **ARGUMENT WITH A NEW LINE OF CASES FAILS.**

21       Defendants' original extraterritoriality argument—that CUTSA cannot be applied to

22  conduct occurring outside California—was based largely on a single case, *Norwest Mortgage, Inc.*

23  v. *Superior Ct.*, 72 Cal. App. 4th 214 (Cal. Ct. App. 1999). AMEC Inc. Motion at 8. Applied

24  pointed out in its Opposition that defendants had misread *Norwest Mortgage*, which makes clear

25  that California law can be applied to out-of-state conduct that causes injury in California. Applied

26  Opp. at 18. Defendants now abandon *Norwest Mortgage*, enlisting an entirely new line of cases to

27  revive its extraterritoriality argument. None of these new cases has merit.

28       Defendants rely primarily on *Diamond Multimedia Sys., Inc.* v. *Superior Ct.*, 19 Cal. 4th

7

PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTIONS TO DISMISS; CASE NO. CV 07-05248 JW

1036 (1999), which held that out-of-state purchasers of security can bring an action under the California Corporation Code based on alleged "market manipulation" by a California company in California. *Id.* at 1059. This is noncontroversial; Applied does not dispute that misconduct in California can be the basis for a claim under California law by nonresidents. Citing no authority holding that CUTSA does not apply where the injury occurs in California, defendants rely instead on cases that appear designed to show that Applied's alleged injuries did not occur in California. AMEC China Reply at 12 ("Similar to S*peyer, Chaplin* and *Alaska Salmon*, Applied has no claim under California's UTSA because the alleged injury did not occur in California."). This novel theory — which appears nowhere in defendants' original motion — is meritless. Applied is a California company, and impairment to its property and contractual rights is inarguably suffered at its home in California.[5]

## VI.    AMEC'S NEW FORUM NON CONVENIENS ARGUMENTS FAIL.

Defendants raise entirely new issues and arguments in their reply brief on *forum non conveniens*: 1) that Applied's presence in China is a factor warranting dismissal; 2) that Chinese "export" restrictions may make discovery "a challenge" for defendants; and 3) that California has a diminished interest in this lawsuit because China is the "local court" to this controversy. *See* AMEC Inc. Reply at 7-15. None of these new arguments has merit. Defendants have not come close to discharging their "heavy burden" to show they will suffer "oppression and vexation" disproportionate to plaintiff's convenience if the litigation continues in California. *Dole*, 303 F.2d at 1117-18. Even if the Chinese forum were deemed "adequate," moreover, defendants have not come close to showing that the private and public interest factors "strongly favor trial in a foreign country." *Lueck v. Sunstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).

Defendants argue that because Applied is a "global" company with offices and sales in

---

[5]    To the extent defendants mean to argue that CUTSA does not apply even where the injury does occur in California, the cases they rely on involve interpretation of entirely different statutes, and provide no support for any argument about the intended scope of CUTSA. *See Norwest*, 72 Cal. App. 4th at 222 (California residents injured in California may sue under the UCL irrespective of where the underlying acts occurred).

1   China, and is "beloved" in China, it should be required to abandon its preferred, convenient forum.

2   AMEC Inc. Reply at 7, 10-11, 13-14. Applied's China presence, however, has nothing to do with

3   this case or with any of the relevant *forum non conveniens* factors:  Applied's corporate

4   headquarters, including its legal, finance, engineering, and R&D operations, are in California. *See*

5   Lindley Decl. at ¶ 3.   So are the relevant Applied witnesses, who are numerous, and the relevant

6   documents, which are voluminous. *Id.* at ¶¶ 6, 8. More specifically, each of the critical elements

7   of Applied's proof on establishing the existence of trade secrets, the protection of those secrets,

8   and defendants' access to those secrets involves numerous Applied California witnesses and

9   California documents.  Defendants provide no legal support for the novel proposition that a

10  company forfeits its right to sue in its home state because it may have ancillary operations

11  elsewhere.[6]

12          A second argument defendants make for the first time in their reply briefs is that the

13  private interest factors weigh in its favor because of Chinese "export" regulations.  AMEC Inc.

