# EXHIBIT C

Thomas F. Fitzpatrick (CA Bar #193565)
GOODWIN PROCTER LLP
181 Lytton Avenue
Palo Alto, CA 94301
Tel.: 650-752-3144
Fax: 650-853-1038
tfitzpatrick@goodwinprocter.com

John C. Englander (*pro hac vice*)
James C. Rehnquist (*pro hac vice*)
Michael G. Strapp (*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
jenglander@goodwinprocter.com
jrehnquist@goodwinprocter.com
mstrapp@goodwinprocter.com

Attorneys for Applied Materials, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| APPLIED MATERIALS, INC., | Case No. C07 05248 JW (PVT) |
|---|---|
| Plaintiff, | |
| v. | **DECLARATION OF MINGTAO WANG IN SUPPORT OF SUR-REPLY BRIEF TO DEFENDANTS' MOTIONS TO DISMISS** |
| ADVANCED MICRO-FABRICATION EQUIPMENT (SHANGHAI) CO., LTD., ADVANCED MICRO-FABRICATION EQUIPMENT INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT, INC. | Date: February 25, 2008<br>Time: 9:00 a.m.<br>Courtroom: 8, 4th Floor |

I, Mingtao Wang, do declare as follows:

1. I am a partner at the Beijing law firm of Gaopeng & Partners in the People's Republic of China ("China") and I am duly licensed to practice law in China. I have been working as a licensed Chinese attorney since 1994 and I have tried numerous cases in China and regularly appear before Chinese courts.

1

2.  I obtained my LL.B from Hebei University in 1989 and LL.M from the Chinese Academy of Social Sciences in 2002. I also received advanced courses at the Marine College and Butler University in Indiana, in the United States of America ("U.S.") in 1995 and 2000 respectively. Further, in addition to working in Chinese law firms, I worked in the Qingdao office of the U.S. law firm of Baker & Daniels as its chief Chinese legal consultant for four years.

3.  I have been asked to provide my opinion on issues relating to Chinese laws and regulations regarding state secrets and technology export and import in relation to the above captioned lawsuit, namely, *Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment, Inc. China, Advanced Micro-Fabrication Equipment, Inc. Asia, Advanced Micro-Fabrication Equipment Inc*. My opinion set forth below is based upon my 14 years of legal training and practice experience as a Chinese attorney and my knowledge of Chinese laws and regulations regarding state secrets and technology export and import.

4.  I have both legal and personal knowledge of Chinese laws and regulations regarding state secrets and technology export and import as well as the practices set forth herein, and if called to testify as a witness thereto, I could do so competently under oath.

5.  I have reviewed the First Amended Complaint filed by Applied Materials Inc. ("Applied") on November 1, 2007. In the First Amended Complaint, Advanced Micro-Fabrication Equipment (Shanghai) Co., Ltd. ("AMEC China"), Advanced Micro-Fabrication Equipment, Inc. Asia ("AMEC Asia") and Advanced Micro-Fabrication Equipment, Inc. ("AMEC Inc.") were sued by Applied for conversion and misappropriation of trade secrets, intentional interference with contractual relations and unfair competition violations.

6.  I have also reviewed AMEC Inc.'s Reply Brief In Support Of Its Motion To Dismiss Applied's First Amended Compliant filed on February 11, 2008 ("AMEC Inc.'s Reply"). In AMEC Inc.'s Reply, AMEC Inc. asserts that "exporting AMEC China's most sensitive technical information—which Applied has demanded be produced to it—from China to the U.S. presents many challenges. China regulates the export of advanced technologies, just as the United States does. Export of "sensitive" technology is governed by the Law on Guarding State Secrets

(中华人民共和国保守国家秘密法), Regulations on Guarding Science and Technology Secrets (科学技术保密规定), Measures for the Administration of Technologies Prohibited or Restricted from Export (禁止出口限制出口技术管理办法), and the Regulations on the Administration of Import and Export of Technologies (中华人民共和国技术进出口管理条例), among others. Navigating these laws will prove to be a challenge, if Applied's substantial and continuing effort to comply with their U.S. counterparts is any guide. Unfortunately, because AMEC China had (and still has) no plans to export its products to the United States, it has not already obtained export licenses for export to the U.S., so the process of discovery in this case will be a challenge." Hereinafter the Law on Guarding State Secrets, Regulations on Guarding Science and Technology Secrets, Measures for the Administration of Technologies Prohibited or Restricted from Export, and the Regulations on the Administration of Import and Export of Technologies, together will be referred to as the "Chinese Technology Export and Import Regulations".

7. I have been informed that AMEC China is a Chinese-foreign cooperative joint venture -- a Chinese legal entity with a foreign majority shareholder, AMEC Asia, which is primarily a holding corporation, incorporated in the Cayman Islands.

8. I have also been informed that AMEC China filed Chinese patent applications (No. 200510028563.2 and No. 200510028564.7) that allegedly disclose trade secrets belonging to Applied, that all rights in the inventions described in these applications were assigned to AMEC Asia, the non-Chinese entity, and that later-filed U.S. patent applications (No. 11/441,291 and No. 11/350,022) and Japanese patent applications (No. 2006-214829 and No. 2006213916) claim priority to these Chinese patent applications.

9. It is my opinion that, based upon the foregoing, AMEC Inc.'s assertions that (i) "exporting AMEC China's most sensitive technical information… from China to the U.S. presents many challenges" and (ii) "… the process of discovery in this case will be a challenge" are both inaccurate and, the Chinese Technology Export and Import Regulations AMEC Inc. cited above should not be any barrier to AMEC Inc's fulfillment of its U.S. discovery obligations.

