IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Applied Materials, Inc., | NO. C 07-05248 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' VARIOUS MOTIONS TO DISMISS** |
| v. | |
| Advanced Micro-Fabrication Equipment, Inc., et al., | |
| Defendants. | |

## I. INTRODUCTION

Applied Materials, Inc. ("Applied" or "Plaintiff") brings this diversity action against Advanced Mircro-Fabrication Equipment, Inc., ("AMEC Inc.") and its China and Asia subsidiaries (collectively, "Defendants"), alleging, *inter alia*, that Defendants misappropriated its trade secrets and engaged in unfair business practices in violation of California law.

Presently before the Court are Defendants' various Motions to Dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction, failure to state a claim upon which relief may be granted, and improper forum. The Court conducted a hearing on February 25, 2008. Based on the papers submitted to date and oral arguments of counsel, the Court GRANTS in part and DENIES in part Defendants' various motions. The Court DEFERS ruling on AMEC Inc.'s motion to dismiss for lack of personal jurisdiction pending further discovery.

## II. BACKGROUND

In a First Amended Complaint filed on November 1, 2007, Plaintiff alleges as follows:[1]

Plaintiff is a corporation organized and existing under the laws of Delaware, which maintains its principal place of business in Santa Clara, California. Defendant Advanced Micro-Fabrication Equipment China Co., Ltd. ("AMEC China") is a corporation organized and existing under the laws of the People's Republic of China, which maintains its principal place of business in Shanghai, China, and which also maintains an office in San Diego, California. Defendant Advanced Micro-Fabrication Equipment Inc., Asia ("AMEC Asia") is a holding company. Defendant AMEC Asia is organized and existing under the laws of the Cayman Islands and maintains its principal place of business in the Cayman Islands. Defendant AMEC Asia is the assignee of certain U.S. patent applications. Defendant AMEC Inc. is a holding company and the parent company to AMEC China and AMEC Asia. AMEC Inc. is organized and existing under the laws of the Cayman Islands and maintains its principal place of business in the Cayman Islands. (FAC ¶¶ 11-14.)

Plaintiff is a leading technology company. Plaintiff develops, designs, and manufactures machines, called "tools," which are used to make semiconductor chips. Two types of these tools enable so-called "Etch" and "Chemical Vapor Deposition" ("CVD") processes. Each Etch or CVD tool is a very sophisticated, multi-million dollar machine that uses complex physics and chemistry to perform precise processes on silicon wafers. (Id. ¶ 1.)

Gerald Z. Yin, AiHua Chen, Ryoji Todaka, and Lee Luo ("AMEC Employees") are former employees of Plaintiff, all of whom, while at Applied, had access to highly sensitive trade secrets and confidential information including valuable trade secrets with respect to designing, manufacturing, and using Etch and CVD tools. Yin, in particular, was a Corporate Vice President, General Manager, and Chief Technology Officer at Applied. In

---

[1] (First Amended Complaint, hereafter, "FAC," Docket Item No. 31.)

2

his roles, he managed the Etch product group and had broad access to Plaintiff's confidential information and trade secrets concerning its Etch tools. Chen also held a number of roles at Applied including General Manager of its CVD product group. Chen had broad access to Plaintiff's confidential information and trade secrets concerning its CVD tools. Yin left Applied in 2004, moved to the People's Republic of China, and, along with Chen, founded Defendant companies, including AMEC China, a semiconductor tool manufacturing company formed to manufacture Etch and CVD tools that will compete directly with Plaintiff. Each of the other AMEC Employees also left Applied between 2003 and 2006 and joined Defendants. (Id. ¶¶ 2-5.)

While semiconductor manufacturing tools are very sophisticated and complex machines that typically take years to design and build, Defendants, having the benefit of Plaintiff's confidential information and trade secrets, designed, built and announced the availability of CVD and Etch tools within one year of starting business in China. To accomplish this, AMEC Employees transferred and converted Plaintiff's inventions and trade secrets to the Defendants. For example, while employed by Plaintiff, AMEC Employees worked on a novel and confidential design for use in CVD tools. Upon leaving Applied, the AMEC Employees disclosed the confidential design to Defendant companies. On August 5, 2005, Defendant companies filed a Chinese patent application claiming this novel design as their own. Defendants have also incorporated the design into their CVD tools. (Id. ¶¶ 6-8.)

