HAROLD J. MCELHINNY (CA SBN 66781)
HMcElhinny@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KENNETH A. KUWAYTI (CA SBN 145384)
KKuwayti@mofo.com
MARC DAVID PETERS (CA SBN 211725)
MDPeters@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: 650-813-5600
Facsimile: 650-494-0792

Attorneys for Defendant
ADVANCED MICRO-FABRICATION EQUIPMENT, INC.
CHINA, ADVANCED MICRO-FABRICATION
EQUIPMENT, INC. ASIA, AND ADVANCED
MICROFABRICATION
EQUIPMENT INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ADVANCED MICRO-FABRICATION EQUIPMENT INC. CHINA, ADVANCED MICRO-FABRICATION EQUIPMENT, INC., ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT, INC.,<br><br>　　　　　Defendants. | Case No.   C07 05248 JW (PVT)<br><br>**AMEC CHINA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED** |

AMEC CHINA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2477271

Defendant ADVANCED MICRO-FABRICATION EQUIPMENT INC. CHINA ("AMEC China"), by and through its attorneys, answers Plaintiff Applied Materials, Inc.'s ("Applied") Complaint as follows:

**INTRODUCTION**

1. AMEC China admits that Applied is asserting claims for conversion, misappropriation of trade secrets, intentional interference with contractual relations and unfair competition against AMEC China, Advanced Micro-Fabrication Equipment Inc. Asia ("AMEC Asia"), and Advanced Micro-Fabrication Equipment Inc. ("AMEC Inc."). AMEC China also admits that Applied has stated in public filings that it develops, manufactures, sells manufacturing equipment used to fabricate semiconductor chips, and that certain models of this equipment enable Etch and Chemical Vapor Deposition ("CVD") processes. AMEC China has insufficient information to admit or deny the allegations regarding Applied's location, the characteristics of Applied's Etch and CVD tools, and Applied's position in the industry, and therefore denies them on this basis. AMEC China denies the remaining allegations of paragraph 1.

2. AMEC China admits that Gerald Z. Yin, Aihua Chen, Ryoji Todaka, and Lee Luo were formerly employed by Applied. AMEC China also admits that Yin had access to certain information regarding the design, manufacture, and use of Etch tools during certain periods of his employment at Applied. AMEC China further admits that Chen and Todaka had access to certain information regarding the design, manufacture, and use of CVD tools during certain periods of their employment with Applied. AMEC China also admits that Luo had access to certain information regarding the design, manufacture, and use of Etch and CVD tools during certain periods of his employment at Applied. AMEC China denies the remaining allegations of paragraph 2.

3. AMEC China admits that Yin was a Corporate Vice President of Etch Product Management from 1998-1999, Co-General Manager of the Etch Product Business Group in 2000, Head of Applied's Asia Low Cost Source Program in 2001, CTO of Applied Materials Asia (and *not* CTO of Applied Materials) in 2002, and Head of Applied's Asia Sourcing and Procurement in 2003. AMEC China also admits that Yin managed the Etch product group up until 2001 and

that he had access to information regarding Etch tools until 2001. AMEC China denies the remaining allegations in paragraph 3.

4. AMEC China admits that Chen held various positions at Applied, including General Manager of the LPCVD division, and that Chen had access to information regarding Applied's CVD tools at various times. AMEC China denies the remaining allegations in paragraph 4.

5. AMEC China admits that Yin terminated his employment with Applied in 2004 and that he subsequently moved to China. AMEC China also admits that he and Chen were among a group of parties involved in the creation of AMEC China, AMEC Asia and AMEC Inc. AMEC China further admits that it is in the business of manufacturing semiconductor equipment, including Etch and CVD equipment. AMEC China also admits that Chen and Luo resigned from Applied in 2003 and 2006, respectively, and that Todaka was laid off by Applied in 2003. AMEC China further admits that Yin and Chen hold positions at AMEC China, AMEC Asia, and AMEC Inc., and that Todaka and Luo hold positions at AMEC China. AMEC China denies the remaining allegations of paragraph 5.

