1  HAROLD J. MCELHINNY (CA SBN 66781)
   HMcElhinny@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone: 415.268.7000
4  Facsimile: 415.268.7522

5  KENNETH A. KUWAYTI (CA SBN 145384)
   KKuwayti@mofo.com
6  MARC DAVID PETERS (CA SBN 211725)
   MDPeters@mofo.com
7  MORRISON & FOERSTER LLP
   755 Page Mill Road
8  Palo Alto, CA 94304-1018
   Telephone:  650-813-5600
9  Facsimile:  650-494-0792

10
   Attorneys for Defendant
11 ADVANCED MICRO-FABRICATION EQUIPMENT, INC.
   CHINA, ADVANCED MICRO-FABRICATION
12 EQUIPMENT, INC. ASIA, AND ADVANCED
   MICROFABRICATION
13 EQUIPMENT INC.

14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                         SAN JOSE DIVISION
17

18
   APPLIED MATERIALS, INC.,              Case No.    C07 05248 JW (PVT)
19
                    Plaintiff,
20                                        **AMEC ASIA'S ANSWER TO
        v.                                FIRST AMENDED COMPLAINT
21                                        AND COUNTERCLAIMS**
   ADVANCED MICRO-FABRICATION
22 EQUIPMENT INC. CHINA, ADVANCED
   MICRO-FABRICATION EQUIPMENT, INC.,
23 ASIA, ADVANCED MICRO-FABRICATION      **JURY TRIAL DEMANDED**
   EQUIPMENT, INC.,
24
                    Defendants.
25

26

27

28

1    Defendant ADVANCED MICRO-FABRICATION EQUIPMENT INC. ASIA ("AMEC

2    Asia"), by and through its attorneys, answers Plaintiff Applied Materials, Inc.'s ("Applied")

3    Complaint as follows:

4                                    **INTRODUCTION**

5        1.    AMEC Asia admits that Applied is asserting claims for conversion, misappropriation

6    of trade secrets, intentional interference with contractual relations and unfair competition against

7    AMEC Asia, Advanced Micro-Fabrication Equipment Inc. China ("AMEC China"), and

8    Advanced Micro-Fabrication Equipment Inc. ("AMEC Inc.").  AMEC Asia also admits that

9    Applied has stated in public filings that it develops, manufactures, sells manufacturing equipment

10   used to fabricate semiconductor chips, and that certain models of this equipment enable Etch and

11   Chemical Vapor Deposition ("CVD") processes.  AMEC Asia has insufficient information to

12   admit or deny the allegations regarding Applied's location, the characteristics of Applied's Etch

13   and CVD tools, and Applied's position in the industry, and therefore denies them on this basis.

14   AMEC Asia denies the remaining allegations of paragraph 1.

15       2.    AMEC Asia admits that Gerald Z. Yin, Aihua Chen, Ryoji Todaka, and Lee Luo

16   were formerly employed by Applied.  AMEC Asia also admits that Yin had access to certain

17   information regarding the design, manufacture, and use of Etch tools during certain periods of his

18   employment at Applied.  AMEC Asia further admits that Chen and Todaka had access to certain

19   information regarding the design, manufacture, and use of CVD tools during certain periods of

20   their employment with Applied.  AMEC Asia also admits that Luo had access to certain

21   information regarding the design, manufacture, and use of Etch and CVD tools during certain

22   periods of his employment at Applied.  AMEC Asia denies the remaining allegations of

23   paragraph 2.

24       3.    AMEC Asia admits that Yin was a Corporate Vice President of Etch Product

25   Management from 1998-1999, Co-General Manager of the Etch Product Business Group in 2000,

26   Head of Applied's Asia Low Cost Source Program in 2001, CTO of Applied Materials Asia (and

27   *not* CTO of Applied Materials) in 2002, and Head of Applied's Asia Sourcing and Procurement

28   in 2003.  AMEC Asia also admits that Yin managed the Etch product group up until 2001 and

1    that he had access to information regarding Etch tools until 2001. AMEC Asia denies the

2    remaining allegations in paragraph 3.

