HAROLD J. MCELHINNY (CA SBN 66781)
HMcElhinny@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482, U.S.A.
Telephone: 415.268.7000
Facsimile: 415.268.7522

KENNETH A. KUWAYTI (CA SBN 145384)
MARC DAVID PETERS (CA SBN 211725)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

Attorneys for Defendants
ADVANCED MICRO-FABRICATION EQUIPMENT, INC.,
ADVANCED MICRO-FABRICATION EQUIPMENT, INC.
ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT,
INC. CHINA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ADVANCED MICRO-FABRICATION EQUIPMENT, INC., ADVANCED MICRO-FABRICATION EQUIPMENT, INC. ASIA, ADVANCED MICRO-FABRICATION EQUIPMENT, INC. CHINA,<br><br>　　　　　Defendants. | Case No.   C 07-05248 JW (PVT)<br><br>**DEFENDANTS AMEC ASIA'S AND AMEC CHINA'S OPPOSITION TO MOTION TO DISMISS THEIR COUNTERCLAIMS**<br><br>Date: June 23, 2008<br>Time: 9:00 a.m.<br>Dept.: Courtroom 8, Fourth Floor<br>Judge: Honorable James Ware |

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

    I.    LEGAL STANDARD ON A MOTION TO DISMISS ......................................... 3

    II.    APPLIED'S HOLDOVER CLAUSE VIOLATES SECTION 16600 .................... 4

        A.    California Law Prohibits Contracts Like Applied's That Restrain Trade And Restrict Employee Mobility ........................................................ 4

        B.    Applied Cannot Rescue Its Provision By Claiming That It Is "Presumptive" Only ................................................................................... 7

        C.    The Agreement's Reference To California Labor Code § 2870 Does Not Save The Holdover Clause ............................................................... 9

        D.    Applied's Arguments Here Contradict The Arguments It Made Previously To Avoid Preemption ........................................................... 11

    III.    APPLIED'S HOLDOVER CLAUSE VIOLATES SECTION 17200 OF THE BUSINESS AND PROFESSIONS CODE ................................................... 13

    IV.    DEFENDANT'S COUNTERCLAIMS ARE PROPER AND NECESSARY FOR ADJUDICATION OF THEIR RIGHTS ............................. 14

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Credit Indem. Co. v. Sacks*,
    213 Cal. App. 3d 622 (Cal. Ct. App. 1989) .............................................................................. 11

*Appleton v. Waessil*,
    27 Cal. App. 4th 551 (1994) ....................................................................................................... 8

*Application Group, Inc. v. Hunter Group, Inc.*,
    61 Cal. App. 4th 881 (1998) ..................................................................................................... 13

*Armorlite Lens Co. v. Campbell*,
    340 F. Supp. 273 (S.D. Cal. 1972) ............................................................................................. 6

*Bd. of Tr. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
    487 F. Supp. 2d 1099 (N.D. Cal. 2007) ................................................................................. 5, 6

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ............................................................................................................... 3

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*,
    318 F. Supp. 2d 216 (D. Del. 2004) ......................................................................................... 12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................................................................. 13

*Conley v. Gibson*,
    355 U.S. 41 (1957) ..................................................................................................................... 3

*Convolve, Inc. v. Compaq Computer Corp.*,
    No. 00 CV 5141 (GBD), 2006 U.S. Dist. LEXIS 13848 (S.D.N.Y. March 29, 2006) ........... 11

*Dominion Elec. Mfg. Co. v Edwin L. Wiegand Co.*,
    126 F.2d 172 (6th Cir. 1942) .................................................................................................... 14

*Edwards v. Arthur Andersen LLP*,
    Case No. S147190, 2007 Cal. LEXIS 376 (Jan. 17, 2007) ........................................................ 6

*FreecycleSunnyvale v. Freecycle Network, Inc.*,
    No. C 06-00324 CW, 2006 U.S. Dist. LEXIS 54374 (N.D. Cal. July 25, 2006) ....................... 3

*Howard v. Babcock*,
    6 Cal. 4th 409 (1993) ................................................................................................................. 4

*Hudgins v. Neiman Marcus Group, Inc.*,
    34 Cal. App. 4th 1109 (1995) ................................................................................................... 13

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS      ii
C 07-05248 JW (PVT)
pa-1259167

