1   HAROLD J. MCELHINNY (CA SBN 66781)
    HMcElhinny@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone: 415.268.7000
4   Facsimile: 415.268.7522

5   KENNETH A. KUWAYTI (CA SBN 145384)
    KKuwayti@mofo.com
6   MARC DAVID PETERS (CA SBN 211725)
    MDPeters@mofo.com
7   MORRISON & FOERSTER LLP
    755 Page Mill Road
8   Palo Alto, CA 94304-1018
    Telephone:  650-813-5600
9   Facsimile:  650-494-0792

10
    Attorneys for Defendant
11  ADVANCED MICRO-FABRICATION EQUIPMENT, INC.
    CHINA, ADVANCED MICRO-FABRICATION
12  EQUIPMENT, INC. ASIA, AND ADVANCED
    MICROFABRICATION
13  EQUIPMENT INC.

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                        SAN JOSE DIVISION

17

18  APPLIED MATERIALS, INC.,                │  Case No.    C07 05248 JW (PVT)

19                          Plaintiff,      │

20          v.                              │  **AMEC INC.'S ANSWER TO FIRST
                                            │  AMENDED COMPLAINT AND
21  ADVANCED MICRO-FABRICATION              │  COUNTERCLAIMS**
    EQUIPMENT INC. CHINA, ADVANCED          │
22  MICRO-FABRICATION EQUIPMENT, INC.,      │
    ASIA, ADVANCED MICRO-FABRICATION        │
23  EQUIPMENT, INC.,                        │  **JURY TRIAL DEMANDED**

24                          Defendants.     │

25

26

27

28

1   Defendant ADVANCED MICRO-FABRICATION EQUIPMENT INC. ("AMEC Inc."),

2   by and through its attorneys, answers Plaintiff Applied Materials, Inc.'s ("Applied") Complaint as

3   follows:

4                                        **INTRODUCTION**

5          1.     AMEC Inc. admits that Applied is asserting claims for conversion, misappropriation

6   of trade secrets, intentional interference with contractual relations and unfair competition against

7   AMEC Inc., Advanced Micro-Fabrication Equipment Inc. China ("AMEC China"), and

8   Advanced Micro-Fabrication Equipment Inc. Asia ("AMEC Asia").  AMEC Inc. also admits that

9   Applied has stated in public filings that it develops, manufactures, sells manufacturing equipment

10  used to fabricate semiconductor chips, and that certain models of this equipment enable Etch and

11  Chemical Vapor Deposition ("CVD") processes.  AMEC Inc. has insufficient information to

12  admit or deny the allegations regarding Applied's location, the characteristics of Applied's Etch

13  and CVD tools, and Applied's position in the industry, and therefore denies them on this basis.

14  AMEC Inc. denies the remaining allegations of paragraph 1.

15         2.     AMEC Inc. admits that Gerald Z. Yin, Aihua Chen, Ryoji Todaka, and Lee Luo were

16  formerly employed by Applied.  AMEC Inc. also admits that Yin had access to certain

17  information regarding the design, manufacture, and use of Etch tools during certain periods of his

18  employment at Applied.  AMEC Inc. further admits that Chen and Todaka had access to certain

19  information regarding the design, manufacture, and use of CVD tools during certain periods of

20  their employment with Applied.  AMEC Inc. also admits that Luo had access to certain

21  information regarding the design, manufacture, and use of Etch and CVD tools during certain

22  periods of his employment at Applied.  AMEC Inc. denies the remaining allegations of paragraph

23  2.

24         3.     AMEC Inc. admits that Yin was a Corporate Vice President of Etch Product

25  Management from 1998-1999, Co-General Manager of the Etch Product Business Group in 2000,

26  Head of Applied's Asia Low Cost Source Program in 2001, CTO of Applied Materials Asia (and

27  ***not*** CTO of Applied Materials) in 2002, and Head of Applied's Asia Sourcing and Procurement

28  in 2003.  AMEC Inc. also admits that Yin managed the Etch product group up until 2001 and that

1    he had access to information regarding Etch tools until 2001.  AMEC Inc. denies the remaining

2    allegations in paragraph 3.

