1  THOMAS HR DENVER (56872)
   Mediation Masters
2  96 North Third Street
   Suite 300
3  San Jose, CA 95112
4
   Telephone:  (408) 280-7883
5  Facsimile:    (408) 292-7868
6  Special Master
7
8              IN THE UNITED STATES DISTRICT COURT
9             FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                       SAN JOSE DIVISION
11 

| APPLIED MATERIALS, INC., | No. C 07-05248 JW |
|---|---|
| Plaintiff, | |
| vs. | **DISCOVERY ORDER NO. 38** |
| ADVANCED MICRO-FABRICATION EQUIPMENT, INC., et al., | |
| Defendants. | |

Defendant's motion to strike and exclude Cecchi and Sawin expert testimony came on for hearing on September 17, 2009. Substantial briefing having been reviewed and oral argument heard,

IT IS ORDERED as follows:

The motion is DENIED.

**REASONS FOR DECISION**

Defendant AMEC moves, pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) to "strike and exclude expert testimony from plaintiff's expert witnesses Cecchi and Sawin dealing with the issue of whether plaintiff's claimed trade secrets were "generally known." Defendant asserts, correctly, that under California Civil Code section 3426.1(d)(1) which

states, in relevant part, that the alleged trade secret must "derive independent economic value, actual or potential, from not being generally known . . .", plaintiff bears the burden of proof regarding not being generally known.

Plaintiff submitted written interrogatory 14 to defendant, asking it to "identify all facts and documents that support your assertion that the trade secret . . . was publicly known . . ." In response, defendant AMEC answered and then supplemented its answer on seven occasions, with the answer running to 46 pages. Its responses identify more than 150 documents, publications and patents and assert that they demonstrate that the alleged trade secrets were generally known.

Plaintiff's expert Cecchi issued a 66 page report regarding certain of the trade secrets and plaintiff's expert Sawin issued a 44 page report dealing with others of the secrets.

In addressing the assertion by AMEC that the trade secrets were "generally known," Cecchi included the following language as to trade secrets 1, 1A-1D, and 1F-1L:

> "I have reviewed AMEC's response to Applied's interrogatory 14, and all of the documents identified by AMEC in their interrogatory response. I am in the process of reviewing the documents cited in AMEC's seventh supplemental response to Applied's interrogatory 14 served August 14, 2009, and reserve the right to supplement my report based on these materials if necessary. I have also searched for references pertaining to the topics in Trade Secrets 1 and 1A-1D and 1F-1L, and include those in Exhibit "B". I do not find that any of these publications disclose Applied's Trade Secrets 1 and 1A-1D and 1F-1L. I have also discussed Trade Secrets 1 and 1A-1D and 1F-1L with Dr. Herb Sawin, Professor Chemical Engineering, Emeritus, The Massachusetts Institute of Technology. Based on these discussions, as well as my own experience in the field, I believe that Applied's Trade Secrets 1 and 1A-1D and 1F-1L were not publicly known." (Cecchi report, paragraph 99).

This response is typical of those provided by both Cecchi and Sawin with regard to the various trade secrets and the issue of "generally known."

Moving party asserts that these statements are insufficient and non-compliant with Rule 26(a)(2)(B). It asserts that it will be prejudiced in its ability to cross-examine the witnesses on their opinions regarding the issue of "generally known." In taking this

-2-
DISCOVERY ORDER NO. 38

1  position, moving party asserts that Applied's experts ignored the "150 documents,
2  publications and patents that prove alleged secrets 1-4 (and their various subparts) were
3  indeed "generally known." This assertion is manifestly incorrect. The very opening line of
4  the cited passage from the Cecchi report states: "I have reviewed AMEC's response to
5  interrogatory 14 and all of the documents identified by AMEC in their interrogatory
6  response." Not only have the experts not "ignored" AMEC's identified material, they have
7  reviewed it and taken the stated position that it does not publicly disclose the technology at
8  issue. Arguably, the position taken by the expert could be spelled out in greater detail. At
9  the same time, it is difficult to see how any manageable report could address what moving
10 party itself describes as "more than 150 documents, publications and patents . . ."
11 Responding Applied correctly points out that, in essence, moving party is seeking to require
12 its experts to prove a negative, in minute detail.
13    An expert is not required to "recite each minute fact or piece of scientific information
14 that might be elicited on direct examination to establish the admissibility of expert opinion
15 under Daubert. Single Chip Sys. Corp. vs. Intermec IP Corp., 495 F.Supp.2nd 1066, 1075
16 (S.D. Cal. 2007).
17    The purpose of Rule 26 is to prevent trial by ambush, where a cross-examiner is
18 confronted by an opponents' expert who is revealing his opinion for the first time in open
19 court. Rule 26(a)(2)(B) "contemplates that the expert will supplement, elaborate upon,
20 explain and subject themselves to cross-examination upon his report." Thompson vs.
21 Doane Pet Care Co.,  470 F.3rd 1201, 1203 (6th Cir. 2006). Federal Courts have refused to
22 "automatically exclude anything an expert could have included in his or her original report.
23 Such a rule would lead to the inclusion of vast amount of arguably irrelevant material in an
24 expert's report on the off chance that failing to include any information in anticipation of a
25 particular criticism would forever bar the expert from later introducing the relevant material."
26 Thibeault vs. Square D Co., 960 F.2nd 239, 244 (1st Cir. 1992).
27    While moving party argues prejudice, stating that it will be unable to conduct a
28 meaningful cross-examination, it is difficult to see how this is true. It is easy to envision the

DISCOVERY ORDER NO. 38

1   cross-examiner selecting one or more of the "150 documents . . .", citing its relevant
2   passages and asking the expert the basis for the expert's opinion that it does not disclose
3   the relevant technology.
4   　　　It is to be noted, further, that in the course of the meet and confer discussions
5   preceding this motion, responding party Applied offered to supplement the expert's reports
6   with regard to this issue.  That offer was rejected by moving party.  Nevertheless, Applied
7   has offered supplemental reports from both experts, with Dr. Sawin's supplemental report
8   running to 12 pages and Dr. Cecchi's to eight.  These supplemental reports set out, in
9   substantial detail, the basis for the expert's opinions.  Given that the Special Master
10  extended the date upon which rebuttal expert reports are due to September 25, 2009, well
11  beyond the date of the hearing on this motion and given that the supplemental reports
12  provide a substantial "roadmap" to the expert opinions, no prejudice appears.
13  　　　Along the same lines, it is noted that defendant's experts have issued reports on the
14  topic of "ready ascertainability."  Plaintiff Applied's experts will be supplying rebuttal reports
15  with regard to that topic.  The two topics, "generally known" and "ready ascertainability"
16  substantially overlap and moving party AMEC will be supplied with yet another significant
17  piece of information with which to arm itself for the depositions of plaintiff's experts.  In
18  summary, having reviewed the expert reports, it is the conclusion of the Special Master that
19  the discussion of "generally known" in the initial reports was sufficient pursuant to Rule 26
20  and that, as expanded in the supplemental reports, is more than sufficient, to allow AMEC
21  the opportunity to adequately cross-examine and to avoid surprise at trial.
22  　　　The parties have ten days from the date of this order to file any objection.

24  Dated:  September 18, 2009.　　　　　　　　　　　　／s／ Thomas HR Denver
　　　　　　　　　　　　　　　　　　　　　　　　　　　　THOMAS HR DENVER