14  Reply at 11.  This argument is entirely speculative, if not fanciful.  Defendants do not cite the

15  terms of any of the alleged export restrictions, referring only to the regulations' oblique titles; do

16  not even argue that any of their technology is covered by the regulations; do not explain the nature

17  of the "challenge" they face, or what they are doing to surmount it; and do not attempt to explain

18  how they surmounted this challenge when they "exported" documents reflecting their technology

19  to patent offices in the United States and Japan.  In addition, the attached declaration of Mingtao

20  Wang, an experienced Chinese lawyer, indicates that it is unlikely the regulations defendants cite

21  will be any barrier to their fulfillment of their discovery obligations. *See* Declaration of Mingtao

22  Wang in Support of Sur-Reply Brief.

23          Defendants also introduce an entirely new line of cases to argue that California's interest in

24  _____

    [6]    Incidentally, if either party here is "beloved" on its opponent's home turf, it is AMEC.
25  AMEC Inc.'s website demonstrates that California investors have showered it with substantial
    love in the form of millions of dollars of venture capital financing.  AMEC, http://www.amec-
26  inc.com/about/investors.php (last visited Feb.19, 2008).  These California investors, who have
    representatives on AMEC Inc.'s board (which meets regularly in California), *see* Decl. of
27  Matt Ruby in Support of AMEC Inc.'s Motion to Dismiss at ¶ 8, have much more connection
    to the litigation than do Applied's employees in China, and their convenience will be served if
28  the litigation continues in California.

this litigation is inferior to China's.  *Delta Brands, Inc. v. Danieli Corp.,* No. 3:02-cv-0081-N, 2002 WL 31875560, at *9 (N.D. Tex. Dec. 20, 2002), a case they describe as "parallel" to this one, AMEC Inc. Reply at 13, is easily distinguishable.  In *Delta Brands,* the court found that Italy had a stronger interest in the litigation than Texas because the dispute arose out of conduct <u>by the plaintiff</u> — business presentations, negotiations, and the execution of agreements — that occurred in Italy.  Here, by contrast, the dispute does not arise out of Applied's conduct in China. Defendants take similar liberties with a ruminative footnote in *Arno v. Club Med Inc.,* 22 F.3d 1464, 1468 n.5 (9th Cir. 1994), which they selectively quote in order to diminish California's interest in the litigation.  AMEC Inc. Reply at 14 ("It's not entirely clear why a state has a legitimate interest in having one of its residents collect money from the resident of another jurisdiction based on conduct that occurred outside the state's boundaries . . .") (quoting *Arno*). Defendants fail to acknowledge the footnote's final sentence:  "Nonetheless, this interest has qualified as legitimate in California courts."  *Id*. (citation omitted).[7]

## CONCLUSION

For the foregoing reasons, defendants' motions should be denied.

---

[7]    AMEC's reliance on two other new cases, *Sinochem Int'l Co. Ltd.  v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007), and *Lu v. Air China Intern. Corp.*, No. CV 92-1254 (RR), 1992 WL 453646, at *1 (E.D.N.Y. Dec. 16, 1992), is also misplaced.  *See* AMEC Inc. Reply at 1, 8-9.  In *Sinochem*, a Malaysian ship owner brought suit in the United States asserting a claim based on a Chinese defendants' misrepresentations to a Chinese admiralty court concerning the arrest of plaintiff's ship at sea.  *Id*. at 1188-89.  The district court dismissed the case on forum non conveniens grounds because "[t]he nub of the controversy was entirely foreign," *Id.* at 1189, which is obviously not the case here.  *Lu* is equally inapt, as it involved a Chinese national's suit against Air China, a Chinese corporation, for injuries sustained in China.  1992 WL 453646, at *1.  As in *Sinochem*, none of the parties were residents of the United States and the injury occurred in China.

1

2  Dated: February 19, 2008

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Applied Materials, Inc.

By its attorneys,


/s/ Thomas F. Fitzpatrick
Thomas F. Fitzpatrick
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.:  650-752-3144
Fax:  650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander (*pro hac vice*)
James C. Rehnquist (*pro hac vice*)
Michael G. Strapp (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231
jenglander@goodwinprocter.com
jrehnquist@goodwinprocter.com
mstrapp@goodwinprocter.com

11

PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTIONS TO DISMISS; CASE NO. CV 07-05248 JW