10. The Law of the People's Republic of China on Guarding State Secrets ("中华人民共和国保守国家秘密法") has been legislated and enforced for the purpose of protecting state

1  secrets and guarding state security and national interests.  According to Articles 2 and 10 of this
2  law, state secrets shall be matters that have a vital bearing on state security and national interests
3  and, as specified by legal procedure, are entrusted to a limited number of people for a given period
4  of time; the specific scopes and categories of state secrets shall be stipulated by the state secret-
5  guarding department together with the Ministries of Foreign Affairs, Public Security and State
6  Security and other central government organizations concerned, and stipulations on the specific
7  scopes and categories of state secrets shall be made known within relevant quarters.  In practice,
8  upon request by an applicant, the competent authorities mentioned above will review the
9  application and reports submitted by the applicant and then determine whether the technologies at
10 issue are in fact "state secrets" and, which class the technologies should fall into.  For a party to
11 claim that a certain technology is a "state secret" the party needs to present evidence, such as a
12 certificate by the competent government authorities mentioned above, supporting its claim.
13 Without such evidence, such technology should not be deemed a "state secret," supervised by the
14 Law of the People's Republic of China on Guarding State Secrets.

15        11.     In the last 20 years, most of the important technologies in China that are state
16 secrets or state science and technology secrets are part of the National High Technology Research
17 and Development Program ("863 Program").  However, according to the 863 Program, entities
18 entitled to apply for undertaking 863 Program projects shall be a Chinese legal person (excluding
19 those from Hong Kong Special Administrative Region, Taiwan and Macau Special Administrative
20 Region) who or which has been registered in Mainland China for more than 1 year, such as
21 colleges and universities or research institutions or enterprises in which Chinese parties have
22 majority control.  Because AMEC China is a Chinese-foreign cooperative joint venture controlled
23 by AMEC Asia, a foreign party, AMEC China should not have or, likely could not have
24 undertaken any 863 Program project and thus the technologies at AMEC China should not be
25 considered state secrets or state science and technology secrets.

26        12.     Under Chinese law, providing information in foreign judicial procedures under
27 court protective order is not deemed as an "export act" in view of the definitions of foreign trade in
28 Article 2 of Foreign Trade Law of the People's Republic of China ("中华人民共和国对外贸易法"), or

4

1  "export of technology" in Article 2 of the Regulations of the People's Republic of China on
2  Administration of Import and Export of Technologies ("中华人民共和国技术进出口管理条例").
3  According to Article 2 of the above Foreign Trade Law, "foreign trade" refers to import and
4  export of goods and technologies and international trade in services. According to Article 2 of the
5  above Regulations on Administration of Import and Export of Technologies, export of technology
6  refers to the transfer of technology from inside of China to outside of China by way of foreign
7  trade, investment, or economic or technological cooperation, and such transfer includes
8  assignment of patent rights or rights to apply for patents, licensing of rights to implement patents,
9  assignment of technical know-how, technical service. Because providing information in foreign
10 judicial procedures under a court-issued protective order is not considered as an export act, the
11 discovery process in this case should not present any challenges under Foreign Trade Law of the
12 People's Republic of China or the Regulations of the People's Republic of China on
13 Administration of Import and Export of Technologies.

14        13.    However, assignment of patent rights or rights to apply for patents from one party
15 inside of China to another party outside of China is properly the purview of Article 2 of the
16 Regulations of the People's Republic of China on Administration of Import and Export of
17 Technologies. AMEC China filed the above two Chinese patent applications on technologies
18 allegedly covering Applied's trade secret, and subsequently assigned to AMEC Asia, a foreign
19 party, the right for applying the above U.S. patents and Japanese patents claiming the priorities of
20 the two Chinese patent applications. Such assignments of technologies from a Chinese party,
21 AMEC China, to a foreign party, AMEC Asia, is a technology export act. Therefore, if Chinese
22 laws and regulations have restrictions on the technologies AMEC China exported, those
23 restrictions would have prohibited exporting such trade secrets to the United States and Japan for
24 inclusion in patent applications. The successful assignment in this case suggests that the export of
25 the related technologies was not prohibited by the Chinese Technology Export and Import
26 Regulations.

27        14.    Further, AMEC's own press release in an article on its website states that "AMEC
28 ENTERS SEMICONDUCTOR CAPITAL EQUIPMENT MARKET WITH PORTFOLIO OF

5

1  ADVANCED PROCESS TOOLS - Advanced Micro-Fabrication Equipment Inc. (AMEC) today
2  launched its official entry into the global semiconductor capital equipment market with a portfolio
3  of leading-edge process tools for the 65-45nm nodes and beyond …".  Such a statement reveals
4  AMEC China's clear intention to export its products outside of China.  See AMEC website at
5  http://www.amecn.com/pdf/AMECReleaseFINAL120407.pdf.

6      15.     For the forgoing reasons, it is my opinion that AMEC Inc.'s assertions that the
7  technologies at issue are "state secrets" or that (i) exporting AMEC China's "most sensitive
8  technical information" from China to the U.S. "presents many challenges" and (ii) "the process of
9  discovery in this case will be a challenge" are inaccurate and, the above Chinese laws or
10 regulations AMEC Inc. cited should not create any obstacle for AMEC Inc. to fulfill its U.S.
11 discovery obligations.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct and that this declaration was executed on the 19th day of February 2008 in China.

*Mingtao Wang* 王明涛
Mingtao Wang