Each of the AMEC Employees signed Employee Agreements with Plaintiff. The Agreements state that all inventions that the AMEC Employees conceived, made or reduced to practice while at Applied would be the exclusive property of Plaintiff. Defendants have induced the AMEC Employees to breach these Agreements. Defendants have been unjustly enriched as a result of their illegal practices. Plaintiff seeks an injunction against Defendants to prevent further trade secret misappropriation and unfair competition, as well as

3

compensatory and punitive damages and declaration that it is the owner of Defendants' patent applications. (Id. ¶¶ 9-10.)

On the basis of the allegations outlined above, Plaintiff alleges four causes of action against Defendants: (1) Misappropriation of Trade Secrets; (2) Intentional Interference with Contractual Relationships; (3) Conversion; and (4) Unfair Competition in violation of Cal. Bus. & Prof. Code. § 17200. (Id. ¶¶ 45-71.)

Presently before the Court are the following Motions to Dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction, failure to state a claim upon which relief may be granted, and improper forum:

(1) AMEC Inc.'s Motion to Dismiss First Amended Complaint (hereafter, "AMEC Inc. MTD," Docket Item No. 54);

(2) AMEC China's Motion to Dismiss First Amended Complaint (hereafter, "AMEC China MTD," Docket Item No. 98); and

(3) AMEC Asia's Motion to Dismiss First Amended Complaint (hereafter, "AMEC Asia MTD," Docket Item No. 101).

### III.  STANDARDS

**A.  Personal Jurisdiction**

Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Although the defendant ordinarily files such a motion, it is the plaintiff that bears the burden of proof as to the necessary jurisdictional facts. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984) . However, the plaintiff need only make a prima facie showing that personal jurisdiction exists if the defendant files its motion to dismiss as an initial response. Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). To make a prima facie showing, the plaintiff must demonstrate facts that if true would support jurisdiction over the defendant. Data Disc, 557 F.2d at 1285. The plaintiff must make a prima facie showing as to each defendant. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

A federal district court may exercise personal jurisdiction to the same extent as a state court of the state in which the district court sits. Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd., 484

4

U.S. 97, 108 (1987). Since California courts extend jurisdiction to the very limits of the federal Constitution, federal courts are only required to determine whether the exercise of jurisdiction would comport with due process. See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986)

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

**B.    Failure to State a Claim**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

**IV. DISCUSSION**

Defendants move to dismiss Plaintiff's First Amended Complaint on the following grounds: (1) Defendants are not subject to personal jurisdiction in California; (2) Plaintiff has failed to state a claim for relief because the California Uniform Trade Secrets Act ("CUTSA") does not apply extraterritorially and CUTSA preempts Plaintiff's other state law claims; and (3) California is an inconvenient forum for this case.[2] The Court proceeds to consider each of these issues in turn.

**A.  Personal Jurisdiction**

Plaintiff contends that the Court has specific personal jurisdiction over Defendants because AMEC China and AMEC Asia have purposefully directed tortious conduct at Plaintiff in California and AMEC Inc. is the alter ego of AMEC China. (Plaintiff's Opposition to Defendants' Motions to Dismiss at 9, 15, hereafter, "Opposition," Docket Item No. 105.)

**1.  Specific Jurisdiction**

In dispute is whether the Court has specific jurisdiction over AMEC China and AMEC Asia. The Ninth Circuit uses the following test to evaluate a defendant's contacts for purposes of determining whether specific jurisdiction applies:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The first prong of the test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

---

[2] (AMEC Inc. MTD at 8, 9.) AMEC China and AMEC Asia join in AMEC Inc.'s motion on this issue.

6

In tort cases, the Ninth Circuit requires courts to focus on whether a defendant "purposefully directs" conduct at the forum state by applying an "effects test" that considers where the defendant's actions were felt, regardless of whether the actions themselves occurred within the forum. See Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). To meet the effects test, "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo, 433 F.3d at 1206-07 (noting that "the 'brunt' of the harm need not be suffered in the forum state"). For purposes of establishing personal jurisdiction based on purposeful direction in a misappropriation of trade secrets case, a corporation's principle place of business determines the location where corporate injury is felt as a result of the misappropriation. Portrait Displays, Inc. v. Speece, 2004 WL 1964506 (N.D. Cal. 2004); see Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1113-14 (9th Cir. 2002).