6. AMEC China admits that it currently employs individuals who formerly worked at Applied. AMEC China also admits that some of these individuals held positions at Applied such as Corporate Vice President, and that some of these individuals were technologists and engineers by profession. AMEC China further admits that while they were employed at Applied, Yin had access to information regarding Etch tools until 2001, and Chen and Todaka had access to information regarding CVD tools. AMEC China also admits that Luo had access to information CVD tools until 2002, and that he had access to information on Etch tools beginning in 2004. AMEC China denies the remaining allegations of paragraph 6.

7. AMEC China admits that semiconductor manufacturing tools are sophisticated and complex machines, that AMEC China does business in China, and that AMEC China has designed, built, and announced the availability of CVD and Etch tools, although it denies it did so within one year of starting its business in China. AMEC China denies the remaining allegations of paragraph 7.

AMEC CHINA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2477271

2

8.  AMEC China admits that while employed by Applied, Chen and Todaka worked on designs for use in CVD tools and that Luo worked on such designs until 2002. AMEC China also admits that on August 5, 2005, it filed a Chinese patent application. AMEC China denies the remaining allegations of paragraph 8.

9.  AMEC China admits that Yin, Chen, Todaka and Luo signed employee agreements with Applied, the terms of which are set forth in the agreements themselves. AMEC China denies the remaining allegations of paragraph 9.

10. AMEC China admits that Applied is seeking an injunction against the defendants, as well as compensatory and punitive damages and a declaration that it is the owner of defendants' patent applications. AMEC China denies the remaining allegations of paragraph 10.

**PARTIES**

11. AMEC China has insufficient information to admit or deny the allegations in paragraph 11, and therefore denies them on that basis.

12. AMEC China admits that it is a cooperative joint venture between AMEC Asia and Shanghai Ventures Capital Co., Ltd., organized under the laws of the People's Republic of China, having its principal place of business in Shanghai. AMEC China also admits that it was founded on May 31, 2004. AMEC China denies the remaining allegations of paragraph 12.

13. AMEC China admits that AMEC Asia operates primarily as a holding company, that it was incorporated in the Cayman Islands, and that it is the assignee of U.S. patent applications. AMEC China denies the remaining allegations of paragraph 13.

14. AMEC China admits that AMEC Inc. operates primarily as a holding company of AMEC Asia and (indirectly) AMEC China, and that it was incorporated in the Cayman Islands. AMEC China denies the remaining allegations of paragraph 14.

**JURISDICTION AND VENUE**

15. AMEC China states that insofar as plaintiff's averments in paragraph 15 state conclusions of law, no response thereto is required. AMEC China admits that this is an action between a resident of California and residents of foreign states, and that the amount in

1  controversy exceeds $75,000.  AMEC China denies that Applied is entitled to any damages, and
2  denies the remaining allegations of paragraph 15.

3      16.    AMEC China denies that this is the district in which a substantial part of the events
4  or omissions giving rise to the claim occurred.  AMEC China has insufficient knowledge to admit
5  or deny the allegations that this is the district in which a substantial part of the property that is the
6  subject of this action is situated, and therefore denies it on this basis.  AMEC China denies the
7  remaining allegations of paragraph 16.

## BACKGROUND

9      17.    AMEC China admits that this action seeks to recover compensatory and punitive
10  damages and that it is also an action for an injunction.  AMEC China denies the remaining
11  allegations of paragraph 17.

12      18.    AMEC China admits the allegations in paragraph 18.

13      19.    AMEC China admits that paragraph 19 describes an etch process, but not
14  necessarily every etch process.

15      20.    AMEC China admits that paragraph 20 describes a CVD process, but not
16  necessarily every CVD process.

17      21.    AMEC China admits that Etch and CVD processes can be sophisticated and
18  challenging.  AMEC China has insufficient knowledge to admit or deny the remaining allegations
19  of paragraph 21, and therefore denies them on that basis.