3        4.    AMEC Asia admits that Chen held various positions at Applied, including General

4    Manager of the LPCVD division, and that Chen had access to information regarding Applied's

5    CVD tools at various times. AMEC Asia denies the remaining allegations in paragraph 4.

6        5.    AMEC Asia admits that Yin terminated his employment with Applied in 2004 and

7    that he subsequently moved to China. AMEC Asia also admits that he and Chen were among a

8    group of parties involved in the creation of AMEC China, AMEC Asia and AMEC Inc. AMEC

9    Asia further admits that AMEC China is in the business of manufacturing semiconductor

10   equipment, including Etch and CVD equipment. AMEC Asia also admits that Chen and Luo

11   resigned from Applied in 2003 and 2006, respectively, and that Todaka was laid off by Applied in

12   2003. AMEC Asia further admits that Yin and Chen hold positions at AMEC China, AMEC

13   Asia, and AMEC Inc., and that Todaka and Luo hold positions at AMEC China. AMEC Asia

14   denies the remaining allegations of paragraph 5.

15       6.    AMEC Asia admits that it currently employs individuals who formerly worked at

16   Applied. AMEC Asia also admits that some of these individuals held positions at Applied such

17   as Corporate Vice President. AMEC Asia further admits that while they were employed at

18   Applied, Yin had access to information regarding Etch tools until 2001, and Chen and Todaka

19   had access to information regarding CVD tools. AMEC Asia also admits that Luo had access to

20   information CVD tools until 2002, and that he had access to information on Etch tools beginning

21   in 2004. AMEC Asia denies the remaining allegations of paragraph 6.

22       7.    AMEC Asia admits that semiconductor manufacturing tools are sophisticated and

23   complex machines, that AMEC Asia does business in China, and that AMEC China (not

24   AMEC Asia) has designed, built, and announced the availability of CVD and Etch tools, although

25   AMEC Asia denies AMEC China did so within one year of starting its business in China. AMEC

26   Asia denies the remaining allegations of paragraph 7.

27       8.    AMEC Asia admits that while employed by Applied, Chen and Todaka worked on

28   designs for use in CVD tools and that Luo worked on such designs until 2002. AMEC Asia also

AMEC ASIA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2487404

2

1   admits that on August 5, 2005, AMEC China filed a Chinese patent application. AMEC Asia

2   denies the remaining allegations of paragraph 8.

3          9.      AMEC Asia admits that Yin, Chen, Todaka and Luo signed employee agreements

4   with Applied, the terms of which are set forth in the agreements themselves. AMEC Asia denies

5   the remaining allegations of paragraph 9.

6          10.     AMEC Asia admits that Applied is seeking an injunction against the defendants, as

7   well as compensatory and punitive damages and a declaration that it is the owner of defendants'

8   patent applications. AMEC Asia denies the remaining allegations of paragraph 10.

9                                       **PARTIES**

10         11.     AMEC Asia has insufficient information to admit or deny the allegations in

11  paragraph 11, and therefore denies them on that basis.

12         12.     AMEC Asia admits that AMEC China is a cooperative joint venture between

13  AMEC Asia and Shanghai Ventures Capital Co., Ltd., organized under the laws of the People's

14  Republic of China, having its principal place of business in Shanghai. AMEC Asia also admits

15  that AMEC China was founded on May 31, 2004. AMEC Asia denies the remaining allegations

16  of paragraph 12.

17         13.     AMEC Asia admits that it operates primarily as a holding company, that it was

18  incorporated in the Cayman Islands, and that it is the assignee of U.S. patent applications. AMEC

19  Asia denies the remaining allegations of paragraph 13.

20         14.     AMEC Asia admits that AMEC Inc. operates primarily as a holding company of

21  AMEC Asia and (indirectly) AMEC China, and that it was incorporated in the Cayman Islands.

22  AMEC Asia denies the remaining allegations of paragraph 14.

23                              **JURISDICTION AND VENUE**

24         15.     AMEC Asia states that insofar as plaintiff's averments in paragraph 15 state

25  conclusions of law, no response thereto is required. AMEC Asia admits that this is an action

26  between a resident of California and residents of foreign states, and that the amount in

27  controversy exceeds $75,000. AMEC Asia denies that Applied is entitled to any damages, and

28  denies the remaining allegations of paragraph 15.