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Larwin-Southern Cal., Inc. v. JGB Investment Co.*,
   101 Cal. App. 3d 626 (1979) .................................................................................................. 8

*Latona v. Aetna U.S. Healthcare, Inc.*,
   82 F. Supp. 2d 1089 (C.D. Cal. 1999) ............................................................................ 4, 5, 9

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal. App. 4th 853 (1994) .................................................................................................. 4

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
   355 F. Supp. 2d 1061 (N.D. Cal. 2005) ................................................................................. 3

*People v. McKale*,
   25 Cal. 3d 626 (1975) .......................................................................................................... 13

*Pratt v. Wilson*,
   770 F. Supp. 539 (E.D. Cal. 1991) ...................................................................................... 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ............................................................................................... 3

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
   912 F.2d 643 (3d Cir. 1990) ................................................................................................ 15

*Thompson v. Impaxx, Inc.*,
   113 Cal. App. 4th 1425 (2003) .......................................................................................... 3, 6

*Welles v. Turner Entm't Co.*,
   488 F.3d 1178 (9th Cir. 2007), *amended and reprinted*, 2007 U.S. App. LEXIS 21712 ......... 8

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) .......................................................................................... 7, 8

**STATUTES**

California Labor Code
   § 2870 ............................................................................................................................ 10, 11

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

California Civil Code
§ 3426.7 ........ 11, 12

California Business and Professions Code
§ 16600 ........ passim

§ 17200 ........ 1, 13, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ........ 3

Fed. R. Civ. P. 57 ........ 14

Fed. R. Civ. P. 12(b)(6) ........ 3

Graves & DiBoise,
*Do Strict Trade Secret And Non-Competition Laws Obstruct Innovation?*
1 ENTREPREN. BUS. L.J. 323 (2006) ........ 1, 9

**INTRODUCTION**

Applied's employment agreements violate California's strong public policy in favor of employee mobility and against restraint of trade. They require Applied's ex-employees to surrender all of their inventive and creative output to Applied for one year after they leave Applied's employ, regardless of whether those inventions were conceived after they left Applied or make use of Applied confidential information. This Holdover Clause[1] is an impermissible restraint on the ability of ex-employees to practice their trade, and violates Section 16600 of the California Business and Professions Code.

Applied tries to rescue its provision by claiming that it is "presumptive" only. But there is nothing "presumptive" about the clause in Applied's contract. It is mandatory on its face. It provides that "it is to be presumed that the invention was conceived or made" at Applied and states flatly that "the invention will belong to Company." (Strapp Decl., Exh. 1, § 2.) And there is no procedure in the agreement for rebutting the supposed presumption, or any explanation as to how an employee might go about doing that. Applied's argument that the Holdover Clause is presumptive only is contrary to the plain meaning of the agreement and, at best, renders the agreement ambiguous. To prevail on its contrary interpretation, Applied would have to submit extrinsic evidence of the parties' intent to the Court, which it has not done, and cannot do on a motion to dismiss. But even if the Holdover Clause were presumptive only, it would still be an unreasonable restraint of trade, because it would shift the burden to Applied's former employees and their current employers to prove that an invention was not conceived at Applied and would create a significant disincentive for hiring ex-Applied employees.

Applied has required tens of thousands of employees to sign away all the work they do for competitors for a full a year after they leave Applied. This is both an unlawful and unfair business practice under Section 17200. Defendants AMEC China and AMEC Asia have been

---

[1] Applied engages in euphemism when it coins the term "Presumption Provision." According to the co-author of the treatise *Trade Secrets*, the term of art in trade secret and employee mobility law is "holdover." Graves & DiBoise, *Do Strict Trade Secret And Non-Competition Laws Obstruct Innovation?*, 1 ENTREPREN. BUS. L.J. 323, 332 & n.26 (2006) (attached hereto as Attachment A).

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

1

injured by it. Defendants are also entitled to a declaratory judgment that the Holdover Clause is unenforceable. There is a case and controversy over the meaning of the Holdover Clause, which Applied has chosen to place at issue, and Applied's unsupported contention that a party may not bring an action for declaratory relief that overlaps with an affirmative defense is simply wrong as a matter of law.

For all the above reasons, Applied's motion to dismiss should be denied.