3    　　　　4.    AMEC Inc. admits that Chen held various positions at Applied, including General

4    Manager of the LPCVD division, and that Chen had access to information regarding Applied's

5    CVD tools at various times.  AMEC Inc. denies the remaining allegations in paragraph 4.

6    　　　　5.    AMEC Inc. admits that Yin terminated his employment with Applied in 2004 and

7    that he subsequently moved to China.  AMEC Inc. also admits that he and Chen were among a

8    group of parties involved in the creation of AMEC China, AMEC Asia, and AMEC Inc.  AMEC

9    Inc. further admits that AMEC China is in the business of manufacturing semiconductor

10   equipment, including Etch and CVD equipment.  AMEC Inc. also admits that Chen and Luo

11   resigned from Applied in 2003 and 2006, respectively, and that Todaka was laid off by Applied in

12   2003.  AMEC Inc. further admits that Yin and Chen hold positions at AMEC China, AMEC Inc.,

13   and AMEC Inc., and that Todaka and Luo hold positions at AMEC China.  AMEC Inc. denies the

14   remaining allegations of paragraph 5.

15   　　　　6.    AMEC Inc. admits that it currently employs individuals who formerly worked at

16   Applied.  AMEC Inc. also admits that some of these individuals held positions at Applied such as

17   Corporate Vice President.  AMEC Inc. further admits that while they were employed at Applied,

18   Yin had access to information regarding Etch tools until 2001, and Chen and Todaka had access

19   to information regarding CVD tools.  AMEC Inc. also admits that Luo had access to information

20   CVD tools until 2002, and that he had access to information on Etch tools beginning in 2004.

21   AMEC Inc. denies the remaining allegations of paragraph 6.

22   　　　　7.    AMEC Inc. admits that semiconductor manufacturing tools are sophisticated and

23   complex machines, that AMEC Inc. does business in China, and that AMEC China has designed,

24   built, and announced the availability of CVD and Etch tools, although AMEC Inc. denies AMEC

25   China did so within one year of starting its business in China.  AMEC Inc. denies the remaining

26   allegations of paragraph 7.

27   　　　　8.    AMEC Inc. admits that while employed by Applied, Chen and Todaka worked on

28   designs for use in CVD tools and that Luo worked on such designs until 2002.  AMEC Inc. also

AMEC INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW
pa-1262046

2

1    admits that on August 5, 2005, AMEC China filed a Chinese patent application.  AMEC Inc.

2    denies the remaining allegations of paragraph 8.

3         9.    AMEC Inc. admits that Yin, Chen, Todaka and Luo signed employee agreements

4    with Applied, the terms of which are set forth in the agreements themselves.  AMEC Inc. denies

5    the remaining allegations of paragraph 9.

6         10.    AMEC Inc. admits that Applied is seeking an injunction against the defendants, as

7    well as compensatory and punitive damages and a declaration that it is the owner of defendants'

8    patent applications.  AMEC Inc. denies the remaining allegations of paragraph 10.

9                                         **PARTIES**

10        11.    AMEC Inc. has insufficient information to admit or deny the allegations in

11   paragraph 11, and therefore denies them on that basis.

12        12.    AMEC Inc. admits that AMEC China is a cooperative joint venture between AMEC

13   Inc. and Shanghai Ventures Capital Co., Ltd., organized under the laws of the People's Republic

14   of China, having its principal place of business in Shanghai.  AMEC Inc. also admits that AMEC

15   China was founded on May 31, 2004.  AMEC Inc. denies the remaining allegations of paragraph

16   12.

17        13.    AMEC Inc. admits that AMEC Asia operates primarily as a holding company, that

18   it was incorporated in the Cayman Islands, and that it is the assignee of U.S. patent applications.

19   AMEC Inc. denies the remaining allegations of paragraph 13.

20        14.    AMEC Inc. admits that it operates primarily as a holding company of AMEC Asia

21   and (indirectly) AMEC China, and that it was incorporated in the Cayman Islands.  AMEC Inc.

22   denies the remaining allegations of paragraph 14.

23                                **JURISDICTION AND VENUE**

24        15.    AMEC Inc. states that insofar as plaintiff's averments in paragraph 15 state

25   conclusions of law, no response thereto is required.  AMEC Inc. admits that this is an action

26   between a resident of California and residents of foreign states, and that the amount in

27   controversy exceeds $75,000.  AMEC Inc. denies that Applied is entitled to any damages, and

28   denies the remaining allegations of paragraph 15.

AMEC INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW
pa-1262046

3

16.    AMEC Inc. denies that this is the district in which a substantial part of the events or omissions giving rise to the claim occurred.  AMEC Inc. has insufficient knowledge to admit or deny the allegations that this is the district in which a substantial part of the property that is the subject of this action is situated, and therefore denies it on this basis.  AMEC China denies the remaining allegations of paragraph 16.