In this case, Plaintiff alleges causes of action for misappropriation of trade secrets and intentional interference with contractual relationships, which are both intentional torts. (FAC ¶¶ 45, 54.) Therefore, the Court considers specific jurisdiction under the "effects test." Plaintiff alleges as follows:

> Plaintiff's trade secrets are located in California because California is its principle place of business. (FAC ¶ 11.) The trade secrets were also developed in California. (Id. ¶ 1.) The misappropriation of those trade secrets was carried out by the founders of Defendant companies, many of whom are former employees of Plaintiff. (Id. ¶¶ 37-40.) The former employees would reasonably have been aware that the misappropriated trade secrets were developed in California and that Plaintiff's principle place of business is in California because each of them worked for Plaintiff for at least three years. (Id. ¶ 23-26.)

> Since AMEC China induced these former employees to engage in the misappropriation and they are now in possession of Plaintiff's proprietary information, the acts that brought about the harm may be imputed to it. (FAC ¶ 49.) Moreover, Defendants AMEC China and Asia directly interfered with the contracts that Plaintiff's former employees had with Plaintiff. (Id. ¶¶ 27, 54.) These contracts were entered into in California and provide Plaintiff certain protections under California law, particularly that all inventions made within one year of leaving employment with Plaintiff are presumptively the property of Plaintiff. (Id. ¶ 41.) Defendants knew of these contracts. (Id. ¶ 30.) They interfered with the contracts by recruiting Plaintiff's former employees away from Plaintiff and inducing them to disclose proprietary information and assign certain patent rights to Defendants in breach of their contracts with Plaintiff. (Id. ¶¶ 54-59.) In particular, several applications which read on Plaintiff's trade secrets have been assigned to AMEC Asia. (Id. ¶ 42.)

7

These allegations make out a prima facie case for jurisdiction under the effects test. Plaintiff has alleged: (1) intentional conduct because Defendants indirectly and directly are alleged to have committed intentional torts against Plaintiff; (2) conduct that was expressly aimed at the forum because Plaintiff's former employees were allegedly induced by Defendants to engage in the misappropriation; and (3) conduct that caused harm that Defendants knew was likely to be suffered in the forum state because California is Plaintiff's principle place of business.

Defendant AMEC China presents several pieces of evidence to rebut Plaintiff's prima facie case under the "effects test." To rebut the second and third prongs of the test, Defendant AMEC China refers to exhibits which show that a substantial portion of the market for semiconductor tools is in Asia, not in the United States. (Declaration of Marc David Peters in Support of AMEC Inc.'s Motion to Dismiss, Ex. A-E, Docket Item No. 57.) AMEC China is also not registered to do business in California and makes no sales within the forum. (Declaration of Zhiyou Du in Support of AMEC China's Motion to Dismiss ¶¶ 5, 7, Docket Item No. 99.) However, in providing this evidence, Defendant AMEC China conflates the location of consumers of one's product with the location in which harm from misappropriation of trade secrets is felt. In this circuit, a corporation's principle place of business determines the location where corporate injury is felt as a result of the misappropriation. Here, the parties do not dispute that Plaintiff is headquartered in Santa Clara. Accordingly, the Court finds that AMEC China is subject to personal jurisdiction in California.

Defendant AMEC Asia contends that its status of being an assignee to certain patent rights of Plaintiff's former employees is insufficient for establishing personal jurisdiction. (AMEC Asia's Reply in Support of its Motion to Dismiss at 3, Docket Item No. 108.) While an assignment relationship may not be sufficient to establish jurisdiction in a state, in and of itself, in this case the assignment of patent rights is not AMEC Asia's sole contact with the forum. Rather, the fact of the assignments themselves is evidence which may support a finding that AMEC Asia induced Plaintiff's former employees to misappropriate the trade secrets allegedly contained in the patent applications and tortiously interfered with the employee contracts that provided all such patent rights

8

1  would be assigned to Plaintiff. Accordingly, the Court finds that AMEC Asia is subject to personal
2  jurisdiction in California.