20      22.    AMEC China has insufficient knowledge to admit or deny the allegations of
21  paragraph 22, and therefore denies them on that basis.

22      23.    AMEC China admits that Applied hired Yin on March 18, 1991, and that his official
23  termination date was August 1, 2004, but that the last day he was physically present at Applied
24  was January 31, 2004.  AMEC China also admits that Yin held various positions at Applied in the
25  Etch division, including Corporate Vice President and Co-General Manager.  AMEC China
26  denies the remaining allegations of paragraph 23.

27      24.    AMEC China admits that Applied hired Chen on June 8, 1992, that he resigned in
28  September 2003, and that his termination was effective November 2003.  AMEC China also

1 admits that Chen held a number of positions while at Applied, including General Manager of the LPCVD division. AMEC China has insufficient information to admit or deny the remaining allegations of paragraph 24, and therefore denies them on that basis.

25. AMEC China admits that Applied hired Luo in 1994 and that he resigned from Applied in January 2006. AMEC China also admits that Luo held a variety of positions while at Applied, including Deputy General Manager for LPCVD products from 1999 to 2001. AMEC China has insufficient information to admit or deny the remaining allegations of paragraph 25, and therefore denies them on that basis.

26. AMEC China admits that Applied hired Todaka in 2000, that he was laid off from Applied in November 2002, and that his official termination date was in January 2003. AMEC China also admits that while at Applied, Todaka worked as an engineer on CVD hardware as well as other types of technologies. AMEC China has insufficient information to admit or deny the remaining allegations of paragraph 26, and therefore denies them on that basis.

27. AMEC China admits that Yin, Chen, Todaka and Luo entered into employment agreements with Applied. AMEC China admits that Yin's employment agreement with Applied had provisions stating that (1) Yin was not to disclose any Applied confidential information to anyone outside of Applied, either during or after employment with Applied; (2) all inventions conceived, made or reduced to practice during the period of his employment with Applied belonged to Applied, provided such inventions grew out of his work with Applied or were related to the business of Applied; (3) Yin would promptly disclose such inventions to Applied; and (4) Yin would assign such inventions to Applied at Applied's request. AMEC China has insufficient information to admit or deny the allegations regarding provisions in Chen, Todaka and Luo's employment agreements, and therefore denies them on that basis. AMEC China denies the remaining allegations of paragraph 27.

28. AMEC China admits that when he resigned from Applied in January 2004, Yin signed a document titled "Termination Certification," and that this document acknowledged the obligation, in compliance with his employment agreement, to preserve as confidential and not to disclose to any third party or use any confidential information of Applied. AMEC China further

admits that this document also certified that Yin had complied with and would continue to comply with all the terms of his employment agreement, and that he did not have in his possession and had returned all confidential information and other documents and materials belonging to Applied. AMEC China has insufficient information to admit or deny the remaining allegations in paragraph 28, and therefore denies them on that basis.

29.  AMEC China admits that Yin turned in his resignation a month or more before January 31, 2004 and informed Applied that his last day at Applied would be January 31, 2004. AMEC China has insufficient information to admit or deny the allegations in paragraph 29, and therefore denies them on that basis.

30.  AMEC China admits that it was aware of the fact that Yin, Chen, Todaka and Luo had signed employee agreements with Applied. AMEC China denies the remaining allegations of paragraph 30.

31.  AMEC China denies that it "seeded" itself with former Applied employees. AMEC China admits that Yin did not permanently cease working after he resigned from Applied. AMEC China also admits that Yin and Chen were among a group of parties involved in the creation of AMEC China, AMEC Asia, and AMEC Inc. AMEC China further admits that it is in the business of manufacturing semiconductor tools and that it is based in China. AMEC China also admits that it has announced that it has designed, built, and will sell tools that use CVD and Etch processes. AMEC China denies the remaining allegations in paragraph 31.

32.  AMEC China admits that Chen was one of a group of parties involved in the creation of AMEC China, AMEC Asia, and AMEC Inc., and that he did this well after he resigned from Applied. AMEC China admits that Chen has responsibility for the development and commercialization of AMEC China's products and is also responsible for its intellectual property strategy. AMEC China denies the remaining allegation in paragraph 32.