AMEC ASIA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2487404

3

1    16.    AMEC Asia denies that this is the district in which a substantial part of the events or

2    omissions giving rise to the claim occurred.  AMEC Asia has insufficient knowledge to admit or

3    deny the allegations that this is the district in which a substantial part of the property that is the

4    subject of this action is situated, and therefore denies it on this basis.  AMEC China denies the

5    remaining allegations of paragraph 16.

6                                              **BACKGROUND**

7    17.    AMEC Asia admits that this action seeks to recover compensatory and punitive

8    damages and that it is also an action for an injunction.  AMEC Asia denies the remaining

9    allegations of paragraph 17.

10    18.    AMEC Asia admits the allegations in paragraph 18.

11    19.    AMEC Asia admits that paragraph 19 describes an etch process, but not necessarily

12    every etch process.

13    20.    AMEC Asia admits that paragraph 20 describes a CVD process, but not necessarily

14    every CVD process.

15    21.    AMEC Asia admits that Etch and CVD processes can be sophisticated and

16    challenging.  AMEC Asia has insufficient knowledge to admit or deny the remaining allegations

17    of paragraph 21, and therefore denies them on that basis.

18    22.    AMEC Asia has insufficient knowledge to admit or deny the allegations of

19    paragraph 22, and therefore denies them on that basis.

20    23.    AMEC Asia admits that Applied hired Yin on March 18, 1991, and that his official

21    termination date was August 1, 2004, but that the last day he was physically present at Applied

22    was January 31, 2004.  AMEC Asia also admits that Yin held various positions at Applied in the

23    Etch division, including Corporate Vice President and Co-General Manager.  AMEC Asia denies

24    the remaining allegations of paragraph 23.

25    24.    AMEC Asia admits that Applied hired Chen on June 8, 1992, that he resigned in

26    September 2003, and that his termination was effective November 2003.  AMEC Asia also admits

27    that Chen held a number of positions while at Applied, including General Manager of the LPCVD

28

1   division.  AMEC Asia has insufficient information to admit or deny the remaining allegations of

2   paragraph 24, and therefore denies them on that basis.

3          25.    AMEC Asia admits that Applied hired Luo in 1994 and that he resigned from

4   Applied in January 2006.  AMEC Asia also admits that Luo held a variety of positions while at

5   Applied, including Deputy General Manager for LPCVD products from 1999 to 2001.  AMEC

6   Asia has insufficient information to admit or deny the remaining allegations of paragraph 25, and

7   therefore denies them on that basis.

8          26.    AMEC Asia admits that Applied hired Todaka in 2000, that he was laid off from

9   Applied in November 2002, and that his official termination date was in January 2003.  AMEC

10  Asia also admits that while at Applied, Todaka worked as an engineer on CVD hardware as well

11  as other types of technologies.  AMEC Asia has insufficient information to admit or deny the

12  remaining allegations of paragraph 26, and therefore denies them on that basis.

13         27.    AMEC Asia admits that Yin, Chen, Todaka and Luo entered into employment

14  agreements with Applied.  AMEC Asia admits that Yin's employment agreement with Applied

15  had provisions stating that (1) Yin was not to disclose any Applied confidential information to

16  anyone outside of Applied, either during or after employment with Applied; (2) all inventions

17  conceived, made or reduced to practice during the period of his employment with Applied

18  belonged to Applied, provided such inventions grew out of his work with Applied or were related

19  to the business of Applied; (3) Yin would promptly disclose such inventions to Applied; and (4)

20  Yin would assign such inventions to Applied at Applied's request.  AMEC Asia has insufficient

21  information to admit or deny the allegations regarding provisions in Chen, Todaka and Luo's

22  employment agreements, and therefore denies them on that basis.  AMEC Asia denies the

23  remaining allegations of paragraph 27.