## STATEMENT OF FACTS

AMEC China and AMEC Asia pled, on information and belief, that Applied's employment agreements contain a clause stating that all inventions described in a patent application or disclosed to third parties within one year of the termination of an employee's employment with Applied are presumed to have been made at Applied and belong to Applied. Counterclaim ¶ 1. Such a provision is contained in Gerald Yin's agreement with Applied, which has been attached by Applied in support of its motion:

> In case any invention is described in a patent application or is disclosed to third parties by Employee within one (1) year after leaving the employ of [Applied], it is to be presumed that the invention was conceived or made during the period of his employment by [Applied], and the invention will belong to [Applied], provided it related to employee's work with [Applied] or to the business of [Applied] or any of its subsidiaries.

Strapp Decl., Exh. 1, § 2. Defendants further pled, on information and belief, that Applied requires every employee to agree to this provision as a condition of their employment. Counterclaim ¶ 6.

Applied's claims of conversion and intentional interference with contractual relationships are based upon an alleged violation of this non-compete provision. Counterclaim ¶ 7; *see also* First Amended Complaint (Doc. No. 31-2) at ¶¶ 55-58, 61-63. The non-compete provision is not designed to protect Applied's trade secrets. Counterclaim ¶ 8.

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

2

## ARGUMENT

### I. LEGAL STANDARD ON A MOTION TO DISMISS

All a counterclaim requires is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." *FreecycleSunnyvale v. Freecycle Network, Inc.*, No. C 06-00324 CW, 2006 U.S. Dist. LEXIS 54374, at *6 (N.D. Cal. July 25, 2006). These rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the [counter-defendant] fair notice of what the [counterclaimant's] claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

In ruling on a motion to dismiss, "a court must assume all factual allegations to be true and construe them in the light most favorable to the nonmoving party." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1063 (N.D. Cal. 2005). Under Federal Rule of Civil Procedure 12(b)(6), a complaint should not be dismissed if "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).[2]

The fact section of Applied's motion refers to numerous allegations in Applied's First Amended Complaint concerning the alleged misappropriation of Applied trade secrets. *See* Motion at 2:17-3:9. These allegations were denied by Defendants (*see* Answers (Doc. Nos. 128, 129, ¶¶ 3, 39, 41, 57-58) and cannot be considered on this motion. *See, e.g., Thompson v. Impaxx, Inc.,* 113 Cal. App. 4th 1425, 1430 (2003) (holding that "issue of whether information constitutes a trade secret is a question of fact" that cannot be decided on motion for judgment on

---

[2] Should the Court find any issue with the counterclaims, Defendants respectfully request leave to amend, which "should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

3

the pleadings: "[l]abeling information as a trade secret or as confidential information" does not establish anything).

## II. APPLIED'S HOLDOVER CLAUSE VIOLATES SECTION 16600.

### A. California Law Prohibits Contracts Like Applied's That Restrain Trade And Restrict Employee Mobility.

The Holdover Clause in Applied's employment agreements improperly restrains trade and restricts employee mobility in violation of California law.

Under Cal. Bus. & Prof. Code § 16600, "[e]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Section 16600 codifies California's "settled policy in favor of open competition." *Howard v. Babcock*, 6 Cal. 4th 409, 416 (1993). The California Courts of Appeal have repeatedly held that, under California law, "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interest of the employers . . . ." *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 860 (1994); *see also Latona v. Aetna U.S. Healthcare, Inc.,* 82 F. Supp. 2d 1089, 1093 (C.D. Cal. 1999) (Section 16600's "protection against restraint of employment qualifies as a strong public policy in California.").

If found to be enforceable, Applied's Holdover Clause would severely restrict employee mobility because it provides that any invention disclosed or patented by an Employee within a year after leaving Applied "will belong to [Applied]." Strapp Decl., Exh. 1 § 2. The only restriction is that the invention be "related to employee's work with [Applied] or to the business of [Applied] or any of its subsidiaries." *Id.* In other words, Applied requires a former employee who now works for a competitor of Applied to assign every invention he makes to Applied, not to his new employer, for a period of one year, even if the invention was the result of the independent research, development, and investment of the new employer.