**BACKGROUND**

17.    AMEC Inc. admits that this action seeks to recover compensatory and punitive damages and that it is also an action for an injunction.  AMEC Inc. denies the remaining allegations of paragraph 17.

18.    AMEC Inc. admits the allegations in paragraph 18.

19.    AMEC Inc. admits that paragraph 19 describes an etch process, but not necessarily every etch process.

20.    AMEC Inc. admits that paragraph 20 describes a CVD process, but not necessarily every CVD process.

21.    AMEC Inc. admits that Etch and CVD processes can be sophisticated and challenging.  AMEC Inc. has insufficient knowledge to admit or deny the remaining allegations of paragraph 21, and therefore denies them on that basis.

22.    AMEC Inc. has insufficient knowledge to admit or deny the allegations of paragraph 22, and therefore denies them on that basis.

23.    AMEC Inc. admits that Applied hired Yin on March 18, 1991, and that his official termination date was August 1, 2004, but that the last day he was physically present at Applied was January 31, 2004.  AMEC Inc. also admits that Yin held various positions at Applied in the Etch division, including Corporate Vice President and Co-General Manager.  AMEC Inc. denies the remaining allegations of paragraph 23.

24.    AMEC Inc. admits that Applied hired Chen on June 8, 1992, that he resigned in September 2003, and that his termination was effective November 2003.  AMEC Inc. also admits that Chen held a number of positions while at Applied, including General Manager of the LPCVD

1   division.  AMEC Inc. has insufficient information to admit or deny the remaining allegations of

2   paragraph 24, and therefore denies them on that basis.

3          25.    AMEC Inc. admits that Applied hired Luo in 1994 and that he resigned from

4   Applied in January 2006.  AMEC Inc. also admits that Luo held a variety of positions while at

5   Applied, including Deputy General Manager for LPCVD products from 1999 to 2001.  AMEC

6   Inc. has insufficient information to admit or deny the remaining allegations of paragraph 25, and

7   therefore denies them on that basis.

8          26.    AMEC Inc. admits that Applied hired Todaka in 2000, that he was laid off from

9   Applied in November 2002, and that his official termination date was in January 2003.  AMEC

10  Inc. also admits that while at Applied, Todaka worked as an engineer on CVD hardware as well

11  as other types of technologies.  AMEC Inc. has insufficient information to admit or deny the

12  remaining allegations of paragraph 26, and therefore denies them on that basis.

13         27.    AMEC Inc. admits that Yin, Chen, Todaka and Luo entered into employment

14  agreements with Applied.  AMEC Inc. admits that Yin's employment agreement with Applied

15  had provisions stating that (1) Yin was not to disclose any Applied confidential information to

16  anyone outside of Applied, either during or after employment with Applied; (2) all inventions

17  conceived, made or reduced to practice during the period of his employment with Applied

18  belonged to Applied, provided such inventions grew out of his work with Applied or were related

19  to the business of Applied; (3) Yin would promptly disclose such inventions to Applied; and (4)

20  Yin would assign such inventions to Applied at Applied's request.  AMEC Inc. has insufficient

21  information to admit or deny the allegations regarding provisions in Chen, Todaka and Luo's

22  employment agreements, and therefore denies them on that basis.  AMEC Inc. denies the

23  remaining allegations of paragraph 27.

24         28.    AMEC Inc. admits that when Yin resigned from Applied in January 2004, he signed

25  a document titled "Termination Certification," and that this document acknowledged the

26  obligation, in compliance with his employment agreement, to preserve as confidential and not to

27  disclose to any third party or use any confidential information of Applied.  AMEC Inc. further

28  admits that this document also certified that Yin had complied with and would continue to

AMEC INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW
pa-1262046

5

1    comply with all the terms of his employment agreement, and that he did not have in his

2    possession and had returned all confidential information and other documents and materials

3    belonging to Applied.  AMEC Inc. has insufficient information to admit or deny the remaining

4    allegations in paragraph 28, and therefore denies them on that basis.

5        29.    AMEC Inc. admits that Yin turned in his resignation a month or more before

6    January 31, 2004 and informed Applied that his last day at Applied would be January 31, 2004.

7    AMEC Inc. has insufficient information to admit or deny the allegations in paragraph 29, and

8    therefore denies them on that basis.