3  In sum, the Court DENIES dismissal of AMEC China and AMEC Asia pursuant to Rule
4  12(b)(2).

### 2. Alter Ego

In dispute is whether the contacts of AMEC China may be imputed to AMEC Inc. for purposes of establishing personal jurisdiction.

The existence of a relationship between a parent company and its subsidiary is generally not sufficient, in and of itself, to establish personal jurisdiction over the parent on the basis of the subsidiary's minimum contacts with the forum. Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985); see United States v. Bestfoods, 524 U.S. 51, 69 (1998). However, when the parent and subsidiary are not really separate entities, the subsidiary's contacts with the forum may be imputed to the parent corporation for purposes of establishing personal jurisdiction under the alter ego exception to the general rule. Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001).

To demonstrate that the parent and subsidiary are "not really separate entities" under the alter ego exception, the plaintiff must make out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996).

In his declaration, AMEC Inc.'s General Counsel, Matt Ruby ("Ruby"), describes AMEC Inc. as a holding company that is the parent of AMEC Asia and AMEC China. (Declaration of Matt Ruby in Support of Advanced Micro-Fabrication Equipment Inc.'s Motion to Dismiss ¶¶ 2-4, hereafter, "Ruby Decl.," Docket Item No. 55.) Ruby also declares that AMEC Inc. "does not itself design, sell or market any products;" rather, it is AMEC China that "designs and develops semiconductor equipment." (Id. ¶¶ 4-5.)

9

However, certain documents that are publicly available as well as those that were produced in discovery suggest that AMEC China and AMEC Inc. are operationally indistinct. For example, AMEC Inc. maintains a website in which it announces <u>its</u> entry into the semiconductor tools market instead of referring to its subsidiary.[3] The website also contains a description of its technology and once again does not refer to AMEC China as the subsidiary responsible for designing and selling the technology.[4] In other areas of the website, AMEC lists its corporate executives.[5] In addition to Ruby, the General Counsel, the website lists Dr. Gerald Yin as its Chairman of the Board and CEO, Dr. Steve Chen as a Board Member and Executive Vice President, and Dr. Zhiyou Du as Vice President of Corporate Operations. (<u>Id.</u>) All of these individuals, with exception of Ruby, are former employees of Plaintiff. Moreover, it is undisputed that all of these former employees have the same positions in the same departments at AMEC China. (Strapp Decl., Ex. 9.)

The website also lists a Vice President and General Manager of the Etch Division and a General Manager of the CVD Division. <u>See</u> *supra* note 5. These positions represent the two areas of technology, which Plaintiff alleges were misappropriated by Defendants. (FAC ¶¶ 6-8.) The presence of these two positions in AMEC Inc. seems to be inconsistent with Ruby's characterization of AMEC Inc. as a holding company that "does not itself design, sell or market any products" because the positions are responsible for "the development and commercialization of the company's Etch product line" and "the development and commercialization of the company's CVD product line," respectively. (Ruby Decl. ¶ 4); <u>see</u> *supra* note 5.

Thus, the Court finds that there are certain inconsistencies involving the nature of the relationship between AMEC Inc. and its subsidiaries. Neither Plaintiff nor AMEC Inc. have

---

[3] (Declaration of Michael Strapp in Support of Plaintiff's Opposition, Ex. 11, hereafter, "Strapp Decl.," Docket Item No. 106); AMEC Inc. Home Page, http://amec-inc.com/.

[4] http://amec-inc.com/technology/.

[5] http://amec-inc.com/about/officers.php.

10

presented sufficient evidence for the Court to resolve these inconsistencies. Accordingly, the Court defers ruling on AMEC Inc.'s motion with respect to the issue of personal jurisdiction.[6]

### B. Failure to State a Claim

Plaintiff contends that the Court should not dismiss this case for failure to state a claim because CUTSA may be applied extraterritorially to redress harms felt in California and CUTSA does not preempt state law claims based on different facts than a trade secret misappropriation claim. (Opposition at 17, 18.)

#### 1. Extraterritoriality of the California Uniform Trade Secrets Act

In dispute is the extraterritorial reach of CUTSA in light of Defendant AMEC China having its principal place of business in China.