33.  AMEC China admits that Luo began working for AMEC China after he resigned from Applied. AMEC China further admits that Luo has responsibility for the development and commercialization of AMEC China's CVD product line. AMEC China denies the remaining allegations of paragraph 33.

34. AMEC China admits that Todaka began working for AMEC China approximately two years after he was laid off from Applied. AMEC China also admits that Todaka is employed by AMEC China as an engineer and that he is a named inventor on a U.S. patent application that has been assigned to AMEC Asia. AMEC China denies the remaining allegations of paragraph 34.

35. AMEC China admits that Yin, Chen, Luo and Todaka are not the only AMEC China employees that formerly worked for Applied. AMEC China denies the remaining allegations of paragraph 35.

36. AMEC China denies the allegations in paragraph 36.

37. AMEC China admits that it filed Chinese Patent Application No. 200510028563.2 (the "Chinese '563 application") on August 5, 2005, which was one year and seven months after Yin's last day at Applied and one year and three days after his official termination date, and also was nearly two years after Chen's last day at Applied and two years and nine months after Todaka's last day at Applied. AMEC China admits that it is the named applicant of the Chinese '563 application, that Chen and Todaka are the inventors named in the application, and that Yin is *not* a named inventor of the application. AMEC China denies the remaining allegations of paragraph 37.

38. AMEC China admits that Yin, Todaka, and Chen are named as inventors on U.S. Patent Application No. 11/441,291, filed May 24, 2006 (the "U.S. '291 application") and on Japanese Patent Application No. 2006-214829, filed August 7, 2006 (the "Japanese '829 application"). AMEC China further admits that both applications claim priority from the Chinese '563 application. AMEC China admits that the U.S. '291 application is assigned to AMEC Asia, and that AMEC Asia is the named applicant of the Japanese '829 application. AMEC China further admits that the U.S. '291 application and the Japanese '829 application are entitled "Method and Apparatus for Processing Semiconductor Work Pieces." AMEC China also admits that the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application are directed to similar subject matter. AMEC China denies the remaining allegations of paragraph 38.

39. AMEC China admits that certain of its engineers who were formerly employed by Applied are currently familiar with the subject matter in the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application. AMEC China admits these engineers include Yin, Chen, and Todaka. AMEC China has insufficient information to admit or deny the allegation regarding Applied's filing U.S. patent applications, and therefore denies it on this basis. AMEC China denies the remaining allegations in paragraph 39.

40. AMEC China denies the allegations in paragraph 40.

41. AMEC China admits that Yin's employment agreement purports to state that any invention disclosed to a third party within one year of his leaving Applied is presumed to have been conceived or made during the period of his employment by Applied and will belong to Applied. AMEC China has insufficient information to admit or deny the allegation that Chen, Todaka, and Luo's employment agreements contain the latter provision, and therefore denies it on this basis. AMEC China denies the remaining allegation of paragraph 41.

42. AMEC China admits that Chinese Patent Application No. 200510028564.7 (the "Chinese '564 application") was filed on August 5, 2005, and that AMEC China is the named applicant of this application. AMEC China further admits that U.S. Patent Application No. 11/350,022 (the "U.S. '022 application") and Japanese Patent Application No. 2006213916 (the "Japanese '916 patent application") were filed on February 8, 2006 and August 4, 2006, respectively, and that both claim priority from the Chinese '564 application. AMEC China also admits that the U.S. '022 application is assigned to AMEC Asia and the Japanese '916 application names AMEC Asia as applicant. AMEC China admits that the Chinese '564, U.S. '022, and Japanese '916 applications describe a RF matching network and the use of radio frequency (RF) sources, and that this technology can be employed in both Etch and CVD tools. AMEC China denies the remaining allegations of paragraph 42.