24         28.    AMEC Asia admits that when he resigned from Applied in January 2004, Yin

25  signed a document titled "Termination Certification," and that this document acknowledged the

26  obligation, in compliance with his employment agreement, to preserve as confidential and not to

27  disclose to any third party or use any confidential information of Applied.  AMEC Asia further

28  admits that this document also certified that Yin had complied with and would continue to

AMEC Asia's Answer to First Amended Complaint and Counterclaims
C07 05248 JW (PVT)                                                                                    5
sf-2487404

1   comply with all the terms of his employment agreement, and that he did not have in his

2   possession and had returned all confidential information and other documents and materials

3   belonging to Applied.  AMEC Asia has insufficient information to admit or deny the remaining

4   allegations in paragraph 28, and therefore denies them on that basis.

5          29.    AMEC Asia admits that Yin turned in his resignation a month or more before

6   January 31, 2004 and informed Applied that his last day at Applied would be January 31, 2004.

7   AMEC Asia has insufficient information to admit or deny the allegations in paragraph 29, and

8   therefore denies them on that basis.

9          30.    AMEC Asia admits that it was aware of the fact that Yin, Chen, Todaka and Luo

10  had signed employee agreements with Applied.  AMEC Asia denies the remaining allegations of

11  paragraph 30.

12         31.    AMEC Asia denies that it "seeded" itself with former Applied employees.  AMEC

13  Asia admits that Yin did not permanently cease working after he resigned from Applied.  AMEC

14  Asia also admits that Yin and Chen were among a group of parties involved in the creation of

15  AMEC China, AMEC Asia, and AMEC Inc.  AMEC Asia further admits that AMEC China is in

16  the business of manufacturing semiconductor tools and that AMEC China is based in China.

17  AMEC Asia also admits that AMEC China has announced that it has designed, built, and will sell

18  tools that use CVD and Etch processes.  AMEC Asia denies the remaining allegations in

19  paragraph 31.

20         32.    AMEC Asia admits that Chen was one of a group of parties involved in the creation

21  of AMEC China, AMEC Asia, and AMEC Inc., and that he did this well after he resigned from

22  Applied.  AMEC Asia admits that Chen has responsibility for the development and

23  commercialization of AMEC China's products and is also responsible for its intellectual property

24  strategy.  AMEC Asia denies the remaining allegation in paragraph 32.

25         33.    AMEC Asia admits that Luo began working for AMEC China after he resigned

26  from Applied.  AMEC Asia further admits that Luo has responsibility for the development and

27  commercialization of AMEC China's CVD product line.  AMEC Asia denies the remaining

28  allegations of paragraph 33.

1    34.    AMEC Asia admits that Todaka began working for AMEC China approximately

2    two years after he was laid off from Applied.  AMEC Asia also admits that Todaka is employed

3    by AMEC China as an engineer and that he is a named inventor on a U.S. patent application that

4    has been assigned to AMEC Asia.  AMEC Asia denies the remaining allegations of paragraph 34.

5    35.    AMEC Asia admits that Yin, Chen, Luo and Todaka are not the only AMEC China

6    employees that formerly worked for Applied.  AMEC Asia denies the remaining allegations of

7    paragraph 35.

8    36.    AMEC Asia denies the allegations in paragraph 36.

9    37.    AMEC Asia admits that AMEC China filed Chinese Patent Application

10    No. 200510028563.2 (the "Chinese '563 application") on August 5, 2005, which was one year

11    and seven months after Yin's last day at Applied and one year and three days after his official

12    termination date, and also was nearly two years after Chen's last day at Applied and two years

13    and nine months after Todaka's last day at Applied.  AMEC Asia admits that AMEC China is the

14    named applicant of the Chinese '563 application, that Chen and Todaka are the inventors named

15    in the application, and that Yin is ***not*** a named inventor of the application.  AMEC Asia denies

16    the remaining allegations of paragraph 37.

17    38.    AMEC Asia admits that Yin, Todaka, and Chen are named as inventors on U.S.