Citing *Latona*, Applied argues that this restraint of trade can be justified because it serves to "protect a former employer's trade secrets, proprietary information, and confidential information . . . ." Applied Mot. at 4. But inventions conceived after an employee quits Applied that are not based on its confidential information aren't *Applied's* trade secrets, proprietary

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

4

information, or confidential information—those inventions belong to ***someone else***. Applied cannot justify this provision on the grounds that it is necessary to protect Applied's proprietary information, and nothing in the *Latona* opinion supports such a result. To the contrary, in *Latona,* the court rejected the defendant company's attempt to justify its non-solicitation provision on the basis that it was needed to protect proprietary information, finding that the defendant's interests were already adequately protected by general principles of California law and the confidentiality agreement the plaintiff had signed. *Id.* at 1096. Between those two factors, the court held that "defendant already enjoyed all of the protection of its trade secrets and other confidential information that the law allows." *Id.* Similarly, here, Applied's interests in protecting its proprietary information are already more than adequately protected by California law and by the remaining provisions of the employment agreement, which require employees not to disclose its confidential information, and to assign all inventions "made or first actually reduced to practice" during their period of employment. Strapp Decl. Exh. 1, § 2. That is "all of the protection of its trade secrets and other confidential information that the law allows." *Latona,* 82 F. Supp. 2d at 1096.

The *Stanford* case cited by Applied also does not support its position. In *Stanford*, unlike here, the clause at issue was limited to only those inventions that were derived from the employer's "facilities or information:"

> If, ***as a consequence of my access to CETUS' facilities or information***, I conceive of or make, alone or with others, ideas, inventions and improvements thereof or know-how related thereto that relate in any manner to the actual or anticipated business of CETUS, I will assign and do hereby assign to CETUS, my right, title, and interest in each of the ideas, inventions and improvements thereof de-scribed in this paragraph.

*Bd. of Tr. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 487 F. Supp. 2d 1099, 1107 (N.D. Cal. 2007) (emphasis added). In addition, the *Stanford* case did not even reach the question of whether an invention developed as a consequence of access to CETUS facilities or information, but conceived later on, could validly be assigned because the court found that "the invention was conceived before Holodniy left Cetus." *Id.* at 1117. Significantly, however, as Applied concedes, the *Stanford* court recognized that provisions that "require an employee to

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

5

assign an invention to a former employer that the employee conceived of after leaving the employer" effectively function as non-compete provisions. Motion at 5:17-22 (citing *Stanford*, 487 F. Supp. 2d at 1116). That is precisely what Applied's clause does here.[3]

Applied also cites to *Armorlite Lens Co. v. Campbell*, 340 F. Supp. 273, 275 (S.D. Cal. 1972). But the holding in *Armorlite* actually goes against Applied. The provision at issue in *Armorlite* was similar to Applied's in that it required former employees to disclose and assign "all new ideas and concepts I may have concerning the field of work of the company or concerning its products, which ideas or concepts occur to me during the period of my employment, or within one (1) year after the termination thereof." *Id.* at 274. The court held that this provision violated section 16600 because, just like Applied's Holdover Clause, it "requires a former employee to turn over to his former employer all new ideas and concepts concerning the field of work or the products of the employer which occur to him within one year after the termination of his employment." *Id.* at 275. The Court went on to state that:

> To require a former employee, who has developed a new idea or concept following the termination of his employment and which is not based upon the employer's secrets or confidential information, to turn over the fruits of his labors to his former employee constitutes, in the opinion of this Court, ***an unreasonable restraint of trade***.

*Id.* (emphasis added). The court concluded that, to the extent the provision "attempts to effect ideas and concepts not based upon the plaintiff's confidential information, that Agreement is void and unenforceable." *Id.*[4] That is precisely what Applied's clause does, and it therefore violates section 16600. *See* Strapp Decl. Exh. 1, § 2.

---

[3] The Court should be cautious following the decisions of federal courts in construing section 16600, which at times have interpreted the statute less restrictively than their state counterparts, because the proper interpretation of the statute is currently on appeal before the California Supreme Court. In *Edwards v. Arthur Andersen LLP*, Case No. S147190, currently set for oral argument on June 4, 2008, the California Supreme Court will consider "[t]o what extent does Business and Professions Code section 16600 prohibit employee noncompetition agreements," 2007 Cal. LEXIS 376, *1 (Jan. 17, 2007).