9        30.    AMEC Inc. admits that it was aware of the fact that Yin, Chen, Todaka and Luo had

10   signed employee agreements with Applied.  AMEC Inc. denies the remaining allegations of

11   paragraph 30.

12       31.    AMEC Inc. denies that it "seeded" itself with former Applied employees.  AMEC

13   Inc. admits that Yin did not permanently cease working after he resigned from Applied.  AMEC

14   Inc. also admits that Yin and Chen were among a group of parties involved in the creation of

15   AMEC China, AMEC Asia, and AMEC Inc.  AMEC Inc. further admits that AMEC China is in

16   the business of manufacturing semiconductor tools and that AMEC China is based in China.

17   AMEC Inc. also admits that AMEC China has announced that it has designed, built, and will sell

18   tools that use CVD and Etch processes.  AMEC Inc. denies the remaining allegations in

19   paragraph 31.

20       32.    AMEC Inc. admits that Chen was one of a group of parties involved in the creation

21   of AMEC China, AMEC Asia, and AMEC Inc., and that he did this well after he resigned from

22   Applied.  AMEC Inc. admits that Chen has responsibility for the development and

23   commercialization of AMEC China's products and is also responsible for its intellectual property

24   strategy.  AMEC Inc. denies the remaining allegation in paragraph 32.

25       33.    AMEC Inc. admits that Luo began working for AMEC China after he resigned from

26   Applied.  AMEC Inc. further admits that Luo has responsibility for the development and

27   commercialization of AMEC China's CVD product line.  AMEC Inc. denies the remaining

28   allegations of paragraph 33.

AMEC INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS
C07 05248 JW
pa-1262046

6

34.    AMEC Inc. admits that Todaka began working for AMEC China approximately two years after he was laid off from Applied. AMEC Inc. also admits that Todaka is employed by AMEC China as an engineer and that he is a named inventor on a U.S. patent application that has been assigned to AMEC Asia. AMEC Inc. denies the remaining allegations of paragraph 34.

35.    AMEC Inc. admits that Yin, Chen, Luo and Todaka are not the only AMEC China employees that formerly worked for Applied. AMEC Inc. denies the remaining allegations of paragraph 35.

36.    AMEC Inc. denies the allegations in paragraph 36.

37.    AMEC Inc. admits that AMEC China filed Chinese Patent Application No. 200510028563.2 (the "Chinese '563 application") on August 5, 2005, which was one year and seven months after Yin's last day at Applied and one year and three days after his official termination date, and also was nearly two years after Chen's last day at Applied and two years and nine months after Todaka's last day at Applied. AMEC Inc. admits that AMEC China is the named applicant of the Chinese '563 application, that Chen and Todaka are the inventors named in the application, and that Yin is *not* a named inventor of the application. AMEC Inc. denies the remaining allegations of paragraph 37.

38.    AMEC Inc. admits that Yin, Todaka, and Chen are named as inventors on U.S. Patent Application No. 11/441,291, filed May 24, 2006 (the "U.S. '291 application") and on Japanese Patent Application No. 2006-214829, filed August 7, 2006 (the "Japanese '829 application"). AMEC Inc. further admits that both applications claim priority from the Chinese '563 application. AMEC Inc. admits that the U.S. '291 application is assigned to AMEC Asia, and that AMEC Asia is the named applicant of the Japanese '829 application. AMEC Inc. further admits that the U.S. '291 application and the Japanese '829 application are entitled "Method and Apparatus for Processing Semiconductor Work Pieces." AMEC Inc. also admits that the Chinese '563 application, the Japanese '829 application, and the U.S. '291 application are directed to similar subject matter. AMEC Inc. denies the remaining allegations of paragraph 38.

39.    AMEC Inc. admits that certain of AMEC China's engineers who were formerly employed by Applied are currently familiar with the subject matter in the Chinese '563

1  application, the Japanese '829 application, and the U.S. '291 application. AMEC Inc. admits

2  these engineers include Yin, Chen, and Todaka. AMEC Inc. has insufficient information to admit

3  or deny the allegation regarding Applied's filing U.S. patent applications, and therefore denies it

4  on this basis. AMEC Inc. denies the remaining allegations in paragraph 39.

5      40.    AMEC Inc. denies the allegations in paragraph 40.