"The enactment of the Uniform Trade Secrets Act in California indicates a strong legislative intent to protect California residents against the misappropriation of their trade secrets" Integral Development Corp. v. Weissenbach, 99 Cal. App. 4th 576, 591-92 (2002). California law applies where an out-of-state defendant's conduct causes injury in California. Ready Transp., Inc. v. AAR Mfg., Inc., 2006 WL 2131308 at *3 (E.D. Cal. 2006). This principle is especially true when the injury involves misappropriation of a trade secret because California has a significant interest in protecting the intellectual property of its citizens and businesses from infringement by foreign defendants. Weissenbach, 99 Cal. App. 4th at 591-92.

The Court has found that Plaintiff has adequately alleged that Defendants misappropriated its trade secrets and caused injurious effects in California. (FAC ¶¶ 45-53.) Thus, Plaintiff's allegations state a claim in which California law may be applied extraterritorially. Accordingly, the Court DENIES dismissal of Defendants First Cause of Action for Misappropriation of Trade Secrets pursuant to Rule 12(b)(6).

---

[6] While the Court focused on the issue of traditional alter ego jurisdiction, Plaintiff is by no means foreclosed from continuing to contend jurisdiction is proper under an agency theory.

11

**2.     Preemption Under the California Uniform Trade Secrets Act**

In dispute is whether Plaintiff's other state law claims are preempted by CUTSA.

CUTSA includes a preemption provision that displaces common law and statutory theories of recovery to the extent that they are predicated on the same facts upon which one could assert a claim for misappropriation of trade secrets. See Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005); see Cacique, Inc. v. Robert Reiser & Co., Inc., 169 F.3d 619, 624 (9th Cir. 1999); Cal. Civ. Code § 3426.7.  However, "claims arising out of facts similar to, but distinct from, those underlying a claim for misappropriation of trade secret are not preempted." AirDefense, Inc. v. AirTight Networks, Inc., 2006 WL 2092053 at *3 (N.D. Cal. 2006); Cal. Civ. Code § 3426.7(b).

Plaintiff alleges three causes of action in addition to its First Cause of Action for Misappropriation of Trade Secrets:  Intentional Interference with Contractual Relationships; Conversion; and Unfair Competition in violation of Cal. Bus. & Prof. Code. § 17200.  (FAC ¶¶ 45-71.)

Plaintiff's Second Cause of Action for Tortious Interference is predicated upon Defendants' conduct which allegedly caused Plaintiff's former employees to assign certain patent applications to Defendants in breach of their contractual duties.  (FAC ¶¶ 56-58.)  The Court finds that this cause of action arises out of facts distinct from the those underlying Plaintiff's claim for misappropriation of trade secrets because the alleged breach was not caused by the misappropriation itself, but instead, by the later assignment of rights.

Plaintiff's Third Cause of Action for Conversion is similarly predicated upon Defendants' conduct which allegedly caused Plaintiff's former employees to assign certain patent applications to Defendants in violation of their contractual duties.  (FAC ¶¶ 62-63.)  The Court finds that this cause of action arises out of facts distinct from those underlying Plaintiff's claim for misappropriation of trade secrets because the alleged conversion is of Plaintiff's patent rights, not its trade secret rights.

12

However, Plaintiff's Fourth Cause of Action for Unfair Competition appears to essentially reassert its misappropriation of trade secrets claim. Specifically, Plaintiff alleges Defendants "wrongfully misappropriated Applied's trade secrets" and used them to "unfairly compete with [Plaintiff's] marketplace for Etch and CVD tools." (FAC ¶¶ 67-68.) The Court finds that this cause of action arises out of the same facts as those underlying Plaintiff's claim for misappropriation of trade secrets.

Accordingly, the Court DENIES Defendants' motions to dismiss Plaintiff's Second and Third Causes of Action. The Court GRANTS dismissal of Plaintiff's Fourth Cause of Action because it is preempted by CUTSA.

## C.  **Forum Non Conveniens**

Defendants contend that this case should be dismissed so that it may be litigated in China. (AMEC Inc. MTD at 12.)

A court has discretion to decline to exercise jurisdiction in a case if it determines that a foreign forum is in the interests of convenience for the parties. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947). Before dismissing a case on forum non conveniens grounds the court must examine: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001). "The defendant bears the burden of proving the existence of an adequate alternative forum." Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir. 1983). That burden is exceptionally heavy when the plaintiff has chosen its home forum because it is "reasonable to assume that this choice is convenient." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981).