43. AMEC China denies the allegations of paragraph 43.

44. AMEC China denies the allegations of paragraph 44.

AMEC CHINA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2477271

8

## COUNT I

**(Misappropriation of Trade Secrets against All Defendants)**

45. In response to paragraph 45, AMEC China incorporates its responses to paragraph 1 through 44 as if set forth fully herein.

46. AMEC China denies the allegations in paragraph 46.

47. AMEC China denies the allegations in paragraph 47.

48. AMEC China denies the allegations in paragraph 48.

49. AMEC China denies the allegations in paragraph 49.

50. AMEC China denies the allegations in paragraph 50.

51. AMEC China denies the allegations in paragraph 51.

52. AMEC China denies the allegations in paragraph 52.

53. AMEC China denies the allegations in paragraph 53.

## COUNT II

**(Intentional Interference with Contractual Relationships against all Defendants)**

54. In response to paragraph 54, AMEC China incorporates its responses to paragraph 1 through 53 as if set forth fully herein.

55. AMEC China denies the allegations in paragraph 55.

56. AMEC China admits that it was aware of the fact that Yin, Chen, Todaka and Luo had signed employee agreements with Applied. AMEC China denies the remaining allegations of paragraph 56.

57. AMEC China denies the allegations in paragraph 57.

58. AMEC China denies the allegations in paragraph 58.

59. AMEC China denies the allegations in paragraph 59.

## COUNT III

**(Conversion against all Defendants)**

60. In response to paragraph 60, AMEC China incorporates its responses to paragraph 1 through 59 as if set forth fully herein.

61. AMEC China denies the allegations of paragraph 61.

1  62.  AMEC China denies the allegations in paragraph 62.

2  63.  AMEC China denies the allegations in paragraph 63.

3  64.  AMEC China denies the allegations in paragraph 64.

4  65.  AMEC China denies the allegations in paragraph 65.

## COUNT IV

**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 *et seq.* against all Defendants)**

66.  In response to paragraph 66, AMEC China incorporates its responses to paragraph 1 through 65 as if set forth fully herein.

67.  Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 67 is required. For avoidance of doubt, AMEC China denies the allegations in paragraph 67.

68.  Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 68 is required. For avoidance of doubt, AMEC China denies the allegations in paragraph 68.

69.  Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 69 is required. For avoidance of doubt, AMEC China denies the allegations in paragraph 69.

70.  Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 70 is required. For avoidance of doubt, AMEC China denies the allegations in paragraph 70.

71.  Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 71 is required. For avoidance of doubt, AMEC China denies the allegations in paragraph 71.

## REQUEST FOR RELIEF

In response to the Request for Relief, AMEC China denies that Applied is entitled to damages of any kind, injunctive relief, a judgment ordering defendants to assign ownership rights in any patent application to Applied, costs, attorney's fees, or any other relief whatsoever.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any matter on which Applied bears such burden, AMEC China alleges for its defenses as follows:

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Complaint is barred in whole or in part by the applicable statutes of limitations.

### Third Affirmative Defense

The Complaint is barred in whole or in part by the doctrine of laches.

### Fourth Affirmative Defense

There has been no damage to Applied as alleged herein.

### Fifth Affirmative Defense

The Complaint is barred in whole or in part by the doctrines of waiver, estoppel, consent, and ratification.

### Sixth Affirmative Defense

The Complaint is barred in whole or in part by the doctrine of unclean hands.

### Seventh Affirmative Defense

Applied is not entitled to injunctive relief because it has an adequate remedy at law.

### Eighth Affirmative Defense

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because any purported trade secrets identified by Applied are not trade secrets protected by the Uniform Trade Secrets Act or any other statutory or common law provisions.

### Ninth Affirmative Defense

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied's alleged trade secret information has been publicly disclosed by Applied and otherwise has not been the subject of reasonable efforts to maintain its secrecy and is therefore not capable of protection as a trade secret.

### Tenth Affirmative Defense

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied's alleged trade secret information was known to AMEC China from publicly available sources and/or was already independently known to AMEC China, which bars Applied's recovery.