18    Patent Application No. 11/441,291, filed May 24, 2006 (the "U.S. '291 application") and on

19    Japanese Patent Application No. 2006-214829, filed August 7, 2006 (the "Japanese '829

20    application").  AMEC Asia further admits that both applications claim priority from the Chinese

21    '563 application.  AMEC Asia admits that the U.S. '291 application is assigned to it, and that it is

22    the named applicant of the Japanese '829 application.  AMEC Asia further admits that the U.S.

23    '291 application and the Japanese '829 application are entitled "Method and Apparatus for

24    Processing Semiconductor Work Pieces."  AMEC Asia also admits that the Chinese '563

25    application, the Japanese '829 application, and the U.S. '291 application are directed to similar

26    subject matter.  AMEC Asia denies the remaining allegations of paragraph 38.

27    39.    AMEC Asia admits that certain of AMEC China's engineers who were formerly

28    employed by Applied are currently familiar with the subject matter in the Chinese '563

AMEC ASIA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2487404

7

1    application, the Japanese '829 application, and the U.S. '291 application.  AMEC Asia admits

2    these engineers include Yin, Chen, and Todaka.  AMEC Asia has insufficient information to

3    admit or deny the allegation regarding Applied's filing U.S. patent applications, and therefore

4    denies it on this basis.  AMEC Asia denies the remaining allegations in paragraph 39.

5        40.    AMEC Asia denies the allegations in paragraph 40.

6        41.    AMEC Asia admits that Yin's employment agreement purports to state that any

7    invention disclosed to a third party within one year of his leaving Applied is presumed to have

8    been conceived or made during the period of his employment by Applied and will belong to

9    Applied.  AMEC Asia has insufficient information to admit or deny the allegation that Chen,

10   Todaka, and Luo's employment agreements contain the latter provision, and therefore denies it on

11   this basis.  AMEC Asia denies the remaining allegation of paragraph 41.

12       42.    AMEC Asia admits that Chinese Patent Application No. 200510028564.7 (the

13   "Chinese '564 application") was filed on August 5, 2005, and that AMEC China is the named

14   applicant of this application.  AMEC Asia further admits that U.S. Patent Application

15   No. 11/350,022 (the "U.S. '022 application") and Japanese Patent Application No. 2006213916

16   (the "Japanese '916 patent application") were filed on February 8, 2006 and August 4, 2006,

17   respectively, and that both claim priority from the Chinese '564 application.  AMEC Asia also

18   admits that the U.S. '022 application is assigned to it and the Japanese '916 application names it

19   as applicant.  AMEC Asia admits that the Chinese '564, U.S. '022, and Japanese '916

20   applications describe a RF matching network and the use of radio frequency (RF) sources, and

21   that this technology can be employed in both Etch and CVD tools.  AMEC Asia denies the

22   remaining allegations of paragraph 42.

23       43.    AMEC Asia denies the allegations of paragraph 43.

24       44.    AMEC Asia denies the allegations of paragraph 44.

25                          **COUNT I**

26          **(Misappropriation of Trade Secrets against All Defendants)**

27       45.    In response to paragraph 45, AMEC Asia incorporates its responses to paragraph 1

28   through 44 as if set forth fully herein.

AMEC ASIA'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW (PVT)
sf-2487404

8

1    46.    AMEC Asia denies the allegations in paragraph 46.

2    47.    AMEC Asia denies the allegations in paragraph 47.

3    48.    AMEC Asia denies the allegations in paragraph 48.

4    49.    AMEC Asia denies the allegations in paragraph 49.

5    50.    AMEC Asia denies the allegations in paragraph 50.

6    51.    AMEC Asia denies the allegations in paragraph 51.

7    52.    AMEC Asia denies the allegations in paragraph 52.

8    53.    AMEC Asia denies the allegations in paragraph 53.

9                               **COUNT II**

10    **(Intentional Interference with Contractual Relationships against all Defendants)**

11    54.    In response to paragraph 54, AMEC Asia incorporates its responses to paragraph 1

12    through 53 as if set forth fully herein.