[4] The court went on to state that the provision would be enforceable only "as it relates to ideas and concepts which were based upon secrets or confidential information of the employer." *Id.* at 275. However, Applied's Holdover Clause should not be construed as even partially enforceable because this is not a limitation that was drafted into the contract or agreed to by the parties. Directly on point is *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425 (2003). In *Thompson*, the
(Footnote continues on next page.)

### B. Applied Cannot Rescue Its Provision By Claiming That It Is "Presumptive" Only.

Applied tries to rescue its Holdover Clause by claiming that it is "presumptive" only, and goes so far as to label the clause the "Presumptive Provision" in its brief. The plain language of the provision is mandatory, however, not presumptive, and proving that the provision has a contrary meaning would require Applied to submit extrinsic evidence that it has not provided and could not be considered on a motion to dismiss. But even if the clause were presumptive in nature only, it would still be an unlawful restraint of trade.

#### 1. The Holdover Clause is mandatory, not presumptive.

The plain language of the Holdover Clause is mandatory, not presumptive. It requires ex-employees who apply for patents within one year of their departure to assign them to Applied:

> In case any invention is described in a patent application or is disclosed to third parties by Employee within one (1) year after leaving the employ of [Applied], it is to be presumed that the invention was conceived or made during the period of his employment by [Applied], and the invention will belong to [Applied], provided it related to employee's work with [Applied] or to the business of [Applied] or any of its subsidiaries.

(Strapp Decl., Exh. 1, § 2.)

This is not presumptive language. The clause provides that "the invention *will* belong to Company." (emphasis added). There is no provision in the agreement for an employee to rebut any presumption.

Applied argues nonetheless that under the Holdover Clause a former employee's inventive output is only "presumed" to belong to Applied, and that presumption can be overcome. (Motion at 6:4-10.)[5] That is not what the Holdover Clause says. And Applied's repeated characterization

---

(Footnote continued from previous page.)

court rejected the argument that a nonsolicitation provision that violated section 16600 could be saved by giving it a "narrow reading" limiting it to protection of trade secrets only. The court held that, in California, "courts reform contracts only where the parties have made a mistake." *Id.*

[5] The "presumption" language of Applied's employee agreement is unenforceable under section 16600 because it relies on the doctrine of inevitable disclosure, which has been unequivocally rejected by California courts. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete."); *id.* at 1462 ("To the extent that the theory of inevitable disclosure creates a de facto covenant not to compete without a nontrivial showing of actual or threatened use or disclosure, it

(Footnote continues on next page.)

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

7

of the clause as the "Presumptive Provision" in its motion papers cannot change that fact. At best, the presumption language is ambiguous. Acceptance of Applied's interpretation would require the consideration of extrinsic evidence that Applied has not submitted (such as how Applied has interpreted the clause in other circumstances) and that could not be considered on a motion to dismiss. *See Larwin-Southern Cal., Inc. v. JGB Investment Co.*, 101 Cal. App. 3d 626, 635 (1979) (reversing demurrer; holding that trial court "erred because it failed to recognize that extrinsic circumstances might be available for pleading which would indicate the parties' intent"); *see also Welles v. Turner Entm't Co.*, 488 F.3d 1178, 1186 (9th Cir. 2007), *amended and reprinted*, 2007 U.S. App. LEXIS 21712 (holding that even summary judgment is improper where contractual language is ambiguous and contract interpretation depends on credibility of extrinsic evidence); *Appleton v. Waessil*, 27 Cal. App. 4th 551, 555 (1994) ("[E]ven if the trial court personally finds the document not to be ambiguous, it should preliminarily consider all credible evidence to ascertain the intent of the parties" and whether the evidence presented "is relevant to prove a meaning to which the language is 'reasonably susceptible.'") (quotation omitted).

### 2. Even If The Holdover Clause Were Presumptive It Would Still Be An Unreasonable Restraint On Trade.

Even if the Holdover Clause were presumptive, rather than mandatory as the language of the clause provides, it would still be an unreasonable restraint on trade. Applied's position apparently is that the effect of the clause is to shift the burden to the employee to prove that inventions made within a year after leaving Applied were not "conceived or made" while the employee worked at Applied. *See* Motion at 6:4-10. This would turn trade secret law on its head.