6      41.    AMEC Inc. admits that Yin's employment agreement purports to state that any

7  invention disclosed to a third party within one year of his leaving Applied is presumed to have

8  been conceived or made during the period of his employment by Applied and will belong to

9  Applied. AMEC Inc. has insufficient information to admit or deny the allegation that Chen,

10  Todaka, and Luo's employment agreements contain the latter provision, and therefore denies it on

11  this basis. AMEC Inc. denies the remaining allegation of paragraph 41.

12      42.    AMEC Inc. admits that Chinese Patent Application No. 200510028564.7 (the

13  "Chinese '564 application") was filed on August 5, 2005, and that AMEC China is the named

14  applicant of this application. AMEC Inc. further admits that U.S. Patent Application

15  No. 11/350,022 (the "U.S. '022 application") and Japanese Patent Application No. 2006213916

16  (the "Japanese '916 patent application") were filed on February 8, 2006 and August 4, 2006,

17  respectively, and that both claim priority from the Chinese '564 application. AMEC Inc. also

18  admits that the U.S. '022 application is assigned to AMEC Asia and the Japanese '916 application

19  names AMEC Asia as applicant. AMEC Inc. admits that the Chinese '564, U.S. '022, and

20  Japanese '916 applications describe a RF matching network and the use of radio frequency (RF)

21  sources, and that this technology can be employed in both Etch and CVD tools. AMEC Inc.

22  denies the remaining allegations of paragraph 42.

23      43.    AMEC Inc. denies the allegations of paragraph 43.

24      44.    AMEC Inc. denies the allegations of paragraph 44.

25              **COUNT I**

26      **(Misappropriation of Trade Secrets against All Defendants)**

27      45.    In response to paragraph 45, AMEC Inc. incorporates its responses to paragraph 1

28  through 44 as if set forth fully herein.

46.    AMEC Inc. denies the allegations in paragraph 46.

47.    AMEC Inc. denies the allegations in paragraph 47.

48.    AMEC Inc. denies the allegations in paragraph 48.

49.    AMEC Inc. denies the allegations in paragraph 49.

50.    AMEC Inc. denies the allegations in paragraph 50.

51.    AMEC INC. denies the allegations in paragraph 51.

52.    AMEC Inc. denies the allegations in paragraph 52.

53.    AMEC Inc. denies the allegations in paragraph 53.

**COUNT II**

**(Intentional Interference with Contractual Relationships against all Defendants)**

54.    In response to paragraph 54, AMEC Inc. incorporates its responses to paragraph 1 through 53 as if set forth fully herein.

55.    AMEC Inc. denies the allegations in paragraph 55.

56.    AMEC Inc. admits that it was aware of the fact that Yin, Chen, Todaka and Luo had signed employee agreements with Applied.  AMEC Inc. denies the remaining allegations of paragraph 56.

57.    AMEC Inc. denies the allegations in paragraph 57.

58.    AMEC Inc. denies the allegations in paragraph 58.

59.    AMEC Inc. denies the allegations in paragraph 59.

**COUNT III**

**(Conversion against all Defendants)**

60.    In response to paragraph 60, AMEC Inc. incorporates its responses to paragraph 1 through 59 as if set forth fully herein.

61.    AMEC Inc. denies the allegations of paragraph 61.

62.    AMEC Inc. denies the allegations in paragraph 62.

63.    AMEC Inc. denies the allegations in paragraph 63.

64.    AMEC Inc. denies the allegations in paragraph 64.

65.    AMEC Inc. denies the allegations in paragraph 65.

<b>COUNT IV</b>

<b>(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 <i>et seq.</i> against all Defendants)</b>

66.     In response to paragraph 66, AMEC Inc. incorporates its responses to paragraph 1 through 65 as if set forth fully herein.

67.     Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 67 is required.  For avoidance of doubt, AMEC Inc. denies the allegations in paragraph 67.

68.     Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 68 is required.  For avoidance of doubt, AMEC Inc. denies the allegations in paragraph 68.

69.     Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 69 is required.  For avoidance of doubt, AMEC Inc. denies the allegations in paragraph 69.

70.     Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 70 is required.  For avoidance of doubt, AMEC Inc. denies the allegations in paragraph 70.

71.     Insofar as this Count has been dismissed by the Court on February 29, 2008, no response to paragraph 71 is required.  For avoidance of doubt, AMEC Inc. denies the allegations in paragraph 71.

<b>REQUEST FOR RELIEF</b>

In response to the Request for Relief, AMEC Inc. denies that Applied is entitled to damages of any kind, injunctive relief, a judgment ordering defendants to assign ownership rights in any patent application to Applied, costs, attorney's fees, or any other relief whatsoever.