### 1.  **Adequacy of the Alternative Forum**

This is a case where Plaintiff, a United States corporation with its principle place of business in California, has chosen its home forum. (FAC ¶¶ 1, 11.) Therefore, Defendants have a heavy burden of establishing the adequacy of a Chinese forum. Defendants present the declaration of an attorney admitted to practice in the People's Republic of China to support its contention that China

13

provides similar rights and remedies to the United States. (See Declaration of Huaiyu Xu in Support of Motion to Dismiss, hereafter, "Xu Decl.," Docket Item No. 56.)[7] According to Xu, China has trade secrets law, conversion law, and unfair competition law. (Xu Decl. ¶¶ 6-8.) With respect to these causes of action, the Chinese courts appear to be adequate insofar as they provide some remedy for the conduct of which Plaintiff complains. However, Xu specifically notes that Chinese law does not provide for a cause of action for interference with a contract. (Id. ¶ 7.) While China's unfair competition law appears to provide a remedy for use of trade secrets in violation of an agreement, this provision seems to apply to an agreement between a plaintiff and a defendant, not one between a plaintiff and a third party. (Id.) Thus, the Court is concerned that China may not provide an adequate remedy for Plaintiff's intentional interference with a contract claim. Since Defendants have a heavy burden of proving the adequacy of a Chinese forum in this case, this factor weighs against dismissal.

### 2. The Balance of Private and Public Interest Factors

The private interest factors the court is to consider include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" and the overall convenience of the parties. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). The public interest factors include: "court congestion[;] the local interest in resolving the controversy[;] and the preference for having a forum apply a law with which it is familiar." Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd., 918 F.2d 1446, 1452 (9th Cir. 1990).

In this case, the private interest factors do not weigh in favor of either party. Evidence concerning the alleged trade secrets and proprietary technology at issue in this case is all located in California while those that are alleged to have misappropriated it primarily reside in China. (FAC ¶¶ 11-14.) As noted above, California has a strong interest in protecting the intellectual property of its citizens and businesses from infringement by foreign defendants. Weissenbach, 99 Cal. App. 4th

---

[7] Xu has been working as a licensed attorney since 2005. (Xu Decl. ¶ 1.)

14

at 591-92. The parties have not squarely addressed the issue of choice of law, but if such an analysis were conducted by either a Chinese court or this Court, there is a strong likelihood that California law would apply because the trade secrets were developed in California, the harm was felt in California, and California has a strong interest in protecting the intellectual property of its businesses. Thus, the Court finds these factors also weigh against dismissal.

In sum, the Court DENIES dismissal on the grounds of forum non-conveniens.

## V. CONCLUSION

The Court orders as follows:

(1) AMEC Inc.'s Motion to Dismiss First Amended Complaint is GRANTED in part and DEFERRED in part. The Court GRANTS AMEC Inc.'s Motion to Dismiss Plaintiff's Fourth Cause of Action for Unfair Competition. The Court DEFERS consideration of whether Plaintiff's other causes of action against AMEC Inc. should be dismissed for lack of personal jurisidiction pending discovery proceedings. To reflect deferral of ruling on the issue, AMEC Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction is ordered off-calendar subject to being renewed after completion of discovery. The Clerk shall terminate AMEC Inc.'s motion as ordered off-calendar. AMEC Inc. may renotice its Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to the Civil Local Rules of Court, post discovery. AMEC Inc. is relieved of having to file an answer pending the Court's ruling on its renewed motion re: personal jurisdiction.

(2) AMEC China's Motion to Dismiss First Amended Complaint is DENIED.

(3) AMEC Asia's Motion to Dismiss First Amended Complaint is DENIED.

Dated: February 29, 2008

JAMES WARE  
United States District Judge

15

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Harold J. McElhinny HMcElhinny@mofo.com
Kenneth Alexander Kuwayti KKuwayti@mofo.com
Marc David Peters mdpeters@mofo.com
Michael G. Strapp mstrapp@goodwinprocter.com
Thomas F. Fitzpatrick tfitzpatrick@goodwinprocter.com

**Dated:  February 29, 2008**                              **Richard W. Wieking, Clerk**

                                                           **By:   /s/ JW Chambers
                                                                 Elizabeth Garcia
                                                                 Courtroom Deputy**