### Eleventh Affirmative Defense

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because even if the alleged trade secret information was in fact a trade secret, AMEC China has not committed any acts that would constitute misappropriation of that information.

### Twelfth Affirmative Defense

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied has failed to sufficiently identify any purported trade secrets as set forth in the Uniform Trade Secrets Act or any other statutory or common law provisions.

### Thirteenth Affirmative Defense

Applied has made a claim of misappropriation in bad faith, without a reasonable basis for believing that the alleged information was a trade secret or was acquired improperly, entitling AMEC China to recovery of its attorneys' fees and costs pursuant to Civil Code § 3426.4.

### Fourteenth Affirmative Defense

The alleged clause in the employment agreements between Applied and Yin, Chen, Todaka and Luo that states any inventions by these individuals disclosed in a patent application or to third parties within one year of their leaving Applied are presumed to have been conceived or made during their employment with Applied and would be belong to Applied violates California Business and Professions Code section 16600, is unenforceable, and void as against public policy.

### Fifteenth Affirmative Defense

Applied has failed to take reasonable steps to protect itself from the damage alleged in the Complaint and has failed to mitigate any such alleged damage.

### Sixteenth Affirmative Defense

To the extent that Applied suffered injury or damage, which AMEC China denies, such injury or damage was caused by the actions or conduct of others, not of AMEC China.

### Seventeenth Affirmative Defense

To the extent that Applied suffered injury or damage, which AMEC China denies, such injury or damage was not proximately caused by any conduct or inaction of AMEC China, was not foreseeable, or both.

### Eighteenth Affirmative Defense

Applied was at fault with respect to the matters alleged in the Complaint and its recovery, if any, should be barred or reduced in proportion to their comparative fault.

### Nineteenth Affirmative Defense

AMEC China's actions were conducted in good faith, without fraud, oppression, or malice regarding Applied or its rights, thereby precluding any and all claims for punitive damages.

### Twentieth Affirmative Defense

To the extent that AMEC China acted as alleged in the Complaint, AMEC China's actions were at all times reasonable, privileged and justified.

### Twenty-First Affirmative Defense

The Court lacks personal jurisdiction over AMEC China with respect to the claims asserted and relief requested by Applied.

### Twenty-Second Affirmative Defense

Applied's claims for conversion, intentional interference with contractual relationships, and unfair competition are preempted by the Uniform Trade Secrets Act.

### Twenty-Third Affirmative Defense

The venue for this action is improper.

### PRAYER

WHEREFORE, AMEC China prays for judgment as follows:

1. That Applied take nothing by way of the Complaint;

1      2.      That the Complaint be dismissed with prejudice and judgment entered in favor of AMEC China;

3      3.      That AMEC China be awarded its attorneys' fees and costs; and

4      4.      For such other relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant and Counterclaimant AMEC China hereby asserts the following counterclaims against Plaintiff and Counterdefendant Applied:

### INTRODUCTION

1. On information and belief, Applied's employment agreements contain a clause stating that all inventions described in a patent application or disclosed to third parties within one year of the termination of employee's employment with Applied are presumed to have been made at Applied and belong to Applied (the "non-compete" clause). This improperly interferes with former Applied employees' mobility and therefore violates section 16600 of the California Business and Professions Code and is void as against public policy. Applied's practice of requiring employees to agree to such a clause is an unlawful and unfair business practice within the meaning of California Business and Professions Code section 17200 *et seq*. Because Applied has invoked this clause in its conversion and intentional interference with contractual relationships claims against AMEC China, AMEC China seeks a declaration that the clause is void and seeks an injunction preventing Applied from enforcing it.

### PARTIES

2. Counterclaimant AMEC China is a cooperative joint venture between AMEC Asia and Shanghai Ventures Capital Co., Ltd., organized under the laws of the People's Republic of China, having its principal place of business in Shanghai.

3. On information and belief, counterdefendant Applied is a Delaware corporation, with its principal place of business in Santa Clara, California.

### JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2).

5. Venue is proper in this district under 28 U.S.C. § 1391(a) because this is the district in which counterdefendant Applied resides.