13    55.    AMEC Asia denies the allegations in paragraph 55.

14    56.    AMEC Asia admits that it was aware of the fact that Yin, Chen, Todaka and Luo

15    had signed employee agreements with Applied.  AMEC Asia denies the remaining allegations of

16    paragraph 56.

17    57.    AMEC Asia denies the allegations in paragraph 57.

18    58.    AMEC Asia denies the allegations in paragraph 58.

19    59.    AMEC Asia denies the allegations in paragraph 59.

20                               **COUNT III**

21                     **(Conversion against all Defendants)**

22    60.    In response to paragraph 60, AMEC Asia incorporates its responses to paragraph 1

23    through 59 as if set forth fully herein.

24    61.    AMEC Asia denies the allegations of paragraph 61.

25    62.    AMEC Asia denies the allegations in paragraph 62.

26    63.    AMEC Asia denies the allegations in paragraph 63.

27    64.    AMEC Asia denies the allegations in paragraph 64.

28    65.    AMEC Asia denies the allegations in paragraph 65.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IV

**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 *et seq.* against all Defendants)**

66.    In response to paragraph 66, AMEC Asia incorporates its responses to paragraph 1 through 65 as if set forth fully herein.

67.    Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 67 is required.  For avoidance of doubt, AMEC Asia denies the allegations in paragraph 67.

68.    Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 68 is required.  For avoidance of doubt, AMEC Asia denies the allegations in paragraph 68.

69.    Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 69 is required.  For avoidance of doubt, AMEC Asia denies the allegations in paragraph 69.

70.    Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 70 is required.  For avoidance of doubt, AMEC Asia denies the allegations in paragraph 70.

71.    Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 71 is required.  For avoidance of doubt, AMEC Asia denies the allegations in paragraph 71.

## REQUEST FOR RELIEF

In response to the Request for Relief, AMEC Asia denies that Applied is entitled to damages of any kind, injunctive relief, a judgment ordering defendants to assign ownership rights in any patent application to Applied, costs, attorney's fees, or any other relief whatsoever.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any matter on which Applied bears such burden, AMEC Asia alleges for its defenses as follows:

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

The Complaint is barred in whole or in part by the applicable statutes of limitations.

**Third Affirmative Defense**

The Complaint is barred in whole or in part by the doctrine of laches.

**Fourth Affirmative Defense**

There has been no damage to Applied as alleged herein.

**Fifth Affirmative Defense**

The Complaint is barred in whole or in part by the doctrines of waiver, estoppel, consent, and ratification.

**Sixth Affirmative Defense**

The Complaint is barred in whole or in part by the doctrine of unclean hands.

**Seventh Affirmative Defense**

Applied is not entitled to injunctive relief because it has an adequate remedy at law.

**Eighth Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because any purported trade secrets identified by Applied are not trade secrets protected by the Uniform Trade Secrets Act or any other statutory or common law provisions.

**Ninth Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied's alleged trade secret information has been publicly disclosed by Applied and otherwise has not been the subject of reasonable efforts to maintain its secrecy and is therefore not capable of protection as a trade secret.

**Tenth Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied's alleged trade secret information was known to AMEC Asia or AMEC China from publicly available sources and/or was already independently known to AMEC Asia or AMEC China, which bars Applied's recovery.

**Eleventh Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because even if the alleged trade secret information was in fact a trade secret, AMEC Asia has not committed any acts that would constitute misappropriation of that information.

**Twelfth Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied has failed to sufficiently identify any purported trade secrets as set forth in the Uniform Trade Secrets Act or any other statutory or common law provisions.

**Thirteenth Affirmative Defense**

Applied has made a claim of misappropriation in bad faith, without a reasonable basis for believing that the alleged information was a trade secret or was acquired improperly, entitling AMEC Asia to recovery of its attorneys' fees and costs pursuant to Civil Code § 3426.4.