---

(Footnote continued from previous page.)

is inconsistent with California policy and case law."). The agreement inherently "presumes" that every invention an ex-employee creates a year after leaving Applied must have been derived from Applied confidential information—which is a contractual embodiment of the inevitable disclosure doctrine. Because Applied's Holdover Clause does not require Applied to show actual or threatened use or disclosure, it is void. *Id.*

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

8

It is both an invitation to litigation and a significant disincentive to subsequent employers of Applied personnel.

As the *Latona* court held, provisions such as Applied's Holdover Clause have an *in terrorem* effect on the behavior of employees:

> Employees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer (especially one of Aetna's magnitude) are legal, if draconian. Furthermore, even if they strongly suspect that a non-compete clause is unenforceable, such employees will be reluctant to challenge the legality of the contractual terms and risk the deployment of Aetna's considerable legal resources against them. Thus, the *in terrorem* effect of the Agreement will tend to secure employee compliance with its illegal terms in the vast majority of cases.

82 F. Supp. 2d at 1096.

Potential employers as well will inevitably be concerned about an agreement holding that any invention developed by their new employees for a year is presumed to belong to their competitor. They "may well wish to avoid the expense and energy of defending a lawsuit in which they are likely to be joined. In this way [Applied] will be able to stifle marketplace competition for its human capital." *Id.* at 1096-1097. It's much safer for Applied's employees to stay put and for Applied's competitors not to hire someone from Applied. That's why one leading commentator held up a holdover clause as an extreme example of a disguised non-compete covenant:

> Our critique of non-competition covenants encompasses not just those that expressly bar competition for a certain period of time, but also those purportedly 'narrow' covenants that extract a financial penalty to scare the employee away from future competition. The range of such penalty clauses seems limitless; in extreme cases, some employers have even required employees to pledge that their employer will own anything they create for a set period of time after they resign.

Graves & DiBoise, *Do Strict Trade Secret And Non-Competition Laws Obstruct Innovation?*, 1 ENTREPREN. BUS. L.J. 323, 332 & n.26 (2006) (discussing unenforceability of holdover clauses).

Even if it were intended to be presumptive only, Applied's Holdover Clause still chills competition and is an unreasonable and unlawful restriction on employee mobility.

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

9

### C. The Agreement's Reference To California Labor Code § 2870 Does Not Save The Holdover Clause

The reference in the employment agreement to California Labor Code § 2870 also cannot save Applied's Holdover Clause.

Labor Code section 2870 is not a savings statute that immunizes the Holdover Clause from other statutory requirements. All it does is render unenforceable any portion of an invention assignment agreement that does not comply with its terms: "To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable." Cal. Lab. Code § 2870(b).

More importantly, however, Labor Code section 2870 describes public policy as it applies to inventions made by an employee during the time period that he is employed. Applied cannot claim that by incorporating Labor Code section 2870 it has now rendered reasonable its provision that all inventions disclosed or describe during the year after its employees left Applied also belong to the company. By its terms, Labor Code section 2870 excludes from its prohibition against assignment all those inventions that relate "to the employer's business." Labor Code Section 2870(a)(1).[6] Applied's position, effectively, is that an agreement that requires a former employee to assign all inventions that relate "to the business of" Applied for the rest of his life would be reasonable because it would not run afoul of the terms of section 2870. But, while such a provision may not be void under section 2870, it would obviously be void under Section 16600.

Applied's reference to section 2870 in fact does nothing to change the impact of the Holdover Clause, which itself provides that the inventions assigned are those that relate to "Employee's work with Company or to the business of Company or any of its subsidiaries." Strapp Decl. Exh. 1, § 2. The provision is overbroad because it sweeps in inventions that were

---

[6] Labor Code section 2870 provides that there can be no assignment of an invention "for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employees own time, and (a) which does not relate (1) to the business of the employer or (2) to the employer's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by the employee for the employer."

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

10

not conceived at Applied nor based on its confidential information, and Applied's reference to Labor Code section 2870 does not change that.

### D. Applied's Arguments Here Contradict The Arguments It Made Previously To Avoid Preemption

Lastly, Applied's argument here that its Holdover Clause is designed merely to protect its "trade secrets, proprietary information and confidential information," (Motion at 4:6-7) contradicts the arguments that it made previously in opposition to Defendants' motions to dismiss and shows yet again why Applied's intentional inference and conversion claims are preempted.