<b>AFFIRMATIVE DEFENSES</b>

Without assuming the burden of proof as to any matter on which Applied bears such burden, AMEC Inc. alleges for its defenses as follows:

<b>First Affirmative Defense</b>

The Complaint fails to state a claim upon which relief can be granted.

1

**Second Affirmative Defense**

2      The Complaint is barred in whole or in part by the applicable statutes of limitations.

3

**Third Affirmative Defense**

4      The Complaint is barred in whole or in part by the doctrine of laches.

5

**Fourth Affirmative Defense**

6      There has been no damage to Applied as alleged herein.

7

**Fifth Affirmative Defense**

8      The Complaint is barred in whole or in part by the doctrines of waiver, estoppel, consent,

9  and ratification.

10

**Sixth Affirmative Defense**

11      The Complaint is barred in whole or in part by the doctrine of unclean hands.

12

**Seventh Affirmative Defense**

13      Applied is not entitled to injunctive relief because it has an adequate remedy at law.

14

**Eighth Affirmative Defense**

15      Applied's claim for misappropriation of trade secrets is barred, in whole or in part,

16  because any purported trade secrets identified by Applied are not trade secrets protected by the

17  Uniform Trade Secrets Act or any other statutory or common law provisions.

18

**Ninth Affirmative Defense**

19      Applied's claim for misappropriation of trade secrets is barred, in whole or in part,

20  because Applied's alleged trade secret information has been publicly disclosed by Applied and

21  otherwise has not been the subject of reasonable efforts to maintain its secrecy and is therefore

22  not capable of protection as a trade secret.

23

**Tenth Affirmative Defense**

24      Applied's claim for misappropriation of trade secrets is barred, in whole or in part,

25  because Applied's alleged trade secret information was known to AMEC Inc. or AMEC China

26  from publicly available sources and/or was already independently known to AMEC Inc. or

27  AMEC China, which bars Applied's recovery.

28

**Eleventh Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because even if the alleged trade secret information was in fact a trade secret, AMEC Inc. has not committed any acts that would constitute misappropriation of that information.

**Twelfth Affirmative Defense**

Applied's claim for misappropriation of trade secrets is barred, in whole or in part, because Applied has failed to sufficiently identify any purported trade secrets as set forth in the Uniform Trade Secrets Act or any other statutory or common law provisions.

**Thirteenth Affirmative Defense**

Applied has made a claim of misappropriation in bad faith, without a reasonable basis for believing that the alleged information was a trade secret or was acquired improperly, entitling AMEC Inc. to recovery of its attorneys' fees and costs pursuant to Civil Code § 3426.4.

**Fourteenth Affirmative Defense**

The alleged clause in the employment agreements between Applied and Yin, Chen, Todaka and Luo that states any inventions by these individuals disclosed in a patent application or to third parties within one year of their leaving Applied are presumed to have been conceived or made during their employment with Applied and would be belong to Applied violates California Business and Professions Code section 16600, is unenforceable, and void as against public policy.

**Fifteenth Affirmative Defense**

Applied has failed to take reasonable steps to protect itself from the damage alleged in the Complaint and has failed to mitigate any such alleged damage.

**Sixteenth Affirmative Defense**

To the extent that Applied suffered injury or damage, which AMEC Inc. denies, such injury or damage was caused by the actions or conduct of others, not of AMEC Inc.

**Seventeenth Affirmative Defense**

To the extent that Applied suffered injury or damage, which AMEC Inc. denies, such injury or damage was not proximately caused by any conduct or inaction of AMEC Inc., was not foreseeable, or both.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Eighteenth Affirmative Defense

Applied was at fault with respect to the matters alleged in the Complaint and its recovery, if any, should be barred or reduced in proportion to their comparative fault.

### Nineteenth Affirmative Defense

AMEC Inc.'s actions were conducted in good faith, without fraud, oppression, or malice regarding Applied or its rights, thereby precluding any and all claims for punitive damages.

### Twentieth Affirmative Defense

To the extent that AMEC Inc. acted as alleged in the Complaint, AMEC Inc.'s actions were at all times reasonable, privileged and justified.

### Twenty-First Affirmative Defense

The Court lacks personal jurisdiction over AMEC Inc. with respect to the claims asserted and relief requested by Applied.