## BACKGROUND

6. As a condition of his employment, Applied required Gerald Yin to agree to the non-compete clause in his employment agreement. On information and belief, Applied required Chen, Todaka and Luo, as well its other employees, to agree to the non-compete clause as well.

7. Applied has filed suit against AMEC China, alleging claims of misappropriation of trade secrets, intentional interference with contractual relationships, conversion and violations of the Unfair Competition Law. Applied's Complaint contends that under the non-compete, Applied has a contractual right to various patent applications assigned to AMEC entities. The Complaint contends that AMEC China has wrongfully taken those patent applications for itself and is therefore liable for conversion. The Complaint also asserts that AMEC China induced Yin, Chen, Todaka and Luo to breach the non-compete by assigning those patents to it and AMEC Asia. In its Opposition to AMEC China and AMEC Asia's Motions to Dismiss, Applied argued that its claims for conversion and intentional interference with contractual relationships are independent of its misappropriation of trade secrets claim, meaning that these claims do not depend on whether the information at issue is a trade secret.

8. Because the non-compete inhibits former Applied employees' mobility and, by Applied's own admission, is not designed to protect Applied's trade secrets, it violates California's strong public policy in favor of employee mobility, as statutorily codified in California Business and Professions Code section 16600. Therefore, it is unenforceable and void. Applied's requiring its employees to enter into such agreements is an unlawful and unfair business practice within the meaning of California Business and Professions Code section 17200, *et seq.*

## COUNT I

### (Declaratory Relief)

9. AMEC China incorporates paragraphs 1 - 8 above as if fully set forth herein.

10. An actual controversy has arisen regarding the validity of the non-compete in Applied's employment agreements.

11. Specifically, Applied has stated that its conversion and intentional interference with contractual relationships claims against AMEC China are based on allegations that AMEC China has "wrongfully converted Applied's contractual rights of assignment under the Employee Agreements" and that AMEC China "caused its employees to breach their employment agreements with Applied by assigning certain patent applications to AMEC Shanghai (AMEC China) and AMEC Asia." The provision that was allegedly breached is the non-compete, as stated in Applied's Complaint and as Applied has argued to the Court.

12. This non-compete improperly restricts Applied employees' mobility, and is thus void as against public policy and unenforceable. Cal. Bus. & Prof Code. § 16600.

13. Declaratory relief is necessary and proper so that AMEC China can resolve its rights and duties relating to Applied's employment agreements with Yin, Chen, Todaka and Luo.

**COUNT II**

**(Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)**

14. AMEC China incorporates paragraphs 1 - 13 above as if fully set forth herein.

15. On information and belief, Applied has engaged in a practice of requiring its employees, including Yin, Chen, Todaka and Luo, to agree to the non-compete as a condition of their employment. Because this clause is unenforceable and void as against public policy, this business practice is unlawful and unfair within the meaning of California Business and Professions Code section 17200, *et seq.*

16. This unlawful and unfair practice has resulted in AMEC China being forced to defend claims of conversion and intentional interference with contractual relationships and expend funds on attorney's fees.

17. AMEC China is therefore entitled to an injunction prohibiting Applied from enforcing the non-compete in its employment agreements.

**PRAYER FOR RELIEF**

WHEREFORE, AMEC China demands judgment from Applied for:

(1) A declaration that the provision in Applied's employment agreement stating that any inventions described in a patent agreement or disclosed to third parties within one year after the employee leaves Applied belong to Applied is unenforceable and void as against public policy;

(2) A permanent injunction prohibiting Applied from enforcing the provision;

(3) Costs of suit; and

(4) Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), AMEC China hereby demands a trial by jury of all issues so triable herein.

Dated: March 21, 2008         MARC DAVID PETERS
                              MORRISON & FOERSTER LLP


                              By:  /s/ Marc David Peters
                                   Marc David Peters

                                   Attorneys for Defendant
                                   ADVANCED MICRO-
                                   FABRICATION EQUIPMENT INC.
                                   CHINA