**Fourteenth Affirmative Defense**

The alleged clause in the employment agreements between Applied and Yin, Chen, Todaka and Luo that states any inventions by these individuals disclosed in a patent application or to third parties within one year of their leaving Applied are presumed to have been conceived or made during their employment with Applied and would be belong to Applied violates California Business and Professions Code section 16600, is unenforceable, and void as against public policy.

**Fifteenth Affirmative Defense**

Applied has failed to take reasonable steps to protect itself from the damage alleged in the Complaint and has failed to mitigate any such alleged damage.

**Sixteenth Affirmative Defense**

To the extent that Applied suffered injury or damage, which AMEC Asia denies, such injury or damage was caused by the actions or conduct of others, not of AMEC Asia.

**Seventeenth Affirmative Defense**

To the extent that Applied suffered injury or damage, which AMEC Asia denies, such injury or damage was not proximately caused by any conduct or inaction of AMEC Asia, was not foreseeable, or both.

1

### Eighteenth Affirmative Defense

2      Applied was at fault with respect to the matters alleged in the Complaint and its recovery,

3   if any, should be barred or reduced in proportion to their comparative fault.

4

### Nineteenth Affirmative Defense

5      AMEC Asia's actions were conducted in good faith, without fraud, oppression, or malice

6   regarding Applied or its rights, thereby precluding any and all claims for punitive damages.

7

### Twentieth Affirmative Defense

8      To the extent that AMEC Asia acted as alleged in the Complaint, AMEC Asia's actions

9   were at all times reasonable, privileged and justified.

10

### Twenty-First Affirmative Defense

11      The Court lacks personal jurisdiction over AMEC Asia with respect to the claims asserted

12   and relief requested by Applied.

13

### Twenty-Second Affirmative Defense

14      Applied's claims for conversion, intentional interference with contractual relationships,

15   and unfair competition are preempted by the Uniform Trade Secrets Act.

16

### Twenty-Third Affirmative Defense

17      The venue for this action is improper.

18

### PRAYER

19      WHEREFORE, AMEC Asia prays for judgment as follows:

20   1.      That Applied take nothing by way of the Complaint;

21   2.      That the Complaint be dismissed with prejudice and judgment entered in favor of

22           AMEC Asia;

23   3.      That AMEC Asia be awarded its attorneys' fees and costs; and

24   4.      For such other relief as the Court deems just and proper.

25

### <u>COUNTERCLAIMS</u>

26      Defendant and Counterclaimant AMEC Asia hereby asserts the following counterclaims

27   against Plaintiff and Counterdefendant Applied:

28

**INTRODUCTION**

1.    On information and belief, Applied's employment agreements contain a clause stating that all inventions described in a patent application or disclosed to third parties within one year of the termination of employee's employment with Applied are presumed to have been made at Applied and belong to Applied (the "non-compete" clause).  This improperly interferes with former Applied employees' mobility and therefore violates section 16600 of the California Business and Professions Code and is void as against public policy.  Applied's practice of requiring employees to agree to such a clause is an unlawful and unfair business practice within the meaning of California Business and Professions Code section 17200 *et seq.*  Because Applied has invoked this clause in its conversion and intentional interference with contractual relationships claims against AMEC Asia, AMEC Asia seeks a declaration that the clause is void and seeks an injunction preventing Applied from enforcing it.

**PARTIES**

2.    Counterclaimant AMEC Asia is a holding company incorporated in the Cayman Islands, with its principal place of business in Shanghai, China.

3.    On information and belief, counterdefendant Applied is a Delaware corporation, with its principal place of business in Santa Clara, California.

**JURISDICTION AND VENUE**

4.    This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2).

5.    Venue is proper in this district under 28 U.S.C. § 1391(a) because this is the district in which counterdefendant Applied resides.

**BACKGROUND**

6.    As a condition of his employment, Applied required Gerald Yin to agree to the non-compete clause in his employment agreement.  On information and belief, Applied required Chen, Todaka and Luo, as well its other employees, to agree to the non-compete clause as well.