Defendants previously moved to dismiss Applied's intentional interference and conversion claims on the grounds that they were preempted under Civil Code section 3426.7(b)(2), which preempts tort causes of action based upon the alleged misappropriation of trade secrets. The California Court of Appeal has recognized the broad scope of UTSA preemption, noting that the CUTSA displaces all "property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability" for theft of confidential business information. *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 630 (Cal. Ct. App. 1989). As one court explained:

> [t]he UTSA does not . . . simply preempt common law claims for which misappropriation of a trade secret is an element. Instead, the UTSA preemption clause is meant to eliminate all common law claims that are based on the same conduct **which could support a UTSA cause of action**.

*Convolve, Inc. v. Compaq Computer Corp.*, No. 00 CV 5141 (GBD), 2006 U.S. Dist. LEXIS 13848 at *25 (S.D.N.Y. March 29, 2006) (citations omitted, emphasis added) (applying California law to dismiss numerous claims, including interference with contract).

Applied sought to avoid preemption by arguing that its intentional interference and conversion claims were not based on the misuse of its confidential business information, but rather the wrongful assignment of patent rights. Specifically, Applied argued that its intentional interference claim is based on the fact that "AMEC caused its employees to breach their employment agreements with Applied by assigning certain patent applications to AMEC Shanghai (AMEC China) and AMEC Asia. FAC ¶ 58. These facts are independent of those

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

11

1  underlying the misappropriation claim." Plaintiff's Opposition to Defendants' Motion to Dismiss

2  (Doc. No. 105) at 19.  Similarly, Applied argued that its conversion claim was that "AMEC has

3  wrongfully converted Applied's contractual rights of assignment under the Employee

4  Agreements" and that this claim was therefore "independent of the misappropriation allegations."

5  *Id.*  This Court accepted Applied's argument, ruling that the two claims involved "facts distinct

6  from those underlying Plaintiff's claim for misappropriation" because they concerned the

7  assignment and conversion of patent rights, not trade secret rights.  *See* Order Granting in Part

8  and Denying in Part Defendants' Various Motions to Dismiss (Doc. No. 118) at 12.

9        Now, however, in an effort to preserve the broad reach of the Holdover Clause, which

10  unquestionably is a restraint of trade, Applied contends that the clause merely protects its "trade

11  secrets, proprietary information and confidential information." (Motion at 4:6-7)  Applied cannot

12  have it both ways.  If the intentional interference and conversion claims are based on a misuse of

13  trade secrets or proprietary information, they are preempted under Civil Code section 3426.7.  If

14  they are based on interference with some independent interest protected by the Employment

15  Agreements relating to patent rights, then the Holdover Clause on which these claims are based is

16  clearly invalid.

17        Applied contends that it can avoid preemption simply by including "*additional*"

18  allegations, not just allegations that are independent of the misuse of confidential information.

19  *See* Motion at 5:5-10 & n.2 (emphasis in original).  This position was squarely rejected in

20  *Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 318 F. Supp. 2d 216 (D. Del. 2004)

21  (applying California law).  In *Callaway Golf*, the plaintiff argued that its negligence claim was

22  not preempted under California's UTSA because it "plainly spells out additional elements of a

23  claim, including a breach of duty, which concerns additional facts and different injuries." *Id.* at

24  220.  The court rejected the argument and found the negligence claim was preempted, because,

25  despite additional allegations and requirements for a negligence claim, the allegations of trade

26  secret misappropriation comprised the underlying wrong.  The negligence claim was preempted

27  because "if Dunlop loses its misappropriation claim with respect to the Felipe binder, it could not

28  recover on its negligence claim." *Id.* at 220-21 (citation omitted).  Having argued that its

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

12

conversion and intentional interference claims were distinct from its misappropriation claim to avoid preemption, Applied cannot avoid counterclaims for violation of Section 16600 by now arguing that its claims are not distinct.