### Twenty-Second Affirmative Defense

Applied's claims for conversion, intentional interference with contractual relationships, and unfair competition are preempted by the Uniform Trade Secrets Act.

### Twenty-Third Affirmative Defense

The venue for this action is improper.

### PRAYER

WHEREFORE, AMEC Inc. prays for judgment as follows:

1.     That Applied take nothing by way of the Complaint;

2.     That the Complaint be dismissed with prejudice and judgment entered in favor of AMEC Inc.;

3.     That AMEC Inc. be awarded its attorneys' fees and costs; and

4.     For such other relief as the Court deems just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNTERCLAIMS

Defendant and Counterclaimant AMEC Inc. hereby asserts the following counterclaims against Plaintiff and Counterdefendant Applied:

### INTRODUCTION

1.     Applied's employee agreements include holdover clauses that are designed to restrain Applied's current and former employees from engaging in a lawful profession, trade or business in violation of section 16600 of the California Business and Professions Code and the public policy of the State of California.  Applied's practice of requiring employees to agree to holdover clauses as part of their employment agreement is an unlawful and unfair business practice that is prohibited by section 17200 of the California Business and Professions Code *et seq*.

2.     AMEC Inc. seeks a declaration that the holdover clause is void in every Applied employee agreement that contains one and seeks an injunction preventing Applied from enforcing its holdover clauses against anyone.

### PARTIES

3.     Counterclaimant AMEC Inc. is a holding company incorporated in the Cayman Islands, with its principal place of business in Shanghai, China.

4.     Counterdefendant Applied is a Delaware corporation, with its principal place of business in Santa Clara, California.

### JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2).

6.     Venue is proper in this district under 28 U.S.C. § 1391(a) because this is the district in which counterdefendant Applied resides.

### APPLIED'S UNLAWFUL AND ANTICOMPETITIVE EMPLOYMENT AGREEMENTS

7.     Applied's employment agreements include anticompetitive "holdover clauses" that state that the creative and inventive output of former Applied employees will continue belong to Applied, even after they leave Applied are no longer paid by Applied.

8.    The particular language of the holdover clauses has changed over time.

9.    For example, the agreement signed by Gerald Yin in 1991 contains a holdover clause stating that all inventions described in a patent application or disclosed to third parties within one year of the termination of employee's employment with Applied will belong to Applied.

10.    Other Applied employee agreements do not have any temporal limitation in the holdover clause.

11.    For example, a holdover clause in a 1995 Applied employee agreement states that "in case any invention is described in a patent application or is disclosed to third parties by me after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment with APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries."

12.    According to the terms of this agreement, any invention that an employee describes in a patent application that relates to his or her work with Applied must be assigned to Applied, even if the invention were made ten years after leaving Applied.

13.    On their face, the "presumptions" referred to in Applied's holdover clauses are not rebuttable ones.  The agreements contain no provision permitting an ex-employee to rebut the presumption or otherwise retain ownership of his or her creative and inventive efforts that the clauses take away.

14.    Applied's employee agreements are designed to restrain its employees from engaging in a lawful profession, trade or business in violation of section 16600 of the California Business and Professions Code and the public policy of the State of California.

15.    Applied's practice of requiring employees to agree to holdover clauses as part of their employment agreement is an unlawful and unfair business practice that is prohibited by section 17200 of the California Business and Professions Code *et seq*.

## APPLIED'S UNLAWFUL AND ANTICOMPETITIVE BEHAVIOR

16.    Applied has filed suit against AMEC Inc., alleging claims of misappropriation of trade secrets, intentional interference with contractual relationships, conversion and violations of the Unfair Competition Law.

17.    Applied's conversion and intentional interference claims are based on the holdover clauses in Applied's employment agreements.

18.    Applied's First Amended Complaint alleges (in paragraph 41) that these holdover clauses give Applied a contractual right to various patent applications assigned to AMEC entities.

19.    Applied alleges that AMEC Inc. has wrongfully taken those patent applications for itself and is therefore liable for conversion.  Applied alleges that AMEC Inc. induced Yin, Chen, Todaka and Luo to breach the holdover clauses by assigning those patents to it and AMEC China.

20.    As a condition of his employment, Applied required Gerald Yin to agree to a holdover clause in his employment agreement.

21.    On information and belief, Applied required Chen, Todaka and Luo, and its other employees, to agree to a holdover clause as well.