7.    Applied has filed suit against AMEC Asia, alleging claims of misappropriation of trade secrets, intentional interference with contractual relationships, conversion and violations of

1   the Unfair Competition Law.  Applied's Complaint contends that under the non-compete, Applied

2   has a contractual right to various patent applications assigned to AMEC entities.  The Complaint

3   contends that AMEC Asia has wrongfully taken those patent applications for itself and is

4   therefore liable for conversion.  The Complaint also asserts that AMEC Asia induced Yin, Chen,

5   Todaka and Luo to breach the non-compete by assigning those patents to it and AMEC China.  In

6   its Opposition to AMEC China and AMEC Asia's Motions to Dismiss, Applied argued that its

7   claims for conversion and intentional interference with contractual relationships are independent

8   of its misappropriation of trade secrets claim, meaning that these claims do not depend on

9   whether the information at issue is a trade secret.

10        8.    Because the non-compete inhibits former Applied employees' mobility and, by

11  Applied's own admission, is not designed to protect Applied's trade secrets, it violates

12  California's strong public policy in favor of employee mobility, as statutorily codified in

13  California Business and Professions Code section 16600.  Therefore, it is unenforceable and void.

14  Applied's requiring its employees to enter into such agreements is an unlawful and unfair

15  business practice within the meaning of California Business and Professions Code section 17200,

16  *et seq.*

## COUNT I

### (Declaratory Relief)

19        9.    AMEC Asia incorporates paragraphs 1 - 8 above as if fully set forth herein.

20        10.   An actual controversy has arisen regarding the validity of the non-compete in

21  Applied's employment agreements.

22        11.   Specifically, Applied has stated that its conversion and intentional interference with

23  contractual relationships claims against AMEC Asia are based on allegations that AMEC Asia

24  has "wrongfully converted Applied's contractual rights of assignment under the Employee

25  Agreements" and that AMEC Asia "caused its employees to breach their employment agreements

26  with Applied by assigning certain patent applications to AMEC Shanghai (AMEC China) and

27  AMEC Asia."  The provision that was allegedly breached is the non-compete, as stated in

28  Applied's Complaint and as Applied has argued to the Court.

12.     This non-compete improperly restricts Applied employees' mobility, and is thus void as against public policy and unenforceable.  Cal. Bus. & Prof Code. § 16600.

13.     Declaratory relief is necessary and proper so that AMEC Asia can resolve its rights and duties relating to Applied's employment agreements with Yin, Chen, Todaka and Luo.

## COUNT II

### (Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)

14.     AMEC Asia incorporates paragraphs 1 - 13 above as if fully set forth herein.

15.     On information and belief, Applied has engaged in a practice of requiring its employees, including Yin, Chen, Todaka and Luo, to agree to the non-compete as a condition of their employment.  Because this clause is unenforceable and void as against public policy, this business practice is unlawful and unfair within the meaning of California Business and Professions Code section 17200, *et seq.*

16.     This unlawful and unfair practice has resulted in AMEC Asia being forced to defend claims of conversion and intentional interference with contractual relationships and expend funds on attorney's fees.

17.     AMEC Asia is therefore entitled to an injunction prohibiting Applied from enforcing the non-compete in its employment agreements.

## PRAYER FOR RELIEF

WHEREFORE, AMEC Asia demands judgment from Applied for:

(1) A declaration that the provision in Applied's employment agreement stating that any inventions described in a patent agreement or disclosed to third parties within one year after the employee leaves Applied belong to Applied is unenforceable and void as against public policy;

(2) A permanent injunction prohibiting Applied from enforcing the provision;

(3) Costs of suit; and

(4) Such other and further relief as the Court may deem just and proper.

1

**DEMAND FOR JURY TRIAL**

2        Pursuant to Federal Rule of Civil Procedure 38(b), AMEC Asia hereby demands a trial by

3   jury of all issues so triable herein.

4        Dated: March 21, 2008              MARC DAVID PETERS
                                            MORRISON & FOERSTER LLP
5

6
                                        By: /s/ Marc David Peters
7                                            Marc David Peters

8                                            Attorneys for Defendant
                                            ADVANCED MICRO-
9                                            FABRICATION EQUIPMENT INC.
                                            CHINA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28