### III. APPLIED'S HOLDOVER CLAUSE VIOLATES SECTION 17200 OF THE BUSINESS AND PROFESSIONS CODE

Applied engaged in a practice of requiring its employees to agree to the Holdover Clause as a condition to their employment, in violation of both the unlawful and unfair prongs of section 17200 of the Business and Professions Code. (Counterclaim at 16:17-21.) This practice "has resulted in AMEC China [and AMEC Asia] being forced to defend claims of conversion and intentional interference with contractual relationships." (Counterclaim at 16:22-24.)

California courts recognize that an employer's business practices concerning its employees are within the scope of section 17200. *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109, 1126 (1995). The unlawful prong of unfair competition proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d 626, 634 (1975). Applied's violation of section 16600 of the Business and Professions Code itself violates the unlawful prong. Because a counterclaim can allege that "use of a covenant not to compete in violation of section 16600" is "a violation of section 17200," AMEC China's and AMEC Asia's counterclaim survives. *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 908 (1998).

The unfair prong of unfair competition provides that

> [w]hen a plaintiff who claims to have suffered injury from a direct competitor's unfair act or practice invokes section 17200, the word unfair in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). AMEC China's and AMEC Asia's claims for Unfair Competition under the unfair prong survives because it alleges that the Holdover Clause interferes with employee mobility in restraint of trade,

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

13

and has unfairly forced them to defend claims for conversion and intentional interference with contractual relationships based upon violations of the Holdover Clause. (Counterclaim ¶¶ 8, 16.)

Because Defendants' claim satisfies both the unfair and unlawful prongs of section 17200, Applied's motion fails.

## IV. DEFENDANT'S COUNTERCLAIMS ARE PROPER AND NECESSARY FOR ADJUDICATION OF THEIR RIGHTS

Defendants' counterclaims for relief under Sections 16600 and 17200 are justiciable and seek relief far beyond defenses to Applied's claims. As injured parties, as an employer of ex-Applied employees and a potential future employer of others, and (as alleged by Applied) as competitors with Applied, Defendants have standing to seek a declaration that the Holdover Clause in the agreements of the former Applied employees that they have hired and in every Applied employee agreement is void. This is the relief Defendants have asked for. (Answers (Doc. Nos. 128, 129), ¶ 7 & prayer for relief.)

Applied's argument, that the declaratory relief action "merely restates" affirmative defenses, (Motion at 7:12-15) is based on a fundamentally mistaken premise. Even if the counterclaims were coextensive with affirmative defenses, there is no requirement that the declaratory relief AMEC China and AMEC Asia seeks be exclusive or extraordinary. "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. Thus, for example, in a patent infringement case, defendants are entitled to, and frequently do, raise invalidity as both a defense and a claim for declaratory relief.

By filing suit, Applied asserted that the enforceability of its Holdover Clause formed a justiciable case or controversy. AMEC China and AMEC Asia likewise wish to adjudicate that issue, and filed their counterclaims to protect their interests in being able to employ ex-Applied personnel without facing the uncertainty of additional wrongful conversion suits. *Dominion Elec. Mfg. Co. v Edwin L. Wiegand Co.*, 126 F.2d 172, 174 (6th Cir. 1942). Defendants will be entitled to pursue this declaratory relief even if Applied dismisses its own action. *See id.* (a declaratory judgment counterclaim "serves a useful purpose. . . . If the defendant, by filing a counterclaim

for declaratory judgment, can . . . keep the plaintiff in court until the respective rights of the parties are determined once and for all, the result was thought to be a wholesome one.").

The cases cited by Applied do not hold otherwise. In *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990), the issue was not whether the claim for declaratory relief was in some way duplicative of an affirmative defense, but only whether declaratory relief would conclusively resolve the issues before the court. *Pratt v. Wilson*, 770 F. Supp. 539, 545 (E.D. Cal. 1991) is similarly off point, and concerned only whether there was an actual controversy or whether a declaratory judgment would be advisory only.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Applied's motion to dismiss.

Dated: June 2, 2008

HAROLD J. MCELHINNY
KENNETH A. KUWAYTI
MARC DAVID PETERS
MORRISON & FOERSTER LLP

By:   /s/ Marc David Peters
      Marc David Peters
      Attorneys for Defendants

AMEC CHINA'S AND AMEC ASIA'S OPPOSITION TO APPLIED'S MOTION TO DISMISS THEIR COUNTERCLAIMS
C 07-05248 JW (PVT)
pa-1259167

15