22.    In its Opposition to AMEC China and AMEC Asia's Motions to Dismiss, Applied argued that its claims for conversion and intentional interference with contractual relationships are independent of its misappropriation of trade secrets claim.  Applied took the position that its conversion and intentional interference claims do not depend on whether the information at issue in the patent applications was or is a trade secret.

23.    Applied admitted in court that the holdover clause on which its conversion and intentional interference claims was not designed to protect Applied's trade secrets.  And indeed they are not.

24.    Applied's holdover clauses are designed to scare its employees away from future competition with Applied by threatening to extract a financial penalty and to discourage them from seeking better positions elsewhere.

25.    Applied's holdover clauses are anticompetitive and interfere with its employees' mobility.  They violate California's strong public policy in favor of employee mobility, as

1    statutorily codified in California Business and Professions Code section 16600.  Therefore, the

2    holdover clauses are unenforceable and void.  Applied's requiring its employees to enter into such

3    agreements is an unlawful and unfair business practice within the meaning of California Business

4    and Professions Code section 17200 *et seq.*

5        26.    Applied's employee agreements are designed to prevent present or future

6    competitors, such as AMEC Inc. or its subsidiaries, from competing with Applied.  The holdover

7    clauses are designed to discourage Applied's competitors from hiring Applied's employees and

8    ex-employees.

9        27.    Applied has invoked its holdover clauses in its conversion and intentional

10    interference with contractual relationships claims against AMEC Inc.  Accordingly, AMEC Inc.

11    seeks a declaration that the clause is void in every Applied employee agreement that contains one

12    and an injunction preventing Applied from enforcing the clause against anyone.

### COUNT I

### (Declaratory Relief)

15        28.    AMEC Inc. incorporates paragraphs 1 - 27 above as if fully set forth herein.

16        29.    An actual controversy has arisen regarding the validity of the non-compete in

17    Applied's employment agreements.

18        30.    Specifically, Applied has stated that its conversion and intentional interference with

19    contractual relationships claims against AMEC Inc. are based on allegations that AMEC Inc. has

20    "wrongfully converted Applied's contractual rights of assignment under the Employee

21    Agreements" and that AMEC Inc. "caused its employees to breach their employment agreements

22    with Applied by assigning certain patent applications to AMEC Shanghai (AMEC China) and

23    AMEC Inc."  The provision that was allegedly breached is a holdover clause, as stated in

24    Applied's Complaint and as Applied has argued to the Court.

25        31.    The holdover clauses improperly restrict Applied employees' mobility, and is thus

26    void as against public policy and unenforceable.  Cal. Bus. & Prof Code. § 16600.

27

28

32.     Declaratory relief is necessary and proper so that AMEC Inc. can resolve its rights and duties relating to Applied's employment agreements with respect to current and former Applied employees, including Yin, Chen, Todaka and Luo.

**COUNT II**

**(Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)**

33.     AMEC Inc. incorporates paragraphs 1 - 32 above as if fully set forth herein.

34.     Applied has engaged in a practice of requiring its employees to agree to holdover clauses as a condition of their employment.

35.     This practice has injured competition for human capital and Applied's competitors, as it has alleged AMEC Inc. to be.

36.     Because Applied's holdover clauses are unenforceable and void as against public policy, Applied's business practice is unlawful and unfair within the meaning of California Business and Professions Code section 17200 *et seq.*

37.     Applied's unlawful and unfair practice has resulted in AMEC Inc. being forced to defend claims of conversion and intentional interference with contractual relationships and expend funds on attorney's fees.  The practice may have a chilling effect on Applied's competitors, who will be less willing to hire current and former Applied employees.

38.     AMEC Inc. is therefore entitled to an injunction prohibiting Applied from enforcing the holdover clauses in any of its employment agreements with any employee.

**PRAYER FOR RELIEF**

WHEREFORE, AMEC Inc. demands judgment from Applied for:

(1) A declaration that the holdover clauses in Applied's employment agreements are unenforceable and void as against public policy;

(2) A permanent injunction prohibiting Applied from enforcing any holdover clause against any current or former employee;

(3) Costs of suit; and

(4) Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), AMEC Inc. hereby demands a trial by jury of all issues so triable herein.

Dated: June 13, 2008                    MARC DAVID PETERS
                                        MORRISON & FOERSTER LLP


                                   By: /s/ Marc David Peters
                                        Marc David Peters

                                        Attorneys for Defendant
                                        ADVANCED MICRO-
                                        FABRICATION EQUIPMENT INC.
                                        CHINA